# Exhibit 9

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

NATIONAL SHOOTING SPORTS FOUNDATION,

     *Plaintiff,*

     v.

ANTHONY G. BROWN, Attorney General of Maryland,

     *Defendant.*

No. _____

## DECLARATION OF TRIPPER DICKSON ON BEHALF OF SPORTS SOUTH, LLC

I, Tripper Dickson, declare as follows:

1.   I am over the age of 18 years and am qualified to submit this declaration on behalf of Sports South, LLC (Sports South).

2.   I am currently the President at Sports South.

3.   I have personal knowledge of the facts set forth in this declaration through direct involvement and by personally reviewing Sports South's records and information.

4.   Sports South is a wholesale-distributor of firearms located in Louisiana.

5.   Sports South is a federal firearms licensee ("FFL") licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

6.   Sports South is a member of the National Shooting Sports Foundation ("NSSF").

7.   Sports South is a corporation engaged in the sale, distribution, and marketing of firearm-related products and so is a "firearm industry member" as defined in Maryland House Bill 947 ("HB947"), Md. Code Ann., Cts & Jud. Proc. §3-2501.

8.   Sports South is also a "seller" as defined in the federal Protection of Lawful Commerce in Arms Act ("PLCAA").  15 U.S.C. §7903(6).

9.   I understand "qualified products" under federal law are only those that have "been shipped or transported in interstate or foreign commerce." *Id.* §7903(4).

10. The firearm industry is heavily regulated.  All firearm industry members must comply with multiple federal, state, and local laws and regulations that govern the manufacture, export, import, sale, and acquisition of firearms including: the National Firearms Act, 26 U.S.C. §5801 *et seq.*; the Federal Gun Control Act of 1968, 18 U.S.C. §921 *et seq.*; the Arms Export Control Act, 22 U.S.C. § 2778; Importation of Arms, Ammunition and Implements of War, 27 C.F.R §447.1 *et seq.*; Commerce in Firearms and Ammunition, 27 C.F.R §478.1 *et seq.*; as well as numerous state and local laws and regulations.

11. Sports South does not have any distribution centers in Maryland, nor does it sell firearms directly to civilians in Maryland.  Sports South does, however, sell its firearms and firearm components to federally licensed firearms dealers, including dealers located in the State of Maryland, as permitted by federal, state, and local law.

12. The majority of the firearms Sports South sells are not manufactured in Maryland.

13. I understand that HB947 deems it a "public nuisance" for a "firearm industry member" to "knowingly create, maintain, or contribute to harm to the public through the sale, manufacture, distribution, importation, or marketing of a firearm-related product by engaging in conduct that is: (1) Unlawful; or (2) Unreasonable under the totality of the circumstances."  Md. Code Ann., Cts. & Jud. Proc. §3-2502(a).

14. I understand that HB947 also declares that "[a] firearm industry member shall establish and implement reasonable controls regarding the sale, manufacture, distribution, importation, marketing, possession, and use of the firearm industry member's firearm-related products."  *Id.* §3-2502(b).  "Reasonable controls" are defined as "policies that are designed: (1) To prevent the

2

sale or distribution of a firearm-related product to: (i) A straw purchaser; (ii) A firearm trafficker; (iii) A person prohibited from possessing a firearm under State or federal law; and (iv) A person who the firearm industry member has reasonable cause to believe intends to use the firearm-related product: 1. To commit a crime; or 2. To cause harm to the person or another person; (2) To prevent the loss or theft of a firearm-related product from a firearm industry member; and (3) To ensure that the firearm industry member complies with all provisions of State and federal law and does not otherwise promote the unlawful sale, manufacture, alteration, importation, marketing, possession, or use of a firearm-related product." *Id.* §3-2501(f).

15. I fear that, if a criminal illegally possesses or misuses in Maryland one of the firearm-related products sold or marketed by Sports South, Sports South will face severe liability under HB947 for "harm to the public" even though the initial transport, shipment, sale and/or marketing by Sports South was lawful and complied with all applicable laws and regulations in the places undertaken.

16. Sports South cannot eliminate liability under HB947's first public nuisance prong because the behavior of third-party criminals is outside Sports South's control and because "harm to the public" is undefined, highly subjective, and vague.

17. I also fear that Sports South could face liability under HB947 for any activity that the State of Maryland deems to be "[u]nreasonable under the totality of the circumstances," even though in full compliance with all laws and regulations in the places undertaken.

18. Sports South cannot eliminate liability under this provision of HB947 because "[u]nreasonable under the totality of the circumstances" is undefined, is highly subjective and vague, and because this provision again creates liability for Sports South based on the behavior of criminals who are outside Sports South's control.

19. I also fear that Sports South could face liability under HB947's vague and subjective requirement to "establish and implement reasonable controls" to prevent various criminal acts even though multiple controls are already required by federal, state, and local laws and regulations with which Sports South complies.

20. Sports South cannot eliminate liability under HB947 because liability is again based on undefined, highly subjective, and vague, terms, and predicated on the ultimate behavior of third party criminals outside Sports South's control.

21. Even if Sports South could undertake drastic measures in an attempt to lessen potential liability (entirely discontinuing the wholesale sale of firearms and related products or refusing to sell firearms to dealers in Maryland, for example), the economic and reputational impact to Sports South would be irreparable and the potential for liability under HB947 would still not be eliminated.  Because HB947 is vague and broad and encompasses fully lawful conduct, there is no action that Sports South could take in order to insulate it from liability entirely, other than perhaps ceasing operations altogether or significantly limiting its business operations, which would cause Sports South economic harm in the form of lost sales.

22. The threat that HB947 poses to Sports South's business is not speculative.  Indeed, the Maryland Attorney General has already sued an NSSF member—Glock, Inc. ("Glock")—under HB947, seeking to hold Glock liable for public harm caused by the criminal acts of third parties beyond Glock's control who have illegally purchased, possessed, and installed illegal machinegun conversion devices ("MCDs") on Glock pistols, thereby illegally manufacturing machineguns and using those firearms for nefarious ends.  *See* Complaint, *Mayor of Balt. v. Glock, Inc.*, No. C-24-CV-25-001450 (Md. Cir. Ct. Feb. 12, 2025).

4

23. Other states and litigants have also filed similar lawsuits against Glock and other members of the firearm industry under similar laws and based on a similar theory of liability—seeking to hold various firearm industry members responsible for the criminal acts of third parties beyond the members' control.  *See, e.g.*, Complaint, *Platkin v. Glock, Inc.*, No. ESX-C-000286-24 (N.J. Super. Ct. Ch. Div. Dec. 12, 2024); Complaint, *Platkin v. FSS Armory, Inc.*, No. MRS C-000102-23 (N.J. Super. Ct. Ch. Div. Dec. 12, 2023); Amended Complaint, *Platkin v. Patriot Enters. Worldwide LLC*, No. MER-C-000093-23 (N.J. Super. Ct. Ch. Div. Dec. 14, 2023); Complaint, *Platkin v. Point Blank Guns & Ammo LLC*, No. MRS-C-000123-24 (N.J. Super. Ct. Ch. Div. Nov. 13, 2024); Complaint, *City of Chicago v. Glock, Inc.*, No. 2024-CH-06875 (Ill. Cir. Ct. July 22, 2024); Second Amended Complaint, *Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL (Cal. Super. Ct. July 22, 2021); *Roberts v. Smith & Wesson Brands, Inc.*, No. 22-LA-00000487 (Ill. Cir. Ct. Sept. 27, 2022); *Parsons v. Colts Mfg. Co.*, 499 P.3d 602 (Nev. 2021); Verified Complaint, *City of Rochester v. Smith & Wesson*, 2022 WL 19770082 (N.Y. Sup. filed Dec. 21, 2022); Verified Complaint, *City of Buffalo v. Smith & Wesson*, 2022 WL 19770081 (N.Y. Sup. filed Dec. 20, 2022); *New York v. Arm or Ally, LLC*, 718 F.Supp.3d 310, 332-33 (S.D.N.Y. 2024), *motion to certify appeal granted*, No. 22-CV-6124 (JMF), 2024 WL 2270351 (S.D.N.Y. May 20, 2024).

24. Sports South is particularly concerned about liability under HB947 because Sports South sells Glock pistols in various states including Maryland, where the marketing and sale of such pistols has already been alleged to violate HB947.  *See* Complaint, *Mayor and City Council of Baltimore, et al. v. Glock, Inc., et al.*, No. C-24-CV-25-001450 (Cir. Ct. Md., Baltimore City, Feb. 12, 2025).

25. Sports South is also concerned because it sells other striker-fire pistols, sometimes referred to in the industry as "Glock clones," as well as AR-15s, which numerous states and litigants have

alleged can be illegally converted into machineguns using an illegal MCD, auto sear, or other attachments, and thus could face opprobrium from Maryland under HB947 notwithstanding that those firearms are not machineguns under governing law and regulation.  *See, e.g.*, Complaint, *Mayor of Balt. v. Glock, Inc.*, No. C-24-CV-25-001450 (Md. Cir. Ct. Feb. 12, 2025); Second Amended Complaint, *Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL (Cal. Super. Ct. July 22, 2021); *Roberts v. Smith & Wesson Brands, Inc.*, No. 22-LA-00000487 (Ill. Cir. Ct. Sept. 27, 2022); *Parsons v. Colts Mfg. Co.*, 499 P.3d 602 (Nev. 2021); *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511, 533 (1st Cir. 2024), *cert. granted*, 145 S.Ct. 116 (2024); *see also Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1195 (7th Cir. 2023) (claiming that "the AR-15 is almost the same gun as the M-16 machinegun"); *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 49 (1st Cir. 2024) (same); *cf.* 26 U.S.C. §§5812, 5822, 5845(a), 5861 (prohibiting manufacture, transfer, and possession of a machinegun without prior approval from the ATF and payment of applicable taxes); 18 U.S.C. §922(o) (similar).

26. Finally, Sports South is concerned about liability under HB947 because Maryland's neighboring state, New Jersey, has already begun enforcing its nearly identical law against sellers for the legal sale in other states of firearms that are not legal in New Jersey.  *See* Amended Complaint, *Platkin v. Patriot Enters. Worldwide LLC*, No. MER-C-000093-23 (N.J. Super. Ct. Ch. Div. Dec. 14, 2023).  Sports South reasonably fears that Maryland will in no time follow its sister-state's lead, which only increases the already significant risk of liability and costs that Sports South faces under HB947 for its otherwise lawful business operations.

27. If HB947 is not enjoined, Sports South will be irreparably harmed by being forced to cease or limit lawful, federally licensed operations or face liability, all of which would have a significant and harmful impact on Sports South's revenues, and its reputation.  In addition, because HB947's

standards are vague and unattainable, and because the liability under HB947 ultimately hinges on the behavior of third-party criminals outside Sports South's control, there is no way for Sports South to fully comply.  Sports South will continually be at risk of litigation and potential liability unless it ceases doing business or attempts to significantly limit its operations as a federally licensed wholesaler.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are  true and correct to the best of my knowledge.  Executed within the United States.

March 20, 2025.

By          _Tripper Dickson_

Tripper Dickson