# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

NATIONAL SHOOTING SPORTS
FOUNDATION, INC.,

                  *Plaintiff*,

    v.

ANTHONY G. BROWN, Attorney General of
the State of Maryland,

                *Defendant*.

No. 1:25-cv-01115-RDB

**[PROPOSED] BRIEF OF GUN VIOLENCE PREVENTION GROUPS
AS AMICI CURIAE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**ARGUMENT** ........................................................................................................... **1**

I.  Many civil actions that can be brought pursuant to the Act are indisputably
    not preempted by PLCAA. ..................................................................................... 2

    A.  PLCAA does not preempt all litigation against firearm industry members ................. 2

    B.  An action brought pursuant to the Act could use a different statute to satisfy
    PLCAA's predicate exception. ................................................................................. 5

II.  The Act can serve as a PLCAA predicate statute. ............................................... 7

    A.  The Act is "applicable to the sale or marketing of" qualified products ...................... 8

    B.  There is no "concreteness" requirement in PLCAA. ................................................. 8

    C.  PLCAA neither seeks nor requires "national uniformity" with regard to
    state statutes. ........................................................................................................ 12

    D.  The predicate exception requires "knowing" violations of predicate statutes;
    it does not require predicate statutes that can only be violated knowingly. .............. 13

    E.  The Act does not alter the law of proximate causation .............................................. 14

**CONCLUSION** .................................................................................................... **15**

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Fed. Bureau of Prisons*,
  552 U.S. 214 (2008) ............................................................................................ 11

*Bannerman v. Mountain State Pawn, Inc.*,
  436 F. App'x 151 (4th Cir. 2011) ......................................................................... 6

*Brady v. Walmart Inc.*,
  No. 21-CV-1412, 2022 WL 2987078 (D. Md. July 28, 2022) .................... 5, 6, 8, 13

*Bryan v. United States*,
  524 U.S. 184 (1998) ............................................................................................ 10

*City of New York v. Beretta USA Corp.*,
  524 F.3d 384 (2d Cir. 2008) ............................................................................ 8, 12

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ............................................................................................ 11

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ............................................................................................ 10

*Harrison v. PPG Indus., Inc.*,
  446 U.S. 578 (1980) ............................................................................................ 11

*Ileto v. Glock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009) ......................................................................... 1, 3

*King v. Klocek*,
  133 N.Y.S.3d 356 (App. Div. 2020) ..................................................................... 6

*Nat'l Shooting Sports Found., Inc. v. James*,
  604 F. Supp. 3d 48 (N.D.N.Y. 2022) .................................................................... 8

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022) .............................................................................................. 9

*Owens-Ill., Inc. v. Zenobia*,
  325 Md. 420 (1992) .............................................................................................. 10

*People v. Blackhawk Mfg. Grp. Inc.*,
  No. CGC-21-594577 (Cal. Super. Ct. May 2, 2023) ............................................ 4

*Platkin v. FSS Armory, Inc.*,
  No. MRS-C-102-23 (N.J. Super. Ct. Ch. Div. Aug. 28, 2024) ......................... 5, 13

*Ramos v. Wal-Mart Stores, Inc.*,
  202 F. Supp. 3d 457 (E.D. Pa. 2016) .................................................................... 6

*Roberts v. Smith & Wesson Brands, Inc.*,
  No. 22 LA 201, 2025 WL 1295092 (Ill. Cir. Ct. Apr. 1, 2025) ................. 6, 9, 10, 13

*Smith & Wesson Corp. v. City of Gary*,
  875 N.E.2d 422 (Ind. Ct. App. 2007) ............................................................ 10, 13

*Soto v. Bushmaster Firearms International, LLC,*
   202 A.3d 262 (Conn. 2019) ........................................................................ 9, 11, 13

*United States v. Rahimi,*
   602 U.S. 680 (2024) ........................................................................................... 2

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008) ........................................................................................ 2, 7

*Westfarm Assocs. LP v. Wash. Suburban Sanitary Comm'n,*
   66 F.3d 669 (4th Cir. 1995) .............................................................................. 15

*Williams v. Beemiller, Inc.,*
   952 N.Y.S.2d 333 (App. Div. 2012) ................................................................ 3, 5

**Statutes**

15 U.S.C. § 7901(a) ............................................................................................... 2

15 U.S.C. § 7901(b) ............................................................................................. 12

15 U.S.C. § 7902(a) ............................................................................................... 1

15 U.S.C. § 7903 ................................................................................................... 3

15 U.S.C. § 7903(2) ............................................................................................... 3

15 U.S.C. § 7903(5) ....................................................................................... passim

15 U.S.C. § 7903(6) ............................................................................................... 3

15 U.S.C. §§ 7901-7903 ........................................................................................ 1

18 U.S.C. § 922(a)(1) ............................................................................................ 3

Md. Code Ann., Crim. Law § 5-605(a) ............................................................... 14

Md. Code Ann., Cts. & Jud. Proc. § 3-2501(c) .................................................... 4

Md. Code Ann., Cts. & Jud. Proc. § 3-2501(d) .................................................... 8

Md. Code Ann., Cts. & Jud. Proc. § 3-2502(a) ................................................. 6, 8

Md. Code Ann., Cts. & Jud. Proc. § 3-2502(b) .................................................... 5

Md. Code Ann., Cts. & Jud. Proc. § 3-2502(c) .................................................. 14

Md. Code Ann., Cts. & Jud. Proc. § 3-2503(a) .................................................... 4

Md. Code Ann., Cts. & Jud. Proc. §§ 3-2502, -2503(a)(1) ........................... 1, 5, 7

Md. Code Ann., Pub. Safety § 5-117.1(b) ............................................................ 7

Md. Code Ann., Pub. Safety § 5-123(a) ............................................................... 7

Md. Code Ann., Pub. Safety § 5-134(b)(1) .......................................................... 7

Md. Code Ann., Real Prop. § 14-120(a)(5) ........................................................ 14

**Treatises**

Dan B. Dobbs et al., *Law of Torts* § 209 (2d ed. 2024) ..................................... 15

## CORPORATE DISCLOSURE STATEMENTS

Brady Center to Prevent Gun Violence is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

Everytown for Gun Safety Support Fund is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

Giffords Law Center to Prevent Gun Violence is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

**ARGUMENT**

Last year, the Maryland General Assembly duly enacted the Gun Industry Accountability Act of 2024 (hereinafter, "the Act"), now codified at sections 3-2501 through 3-2504 of the Courts and Judicial Proceedings Article. The Act authorizes the State Attorney General, a county attorney, or the Baltimore City Solicitor to commence civil actions against firearm industry members that create a public nuisance either (a) by knowingly harming the public through unlawful or unreasonable conduct or (b) by failing to enforce reasonable controls in the conduct of their business. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 3-2502, -2503(a)(1). Plaintiff National Shooting Sports Foundation has moved to enjoin all enforcement of the Act on numerous grounds, including that it runs afoul of a federal law, the Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901-7903. *See* Mem. Supp. Pl.'s Mot. ("Pl.'s Mem.") 1-2, 4-13.

But nothing in PLCAA preempts state statutes. Rather, PLCAA preempts certain civil actions, which it terms "qualified civil liability actions." *See* 15 U.S.C. § 7902(a). And PLCAA makes clear that it does not preempt *every* civil action that might be brought against a firearm industry member. Instead, to count as a "qualified civil liability action," an action must be brought against a particular type of defendant (most notably, federally licensed manufacturers or sellers), must seek relief from a particular type of harm (harm that results from the misuse of a firearm or ammunition by the plaintiff or a third party), and must not fit into one of PLCAA's six enumerated exceptions. *See* § 7903(5)(A); *see also Ileto v. Glock, Inc.*, 565 F.3d 1126, 1145 (9th Cir. 2009) ("The PLCAA preempts specified types of liability actions; it does not provide a blanket protection to specified types of defendants.").

To be sure, in any action brought under the Act, a defendant can attempt to raise a PLCAA defense. Here, however, Plaintiff seeks to enjoin the Act on its face. Consequently, in order to

succeed on its motion, Plaintiff must "'establish[] that no set of circumstances exists under which [the Act] would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *accord United States v. Rahimi*, 602 U.S. 680, 693 (2024). Not only can Plaintiff not make this showing, Plaintiff has not even tried.

Instead, Plaintiff seems to argue at a high level of generality that the Act *itself* cannot satisfy PLCAA's "predicate exception," § 7903(5)(A)(iii). *See* Pl.'s Mem. 5-13. Plaintiff is wrong— invoking section 3-2502 *can* satisfy the predicate exception in many circumstances. *See infra* Part II. But the Court need not decide that question. Even assuming *arguendo* that Plaintiff is correct that an action brought pursuant to the Act cannot meet the predicate exception's requirements, section 3-2503 authorizes other actions that even Plaintiff does not contend are preempted by PLCAA. *See infra* Part I. Consequently, the Act has a "plainly legitimate sweep," so Plaintiff's "facial challenge must fail." *Wash. State Grange*, 552 U.S. at 449 (citation omitted).

## I.    Many civil actions that can be brought pursuant to the Act are indisputably not preempted by PLCAA.

### A.    PLCAA does not preempt all litigation against firearm industry members.

As its name indicates, the Protection of Lawful Commerce in Arms Act is designed to protect firearm industry members when they are engaged in *lawful* commerce. The text of the law explains that Congress passed PLCAA out of a belief that "[b]usinesses … engaged in … lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products … should not[] be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed or intended." 15 U.S.C. § 7901(a)(5).

This express purpose is fulfilled by PLCAA's operative language, *id.* § 7903. To start, the limitation that PLCAA protects only *lawful* commerce is realized in two places. First, PLCAA applies only to actions brought against firearm companies that are licensed under federal law. PLCAA applies to actions that are brought against "manufacturer[s]" and "seller[s]," § 7903(5)(A), and those terms are generally limited to entities that have a federal license to manufacture or sell firearms, *see* § 7903(2) (defining "manufacturer" to be one "who is licensed to engage in business as such a manufacturer"); § 7903(6) (defining "seller" to be "(A) an importer … who is licensed to engage in business as such an importer" or "(B) a dealer … who is licensed to engage in business as such a dealer").[1] Second, PLCAA expressly does not apply to "an action in which a manufacturer or seller … knowingly violated a State or Federal statute applicable to the sale or marketing of the product," provided that "the violation was a proximate cause of the harm for which relief is sought." § 7903(5)(A)(iii). Under these provisions, a firearm company that is licensed and obeys the law is protected from suit by PLCAA (provided that none of PLCAA's other exceptions is met). But a firearm company that operates without a license or knowingly violates the law is not protected. *See, e.g.*, *Williams v. Beemiller, Inc.*, 952 N.Y.S.2d 333, 338-39 (App. Div. 2012).

For example, a foreign firearm manufacturer that does not have a federal firearms license is not entitled to PLCAA protection. *See Ileto*, 565 F.3d at 1145 (holding that Chinese firearm manufacturer was not entitled to PLCAA protection because it did not have a federal firearms license). But suits against such entities are plainly permitted by the Act: the Act authorizes lawsuits against any "firearm industry member" who causes a public nuisance in violation of section 3-

---

[1] PLCAA does not require licensure for sellers of ammunition or for trade associations, *see* § 7903(6)(C), (8), because such entities do not require licenses under federal law, *see* 18 U.S.C. § 922(a)(1) (requiring licenses only for "importing, manufacturing, or dealing in firearms" and "importing or manufacturing ammunition").

2502. Md. Code Ann., Cts. & Jud. Proc. § 3-2503(a)(1). The term "firearm industry member" is defined to include any "person engaged in the sale, manufacture, distribution, importation, or marketing of a firearm-related product." *Id.* § 3-2501(c). This statutory term thus encompasses unlicensed firearm manufacturers and sellers, who are not entitled to PLCAA protection. *See* Def.'s Mem. Opp'n 9 (discussing Attorney General and Baltimore City Solicitor's civil action against Glock Ges.m.b.H., a foreign entity not entitled to PLCAA protection).

PLCAA's scope is further limited by its requirement that a "qualified civil liability action" be one in which the alleged harm "result[s] from the criminal or unlawful misuse of a qualified product," § 7903(5)(A). Because of this provision, if a licensed, law-abiding firearm company is sued for damages that a third party unlawfully inflicted, the company is protected by PLCAA (again, provided that none of PLCAA's other exceptions is met). But a firearm company that is sued for harm that *it* caused is not protected.

For example, cases brought by Attorneys General to enforce their states' consumer protection laws against firearm companies engaged in deceptive or unfair marketing would in most instances not be implicated by PLCAA, because such cases would not result from the criminal or unlawful misuse of a firearm by a third party. *See, e.g.*, *People v. Blackhawk Mfg. Grp. Inc.*, No. CGC-21-594577, slip op. at 5-8 (Cal. Super. Ct. May 2, 2023), attached as Exhibit A (holding that suit brought by state official seeking to enjoin firearm company's violations of state law was "not a qualified civil liability action" under PLCAA because "the relief sought here does not result from the criminal or unlawful misuse of a qualified product by the People or a third party"). And again, similar actions could be brought pursuant to the Act, which authorizes civil actions against firearm industry members who fail to "establish and implement reasonable controls regarding the sale, manufacture, distribution, importation, marketing, possession, and use of the firearm industry

member's firearm-related products." Md. Code Ann., Cts. & Jud. Proc. § 3-2502(b); *see also* §§ 3-2502(c), -2503(a)(1). Whereas PLCAA bars only actions that "result[] from" *someone else's* "criminal or unlawful misuse of a qualified product," § 7903(5)(A), the Act authorizes a different category of actions: those resulting from the defendant's *own* failures to follow the law, irrespective of whether the defendant's firearms are later misused by a third party.

These examples plainly demonstrate that some civil actions brought pursuant to the Act in no way implicate PLCAA. Consequently, it simply cannot be the case that PLCAA preempts the Act in its entirety. *Cf. Platkin v. FSS Armory, Inc.*, No. MRS-C-102-23, slip op. at 23-25 (N.J. Super. Ct. Ch. Div. Aug. 28, 2024), attached as Exhibit B (rejecting firearm industry defendant's preemption argument as to similar New Jersey statute and observing that because "PLCAA allows the instant lawsuit to be initiated, implied preemption is absent").

### B.  An action brought pursuant to the Act could use a different statute to satisfy PLCAA's predicate exception.

Of course, *some* actions brought under the Act will meet PLCAA's threshold definition of a "qualified civil liability action." But under PLCAA's terms, and as Plaintiff acknowledges, qualified civil liability actions do "not include … an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." § 7903(5)(A)(iii); *accord* Pl.'s Mem. 2. Accordingly, a claim against a licensed firearm manufacturer or dealer resulting from third-party misuse of a firearm may nevertheless proceed if the defendant knowingly violated a firearm statute—often called a "predicate statute"—and that violation proximately caused the plaintiff's harm. *See, e.g.*, *Williams*, 952 N.Y.S.2d at 337; *Brady v. Walmart Inc.*, No. 21-CV-1412, 2022 WL 2987078, at *6-9 (D. Md. July 28, 2022).

Plaintiff insists that the Act can never serve as a predicate statute. *See* Pl.'s Mem. 2, 5-6. *But see infra* Part II. Yet even if that were correct, it would not mean that section 3-2503 cannot provide a *cause of action*. As the text of PLCAA makes clear, the predicate exception applies to "action[s] *in which* [the] manufacturer or seller … violated a … statute," § 7903(5)(A)(iii) (emphasis added); it is not limited to claims *for* violating a predicate statute. *See, e.g.*, *Roberts v. Smith & Wesson Brands, Inc.*, No. 22 LA 201, 2025 WL 1295092, at *12 (Ill. Cir. Ct. Apr. 1, 2025) (holding that predicate exception does not require cause of action and predicate statute to be one and the same). In fact, PLCAA includes the Gun Control Act as an example of a predicate statute, *see* § 7903(5)(A)(iii)(II), even though the Gun Control Act does not itself provide a cause of action, *see, e.g.*, *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 469-70 (E.D. Pa. 2016); *Bannerman v. Mountain State Pawn, Inc.*, 436 F. App'x 151, 151 (4th Cir. 2011). And PLCAA explicitly does not create any new causes of action. § 7903(5)(C). The predicate exception thus necessarily allows actions where the cause of action and the predicate statute are different. *See, e.g.*, *King v. Klocek*, 133 N.Y.S.3d 356, 357-58 (App. Div. 2020) (allowing negligence claim to proceed based on violation of state and federal criminal statutes); *Brady*, 2022 WL 2987078, at *6, *17 (allowing negligence and negligent entrustment claims to proceed based on violation of section 5-205(b)(6) of Maryland's Public Safety Article). Plaintiff does not argue to the contrary.

Consequently, even if Plaintiff is correct that the Act *itself* cannot serve as a predicate statute, an action may still be brought under section 3-2503 if predicated on the violation of *another* statute. Such an action would plainly be permitted by PLCAA and is explicitly contemplated by the Act. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2502(a) (applying to and prohibiting "conduct that is … [u]nlawful"). Plaintiff concedes that the predicate exception can be satisfied by "statutes … that impose concrete obligations or prohibitions directly on industry members," Pl.'s Mem. 6,

and there are many such statutes in state and federal law. In addition to the federal Gun Control Act, which Congress expressly stated could serve as a predicate statute, *see* § 7903(5)(A)(iii)(II), Maryland imposes numerous "concrete" statutory prohibitions directly on industry members. *See, e.g.*, Md. Code Ann., Pub. Safety § 5-117.1(b) (prohibiting transfer of handgun to individual without handgun qualification license); *id.* § 5-123(a) (requiring 7-day waiting period before transferring regulated firearm to purchaser); *id.* § 5-134(b)(1) (prohibiting transfer of regulated firearm to individual under 21 years old). If a licensed dealer violates one of these prohibitions—which Plaintiff does not contest can serve as predicate statutes—and thereby knowingly creates harm to the public, PLCAA would permit a suit using the Act as a cause of action. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 3-2502(a), -2503(a)(1); 15 U.S.C. § 7903(5)(A)(iii).

<p style="text-align:center">*        *        *        *        *</p>

What the foregoing should make clear is that there are *many* possible lawsuits that could be brought under the Act that do not implicate PLCAA, *even if* Plaintiff is correct that the Act itself cannot serve as a predicate statute. Plaintiff's motion, fixated narrowly on the predicate exception, thus misses the forest for the trees. Just because it is possible that some hypothetical actions brought under the Act might be barred by PLCAA does not mean that the Act is facially invalid or that it should be struck down in its entirety. *See Wash. State Grange*, 552 U.S. at 449. Plaintiff's preemption argument therefore fails.

## II.    The Act can serve as a PLCAA predicate statute.

Although the Court need not reach this question, Plaintiff's argument that the Act can never satisfy PLCAA's predicate exception is also wrong. Plaintiff asserts that the Act cannot serve as a predicate statute because (1) it is insufficiently "concrete," Pl.'s Mem. 5-9; (2) it would contravene Congress's purported intent to impose "national uniformity," *id.* at 9-11; (3) the predicate exception can only be satisfied by statutes that require a "knowing" state of mind, *id.* at 11-12; and

<p style="text-align:center">7</p>

(4) the Act impermissibly "does not require proximate causation in the ordinary sense," *id.* at 12-13. Each of these arguments fails.

### A.  The Act is "applicable to the sale or marketing of" qualified products.

The text of PLCAA evinces only one requirement for a statute to satisfy the predicate exception: the "State or Federal statute" must be "applicable to the sale or marketing of the product"—that is, the sale or marketing of the "qualified product" at issue in the case. 15 U.S.C. § 7903(5)(A)(iii). There can be little doubt that the Act meets this requirement.

In *City of New York v. Beretta USA Corp.*, 524 F.3d 384 (2d Cir. 2008), the Second Circuit analyzed this issue and concluded that the predicate exception encompasses statutes that: (a) "expressly regulate firearms"; (b) "courts have applied to the sale and marketing of firearms"; or (c) "do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms." *Id.* at 404; *accord Nat'l Shooting Sports Found., Inc. v. James*, 604 F. Supp. 3d 48, 59 (N.D.N.Y. 2022) ("No reasonable interpretation of 'applicable to' [in the predicate exception] can exclude a statute which imposes liability exclusively on gun [manufacturers] for the manner in which guns are manufactured, marketed, and sold."), *appeal argued*, No. 22-1374 (2d Cir. Nov. 3, 2023); *Brady*, 2022 WL 2987078, at *7-8. The Act easily meets this standard: by its express terms, it applies to "the sale, manufacture, distribution, importation, or marketing" of firearms and related products. Md. Code Ann., Cts. & Jud. Proc. § 3-2502(a); *see id.* § 3-2501(d) (defining "firearm-related product"). Plaintiff does not contest this point.

### B.  There is no "concreteness" requirement in PLCAA.

Instead of identifying anything in PLCAA's text that renders the Act an unsuitable predicate statute, Plaintiff claims that it has discovered a new requirement lurking in PLCAA's "context" and in Congress's presumed "intent." Pl.'s Mem. 6, 10. According to Plaintiff, PLCAA insulates firearm companies from liability unless they violate "a concrete obligation or

prohibition"; and so, Plaintiff says, because the Act "commands industry members to conduct their operations reasonably," it cannot satisfy the predicate exception. *Id.* at 7-8. This rule, which Plaintiff invents out of whole cloth, should be rejected. *See Roberts*, 2025 WL 1295092, at \*14 ("[T]here is nothing in the predicate exception that describes statutes applicable to the sale and marketing of firearms for the purpose of the predicate exception in terms of 'concreteness.'"); *see also Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("[T]he text of a law controls over purported legislative intentions unmoored from any statutory text.").

If anything, the text of PLCAA indicates that Congress is perfectly amenable to holding firearm companies liable for their failures to act reasonably. Three other categories of permissible actions under PLCAA impose liability depending on whether the firearm industry defendant acted reasonably. *See Roberts*, 2025 WL 1295092, at \*14 (rejecting argument that predicate statute must have "concrete obligations" because, among other things, PLCAA's exceptions for negligent entrustment, product defect, and implied warranty of merchantability all involve "questions of reasonableness"). Plaintiff does not explain why, if Congress sought to immunize firearm companies unless they violated "concrete obligations or prohibitions, not just duties of care," Pl.'s Mem. 8, Congress nevertheless created three other exceptions that involve "broad duties and standards." *Roberts*, 2025 WL 1295092, at \*14.[2]

Plaintiff's theory also flies in the face of PLCAA decisions from courts around the country. In *Soto v. Bushmaster Firearms International, LLC*, 202 A.3d 262 (Conn. 2019), the Supreme Court of Connecticut held that the Connecticut Unfair Trade Practices Act—which provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices"—could satisfy the predicate exception. *Id.* at 274 n.9, 325. In *Smith & Wesson Corp. v.*

---

[2] Indeed, Plaintiff's brief fails even to acknowledge the existence of the other exceptions.

*City of Gary*, 875 N.E.2d 422 (Ind. Ct. App. 2007), the Court of Appeals of Indiana held that Indiana's nuisance law—which prohibits as a nuisance anything "injurious to health," "indecent," "offensive to the senses," or "an obstruction to the free use of property"—could satisfy the predicate exception. *Id.* at 429-32. And in *Roberts v. Smith & Wesson*, the Circuit Court of Illinois held that the Illinois Consumer Fraud and Deceptive Business Practices Act—which forbids "unfair or deceptive acts or practices"—could satisfy the predicate exception. 2025 WL 1295092, at *4, *12-14. On Plaintiff's theory, these cases (and others like them) were wrongly decided.

Plaintiff insists that a predicate statute *must* contain concrete prohibitions, because otherwise it would be impossible for a gun company to "knowingly" violate the statute, as the predicate exception requires. Pl.'s Mem. 6-7. This simply does not follow. There is nothing incompatible about a knowing state of mind and a reasonableness standard of conduct. A defendant's conduct can be both knowing and unreasonable. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (describing deliberate-indifference claim as involving defendant "knowingly and unreasonably disregarding an objectively intolerable risk of harm"); *Owens-Ill., Inc. v. Zenobia*, 325 Md. 420, 462-64 (1992) (observing that claim for punitive damages in failure-to-warn case requires defendant's "knowledge" that product was "unreasonably dangerous"). Moreover, to "knowingly" violate a statute, all that is required is "knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 193 (1998). "[T]he term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law." *Id.* at 192. If, in a particular case, a defendant's conduct is *not* knowing, then PLCAA will provide that defendant a defense to liability. *See* 15 U.S.C. § 7903(5)(A)(iii). But again, the fact that

10

PLCAA might block *some* cases that invoke the Act does not mean that the Act is invalid across the board.[3]

Last, Plaintiff attempts to ground its "concreteness" requirement in the example predicate violations enumerated in PLCAA, as well as in the list of federal firearm statutes mentioned in the Act's prefatory language. *See* Pl.'s Mem. 7-8 (citing § 7903(5)(A)(iii)(I)-(II)); *id.* at 8-9 (citing § 7901(a)(4)). Plaintiff's position is that because *these* statutes set forth concrete requirements, *all* predicate statutes must set forth concrete requirements, even though the Act is silent as to this supposed rule. *See id.* at 7-9.[4] This is no way to do statutory interpretation. *Cf. Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008) ("[Courts] do not woodenly apply limiting principles every time Congress includes a specific example along with a general phrase."). Plaintiff has identified no ambiguity in the predicate exception that would counsel resorting to *ejusdem generis*, *noscitur a sociis*, or similar canons of construction. *Cf. Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588 (1980) ("The rule of *ejusdem generis*, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty." (citation omitted)); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, … 'judicial inquiry is complete.'" (citation omitted)). Plaintiff's imagined "concreteness"

---

[3] To demonstrate the importance of "concreteness," Plaintiff points to a lawsuit brought by the Attorney General of New Jersey under a New Jersey statute similar (but not identical) to the Act. *See* Pl.'s Mem. 8. In that case, the New Jersey Attorney General sued a firearm dealer for its failure "to establish, implement and enforce reasonable controls regarding its sale of ammunition and ammunition magazines." Complaint ¶ 34, *Platkin v. Point Blank Guns & Ammo LLC*, No. MRS-C-123-24 (N.J. Super. Ct. Ch. Div. Nov. 13, 2024), attached as Exhibit C. Plaintiff argues that the *Point Blank* action cannot satisfy PLCAA's predicate exception because the defendant dealer lacked sufficient "guidance as to which controls and procedures are 'reasonable.'" Pl.'s Mem. 8. This example, however, only proves Amici's point. There are no allegations in the *Point Blank* complaint that any third party misused the defendant's products. *See generally* Complaint, *Point Blank*, *supra*. Consequently, the *Point Blank* action is clearly not a "qualified civil liability action," § 7903(5)(A). Therefore, whether the case fits into the predicate exception is irrelevant. What *Point Blank* actually demonstrates is that statutes like the Act can be used to bring claims that PLCAA does not preempt.

[4] The two example predicate violations listed at § 7903(5)(A)(iii)(I) & (II) were included by Congress to make explicit that PLCAA would not have disallowed actions brought by victims of the Washington, D.C. sniper shootings, which had recently terrorized the region. *See Soto*, 202 A.3d at 314-16.

requirement has no support in the statutory text or the case law, and this Court should not be the first to impose it.[5]

### C. PLCAA neither seeks nor requires "national uniformity" with regard to state statutes.

Next, Plaintiff argues that recognizing the Act as a predicate statute "would defy 'Congress' intention to create national uniformity.'" Pl.'s Mem. 11 (citation omitted). Allowing states to enact their own predicate statutes, Plaintiff says, would "produce absurd results" because "preemption of virtually identical suits" would turn on whether those suits were permitted by the relevant state's law. *Id.* at 10. This argument is directly contradicted by PLCAA's plain text.

In passing PLCAA, Congress was not intent on "national uniformity," a topic on which PLCAA is silent. Indeed, the text of the predicate exception allows for actions in which the defendant "violated a *State* or Federal statute," § 7903(5)(A)(iii) (emphasis added); and needless to say, different states have different statutes, prohibiting different conduct. What is more, one of Congress's purposes in enacting PLCAA was "[t]o preserve and protect … important principles of federalism, State sovereignty and comity between sister States." § 7901(b)(6). This purpose is furthered by recognizing that states can enact their own firearm laws and that those laws can serve as PLCAA predicate statutes. That some conduct may be legal in one state but illegal in another is neither shocking nor repugnant to our federal system, nor does it contravene PLCAA.

By contrast, if Plaintiff were right, it is not clear why its argument would be limited to the Act. If PLCAA truly commands national uniformity, then *none* of Maryland's firearm laws may serve as a PLCAA predicate, no matter how "concrete" their prohibitions. This would be a startling

---

[5] In support of its argument, Plaintiff purports to rely on the *City of New York v. Beretta* decision. *See* Pl.'s Mem. 7. But in that case, the court looked to PLCAA's example predicate violations to help it understand the meaning of the statutory phrase "applicable to." 524 F.3d at 401-02. That language is not at issue here, since there can be no doubt, and Plaintiff has not contested, that the Act—unlike New York's general public nuisance statute at issue in *Beretta*— is "applicable to" the sale and marketing of firearms and ammunition. *See supra* Section II.A.

result—one that no court has accepted, and that would completely disregard Congress's choice to include "State …statute[s]" in the predicate exception, § 7903(5)(A)(iii).

### D. The predicate exception requires "knowing" violations of predicate statutes; it does not require predicate statutes that can only be violated knowingly.

After exhausting its arguments that the Act is entirely preempted, Plaintiff falls back on an argument that section 3-2502(b) is preempted inasmuch as it permits liability for less than knowing violations. *See* Pl.'s Mem. 11-12. This argument underscores the flaw that pervades Plaintiff's brief: Plaintiff conflates the preemption of certain actions with the preemption of entire statutes.

The text of the predicate exception requires that the defendant "knowingly violated" the predicate statute. § 7903(5)(A)(iii). It does not require that the defendant violated a statute with a "knowing" mens rea requirement. *See FSS Armory*, No. MRS-C-102-23, slip op. at 25 ("Based on the plain language of the PLCAA, the PLCAA predicate exception only requires allegations of a knowing violation of a state or federal law, not that the statute violated contain a knowing scienter requirement."). Plaintiff's contrary reading of the Act is atextual and lacks support in case law.

In fact, courts, including in this district, have regularly found the predicate exception to be satisfied by knowing violations of statutes that do not themselves require a "knowing" state of mind. *See, e.g.*, *Soto*, 202 A.3d at 274 n.9, 300; *City of Gary*, 875 N.E.2d at 429-32; *Brady*, 2022 WL 2987078, at *6; *Roberts*, 2025 WL 1295092, at *4, *12-13. Amici are not aware of a single case in which a defendant who "knowingly violated a State or Federal statute applicable to the sale or marketing of [its] product," § 7903(5)(A)(iii), successfully raised a PLCAA defense on the basis that the statute that was violated *also* prohibited less-than-knowing conduct.

Moreover, as explained above, section 3-2502(b) can be used to bring an action that does not implicate PLCAA in the first place, such as because the defendant is not protected by PLCAA or because the conduct at issue does not involve third-party misuse. *See supra* Section I.A. Because

PLCAA does not apply to such actions, PLCAA is no obstacle to their imposing liability for less-than-knowing conduct. To be sure, in a case where the plaintiff sought to use section 3-2502(b) as a predicate statute, PLCAA would require that the plaintiff allege and prove that the defendant knowingly violated the statute. And if the plaintiff failed to do so, the defendant could have the case dismissed. But not every section 3-2502(b) case will be a PLCAA case, and for that reason Plaintiff's facial challenge must fail.

### E. The Act does not alter the law of proximate causation.

Finally, Plaintiff argues that the Act "does not require proximate causation in the ordinary sense." Pl.'s Mem. 12-13. Plaintiff asserts that, by defining certain conduct to be "a public nuisance," § 3-2502(c), the Act somehow "expressly inverts the common-law rule" of proximate cause. Pl.'s Mem. 12-13. But there is nothing remarkable about the General Assembly declaring certain conduct to be a nuisance. *See, e.g.*, Md. Code Ann., Real Prop. § 14-120(a)(5) (declaring that certain uses of real property constitute a nuisance); Md. Code Ann., Crim. Law § 5-605(a) (declaring certain locations to be a common nuisance). As far as Amici are aware, these statutes, which, like the Act, do not mention proximate cause, have not been found to affect the applicable standard of causation.

Even if Plaintiff's assertion were right, its argument would still be wrong. Yes, PLCAA's predicate exception requires that the violation of the predicate statute be "a proximate cause of the harm for which relief is sought," § 7903(5)(A)(iii). *See* Pl.'s Mem. 12. But—as just explained— not every case brought under the Act will be governed by PLCAA, so even if the Act did say anything about proximate cause (and it doesn't), that would still not mean that the Act was invalid across the board *See supra* Section II.D.

At bottom, Plaintiff's position seems to be that firearm industry members' behavior can never be a proximate cause of harm inflicted through third parties' criminal misconduct. *See* Pl.'s

Mem. 12.[6] But that is obviously wrong. For one thing, the structure of PLCAA and the very existence of the predicate exception necessarily mean that Congress believed that a firearm industry member's violation of a state or federal firearm law *could* be "a proximate cause" of harm "resulting from" a third party's "criminal or unlawful misuse" of a firearm. § 7903(5)(A). Otherwise, Congress would not have written the predicate exception in the first place. Furthermore, it is black-letter law that "[p]roximate cause may be found even where the conduct of the third party is tortious or criminal, so long as the conduct was facilitated by the first party and reasonably foreseeable, and some ultimate harm was reasonably foreseeable." *Westfarm Assocs. LP v. Wash. Suburban Sanitary Comm'n*, 66 F.3d 669, 688 (4th Cir. 1995) (citing *Scott v. Watson*, 278 Md. 160, 172-73 (1976)); *see also* Dan B. Dobbs et al., *Law of Torts* § 209 (2d ed. 2024) ("[I]f a criminal or intentional intervening act is foreseeable, … the criminal or intentional act is not a superseding cause."). Plaintiff's argument to the contrary is wrong on all fronts.

## CONCLUSION

For the foregoing reasons, and for those set forth in the brief of the Attorney General, Amici respectfully submit that this Court should deny Plaintiff's motion for a preliminary injunction.


Dated: May 21, 2025                                    Respectfully submitted,

---

[6] Plaintiff raises questions about whether proximate cause is satisfied in the Attorney General and Baltimore City Solicitor's lawsuit against Glock. *See* Pl.'s Mem. 13. But again, *this* is a facial challenge. Whether proximate cause exists on the specific allegations and evidence in that case will be resolved by the court in that case. *Cf.* Def.'s Mem. Opp'n 6 (arguing that this Court should abstain from hearing this case in favor of resolution by state court).

OF COUNSEL:

**BRADY CENTER**
  **TO PREVENT GUN VIOLENCE**
Douglas Letter
Shira Lauren Feldman
Tess Fardon
840 First Street, NE, Suite 400
Washington, DC 20002
Phone: (202) 370-8106
dletter@bradyunited.org
sfeldman@bradyunited.org
tfardon@bradyunited.org
*Counsel for Brady Center to Prevent*
*Gun Violence*

**GIFFORDS LAW CENTER**
  **TO PREVENT GUN VIOLENCE**
Kelly M. Percival
268 Bush St. #555
San Francisco, CA 94104
Phone: (202) 808-8654
kpercival@giffords.org

David Pucino
244 Madison Ave., Ste. 147
New York, NY 10016
Phone: (202) 808-8654
dpucino@giffords.org
*Counsel for Giffords Law Center to*
*Prevent Gun Violence*

**BRADY CENTER**
  **TO PREVENT GUN VIOLENCE**
*/s/ Erin Davis*
Erin Davis
Bar No. 30437
840 First Street, NE, Suite 400
Washington, DC 20002
Phone: (202) 370-8106
edavis@bradyunited.org

OF COUNSEL:
**EVERYTOWN LAW**
Alla Lefkowitz
Alison Barnes
Andrew Nellis
P.O. Box 14780
Washington, DC 20044
Phone: 202-545-3257
alefkowitz@everytown.org
abarnes@everytown.org
anellis@everytown.org

*Counsel for Amici Curiae Everytown for Gun*
*Safety, Brady Center to Prevent Gun Violence, and*
*Giffords Law Center to Prevent Gun Violence*

# EXHIBIT A

**FILED**

San Francisco County Superior Court

MAY 0 2 2023

CLERK OF THE COURT

BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 306

PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

v.

BLACKHAWK MANUFACTURING GROUP INC.; GS PERFORMANCE, LLC; MDX CORPORATION; and DOES 1-25,

Defendants.

Case No. CGC-21-594577

(TRANSACTION # 69940726)

ORDER DENYING DEFENDANT BLACKHAWK MANUFACTURING GROUP, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Blackhawk Manufacturing, Inc.'s ("Blackhawk") Motion for Judgment on the Pleadings came on regularly for hearing on February 8, 2023. Counsel for the parties were present. The appearances are as stated in the record. The matter was reported. On March 3, 2023, Plaintiff People of the State of California (the "People") and Blackhawk filed supplemental briefing and the matter was deemed submitted. Having considered the arguments and written submissions of all parties, Defendant Blackhawk's Motion for Judgment on the Pleadings is denied.[1]

---

[1] Blackhawk's Request for Judicial Notice is granted pursuant to Evidence Code § 452(b). The People's Request for Judicial Notice is granted as to Exhibits A, B, and C pursuant to Evidence Code § 452(d). The People's Request for Judicial Notice is denied as to Exhibit D as it is not necessary to the Court's determination of the issues raised in this motion. (*Flores v. City of San Diego* (2022) 83 Cal.App.5th 360, 371, n. 6.) Blackhawk's Supplemental Request for Judicial Notice is denied. (See *Scott v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 760 ["the mere fact that a statement appears on a web page does not mean that it is not reasonably subject to dispute. [Citations.] And if the information on the Web site is reasonably disputed by the parties, it is not subject to judicial notice."]; *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 193 ["Nor may we take judicial notice of the truth of the contents of [] Web sites and blogs."]; *Huitt v. Southern California Gas Co.* (2010) 188 Cal.App.4th 1586,

**BACKGROUND**

On August 18, 2021, the People filed this action against Defendants Blackhawk, GS Performance, LLC ("GS Performance"), and MDX Corporation ("MDX"). On October 13, 2021, the People filed a First Amended Complaint ("FAC") alleging violations of the Unfair Competition Law ("UCL") and False Advertising Law ("FAL"). (FAC ¶ 27.) The People seek "to enjoin Defendants from engaging in prospective unlawful, unfair, and fraudulent business practices and to recover penalties and restitution for Defendants' past UCL and FAL violations." (*Id.*) Defendants are manufacturers and/or sellers. (*Id.* ¶¶ 32-34.) The People allege as follows.

Ghost guns are functional firearms that do not have serial numbers, and are thus, untraceable. (*Id.* ¶ 1.) Consumers can purchase "Build Kits" from Defendants, which include frame blanks or receiver blanks that consumers can use, along with other parts, to assemble a fully functioning firearm. (*Id.* ¶¶ 1, 8, 76 ["Defendants artificially split out those components, usually along with any specialty tools, into two or more distinct 'items' such that the consumer needs to add different 'items' into his or her online shopping cart to obtain all of the needed components."].) A frame blank or receiver blank does not have a serial number and "needs additional modification (usually drilling holes and filing away some material) before it can be used as a part of a fully functioning weapon." (*Id.* ¶¶ 8, fn. 2, 9.) A frame or receiver is a finished product, with a serial number, that can be used as part of a fully functioning firearm without any modification. (*Id.*) Companies who sell parts and kits, such as Defendants, violate and/or circumvent firearm sales laws by: (1) selling frame and receiver blanks without serial numbers; (2) allowing consumers who are otherwise prohibited from purchasing or possessing firearms to purchase a kit; (3) failing to comply with statutory laws regulating firearm ownership, registration, and safety; and (4) selling semiautomatic handguns. (*Id.* ¶¶ 1-4, 9-11, 13-14, 22, 26, 46-49, 51, 53-61, 88-89, 94, 98-99, 107, 109, 111, 116-117, 120, 124-125, 127-131, 143-145, 148-151.)[2]

Defendants deceive consumers by representing that their products are legal. (*Id.* ¶¶ 3, 12, 14, 25,

---

1605, n. 10 ["Simply because information is on the Internet does not mean it is not reasonably subject to dispute."].) Although the People's allegations refer to Blackhawk's website, the People do not incorporate Blackhawk's webpages by reference.

[2] Gun Control Act (18 U.S.C. §§ 921-931), California Assembly of Firearms Law (Penal Code §§ 29180-29184), California Unsafe Handgun Act (Penal Code §§ 31900-32110), and California Manufacture of Firearms Law (Penal Code §§ 29010-29150). (FAC ¶ 4.)

- 2 -

1  96, 124, 126, 132-141, 146, 151.) "Defendants' marketing makes clear to the consumer what 'items' are

2  needed to assemble the full working weapon. In some cases, Defendants even automatically add the

3  necessary items to the consumer's online shopping cart." (*Id.* ¶ 76; see also *id.* ¶¶ 94, 97, 106, 116.)

4  Defendants fail to provide disclosures regarding responsibilities and potential liabilities of assembling a

5  ghost gun. (*Id.* ¶¶ 3, 12, 14.)

6      Defendants aid and abet the manufacture and sale of non-compliant firearms in violation of the

7  Unsafe Handgun Act ("UHA") and Assembly of Firearms Law ("AFL"). (*Id.* ¶¶ 16, 51, 151.)

8  Defendants Blackhawk and GS Performance violate the California Manufacture of Firearms Law

9  ("MFL") by failing to obtain a California firearm manufacturing license as they manufacture at least fifty

10  firearms per year in California and fail to include serial numbers on frame and receiver blanks. (*Id.* ¶¶ 15,

11  155-161.)

12      The above violations serve as the predicates for the first cause of action for violation of the UCL.

13  (*Id.* ¶¶ 80, 165.) Defendants' violations of the AFL and UHA serve as the predicates for the second cause

14  of action for violation of the FAL. (*Id.* ¶¶ 87, 121-123, 170-171.)

15      On June 3, 2022, the Court overruled Defendants' Demurrer to the FAC and denied Defendants'

16  Motion to Strike the FAC in the alternative. (See June 3, 2022 Order.) On August 31, 2022, the Court

17  denied the People's Motion for Preliminary Injunction without prejudice finding the People's motion was

18  moot because Defendants ceased business in or directed at California. (Aug. 31, 2022 Order, 8.)

19      Blackhawk now moves for judgment on the pleadings on two primary grounds. (Opening Brief,

20  8.) First, Blackhawk asserts the People's UCL cause of action is barred by the Protection of Lawful

21  Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901 *et seq.* (Opening Brief, 8.) Second, Blackhawk

22  contends the People failed to plead "any actual violation of federal or state law" and that even if properly

23  pled, their application to Blackhawk is unconstitutional under the First and Second Amendments of the

24  United States Constitution. (*Id.*) The People oppose Blackhawk's motion.

25  ## LEGAL STANDARD

26      A defendant may move for judgment on the pleadings to the entire complaint or as to any cause of

27  action stated in the complaint on the ground that "[t]he complaint does not state facts sufficient to

28

- 3 -

1 | constitute a cause of action against that defendant." (Code Civ. Proc., §§ 438(c)(1)(B)(ii), 438(c)(2)(A).)

2 | The grounds for a motion for judgment on the pleadings "shall appear on the face of the challenged

3 | pleading or from any matter of which the court is required to take judicial notice." (Code Civ. Proc., §

4 | 438(d).) "Like a demurrer, a motion for judgment on the pleadings attacks defects disclosed on the face

5 | of the pleadings or by matters that may be judicially noticed." (*Alameda County Waste Management*

6 | *Authority v. Waste Connections US, Inc.* (2021) 67 Cal.App.5th 1162, 1174.) Similarly, "[i]n evaluating

7 | the sufficiency of the challenged pleading, we accept all material facts pleaded and those that arise by

8 | reasonable implication, but not conclusions of fact or law." (*Id.*)

## DISCUSSION

**I.    The People's UCL Claim Is Not Barred By The PLCAA.**

"The PLCAA was enacted in 2005 in part to prevent lawsuits against manufacturers and

distributors of firearms and ammunition products 'for the harm solely caused by the criminal or unlawful

misuse of firearm products or ammunition products by others when the product functioned as designed

and intended.'" (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1316, quoting 15 U.S.C. §

7901(b)(1); see *Ileto v. Glock, Inc.* (9th Cir. 2009) 565 F.3d 1126, 1135.)

The PLCAA mandates that "courts 'immediately dismiss[]' a 'qualified civil liability action.'"

(*Ileto*, 565 F.3d at 1131, quoting 15 U.S.C. § 7902(b).) To determine whether the PLCAA applies, courts

engage in a two-step analysis. (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1316.) First,

"whether the lawsuit in question is a 'qualified civil liability action' and second an analysis whether, if it

is, 'any of the PLCAA's six exceptions to [a qualified civil liability action] apply.'" (*Id.* at 1316-1317,

quoting *Ryan v. Hughes-Ortiz* (2012) 959 N.E.2d 1000, 1007.)

The PLCAA defines a "qualified civil liability action" as:

> a civil action or proceeding or an administrative proceeding brought by any person against a
> manufacturer or seller of a qualified product, or a trade association, for damages, punitive
> damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief,
> resulting from the criminal or unlawful misuse of a qualified product by the person or a third
> party.

(15 U.S.C. § 7903(5)(A).) A "qualified product" is "a firearm (as defined in subparagraph (A) or (B) of

section 921(a)(3) of Title 18 [of the United States Code]), including . . . a component part of a firearm or

- 4 -

*People v. Blackhawk Manufacturing Group Inc., et al.* CGC-21-594577
Order Denying Blackhawk's Motion for Judgment on the Pleadings

1    ammunition, that has been shipped or transported in interstate or foreign commerce." (15 U.S.C. §

2    7903(4).) "[U]nlawful misuse" is defined as "conduct that violates a statute, ordinance, or regulation as it

3    relates to the use of a qualified product." (15 U.S.C. § 7903(9).)

4         Blackhawk asserts the People's UCL claim is barred by the PLCAA. (Opening Brief, 8, 12-18;

5    Reply, 6-8.) In particular, Blackhawk asserts it is federally licensed to sell parts and parts kits as well as

6    that its "parts and parts kits are 'components of a firearm,'" therefore, they constitute a "qualified

7    product" under the PLCAA. (Opening Brief, 14.) Blackhawk also asserts that the term "the person"

8    includes manufacturers and sellers. (BH Suppl. Brief, 7.) Blackhawk further argues the People "seek[] to

9    hold Blackhawk liable for harm caused by third parties." (Opening Brief, 15.)

10        The People oppose on the ground that this is not a qualified civil liability action because the

11   People "seek to hold Blackhawk liable for its direct violations of California and federal law – not for harm

12   'solely caused' by the criminal 'misuse' of its products by the parties." (Opposition, 15; see *id.* at 10, 16;

13   People's Suppl. Brief, 7-9, 12-14.) During oral argument, the People raised a secondary ground in

14   opposition to Blackhawk's motion, which the People addressed in their supplemental brief. In particular,

15   the People argue the term "the person" as used in the definition of a qualified civil liability action refers to

16   the plaintiff (i.e., the People). (People's Suppl. Brief, 11.) The premise of the People's opposition is that

17   PLCAA "protects manufacturers and sellers from liability involving *lawful* commerce in arms," not civil

18   actions for violations of state and federal firearms sales laws. (People's Suppl. Brief, 9-10; see, e.g., *id.* at

19   9 ["in the typical PLCAA case, a plaintiff sues a firearms manufacturer or seller *who has complied with*

20   *firearms laws* for injuries caused by a third-party shooter."] (emphasis in original); Opposition, 15.)

21        The People's opposition raises a question of statutory interpretation. "As in any case involving

22   statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to

23   effectuate the law's purpose. We begin by examining the statute's words, giving them a plain and

24   commonsense meaning." (*People v. Lewis* (2021) 11 Cal.5th 952, 961 (cleaned up); see *Poole v. Orange*

25   *County Fire Authority* (2015) 61 Cal.4th 1378, 1385 ["In interpreting a statutory provision, our task it to

26   select the construction that comports most closely with the Legislature's apparent intent, with a view to

27   promoting rather than defeating the statute's general purpose, and to avoid a construction that would lead

28

- 5 -

*People v. Blackhawk Manufacturing Group Inc., et al.* CGC-21-594577
Order Denying Blackhawk's Motion for Judgment on the Pleadings

1  to unreasonable, impractical, or arbitrary results."] (cleaned up).) "The plain meaning controls if there is

2  no ambiguity in the statutory language." (*Poole*, 61 Cal.4th at 1385 (cleaned up).) "It is not the role of

3  the courts to add statutory provisions the Legislature could have provided, but did not." (*Artus v.*

4  *Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 945.)

5       A plain and commonsense reading of the definition of a "qualified civil liability action" indicates

6  that the phrase "any person" derives from the definition of "person." Thus, "any individual, corporation,

7  company, association, firm, partnership, society, joint stock company, or any other entity, including any

8  governmental entity" may bring "a civil action or proceeding or an administrative proceeding . . . against

9  a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages,

10  injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief." (15 U.S.C. §§

11  7903(3), 7903(5)(A).) But, the action will be subject to dismissal under PLCAA "if it result[s] from the

12  criminal or unlawful misuse of a qualified product by the person or a third party." (15 U.S.C. §

13  7903(5)(A).) "[T]he person" being the particular "person" who filed the action. (See, e.g., *Sambrano v.*

14  *Savage Arms, Inc.* (2014) 338 P.3d 103, 104 ["As relevant to the case, such an action is generally brought

15  against a manufacturer or seller of a 'qualified product' for damages resulting from criminal or unlawful

16  misuse of the product by the plaintiff or a third party."]; *Gustafson v. Springfield, Inc.* (2022) 282 A.3d

17  739, 742 [the court modified the "person" with "plaintiff" when quoting the definition of a qualified civil

18  liability action].)[3] The PLCAA also includes definitions for "manufacturer" and "seller." (15 U.S.C. §§

19  7903(2), 7903(6).)[4] However, "person" does not expressly include a manufacturer or seller. Moreover,

20  "unlawful misuse" is defined as "conduct that violates a statute, ordinance, or regulation as it relates to the

21  *use* of a qualified product." (15 U.S.C. § 7903(9) (emphasis added).) The People's allegations are

22

---

23  [3] Blackhawk's analysis focuses on the term "person" rather than "the person." (BH Suppl. Brief, 6-7.)
    The difference between the two terms is critical as "person" is broad and "the person" is specific.
24  [4] A "manufacturer" is defined, "with respect to a qualified product, [as] a person who is engaged in the
    business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in
25  business as such a manufacturer under chapter 44 of Title 18." (15 U.S.C. § 7903(2).) A "seller" is
    defined, "with respect to a qualified product [as]--(A) an importer . . . who is engaged in the business as
26  such an importer in interstate or foreign commerce and who is licensed to engage in business as such an
    importer under chapter 44 of Title 18; (B) a dealer . . . who is engaged in the business as such a dealer in
27  interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter
    44 of Title 18; or (C) a person engaged in the business of selling ammunition . . . in interstate or foreign
28  commerce at the wholesale or retail level." (15 U.S.C. § 7903(6).)

1    focused on sales, manufacture, safety, and advertising rather than use.

2    This interpretation of "the person" is consistent with the PLCAA's findings and purposes.

3    Congress enacted the PLCAA in response to "[l]awsuits … commenced against manufacturers,
     distributors, dealers, and importers of firearms that operate as designed and intended, which seek
4    money damages and other relief for the harm caused by the misuse of firearms by third parties,
     including criminals." 15 U.S.C. § 7901(a)(3). Congress found that manufacturers and sellers of
5    firearms "are not, and should not, be liable for the harm caused by those who criminally or
     unlawfully misuse firearm products or ammunition products that function as designed and
6    intended." *Id.* § 7901(a)(5). Congress found egregious "[t]he possibility of imposing liability on
     an entire industry for harm that is solely caused by others." *Id.* § 7901(a)(6). Congress reasoned
7    that "[l]iability actions … are based on theories without foundation in hundreds of years of the
     common law and jurisprudence of the United States and do not represent a bona fide expansion of
8    the common law." *Id.* § 7901(a)(7).

9

10   (*Ileto v. Glock, Inc.* (9th Cir. 2009) 565 F.3d 1126, 1135.) Two purposes of the PLCAA, as relevant here,

11   are: (1) "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of

12   firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal

13   or unlawful misuse of firearm products or ammunition products by others when the product functioned as

14   designed and intended"; and (2) "[t]o prevent the use of such lawsuits to impose unreasonable burdens on

15   interstate and foreign commerce." (15 U.S.C. § 7901(b)(1), (b)(4); see *Ileto v. Glock, Inc.* (C.D. Cal. Mar.

16   14, 2006) 421 F.Supp.2d 1274, 1289 ["Here, the clear purpose of the PLCAA was to shield firearms

17   manufacturers and dealers from liability for injuries caused by third parties using non-defective, legally

18   obtained firearms. [Citation.] Congress also believed that lawsuits seeking to hold firearms

19   manufacturers liable for a third party's misuse of a firearm imposed an undue burden on interstate

20   commerce."].)

21   Here, the crux of the People's action is to hold Blackhawk liable for alleged violations of firearm

22   sales and manufacturing laws as well as deceptive advertising. Based on the PLCAA's purposes, the

23   Court would be hard-pressed to find Congress intended to preempt public enforcement actions to enforce

24   existing laws rather than circumventing the Legislature or interfering with separation of powers. (See

25   e.g., 15 U.S.C. § 7901(a)(7)-(8); *Ileto v. Glock, Inc.* (C.D. Cal. Mar. 14, 2006) 421 F.Supp.2d 1274, 1290

26   ["Congress believed that groups were using 'liability actions' as an end-run around the legislature to

27   establish *de facto* stricter regulations on the firearms industry."].)

28   Furthermore, the application of "the person" to a plaintiff, is not inconsistent with the exceptions

1   to a qualified civil liability action. "The PLCAA designates specific common law actions still allowed

2   under the act." (*Travieso v. Glock Incorporated* (D. Ariz. 2021) 526 F.Supp.3d 533, 542, citing 15 U.S.C.

3   §§ 7903(5)(A)(i)-(vi).) Therefore, a plaintiff can maintain a civil action against a manufacturer for claims

4   such as negligent entrustment or negligence per se and design or manufacturing defects. (15 U.S.C. §

5   7903(A).) A plaintiff can also maintain an action under the predicate exception to the PLCAA, which

6   includes actions "in which a manufacturer or seller of a qualified product knowingly violated a State or

7   Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause

8   of the harm for which relief is sought." (15 U.S.C. § 7903(5)(a)(iii).)

9        Accordingly, the Court finds this is not a qualified civil liability action under the PLCAA as the

10  relief sought here does not result from the criminal or unlawful misuse of a qualified product by the

11  People or a third party. (See People's Suppl. Brief, 7 [the People do not seek penalties and injunctive

12  relief for third party conduct], 12; Opposition, 15-16.)

13  **II.    The People Sufficiently Plead Actual Violations Of State Law.**

14       **A.    The UCL**

15       Unfair competition "include[s] any unlawful, unfair or fraudulent business act or practice and

16  unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code § 17200.) Each prong,

17  unlawful, unfair, or fraudulent, has "its own independent ground for liability" under the UCL. (*Shaeffer*

18  *v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1135.) The People's first cause of action for violation

19  of the UCL encompasses all three prongs. (See FAC ¶¶ 165-168.)

20       **1.    Unlawful**

21       Blackhawk contends the People do not plausibly allege Blackhawk violated the Gun Control Act

22  "GCA"), UHA, AFL, and MFL as predicates for a UCL claim. (Opening Brief, 18; Reply, 6, 11-16.)

23       The UCL includes "anything that can be properly be called a business practice and that at the same

24  time is forbidden by law." (*Abbott Laboratories v. Superior Court of Orange County* (2020) 9 Cal.5th

25  642, 651, quoting *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113 .) "Virtually any statute

26  or regulation (federal or state) can serve as a predicate for a UCL unlawful practice cause of action."

27  (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1265.) The unlawful

28

prong of the UCL allows litigants to "borrow[] violations of other laws and treat them as unlawful

practices that the [UCL] makes independently actionable," even when a particular statute does not provide

a private right of action. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999)

20 Cal.4th 163, 180, quoting *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th

1093, 1103 (internal quotations omitted).)

### i. GCA

Blackhawk asserts the People's allegations regarding the GCA are dependent "entirely on an

improper retroactive application of the ATF's New Rule, which amended the previous rule that

exclud[ed] firearms parts kits and unfinished frames or receivers from the GCA's definition of 'firearm.'"

(Opening Brief, 18; see Reply, 11.)  Blackhawk contends that at the time the People filed this action

"none of Blackhawk's products met the GCA's definition of a 'firearm.'"  (Opening Brief, 19; see Reply,

11.)  The People oppose on the ground that "the ATF Rulemaking did not amend or change the definition

of a 'firearm' under the GCA.  Rather, the ATF clarified that Section 921(a)(3)'s *existing* 'firearm'

definition included 'weapon parts kits.'"  (Opposition, 19 (emphasis in original).)  The Court agrees.

At the time of filing suit, a "firearm" under the GCA was defined as:  "Any weapon, including a

starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of

an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; or any

destructive device; but the term shall not include an antique firearm."  (27 CFR 478.11 (eff. March 26,

2019).)  After the People filed this action, the ATF proposed rulemaking regarding the definition of

"firearm" under the GCA.  The ATF sought to clarify regulations to prevent courts from narrowly

interpreting regulations, which would undermine the legislative intent.  (86 FR 27720-01, 27722; see *id.*

at 27726 ["Therefore, to reflect existing case law, this proposed rule would add a sentence at the end of

the definition of 'firearm' in 27 CFR 478.11 providing that '[t]he term shall include a weapon parts kit

that is designed to or may readily be assembled, completed, converted, or restored to expel a projectile by

the action of an explosive.'"]; *id.* at 27727 ["ATF proposes to replace the respective regulatory definitions

of 'firearm frame or receiver' and 'frame or receiver' in 27 CFR 478.11 and 479.11 because they too

narrowly limit the definition of receiver with respect to most current firearms and have led to erroneous

1  court decisions."].)

2      Overall, the NPRM (Notice of Proposed Rulemaking) proposed amending ATF's regulations *to
        clarify* the definition of 'firearm' and to provide a more comprehensive definition of 'frame or
3      receiver' so that these terms more accurately reflect how most modern-day firearms are produced
        and function, and so that *the courts*, the firearms industry, and the public at large would no longer
4      misinterpret the term to mean that most firearms in circulation have no parts identifiable as a
        frame or receiver.
5

6  (87 FR 24661 [emphases added]; see *id.* at 24653 ["Consistent with the [Gun Control Act], and to ensure

7  proper licensing, marking, recordkeeping, and background checks with respect to certain weapon parts

8  kits, the final rule adopts the proposed clarification of the term 'firearm' to include weapon (e.g., pistol,

9  revolver, rifle, or shotgun) parts kits that are designed to or may readily be completed, assembled,

10  restored, or otherwise converted to expel a projectile by the action of an explosive."].)  In the Court's June

11  3, 2022 Order overruling Defendants' Demurrer, the Court found "that the ATF's Final Rule provides the

12  Court with further guidance when analyzing the definition of a firearm under 18 U.S.C. § 921(a)(3)."

13  (June 3, 2022 Order, 9.)

14      The Federal Register later published the ATF's Final Rule, effective August 24, 2022.  (87 FR

15  24652-01.)  The current definition of a "firearm" under the GCA is:

16      Any weapon, including a starter gun, which will or is designed to or may readily be converted to
        expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any
17      firearm muffler or firearm silencer; or any destructive device; but the term shall not include an
        antique firearm.  In the case of a licensed collector, the term shall mean only curios and relics.
18      The term shall include a weapon parts kit that is designed to or may readily be completed,
        assembled, restored, or otherwise converted to expel a projectile by the action of an explosive.
19      The term shall not include a weapon, including a weapon parts kit, in which the frame or receiver
        of such a weapon is destroyed as described in the definition of "frame or receiver".
20

21  (27 CFR 478.11 (eff. Jan. 31, 2023).)[5]

22  _____
    [5] Blackhawk asserts the ATF maintains that an unfinished AR-type receiver does not qualify as a
    "firearm" under the New Rule citing to a September 27, 2022 ATF Open Letter. (Reply, 12 & n. 4.)
23  However, the ATF cautioned that its analysis regarding unfinished AR-type receivers "only applies to
    partially complete, disassembled, or nonfunctional frames or receivers without any associated templates,
24  jigs, molds, equipment, tools, instructions, guides, or marketing materials.  Pursuant to Final Rule 2021R-
    05F, partially complete, disassembled, or nonfunctional frames or receivers that are sold, distributed,
25  possessed with such items (or made available by the seller or distributor to the same person) may change
    the analysis, including those distributed as frame or receiver parts kits." (Sept. 27, 2022 ATF OPEN
26  LETTER TO ALL FEDERAL FIREARMS LICENSEES, Impact of Final Rule 2021-05F on Partially
    Complete AR-15/M-16 Type Receivers, https://atf.gov/firearms/docs/open-letter/all-ffls-september-2022-
27  impact-final-rule-2021-05f-partially-complete-ar/download (last visited May 1, 2023).)  Blackhawk did
    not request judicial notice of the September 27, 2022 ATF Open Letter.  Even if the Court took judicial
28  notice of the letter, it does not change the Court's analysis here.

1    Although the prior definition of "firearm" did not expressly mention "parts" or "parts kits," the

2    phrase "may readily be converted to expel a projectile by the action of an explosive" implies that weapons

3    parts kits may constitute a "firearm" under the GCA.  (See, e.g., 86 FR 27720-01, 27726 n. 40 [the

4    proposed rulemaking noted that courts have found parts and parts kits constitute a "firearm" under the

5    GCA].)  The People allege Blackhawk's GST-9 Build Kit, AR-10 Build Kit, and AR-15 Build Kits are

6    firearms as defined under the GCA.  (FAC ¶¶ 102, 104.)  The People allege Blackhawk represents its

7    GST-9 Build Kit can be readily converted into a fully functioning "pistol in under 15 minutes."  (*Id.* ¶ 93;

8    see *id.* ¶ 96 ["completes within minutes."].)  Additionally, the People allege that a law enforcement

9    officer employed by the San Francisco District Attorney's Office, operating in an undercover capacity,

10   purchased an AR-15 build kit from Blackhawk and was able to assemble the AR-15 into a fully functional

11   firearm in approximately two hours.  (*Id.* ¶¶ 98, 103.)  The People further allege Blackhawk violates the

12   GCA by failing to comply with federal serialization and point-of-sale requirements such as failing to:

13   ensure firearms bear unique serial numbers; run background checks on prospective customers; require

14   purchasers complete Form 4473; meet purchasers to transfer the firearm in person; maintain records of

15   sales; and include safety devices or locks.  (*Id.* ¶¶ 88, 92, 98-100.)

16       The Court finds the People sufficiently allege Blackhawk violated the GCA to state a claim under

17   the unlawful prong of the UCL.[6]  Therefore, the Court need not address whether the People sufficiently

18   allege violations of the AFL, UHA, and MFL.

19           **2.    Unfair**

20       "The UCL does not define the term unfair.  It is frequently stated that a business practice is unfair

21   within the meaning of the UCL if it violates established public policy or if it is immoral, unethical,

22   oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  (*Gray v.*

23   *Dignity Health* (2021) 70 Cal.App.5th 225, 238 (cleaned up).)  But, the UCL "has a broad[] scope for a

24   reason . . . It would be impossible to draft in advance detailed plans and specifications of all acts and

25

---

26   [6] Blackhawk is a party to pending litigation in the Northern District of Texas, where that court issued a
     preliminary injunction on November 3, 2022, enjoining the implementation and enforcement of the Final
27   Rule against Blackhawk because the court preliminarily determined the Final Rule is unlawful.
     (*VanDerStok v. BlackHawk Manufacturing Group Inc.* (N.D. Tex. Nov. 3, 2022) ___ F.Supp.3d ___,
28   2022 WL 16680915, *5; see Reply, 12.)  Whether the Final Rule is unlawful is not at issue here.

- 11 -

*People v. Blackhawk Manufacturing Group Inc., et al.* CGC-21-594577
Order Denying Blackhawk's Motion for Judgment on the Pleadings

conduct to be prohibited, since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery." (*Cel-Tech*, 20 Cal.4th at 181, quoting *People ex rel. Mosk v. National Research Co. of Cal.* (1962) 201 Cal.App.2d 765, 772 (cleaned up).)

> Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.

(*Cel-Tech*, 20 Cal.4th at 182; see *id.* at 183 ["The unfair competition law is less specific, because the Legislature cannot anticipate all possible forms in which unfairness might occur."].)

Blackhawk asserts the People fail to allege any unfair business practice because the People allege Blackhawk violated public policy rather than any harm to competition. (Opening Brief, 25; see also Reply, 6, 16.) Blackhawk relies on *Cel-Tech*. However, "[t]he court in *Cel-Tech* explicitly noted that the case before it involved 'an action by a competitor alleging anticompetitive practices' and emphasized that the specific test adopted in that decision was limited to that context." (*Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County* (2020) 9 Cal.5th 279, 303.) Post-*Cel-Tech*, appellate courts have adopted "three different tests for determining unfairness in the consumer context." (*Id.*; see *id.* 303, n. 10 [First District Court of Appeal adopted the "tethering" test]; see e.g., *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 854 ["where a claim of an unfair act or practice is predicated on public policy, we read *Cel-Tech* to require that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions."]; *In re Firearm Cases* (2005) 126 Cal.App.4th 959, 986.)

The Court need not address whether the People sufficiently plead unfair business practices as the People sufficiently allege unlawful business practices to state a claim under the UCL. However, even if the People's claim was solely premised on the unfair prong, Blackhawk fails to demonstrate the *Cel-Tech* test applies here.

## B.    Advertising

As to the fraud prong of the UCL, the definition of unfair competition "include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

(Bus. & Prof. Code § 17200.)  The fraud prong of the UCL "requires a showing that members of the public are likely to be deceived" and "may be proved even if there is no evidence that anyone was actually deceived, relied upon the fraudulent practice, or sustained any damage." (*People ex rel. Harris v. Aguayo* (2017) 11 Cal.App.5th 1150, 1160, quoting *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 839; *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128, 1146 (internal quotations omitted).) Similarly, the FAL prohibits false or misleading advertising. (*People v. Johnson & Johnson* (2022) 77 Cal.App.5th 295, 317.)  "Thus, to state a claim under either the UCL or the [FAL], based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." (*Id.* at 318, quoting *Nationwide*, 9 Cal.5th at 308 (internal quotations omitted).)

Blackhawk argues the People fail to allege any fraudulent conduct under the UCL and FAL. (Opening Brief, 25-26; Reply, 6, 16-17.)  Blackhawk asserts that it "never engaged in the manufacture and sale of 'firearms' as then defined by the GCA." (*Id.* at 26.)  Rather, Blackhawk contends that "until August 24, 2022, Blackhawk's statements that its unassembled parts were legal to purchase and did not need to be registered ***at the time of purchase*** was completely accurate" and not likely to deceive. (Opening Brief, 25-26 (emphasis in original); Reply, 16.)  The Court disagrees.

Blackhawk focuses on an allegation that a June 2, 2020 blog post on its website stated, "these ***firearms*** do not need to be registered at time of purchase" (FAC ¶ 127) by arguing that until August 24, 2022, its unassembled parts were legal under the GCA, therefore, this was a true statement.  (Opening Brief, 26; see Reply, 16.)  However, Blackhawk does not reconcile the People's other allegations of misleading advertisements.

The People allege Blackhawk misleads consumers regarding "the legality of frame and receiver blanks and kit products when used for their sole, intended purpose," a fully functioning firearm, and fail to make disclosures to consumers under the AFL and UHA. (*Id.* ¶¶ 167-168.)  In particular, the People allege Blackhawk touts its products as "100% Legal" and "California Compliant" despite the fact that "a finished frame or receiver triggers a consumer's obligations under the" AFL and UHA. (*Id.* ¶¶ 12, 96, 124, 126; see *id.* ¶¶ 25 ["It is deceptive to tell consumers that a product is legal when possession of the product for its sole intended use is illegal, either per se or unless the consumer takes specific regulatory

- 13 -

*People v. Blackhawk Manufacturing Group Inc., et al.* CGC-21-594577
Order Denying Blackhawk's Motion for Judgment on the Pleadings

steps that ghost gun companies fail to disclose."], 87 ["advertising and other communications lull reasonable consumers into believing that Defendants' Build Kits can be used, in compliance with the law, as sold and without the consumer needing to take further steps to comply with the law."], 122 [same], 132, 153-154; see e.g., ¶¶ 93 ["Our goal is for you to be able to go from opening the mail, to a competition or defense ready pistol in under 15 minutes."], 96 ["Congratulations, you've just made a gun. And this is now legally a firearm and should be treated as such."], 127-128 [blog post].)

The People allege Blackhawk has a video on its YouTube page titled, "How To: Finish GST-9 Frame." (*Id.* ¶ 96.) The video "shows the viewer how to convert the frame blank into a firearm; indeed, the video concludes with the narrator stating 'Congratulations, you've just made a gun. And this is now legally a firearm and should be treated as such.'" (*Id.*) The People allege Blackhawk has another video on its YouTube page titled, "Build Your Own Gun in 1 Hour. 100% Legal." (*Id.* ¶ 124.) The People allege "[t]he video makes clear that Blackhawk's purpose for manufacturing and selling frame and receiver blanks is to stop the government from 'tracking your gun purchases and putting you on a list' and to avoid 'more and more paperwork' that comes with purchasing firearms." (*Id.* ¶ 124[7]; see *id.* ¶¶ 125-126.) The People further allege "Blackhawk specifically touts that building a gun is 'completely legal and does not require any sort of serial number or registration.' It also touts that there are 'no background checks' involved in the process." (*Id.*)

The People's allegations focus on Blackhawk's representations that, once assembled, a firearm is legal despite the statutory requirements under the AFL and UHA. Although there may be no affirmative disclosure requirement, the People's allegations demonstrate that such statements are misleading because they imply the consumer does not need to take any further action. This is sufficient to allege a FAL claim and UCL violation based on fraudulent conduct.

## III.   The People's FAL Claim And UCL Claim Based On Fraudulent Business Practices Do Not Violate The First Amendment.

Blackhawk argues the People's FAL claim and UCL claim based on fraudulent business practices seek to regulate Blackhawk's protected commercial speech and "impose a 'strict liability' standard on

---

[7] The People note that although Blackhawk posted the video prior to the enactment of the AFL, the video remains on Blackhawk's YouTube channel. (FAC ¶ 124, n. 57.)

- 14 -

*People v. Blackhawk Manufacturing Group Inc., et al.* CGC-21-594577
Order Denying Blackhawk's Motion for Judgment on the Pleadings

First Amendment speech concerning lawful Second Amendment activity." (Opening Brief, 27-28; see Reply, 6, 18-19.)

Blackhawk does not dispute that it engaged in commercial speech. "Under the First Amendment, commercial speech is entitled to less protection from governmental regulation than other forms of expression." (*People ex rel. Gascon v. HomeAdvisor, Inc.* (2020) 49 Cal.App.5th 1073, 1085.) However, "commercial speech that is false or misleading is not entitled to First Amendment protection and 'may be prohibited entirely.'" (*Kasky*, 27 Cal.4th at 953, quoting *In re R.M.J.* (1982) 455 U.S. 191, 203; see *Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 873 [parties agreed the UCL "can constitutionally restrict speech properly classified as commercial."].) As this Court has found, the People sufficiently allege Blackhawk engaged in misleading advertising.

> With regard to misleading commercial speech, the United States Supreme Court has drawn a distinction between, on the one hand, speech that is actually or inherently misleading, and, on the other hand, speech that is only potentially misleading. Actually or inherently misleading commercial speech is treated the same as false commercial speech, which the state may prohibit entirely.

(*Kasky*, 27 Cal.4th at 954.)

Blackhawk argues the People only allege its "speech *might* be misleading." (Opening Brief, 29 (emphasis in original).) However, the People sufficiently allege Blackhawk's speech was actually misleading. For instance, the People allege Blackhawk has a video on its YouTube page titled, "How To: Finish GST-9 Frame." (FAC ¶ 96.) The video "shows the viewer how to convert the frame blank into a firearm; indeed, the video concludes with the narrator stating 'Congratulations, you've just made a gun. And this is now legally a firearm and should be treated as such.'" (*Id.*) The People allege the requisite actions a person must complete prior to manufacturing or assembling a firearm under the AFL and UHA. (See *id.* ¶¶ 50-56.) Therefore, a video instructing a viewer on how to assemble a firearm and then representing that the firearm is legal upon completion without any mention of the AFL and UHA's requirements is actually misleading.

"Sometimes speech will have commercial and noncommercial components. If a legal command or law of nature makes it impossible to separate the commercial components from the noncommercial, the two are inextricably intertwined and we bestow noncommercial status on both components." (*Serova*, 13

- 15 -

1  Cal.5th at 880-881, quoting *Board of Trustees, State Univ. of N.Y. v. Fox* (1989) 492 U.S. 469, 474

2  (internal quotations omitted).)  Blackhawk contends its "advertising concerns the core Second

3  Amendment right of law-abiding citizens to self-manufacture firearms." (Opening Brief, 28.)  However,

4  the People are not alleging that consumers cannot self-manufacture firearms or that Blackhawk's

5  advertising is infringing on any right to self-manufacture firearms.[8]  Rather, the People's allegations

6  establish Blackhawk's advertisements concern misleading statements regarding the legality of its products

7  when assembled.  Therefore, the legality of Blackhawk's products is not inextricably intertwined with any

8  Second Amendment activity.  Moreover, the legality of its finished products specifically relates to

9  regulations on firearms such as background checks, serialization, and safety, not a constitutional right.

10       Accordingly, Blackhawk's motion is denied on this ground.

11  **IV.   Blackhawk's Constitutional Challenges To The Unlawful And Unfair Prongs Of The**
    **People's UCL Claim Are Improper.**

12       Blackhawk contends the UCL is unconstitutionally vague as applied to Blackhawk if the People's

13  theories of unlawfulness and unfairness "are somehow correct." (Opening Brief, 26; see Reply, 17.)

14  Blackhawk argues "[n]othing in the UCL—or any of the other statutes on which Plaintiff relies—gave

15  Blackhawk 'fair notice' that its lawful conduct was 'unlawful' or 'unfair' under the UCL." (*Id.* at 27.)

16  Blackhawk further contends that "[a]s applied, Plaintiff's 'unlawful' UCL theory violates the Second

17  Amendment." (*Id.* at 29; see *id.* at 30-31; see Reply, 6, 19-20.)

18       Blackhawk's constitutional challenges to portions of the People's UCL claim are improper as they

19  would not dispose of the People's entire UCL cause of action, which encompasses all three prongs of the

20

21  ---
[8]  The Second Amendment states: "A well regulated Militia, being necessary to the security of a free
22  State, the right of the people to keep and bear Arms, shall not be infringed." (*District of Columbia v.
    Heller* (2008) 554 U.S. 570, 576; see *New York State Rifle & Pistol Association, Inc. v. Bruen* (2022) 142
23  S.Ct. 2111, 2125 ["the Second and Fourteenth Amendments protect an individual right to keep and bear
    arms for self-defense."].)  "Like most rights, the right secured by the Second Amendment is not
24  unlimited." (*Heller*, 554 U.S. at 626.)  The People's allegations do not attempt to implicate or restrict
    Blackhawk's sales or self-manufacture of firearms.  Instead, the People seek to hold Blackhawk liable for
25  misleading statements regarding the statutory requisites of selling a firearm such as serialization,
    background checks, and safety standards.  The Supreme Court expressly stated in *Heller* that "nothing in
26  [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by
    felons and the mentally ill, or . . . laws imposing conditions and qualifications on the commercial sale of
27  arms." (*Id.* at 626-627.)  Moreover, "you will not find a discussion of [self-manufacture of firearms] in
    the 'plain text' of the Second Amendment." (*Defense Distributed v. Bonta* (C.D. Cal. Oct. 21, 2022)
28  2022 WL 15524977, *4.)

1   UCL.  (See *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1167 ["Ordinarily, a

2   general demurrer may not be sustained, nor a motion for judgment on the pleadings granted, as to a

3   portion of a cause of action."], disapproved on other grounds in *Sheen v. Wells Fargo Bank, N.A.* (2022)

4   12 Cal.5th 905.)  Therefore, Blackhawk's motion is denied on this ground.

## **CONCLUSION AND ORDER**

Based on the foregoing reasons, Blackhawk's motion is denied.

IT IS SO ORDERED.

Dated: May **2**, 2023

_____

Anne-Christine Massullo

Judge of the Superior Court

*People v. Blackhawk Manufacturing Group Inc., et al.* CGC-21-594577
Order Denying Blackhawk's Motion for Judgment on the Pleadings

| PEOPLE OF THE STATE OF CALIFORNIA VS. BLACKHAWK MANUFACTURING GROUP INC., et al. | Case No: CGC-21-594577 |
|---|---|

## CERTIFICATE OF ELECTRONIC SERVICE
### (CCP §1010.6 & CRC §2.251)

I, Jhulie I. Roque, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am over the age of 18 years, employed in the City and County of San Francisco, California and am not a party to the within action.

On May 2, 2023, I electronically served the attached **ORDER DENYING DEFENDANT BLACKHAWK MANUFACTURING GROUP, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS** via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: May 2, 2023

Mark Culkins, Interim Clerk

By: _____
Jhulie I. Roque, Deputy Clerk

# EXHIBIT B

William J. Diggs (013392010)
Christopher Renzulli (*pro hac vice forthcoming*)
Scott Allan (*pro hac vice forthcoming*)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
P:    914-285-0700
F:    914-285-1213
wdiggs@renzullilaw.com
crenzulli@renzullilaw.com
sallan@renzullilaw.com
*Attorneys for Defendant FSS Armory, Inc.*

**F I L E D**

AUG 2 8 2024

Hon. Frank J. DeAngelis, P.J.Ch.
Morris/Sussex County

| | |
|---|---|
| MATTHEW J. PLATKIN, Attorney General of the STATE OF NEW JERSEY, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MORRIS COUNTY |
| Plaintiff, | Docket Number:  MRS-C-000102-23 |
| v. | Civil Action |
| FSS ARMORY, INC., | ~~[PROPOSED]~~ ORDER |
| Defendant. | |

This Court, having reviewed and considered Defendant's motion to dismiss, Plaintiff's opposition, and Defendant's reply, as well as all other papers submitted in connection therewith, if any, and the oral argument of counsel, if any;

*Denied*

It is **HEREBY ORDERED AND ADJUDGED** ~~that Defendant's motion to dismiss is granted, and Plaintiff's Complaint, and all claims set forth therein, are dismissed with prejudice.~~

Dated: *August 28*, 2024          *[signature]*

HON. FRANK J. DEANGELIS, P.J.Ch.

This motion was [X] opposed / [ ] unopposed.

*See the attached statement of reasons incorporated by reference.*

**Platkin v. FSS Armory, Inc.**

**MRS-C-102-23**

**Statement of Reasons**

### I.       Background Information

This matter comes before the Court by way of a motion to dismiss.  The underlying dispute arises from a Verified Complaint filed by Plaintiff Matthew J. Platkin ("Plaintiff") against Defendant FSS Armory ("Defendant").

By way of background, FSS Armory's store, which sells handguns rifles, shotguns, ammunition, gun parts and accessories, and knives, opened in December 2019. Verified Complaint, ¶ 18. Ross Osias ("Osias") is the owner of the store, runs its day-to-day business, and is responsible for its compliance with any applicable gun laws. Id. at ¶ 19.

On January 6, 2023, the store was burglarized, when the burglars smashed 2 ground-floor windows and reached through, grabbing twenty guns. Id. at ¶ 32. Images from Google Maps and the FSS Armory's website depict guns and gun boxes stored below the window within arm's reach from July 2022 to at least January 2023. Id. at ¶ 1, 22, & 30. In the images, some guns are stored outside of boxes. Id. at ¶ 1. The windows have two to three vertical metal bars for security. Id. The burglars loaded the guns into a stolen car and drove off without activating the alarm. Id. at ¶ 33 & 34.

Osias discovered the burglary the next day, and the Montville Police Department and Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") were notified shortly thereafter. Id. at ¶ 37.  A subsequent police investigation discovered one of the burglars searched for "gun stores in NJ" on his phone and that FSS armory was one of the results. Id. at ¶ 35. After the burglary, Plaintiff filed suit against Defendant alleging that its substandard storage and security practices violated New Jersey law including the Public Nuisance Law, N.J.S.A. 2C:58-35 and also

1

alleged that Defendant is liable for negligence. In the instant application, Defendant moves for dismissal of the Complaint.

The Court also notes that it previously granted counsels' motion for leave to appear *amici curiae*.

## II.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted is governed by R. 4:6-2(e) of the New Jersey Court Rules. The rule "permits litigants, prior to the filing of a responsive pleading, to file a motion to dismiss an opponent's complaint, counterclaim, cross-claim, or third-party complaint" Malik v. Ruttenberg, 398 N.J. Super. 489, 493 (App. Div. 2008).

The proper analytical approach to such motions requires the motion judge to (1) accept as true all factual assertions in the complaint, (2) accord to the nonmoving party every reasonable inference from those facts, and (3) examine the complaint "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Id. at 494 (quoting Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989).

The motion to dismiss should be approached with great caution and should only be granted in the rarest of instances. Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). The allegations are to be viewed "with great liberality and without concern for the plaintiff's ability to prove the facts alleged in the complaint." Ibid. The plaintiff's obligation on a motion to dismiss is "not to prove the case but only to make allegations, which, if proven, would constitute a valid cause of action." Ibid. (quoting Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472, (App. Div. 2001)).

### III.   ANALYSIS

Defendant argues that Plaintiff's Public Nuisance claims and the Public Nuisance Law are preempted by the Protection of Lawful Commerce in Arms Act (hereinafter, "PLCAA"), and thus must be dismissed. Defendant, however, contends that even if not preempted, the claims must be dismissed due to the PLCAA's immunity provision. Further, Defendant argues that the Public Nuisance Law is unconstitutional because it infringes on free speech and violates Defendant's due process right because it is vague.

Defendant first addresses its argument that the PLCAA invalidates the Public Nuisance Law. Defendant submits that "[t]he doctrine of preemption is grounded in the Supremacy Clause of Article VI of the Constitution, which provides that 'the Laws of the United States…shall be the supreme Law of the Land." Kurns v. A.W. Chesterton Inc., 620 F. 3d 392, 395 (3d Cir. 2010). Defendant asserts that express preemption "occurs when a federal law contains express language providing for the preemption of any conflicting state law" while implied preemption "occurs when it is either impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." Id.

Here, Defendant asserts that Congress intended for the PLCAA to preempt state law and to "intrude on [a state's] authority to hear qualified civil liability actions." Travieso v. Glock Inc., 526 F. Supp. 3d 533, 541 (D. Ariz. 2021). Defendant submits that "[i]n enacting the PLCAA, Congress primarily sought to prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products . . . for the harm solely caused by the criminal or unlawful misuse of [those] products by others when the product functioned as designed and intended." In re Acad., Ltd., 625 S.W.3d 19, 33 (Tex. 2021). Further, Defendant argues that the

PLCAA provides substantive immunity by prohibiting filings of qualified civil liability actions.

Id. Defendant provides that a "qualified civil liability action" is the following:

> [C]ivil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product or a trade association, for damages, punitive damages, injunctive or declaratory relief, or penalties or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party. . .

15 U.S.C. § 7903(5)(A).

Defendant asserts that where the PLCAA applies, it prohibits civil lawsuits unless one of the limited exceptions to its immunity applies. Travieso, 526 F. Supp. 3d at 544. Defendant submits that the following are the six categories of claims that the PLCAA excludes from the definition of a qualified civil liability action:

> (i)  an action brought against a transferor convicted under section 924(h) of title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;
>
> (ii)  an action brought against a seller for negligent entrustment or negligence per se;
>
> (iii)  an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including—
>
> > I.  any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or
> >
> > II.  any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing

4

     or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of title 18;

(iv) an action for breach of contract or warranty in connection with the purchase of the product;

(v) an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

(vi) an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of title 18 or chapter 53 of title 26.

15 U.S.C. § 7903(5)(A).

Defendant asserts that while none of the exceptions apply to the Public Nuisance Law, Plaintiff is likely to argue that the law satisfies the predicate exception to the PLCAA for an "action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." Defendant, however, contends that the predicate exception is inapplicable to the Public Nuisance Law.

Defendant provides that the "predicate exception exempts only those civil actions that require proof that the actor knowingly violated the relevant statute." Defendant argues that the Public Nuisance Law "flies in the face of that scienter requirement that is necessary for the predicate exception to the PLCAA to apply." Defendant submits that the Public Nuisance Law allows for civil liability of a firearms industry member for: (1) "unlawful" conduct, regardless of whether the firearm industry member knowingly violated the law; and (2) even conduct that is not in violation of the law, but which the NJAG finds to be "unreasonable," or not in accordance with "reasonable controls." <u>N.J.S.A.</u> 2C:58-35(a).

Defendant argues that even if the Public Nuisance Law had the proper scienter requirement, it would still fail to satisfy the PLCAA exception because the Public Nuisance Law absolves the NJAG of having to establish proximate cause. Defendant claims the Public Nuisance Law provides "the conduct of a gun industry member shall be deemed to constitute a proximate cause of the public nuisance if the harm to the public was a reasonably foreseeable effect of such conduct, notwithstanding any intervening actions, including, but not limited to, criminal actions by third parties." N.J.S.A. 2C:58-35(e). Defendant argues that thus the provision brings the law outside of PLCAA's predicate exception which applies only where the violation was a proximate cause of the harm for which relief is sought. Defendant thus argues that the Public Nuisance Law falls within the purview of PLCAA and none of the PLCAA exceptions apply.

Next, Defendant contends that the public nuisance claims are barred by the PLCAA's immunity provision. Specifically, Defendant argues the PLCAA prohibits civil proceedings brought by a person, NJAG, against a seller, FSS Armory, of a qualified product for damages and other relief based on the criminal use of the qualified products by third parties. 15 U.S.C. § 7903(5)(A). Defendant contends that the harm alleged in the Complaint for which the NJAG seeks to recover was the result of criminal acts of third parties which constitute crimes committed by third parties. Defendant thus argues that Plaintiff's claims constitute a qualified civil liability action against which the PLCAA provides Defendant with immunity.

Defendant also reiterates that the public nuisance claims do not fall within the predicate exception because none of the public nuisance claims require a knowing violation of a statute by Defendant. As to Count One, Defendant contends that it does not require that Defendant "knowingly violated the relevant statute," as is required for the predicate exception to the PLCAA to apply. Defendant further argues that Counts Two and Three do not require that Defendant

violated a statute at all. Defendant contends that in direct contravention of the PLCAA, the Public Nuisance Law expressly contemplates that liability could be imposed on gun industry members who fully comply with federal and state law. N.J.S.A. 2C:58-34. Defendant thus asserts that since the public nuisance claims do not require proof of a knowing violation of a statute, the predicate exception is inapplicable. Defendant also notes that the public nuisance claims do not require proof of proximate causation despite the PLCAA applying only where the violation was a proximate cause of the harm.

Finally, Defendant argues that even if the public nuisance claims satisfy the PLCAA's exception's requirement of a knowing violation of a statute and proximate cause, the claims must be dismissed because they are not premised on a violation of any statute applicable to the sale or marketing of firearms. Defendant contends that three of the four underlying laws Plaintiff relies on are not statutes but regulations which cannot satisfy the exception. N.J. Admin. Code §§ 13:54-3.9(a)(3), 13:54-6.5(a)(1), 13:54-6.5(b). Further, Defendant asserts that N.J.S.A. 2C:58-2(a)(3) is inapplicable to the sale or marketing of firearms, but rather only to security and storage. Defendant argues that the predicate exception is clear in that it only applies to statutes concerning the sale or marketing of firearms.

In response, Plaintiff first argues that the Complaint asserts prima facie claims under N.J.S.A. 2C:58-35 and common law. Plaintiff contends that Count One sufficiently pleads that FSS engaged in knowing conduct that was unlawful and contributed to the public nuisance of illegal guns and gun crime in New Jersey. Specifically, Plaintiff asserts that Defendant left guns exposed to the public in violation of various statutes forbidding the storage and display of guns in shop windows. Plaintiff argues that Defendant was aware that these storage practices posed a risk of theft or loss of the store's guns and violated the law. Additionally, Plaintiff claims that Count Two

7

sufficiently pleads that Defendant's conduct, was not only unlawful but was unreasonable under all the circumstances and knowingly or recklessly contributed to the public nuisance of illegal guns and gun crime.

As to Count Three, Plaintiff asserts that it sufficiently pleads that Defendant's conduct violated N.J.S.A. 2C:58-35 which contains a separate, affirmative requirement that gun industry members establish and enforce reasonable controls regarding their manufacture, sale, distribution, and marketing of gun-related products. Plaintiff submits that "reasonable controls" is defined as "reasonable procedures, safeguards, and business practices that are designed to . . . prevent the loss of a gun-related product or theft of a gun-related product from a gun industry member . . . ." N.J.S.A. 2C:58-34. Plaintiff alleges that Defendant failed to establish and implement reasonable controls and thus knowingly violated the statute and regulations it attested it knew. Finally, Plaintiff argues that Count Four sufficiently pleads that Defendant was negligent because "(1) it owed the public a duty of care to protect its guns from theft; (2) it breached that duty of care; and (3) that breach was the proximate cause of (4) actual damages." Plaintiff asserts that as a result of Defendant's negligence, the State and public have suffered harm and damages.

Next, addressing Defendant's preemption argument, Plaintiff asserts that the PLCAA does not have a sweeping preemptive effect on statutes or common law causes of action. Plaintiff contends that Congress intended for PLCAA to only prevent the bringing of "qualified civil liability actions," not to preempt statutes and cause of action in the abstract, and thus PLCAA has no effect on N.J.S.A. 2C:58-35. Plaintiff provides that a qualified civil liability action does not include various types of enumerated actions which includes "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is

sought." 15 U.S.C. § 7903(5)(A)(iii). Plaintiff contends that for a lawsuit to qualify as this time of an "action", the "plaintiff must allege a knowing violation of a predicate statute" that regulates marketing or selling guns. See Soto v. Bushmaster Firearms Int'l, LLC, 202 A.3d 262, 274 n.12 (Conn. 2019). Moreover, Plaintiff asserts that the statute's operative language is expressly limited to cover a specific category of "civil action or proceeding" that Congress intended to bar. 15 U.S.C. § 7903(5)(A). Plaintiff argues that since the PLCAA prevents the bringing of qualified civil liability actions, it has no preemptive effect on the Public Nuisance Law.

Further, Plaintiff contends that the instant action is not a qualified civil liability action. Plaintiff submits that civil actions against gun industry members "in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought" are not qualified civil liability actions. 15 U.S.C. § 7903(5)(A)(iii).

Plaintiff argues that its claims are founded upon Defendant's conduct that violated multiple statutes applicable to firearm sales which would be sufficient to make the instant matter "an action in which a.... seller...knowingly violated a State or Federal Statute...." Id. Specifically, Plaintiff asserts that N.J.S.A. 2C:58-2 regulates the sale of firearms and the storage and security requirements as mandatory conditions of being in the business of selling firearms. N.J.S.A. 2C:58-2(a). Further, Plaintiff contends that while Defendant claimed that Plaintiff may not rely on regulatory provisions, the regulators are statutorily directed pursuant to N.J.S.A. 2C:58-2's provision that the State Police Superintendent "shall prescribe standards and qualifications for retail dealers of firearms and their employees...." N.J.S.A. 2C:58-2(a). Plaintiff also provides that N.J.S.A. 2C:39-10 expressly makes it a statutory violation to violate a regulatory provision under N.J.S.A. 2C:58-2. Finally, Plaintiff contends that Defendant violated multiple provisions of Public

Nuisance Law and thus supports an independent basis to find that the lawsuit is an "action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A)(iii).

Next, Plaintiff alleges that Defendant's violations of that statute were done knowingly because its conduct consisted of knowing acts and omissions. Plaintiff claims that Defendant's knew what security measures it used and where it was storing its firearms and repeatedly attested that it knew the state's storage and security requirements for licensed firearms dealers. Plaintiff submits that "knowingly violated" means that the defendant's actions must have been knowing, not inadvertent or accidental. Plaintiff, however, argues that the PLCAA does not prevent a plaintiff from bringing an action where the seller knowingly violated a statute but rather that the seller must possess some type of knowledge.

As to proximate cause, Plaintiff refutes Defendant's argument that the violated statute must have a proximate cause requirement. Plaintiff asserts that the PLCAA explicitly provides that an action is not a qualified civil liability action if the violation of the statute "was a proximate cause of the harm for which relief is sought." Further, as to the burglars constituting an intervening act, Plaintiff contends that an upstream actor is not excused from responsibility simply because the causal chain from its misconduct to the resulting harm had more than one link. Plaintiff submits that intervening causes that are foreseeable will not breach the chain of causation. Komlodi v. Picciano, 217 N.J. 387, 418 (2014). Plaintiff relies on case law, as well as New Jersey and other state laws, to further support its assertion that an intervening criminal act is foreseeable. Plaintiff thus contends that it has pled sufficient facts to establish Defendant's violations of law proximately caused the harm for which relief is sought.

In response, Defendant reiterates that the PLCAA invalidates the Public Nuisance Law and requests that the Court consider NSSF in which the U.S. District Court for the District of New Jersey previously held that Public Nuisance Law to be invalid under the PLCCA. Defendant acknowledges that the Court of Appeals vacated the preliminary injunction and dismissed the case but on the basis of lack of standing. Defendant also contends that the PLCAA does not limit its immunity to claims for harm alleged to have been solely caused by criminals. See Johnson v. Bass Pro Outdoor World, LLC, 547 P.3d 556, 565 (Kan. Ct. App. 2024). Defendant asserts that what constitutes a prohibited "qualified civil liability action" is defined by the PLCCA and where a matter is a "qualified civil liability action," the Court must dismiss Plaintiff's claims.

Further, Defendant argues that the Public Nuisance Law and claims are invalid under the PLCAA for not requiring a knowing violation. Defendant contends that while Plaintiff has alleged that Defendant knowingly violated a predicate statute, does not mean that the Public Nuisance Law and claims are capable of satisfying the predicate exception. Defendant also restates its argument in connection with the proximate cause requirement and Plaintiff's reliance on regulations, rather than statutes.

Defendant next contends that even if the Public Nuisance Law "could pass muster under the PLCAA," the claims must still be dismissed because the Public Nuisance Law is unconstitutional as it violates the right to free speech and due process. Specifically, Defendant argues that the Public Nuisance Law unconstitutionally restricts protected political and commercial speech. Defendant submits that "[l]aws that burden political speech as subject to strict scrutiny." E & J Equities, 226 N.J. at 569. Defendant contends that "pro-firearm speech" is a "protected First Amendment activity." Nat'l Rifle Ass'n of Am. V. City of Los Angeles, 441 F. Supp. 3d 915, 941 (C.D. Cal. 2019). Defendant also provides that the First Amendment "protects commercial speech

11

from unwarranted governmental regulation" because "[c]ommercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information." E & J Equities, 226 N.J. at 549.

Defendant argues that by applying the above standards, the Public Nuisance Law unconstitutionally restricts protected political and commercial speech based on content. Defendant alleges that the Public Nuisance Law sets forth content-based restrictions that apply to gun industry members and even further apply to their, "sale, manufacturing, distribution, importing, or marketing of a gun related product." N.J.S.A. 2C:58-34. Defendant relies on Junior Sports Mags. Inc. v. Bonta, where the Court found that a California statute was unconstitutional because it would ban messages of legal uses of guns. Junior Sports Mags. Inc. v. Bonta, 80 F4th 1109 (9th Cir. 2023). Defendant asserts that the Court held that "[e]ven if California's advertising restriction significantly slashes gun violence and unlawful use of firearms among minors, the law imposes an excessive burden on protected speech." Id. at 1119. Defendant argues that the Public Nuisance Law is similar to the California statute in that it allows the NJAG to take action on "speech whose content concerns lawful activities and is not misleading." Id. at 1117-18. Defendant thus contends that the law allows the State to seek civil penalties for lawful speech that it does not find to be reasonable which is an infringement on the right to free speech.

Moreover, Defendant alleges the Public Nuisance Law is unconstitutional because it is vague as to the restrictions imposed on the speech. Defendant submits that "[w]hen the language of a regulation is vague, speakers are left to guess as to the contours of its proscriptions." Sypnewski v. Warren Hill Reg'l Bd. Of Educ., 307 F.3d 243, 266 (3d Cir. 2002). Defendant asserts that a "vague rule 'may authorize and even encourage arbitrary and discriminatory enforcement,'" "by failing to 'establish minimal guidelines to govern...enforcement.'" Id. Here, Defendant claims

the Public Nuisance Law is vague as to what speech is prohibited and allows Plaintiff to take action against gun industry members based on "marketing" or any other business communication the State finds to be unreasonable even if the speech is otherwise lawful. Specifically, Defendant asserts that the Public Nuisance Law allows that NJAG to sue gun industry members for lawful speech about "the exercise of the right to bear arms, the benefits of owning a firearm, encouraging firearm ownership, and beneficial features of particular firearms, if the NJAG thinks that the gun industry members' positions on those issues are 'unreasonable.'" Defendant contends that such cannot survive constitutional scrutiny.

In response, Plaintiff argues that its claims do not violate the First Amendment. Plaintiff contends that while Defendant has the right to freely engage in speech by marketing its business, it does not have the right to be free from consequences of its conduct. Plaintiff asserts that its claims do not regulate, restrict, or seek to punish protected speech but rather target Defendant's conduct. Plaintiff submits that a law does not violate the Free Speech Clause if its "effect on speech" is "only incidental to its primary effect on conduct." Expressions Hair Design v. Schneiderman, 581 U.S. 37, 47 (2017). Plaintiff contends that it does not seek to hold Defendant liable for promoting the store or for opining on gun laws but that it referenced such as evidence of Defendant's knowledge of the legal requirements of operating a licensed gun retail store. Plaintiff argues that the fact that Defendant's words provide evidence of Defendant's knowledge is not a First Amendment harm.

Additionally, Plaintiff contends that to the extent the Public Nuisance Law regulates speech, it regulates only commercial speech. Plaintiff submits that commercial speech is defined "as speech that does no more than propose a commercial transaction." Bank of Hope v. Miye Chon, 938 F.3d 389, 394 (3d Cir. 2019). Plaintiff asserts that while commercial speech is afforded some

13

protection, "[t]he protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." E & J Equities v. Bd. of Adjustment of Twp. of Franklin, 226 N.J. 549, 570 (2016). Plaintiff thus contends that Defendant's marketing of its business is commercial speech and entitled to the lesser level of protection under Central Hudson Gas & Electric Corp. v. Public Serv. Commission of N.Y., 447 U.S. 557 (1980).

Plaintiff submits that a "government may restrict commercial speech that concerns lawful activity and is not misleading, if (a) the government has a substantial interest in regulating that speech, (b) the restriction directly advances that interest, and (c) the restriction is not more extensive than necessary to serve that interest." Id. at 566. Plaintiff asserts that commercial speech that concerns illegal activity is unprotected. Town Tobacconist, 94 N.J. at 124-26. Plaintiff argues that the First Amendment does not shield Defendant from liability because its claim advances New Jersey's interest in maintaining its residents' safety. Plaintiff refutes Defendant's reliance on Junior Sports Magazines and contends that there, the advertisement ban prohibited non-misleading speech about a lawful activity whereas the Public Nuisance Law does not ban marketing or advertising one's gun store.

Defendant also claims that the Public Nuisance Law is unconstitutionally vague under due process. Defendant relies on State v. Cameron, which provides that vague laws are unenforceable under both Federal and State Constitutions. State v. Cameron, 100 N.J. 586, 591 (1985). Defendant submits that a "law is void as a matter of due process if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1983). Defendant also asserts that courts must consider "the extent to which the regulatory law impacts on constitutional interests." Cameron,

100 N.J. at 592. Further, Defendant provides that "[a] statute that is challenged facially may be voided if it is 'impermissibly vague in all its application,' that is, there is no conduct that it proscribes with sufficient certainty." Id. Defendant asserts that "[a] statute can be challenged 'as applied' if the law does not with sufficient clarity prohibit the conduct against which it sought to be enforced 'in that particular case.'" Id.

Defendant argues that the Public Nuisance Law violates due process under both federal and state constitutions both facially and as applied because it gives the NJAG the authority to take action against firearm industry members based on conduct in the "sale, manufacturing, distribution, importing or marketing of a gun-related product" that the NJAG finds to be unreasonable. Defendant contends that if the law is allowed to stand then "no firearm industry member will ever be able to know whether its conduct, even though lawful at the time, will later on subject it to severe civil consequences because the NJAG decides that the action was not reasonable." Defendant asserts that if the State wanted Defendant to conduct its business in a certain manner, then it may do so through passing legislation and/or adopting regulations.

In opposition, Plaintiff argues that the Public Nuisance Law is not unconstitutionally vague. Plaintiff asserts that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974). Plaintiff contends that Defendant does not identify a vagueness problem with the Public Nuisance Law as applied to FSS. Plaintiff argues that since Defendant's conduct is proscribed by the Public Nuisance Law, Defendant may not complain of the vagueness of the law as applied to others. Further, Plaintiff asserts that Defendant speculates that the law might be arbitrarily applied but does not explain how the enforcement action is arbitrary.

15

In response, Defendant maintains that the Public Nuisance Law is unconstitutional as it violates the First Amendment and is impermissibly vague. Defendant also contends that the Public Nuisance Law violates the Second Amendment and the Commerce Clause by imposing civil liability on firearm industry members, an industry that is regulated by the federal government as part of interstate commerce. As to the Second Amendment, Defendant asserts that the law is unconstitutional because it seeks to regulate conduct of "gun industry member[s]" with respect to their "sale, manufacturing, distribution, importing or marketing of a gun-related product." N.J.S.A. 2C:58-34. Defendant thus requests that the Court should dismiss the public nuisance claim as barred by the Second Amendment and the Commerce Clause.

Defendant next argues that the PLCAA bars Plaintiff's negligence claim based on the above arguments that the instant matter is a qualified civil liability action and thus the PLCAA provides it with immunity. Further, Defendant contends that the Court should dismiss Plaintiff's claims because Plaintiff cannot establish causation. Defendant asserts that while Plaintiff seeks to recover for the "expend[ing of] significant resources mitigating and investigating crimes already committed with, or threatened by, the twenty guns taken by [the burglars] from FSS Armory," Defendant itself was a victim of the criminal acts by the burglars. Defendant argues that the burglar's actions constitute an intervening act that broke the chain of causation between Defendant's conduct and the alleged nuisance. Defendant thus asserts that Plaintiff cannot establish negligence.

In opposition, Plaintiff reiterates that it can establish the four elements to support a negligence claim including proximate cause. Plaintiff asserts that gun sellers, including Defendant, have a common law duty to the public by virtue of the inherent risk in being a firearm dealer. Gallara, 364 N.J. Super. at 438-40. Plaintiff alleges that Defendant breached that duty when it

failed to appropriately safeguard its store and when it advertised its unlawfully inadequate storage and security practices. As to damages, Plaintiff contends that it incurred actual damages having spent significant resources to mitigate and investigate crimes already committed by the firearm taken from Defendant's window.

In response, Defendant contends that Plaintiff failed to respond to the argument that the negligence claim is barred by the PLCAA. Defendant further states that whether Plaintiff pled facts to support its negligence claim is irrelevant because the PLCAA contains no exception for common law negligence claims.

Finally, Defendant argues that Plaintiff's claims for punitive damages should be dismissed. Defendant cites to Hagel v. Davenport, which states that liability under the Punitive Damages Act is reserved for especially egregious intentional wrongdoing. Hagel v. Davenport, No. A-3652-19, 2024 WL 444738 (N.J. Super. Ct. App. Div. Feb 6, 2024). Defendant asserts that a plaintiff may recover punitive damages upon proof of "intentional wrongdoing…" or "an act accompanied by a wanton and willful disregard of the rights of another." Id. Defendant argues that Plaintiff's allegations fall short of demonstrating that Defendant acted with actual malice or wanton and willful disregard. Defendant thus requests that the Court dismiss Plaintiff's claims against Defendant for punitive damages.

In opposition, Plaintiff asserts that punitive damages are not a cause of action but available where there "is a valid underlying cause of action." Nappe v. Anschelewitz, Barr, Ansell Bonello, 97 N.J. 37, 45 (1984). Plaintiff contends that the issue of whether to award punitive damages is premature nor has Defendant cited any authority that a request for such may be dismissed on a motion to dismiss. Plaintiff submits that to plead entitlement to punitive damages, it must plead "that the injury, loss, or harm suffered by the State was the result of defendant's acts or omissions;

17

and that either (2a) defendant's conduct was malicious, or (2b) defendant acted with wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. N.J.S.A. 2A:15-5.12(a). Plaintiff asserts that it may pursue punitive damages "for the purpose of punishing, and thereby deterring," the wrongdoer." Tarr v. Bob Ciasulli's Mack Auto Mall, Inc., 194 N.J. 212, 216 (2008). Plaintiff claims that Defendant acted with wanton and willful disregard and that the Complaint sufficiently pleads facts to support such. Plaintiff thus contends that Defendant's conduct entitles Plaintiff to punitive damages.

Defendant contends that there is no basis to delay the Court's decision as it relates to punitive damages since Plaintiff's claim for such "contravenes the extraordinary nature of, and strict standards for, punitive damages." Hagel, No. A-3652-19, 2024 WL 444738, at *23. Defendant argues that based on Plaintiff's assertion, anything that any member of any industry that Plaintiff does not like can subject them to having to defend against claims for punitive damages despite the lack of a specific factual basis for such claims. Defendant asserts that such will lead to unfair and unwarranted outcomes and thus, the Court should dismiss Plaintiff's claim for punitive damages.

*Amici* are law professors at various law schools who oppose Defendant's instant application. *Amici* first assert that for a lawsuit to qualify under the predicate exception, (1) the lawsuit must rely on a state or federal statute applicable to the sale of a firearm product, and (2) it must allege that a firearms manufacturer or seller knowingly violated the predicate statute in a manner that proximately caused harm. *Amici* argue that the Public Nuisance Law explicitly applies "to the sale and marketing of firearms products," and thus is a predicate statute. *Amici* contend that a lawsuit that alleges a violation of the Public Nuisance Law, meets the knowledge and causation elements of the predicate exception is not preempted by the PLCAA.

18

Next, *Amici* refute Defendant's assertion that Public Nuisance Law does not qualify as a predicate statute because it does not include a scienter requirement. *Amici* asserts that the predicate statute exception delineates the category of predicate statute as "State or Federal" statutes that are "applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A)(iii). Additionally, *Amici* contend that the predicate exception specifies conditions under which the violation of a predicate statute provides a basis for a civil lawsuit which includes (1) when "a manufacturer or seller of a qualified product knowingly violated" the predicate statute and (2 when "the violation was a proximate cause of the harm for which relief is sought[.]" Id. *Amici* thus argue that for a lawsuit to be viable under the predicate exception, the State must meet the predicate exception's knowledge and causation element but the predicate statute itself does not need to define the defendant's required state of mind.

Further, *Amici* argue that the two examples provided in the predicate exception illustrate that the predicate statute does not need to make any reference to knowing violation. *Amici* submit that the PLCAA's first example refers to predicate statutes that prohibit specified forms of conduct and the second refers to a predicate statute that defines categories of individuals prohibited from possessing or receiving a firearm. Id. *Amici* further assert that neither statute references any mental state.

Next, *Amici* contend that PLCAA's proximate causation requirement is met if harm resulting from third-party misuses of firearms was a "reasonably foreseeable effect" of a gun industry member's conduct. *Amici* refute Defendant's argument that the Public Nuisance Law would defeat the PLCAA's purpose to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms....for harm solely caused by the criminal or

19

unlawful misuse of firearms products….."*Amici* argue that such argument misreads the PLCAA and the Public Nuisance Law.

In addition, *Amici* argue that the Public Nuisance Law's proximate causation provision is fully consistent with the doctrines of tort law. *Amici* assert that the PLCAA lawsuits against manufacturers and sellers for harm "solely caused" by third-party criminal misuse of firearm products. *Amici* contend that the prohibition is reflected in the predicate exception's proximate cause requirement which subjects a manufacturer or seller to liability for harm caused by third-party unlawful misuse of firearm products only when the manufacturer or seller's knowing violation of a predicate statute was a proximate cause of the harm. *Amici* provide that in those circumstances, the third-party unlawful misuse is not the sole cause of the harm. *Amici* assert that by foreseeably increasing the risk of third-party misuse, the manufacturer or seller's misconduct may also be a proximate cause of the harm. *Amici* argue that liability under such circumstances does not contradict the PLCAA's goal to shield manufacturers and sellers from vicarious liability for harms "solely caused" by third-party criminal misuse. *Amici* thus contend that when a defendant's knowing violation of a predicate statute is a proximate cause of harm resulting from criminal misuse, the defendant is subject to liability under the predicate exception. Further, *Amici* submit that New Jersey courts have imposed liability on defendants for foreseeably increasing the rise of third-party criminal misconduct. Steele v. Kerrigan, 148 N.J. 1 (1997).

Moreover, *Amici* argue that the Public Nuisance Law is consistent with the PLCAA's text, structure, and purpose because PLCAA only bars lawsuits brought pursuant to common law but expressly permits lawsuits brought pursuant to statutes, like the Public Nuisance Law. *Amici* contend that the PLCCA does not operate as an absolute liability shield and instead circumscribes

the jurisdiction of courts to hear only certain claims against firearms industry defendants for harms resulting from third-party unlawful misuse of firearms products.

*Amici* assert that the PLCAA's explicit commitment to separation of powers is expressed in the predicate exception's distinction between legislatively created causes of action, which may serve as the basis for a lawsuit against the industry, and judge-made causes of action, which may not. *Amici* contend that PLCAA's preemption of state common law causes of action is reflected in several of its provisions and findings. *Amici* submit one of the PLCAA's findings identifies the following:

> The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States.

15 U.S.C. § 7901(a)(7).

*Amici* argue that this finding reflects a conception of separation of powers common among advocates of tort reform that the expansion of civil liability by common law courts is an encroachment on legislative function. See Timothy D. Lytton, Using Litigation to Make Public Health Policy: Theoretical and Empirical Challenges in Assessing Product Liability, Tobacco, and Gun Litigation, 32 J.L. MED. & ETHICS 556, 557 (2004). Further, *Amici* provide that the PLCAA's exceptions reflects its central concern with preempting civil liability actions based on common law.

Additionally, *Amici* assert that the PLCAA's commitment to protecting Second Amendment Rights is expressed in the predicate exception's knowledge and proximate causation

requirements. *Amici* submit that the PLCAA's first two legislative findings demonstrate such when it stated the following:

> (1) The Second Amendment to the United States Constitution provides that the right of the people to keep and bear arms shall not be infringed.
>
> (2) The Second Amendment to the United States Constitution protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, to keep and bear arms.

15 U.S.C. § 7901(a)(1), (2).

*Amici* argue that to protect the rights of citizens to keep and bear arms, PLCAA preempts litigation against the firearms industry that could restrict the availability of firearms in the civilian market. *Amici* assert that the predicate exception imposes a heightened mental state requirement that any actionably violation be made "knowingly," which limits litigation to allegations of deliberate industry misconduct while protecting manufacturers and sellers from lawsuits based on unwitting negligence. In addition, *Amici* contend that the predicate exception imposes a proximate cause requirement which limits ligation to allegations that a manufacturer or seller actively facilitated the unlawful misuse of its products while shielding the industry from vicarious liability for harm caused solely by the illegal misconduct of others.

Finally, *Amici* assert that the PLCAA's commitment to federalism is expressed in the predicate exception's invitation to state legislatures to enact statutes that impose obligations and prohibitions on the firearms industry. *Amici* provide that the PLCAA preserves the ability of states to regulate the industry in accordance with regional variation in attitudes about gun ownership and how best to respond to firearms-related violence. Further, *Amici* contend that the predicate exceptions allows not only federal but also state statutes to serve as predicate statutes. *Amici* conclude by stating that the constitutional principles endorsed by the PLCAA's findings and

purposes section all support an interpretation of the predicate exception that authorizes lawsuits against the gun industry under the Public Nuisance Law.

## IV.    CONCLUSION

Under the Supremacy Clause of the United States Constitution, federal law preempts state law in several circumstances. Hager v. M&K Construction, 246 N.J. 1, 26-45 (2021). It is established that "[p]re-emption may be either expressed or implied." Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992). Further, "[e]xpress preemption is determined from an examination of the explicit language used by Congress." Gonzalez v. Ideal Tile Importing Co., 184 N.J. 415, 419, (2005) (citing Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)). "A federal enactment expressly preempts state law if it contains language so requiring." Bruesewitz v. Wyeth Inc., 561 F.3d 233, 239 (3d Cir. 2009).

"In the alternative, there are two forms of implied preemption: field and conflict." Hager, 246 N.J. at 28. "'Field preemption applies "where the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'"'" Id. (quoting In re Reglan Litig., 226 N.J. 315, 328 (2016) (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)). Conflict preemption exists when either (1) "compliance with both federal and state regulations is a physical impossibility'" or (2) state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Altice, 253 N.J. at 417.

The PLCAA prohibits the bringing of qualified civil liability action in both Federal and State courts. 15 USC § 7902 (2024). A "qualified civil liability action" is defined as:

> [A] civil action or proceeding or an administrative proceeding
> brought by any person against a manufacturer or seller of a qualified
> product, or a trade association, for damages, punitive damages,
> injunctive or declaratory relief, abatement, restitution, fines, or
> penalties, or other relief, resulting from the criminal or unlawful
> misuse of a qualified product by the person or a third party....

15 U.S.C. § 7903 (2024).

Additionally, the PLCAA provides six exceptions to the prohibition. Id. Among such exceptions is

"an action in which a manufacturer or seller of a qualified product knowingly violated a State or

Federal statute applicable to the sale or marketing of the product, and the violation was a proximate

cause of the harm for which relief is sought...." Id.

> Moreover, the Public Nuisance Law provides the following:
>
> > (1) A gun industry member shall not, by conduct either unlawful in
> > itself or unreasonable under all the circumstances, knowingly or
> > recklessly create, maintain, or contribute to a public nuisance in this
> > State through the sale, manufacturing, distribution, importing, or
> > marketing of a gun-related product.
> >
> > (2) A gun industry member shall establish, implement, and enforce
> > reasonable controls regarding its manufacture, sale, distribution,
> > importing, and marketing of gun-related products.
> >
> > (3) It shall be a public nuisance to engage in conduct that violates
> > paragraphs (1) or (2) of this subsection.

While Defendant asserts that the Public Nuisance Law is preempted by the PLCAA, the Court

finds that the Public Nuisance Law is not preempted, either explicitly or implicitly. The explicit

language of the PLCAA, which includes the predicate exception, allows Plaintiff to bring the

instant action. See Gonzalez, 184 N.J. at 419; 15 U.S.C. § 7903(5)(A)(2024). The exception

provides that a "qualified civil liability action" may brought where a "manufacturer or seller of a

qualified product knowingly violated a State or Federal statute applicable to the sale or marketing

of the product...." Id. It follows that as the PLCAA allows the instant lawsuit to be initiated,

implied preemption is absent. Further, while Defendant argues that that Congress intended for the

24

PLCAA to preempt state law had Congress intended to provide a blanket immunity to gun manufacturers and sellers, it would not have provided any exception to the PLCAA. Therefore, the Court finds that the Public Nuisance Law is not preempted by the PLCAA.

Next, Defendant asserts that the Public Nuisance Law does not satisfy the predicate exception to the PLCAA and relies on NSSF in support of its assertion. Nat'l Shooting Sports Found. v. Platkin, Civil Action No. 22-6646, 2023 U.S. Dist. LEXIS 16459 (D.N.J. Jan. 31, 2023). However, the Court first notes that the NSSF decision is not binding on the Court and has been reversed by the Third Circuit. Moreover, substantively, the District Court's analysis is not applicable here as the claims are not being brought on the basis of any allegation that there was "criminal or unlawful misuse of a qualified product by the person or third party" but rather that Defendant allegedly knowingly violated the nuisance law with respect to establishing and enforcing reasonable controls regarding its sale of gun-related products. N.J.S.A. 2C:58-35.

Moreover, the plain language of the PLCAA does not require that the underlying statute include a scienter requirement. In construing the statute, we first consider "the literal language of the statute, consistent with the Legislature's admonition that its words and phrases 'shall be read and construed with their context, and shall, unless inconsistent with the manifest intention of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.'" US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 471 (2012). "To the extent possible, the Court must derive its construction from the Legislature's plain language. If the language chosen by the Legislature is unambiguous, then the Court's 'interpretive process is over.'" Id. Based on the plain language of the PLCAA, the PLCAA predicate exception only requires allegations of a knowing violation of a state or federal law, not that the statute violated contain a knowing scienter requirement. Plaintiff

has sufficiently plead that Defendant knew that its alleged storage practices were contrary to the State's storage and security requirements for licensed firearms dealers.

Similarly, Plaintiff sufficiently pled that the burglars and their actions were an intervening foreseeable event that does not break the chain of causation. Komlodi v. Picciano, 217 N.J. 387 (2014). Proximate causation is a "combination 'of logic, common sense, justice, policy and precedent' that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." People Express Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246, 264 (1985) (quoting Caputzal v. Lindsay Co., 48 N.J. 69, 77-78 (1966). Thus, as stated in Estados Unidos Mexicanos, "[p]roximate cause is commonly understood as the function of the foreseeability of the harm[.]" 91 F.4th at 534. While Defendant denies that proximate causation exists, courts, including New Jersey courts, have previously held that business owners are required to protect customers and tenants from foreseeable criminal acts even if the criminal act was beyond their control. Gallara v. Koskovich, 364 N.J. Super. 418 (2003); see also Minnesota v. Fleet Farm LLC, 679 F. Supp. 3d 325 (D. Minn. 2023) ("Where a criminal act is reasonably foreseeable, then that act does not break the causal chain"). In fact, "[i]f the reasonably prudent person would foresee danger resulting from another's voluntary criminal acts, the fact that another's actions are beyond defendant's control does not preclude liability." Id. (quoting Butler v. Acme Markets, Inc., 89 N.J. 270, 276 (1982). Here, as in Gallara, "a jury could decide that [FSS Armory] should have foreseen or anticipated that stolen guns would likely cause harm, that reasonable security measures would have served as an effective deterrent, and that a failure to take such measures was a substantial contributing factor to the ultimate harm suffered." Id. at 444. "If a third-party's unlawful act always undercuts proximate cause, the predicated exception would be meaningless." Estados Unidos Mexicanos, 91 F. 4th at 535.

Next, the Court does not find merit as to Defendant's contention that the Public Nuisance Law violates the right to free speech. Political expression is protected by the First Amendment of the United States Constitution and by Article I, Paragraphs 6 and 18 of the New Jersey Constitution. See Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 486 (2012). Political speech "is entitled to the highest level of protection in our society." Dublirer v. 2000 Linwood Ave. Owners, Inc., 220 N.J. 71, 85 (2014). On the other hand, commercial speech is "expression related solely to the economic interests of the speaker and its audience." Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 561(1980). However, commercial speech is not entitled to the same protection as political speech. Instead, the following four-part analysis is conducted to determine whether the commercial speech is protected:

> [I]t at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

Id. at 566.

While Defendant alleges that the Public Nuisance Law "sets forth content-based restrictions specifically targeted at political speech about firearms, and the commerce thereof.... because it applies only to 'gun industry members,'" the law does not restrict any speech but seeks to regulate gun industry member's conduct in the storage, sale, and marketing of their gun-related products. The instant action relates to Defendant's failure to properly safeguard the firearms in its possession by storing unsecured firearms next to a ground floor, exterior window. While the State makes reference to Defendant's Google page, it is not for any speech contained online but rather to demonstrate that Defendant improperly stored firearms and disclosed its improper actions on the internet to the general public

27

However, even if the Public Nuisance Law targets speech, it would be commercial speech. Further, the Public Nuisance Law is content-neutral as the "legislature's predominant concern is with adverse secondary effects….and not with the content of speech being restricted." <u>Ward v. Rock Against Racism</u>, 491 U.S. 781 (1989). Any impact to speech would merely be incidental to the legislature's intent to regulate the conduct of gun manufacturers and sellers. Finally, the Public Nuisance Law is in accordance with the four-part analysis under <u>Central Hudson Gas</u> since (1) the "speech" at issue concerns lawful activity, the sale of firearms, (2) the State has a substantial interest in regulating speech related to the gun industry, (3) the Public Nuisance Law advances this interest in regulating the manner guns must be stored, and (4) the Public Nuisance law is not more restrictive than necessary. 447 U.S. at 566. Thus, the Court finds that the Public Nuisance Law does not violate the right to free speech.

Finally, "[a] statute is void if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." <u>State v. Lenihan</u>, 219 N.J. 251, 267 (2014) (quoting <u>Hamilton Amusement Ctr. v. Verniero</u>, 156 N.J. 254, 279-80 (1998). "A statute [can] be challenged as being either facially vague or vague 'as applied.'" <u>Lenihan</u>, 219 N.J. at 267 (quoting <u>State v. Maldonado</u>, 137 N.J. 536, 563(1994)). "A law is facially vague if it is vague in all applications." <u>Id.</u> "A statute that 'is challenged as vague as applied must lack sufficient clarity respecting the conduct against which it is sought to be enforced.'" <u>Lenihan</u>, 219 N.J. at 267. Accordingly, a person challenging a statute must normally show it is vague as applied to them. <u>See</u> <u>Holder v. Humanitarian L. Project</u>, 561 U.S. 1, 19-20 (2010). Here, Defendant has not demonstrated that the Public Nuisance Law is vague as applied to them. Further, the Court does not find that Public Nuisance Law is vague or does not put firearm industry members on notice of what conduct is unlawful. For instance, Plaintiff has not only relied on Defendant's alleged

28

violation of N.J.S.A. 2C:58-2 but also its implementing regulations including N.J.A.C. 13:54-3.9(a)(3) which provides that "[n]o firearm, ammunition or imitation thereof shall be placed in any window or in any other part of the premises where it can be readily seen from the outside." While Defendant refutes Plaintiff's reliance on such regulations, the regulations were statutorily directed pursuant to N.J.S.A. 2C:58-2.

As to Defendant's remaining arguments that the Public Nuisance Law violates the Commerce Clause and Second Amendment, the Court finds that there is no merit to support such arguments. The Public Nuisance Law does not abridge anyone's Second Amendment right but seeks to regulate the manner in which sellers conduct their business. District of Columbia v. Heller, 554 U.S. 570, 582–83 (2008). The State has not sought to prevent the sale of firearms pursuant to the Public Nuisance Law. Further, there is no evidence to support a finding that the Public Nuisance Law violates the Commerce Clause. As noted, the Public Nuisance Law does not seek to prohibit the sale of firearms but seeks to ensure the proper sale and marketing, including safekeeping, of firearms offered for sale.

Finally, giving Plaintiff all favorable inferences and searching the Complaint for the fundament of a cause of action, the Court finds that Plaintiff has sufficiently pled the claim for negligence, including proximate cause and actual damages. As previously held by the Minnesota v. Fleet Farm LLC, "only one claim needs to survive the preemption analysis for the entire suit to move forward because the PLCAA preempts 'qualified civil liability actions,' not claims." 679 F. Supp. 3d at 841; see Ustados Unidos Mexicanos, 91 F. 4th at 527 (finding that the predicate exception includes common law claims in addition to statutory claims). Further, the Court also found that the "PLCAA does not preempt all claims based on common law, but rather any claims (common law or statutory) that are not predicated on the violation of a federal or state statute

29

regarding the regulation of firearms." Fleet Farm, LLC, 679 F. Supp. 3d at 841. Like Fleet Farm

LLC, the negligence claim in the instant matter is based on the violation of New Jersey statutes

concerning the regulation of firearms and thus, the negligence claim is viable. See id. Similarly,

the Court finds that Plaintiff sufficiently pled a claim for punitive damages.

Accordingly, Defendant's motion to dismiss is denied.

# EXHIBIT C

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
Attorney for Plaintiff

By:    David Leit (Attorney ID No. 024351995)
       *Assistant Attorney General*
       (609) 414-4301
       David.Leit@law.njoag.gov

|  |  |
|---|---|
| MATTHEW J. PLATKIN, Attorney General of the STATE OF NEW JERSEY, <br><br>      Plaintiff, <br><br>      v. <br><br>Point Blank Guns and Ammo LLC, <br><br>      Defendant. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION – GENERAL EQUITY, MORRIS COUNTY <br><br> DOCKET NO.:_____ <br><br>      <u>Civil Action</u> |

## <u>COMPLAINT</u>

The New Jersey Attorney General (the "Attorney General"), by and through his undersigned counsel, hereby alleges as follows against defendant Point Blank Guns and Ammo LLC ("Point Blank Guns and Ammo" or "the Store"):

## <u>INTRODUCTION</u>

1.      In July 2022, the New Jersey Legislature enacted a law specifying duties of New Jersey gun industry members. The law granted the Attorney General an exclusive cause of action to remedy violations. <u>See</u> P.L. 2022, c.56, N.J.S.A. 2C:58-35 ("Section 58-35").

1

2.      Among the law's provisions, Section 58-35(a)(2) requires New Jersey gun industry members to "establish, implement, and enforce reasonable controls" in their sale of ammunition, ammunition magazines, and other "gun-related product[s]." The law defines "Reasonable controls" to mean, among other duties, the establishment of "reasonable procedures, safeguards, and business practices that are designed to: (1) prevent the sale or distribution of a gun-related product to . . . a person prohibited from possessing a firearm under State or federal law."

3.      Section 58-35(a)(2) therefore obligates New Jersey gun dealers, when selling ammunition or magazines, to take affirmative steps to determine that the buyer may lawfully possess a firearm. This legal obligation protects the public by recognizing the reality that persons who may not lawfully possess firearms sometimes acquire them unlawfully. Thus, the Legislature has provided two safety measures: a seller is required to conduct a check when someone purchases a firearm, and, as a backstop, also when a person purchases ammunition for a firearm.

4.      In New Jersey, only a person with one of two applicable firearms permits, or who is a particular current or former public safety official and therefore exempt from the permit requirement, may possess a gun. In addition, minors, and persons with felony records or subject to a court dispossession order, are prohibited from obtaining a permit or possessing a firearm. Thus, in order to comply with Section 58-35(a)(2)'s requirement that a seller implement "reasonable controls" to ensure that ammunition is not sold to "a person prohibited from possessing a firearm," sellers must require ammunition and magazine buyers to present either a New Jersey firearms permit or a document demonstrating they are exempt from the permit requirement.

5.      Point Blank Guns and Ammo is a state and federally licensed gun dealer in East Hanover, New Jersey.  It is therefore a "gun industry member" within the meaning of Section 58-35(a)(2).

6.      In March 2024, Point Blank Guns and Ammo sold a handgun ammunition magazine to a first-time customer.  The customer had no prior relationship with the store or the salesperson.  The customer paid in cash.  The store did not ask to see, and did not review, any type of identification, permit, or credential.

7.      In May 2024, the same salesperson at Point Blank Guns and Ammo sold a 1,000-round <u>case</u> of .223 caliber rifle ammunition—a high-velocity, military-standard ammunition often used in AR-15-style rifles—to a different first-time customer.  The customer had no prior relationship with the store or the salesperson.  The customer paid in cash.  The Point Blank Guns and Ammo salesperson did not ask to see, and did not review, any type of identification, permit, or credential.

8.      Point Blank Guns and Ammo's practice of selling ammunition and magazines without implementing "reasonable controls" to "prevent the sale or distribution of a gun-related product to . . . a person prohibited from possessing a firearm" violates Section 58-35(a)(2) and threatens public safety.

9.      The Attorney General brings this suit to prevent Point Blank Guns and Ammo's continued endangerment of the people of New Jersey.

## **THE PARTIES**

10.      Plaintiff is the Attorney General of the State of New Jersey.  The Attorney General is authorized and charged with the responsibility to enforce Section 58-35.  The Attorney General brings the Section 58-35 claims in this action by and through the Statewide Affirmative Firearms Enforcement Office ("SAFE").  SAFE was created within the Office of the

Attorney General by Attorney General Administrative Executive Directive No. 2022-08, which also delegated to SAFE the Attorney General's statutory authority under Section 58-35.

11.     Defendant Point Blank Guns and Ammo is a licensed retail firearms dealer organized on February 9, 2023 as a limited liability company under the laws of the State of New Jersey.  It received its New Jersey firearms retail license, SFL#4143, on December 7, 2023.  It operates a store under the business name "Point Blank Guns and Ammo" at 393 Route 10 East, East Hanover, New Jersey 07936.  At that retail location, Point Blank Guns and Ammo sells guns, ammunition, gun accessories, and other gun-related products.

## JURISDICTION AND VENUE

12.     Jurisdiction over Point Blank Guns and Ammo is proper because it is a business incorporated, licensed to do business, and operating in New Jersey, and because its unlawful conduct took place in New Jersey.

13.     Pursuant to Rule 4:3-2(a)(2), venue is proper in this court because the cause of action arose in Morris County, where Point Blank Guns and Ammo is located, and where Point Blank Guns and Ammo engages in the illegal conduct at issue in this case.  This case is filed in the Chancery Division-General Equity because the Attorney General principally seeks equitable relief.  R. 4:3-1(a)(1).

## FACTS

**A.      New Jersey's Firearms Industry Sales Practices Law**

14.     The Legislature enacted Section 58-35 in July 2022.[1]  Among its provisions, Section 58-35(a)(2) provides that "A gun industry member shall establish, implement, and

---

[1] See P.L. 2022-56, N.J.S.A. 2C:58-33 to -36.

enforce reasonable controls regarding its manufacture, sale, distribution, importing, and

marketing of gun-related products."

15.    Section 58-35(a)(2) incorporates three defined terms, which are set out in N.J.S.A.

2C:58-34:

- "Gun industry member" "means a person engaged in the sale,
  manufacturing, distribution, importing or marketing of a gun-related
  product, and any officer, agent, employee, or other person authorized to act
  on behalf of that person or who acts in active concert or participation with
  one or more such persons."

- "Gun-related product" "means any firearm, ammunition, ammunition
  magazine, firearm component or part including, but not limited to, a firearm
  frame and a firearm receiver, or firearm accessory, which product was, or
  was intended to be, sold, manufactured, distributed, imported, or marketed
  in this State, or which product was possessed in this State and as to which
  it was reasonably foreseeable that the product would be possessed or used
  in this State."

- "Reasonable controls" "means," (in relevant part), "reasonable procedures,
  safeguards, and business practices that are designed to (1) prevent the sale
  or distribution of a gun-related product to a . . . person prohibited from
  possessing a firearm under State or federal law[.]"

16.    Section 58-35's requirements supplement pre-existing laws and apply to a broader

scope of products than many of those other laws.  For instance, N.J.S.A. 2C:58-2 establishes

conditions for the retail dealing of "firearms" and contains additional provisions concerning the

sale of "handgun ammunition," whereas Section 58-35(a)(2) goes further, since it additionally

concerns the retail sale or distribution of any "gun-related product," including any ammunition or

ammunition magazine.  New Jersey gun industry members must comply with both laws.

17.    Under Section 58-35(a)(2), a New Jersey gun industry member must establish,

implement, and enforce reasonable affirmative measures to ensure that a purchaser of

ammunition or an ammunition magazine is not a "person prohibited from possessing a firearm

under State or federal law."  This requires retail firearms dealerships to take meaningful steps to

determine the purchaser's ability to lawfully "possess" a firearm.  They may not sell

ammunition, magazines, or other "gun related product[s]" without doing so.

18.    Section 58-35(a)(2)'s purchaser verification requirement for all gun-related

products extends well-settled point-of-sale requirements New Jersey has long applied for sales of

other products.  For example, New Jersey's licensed gun dealers may not sell most firearms or

handgun ammunition to would-be purchasers unless the purchaser possesses and exhibits a valid

and applicable state firearms permit.  See N.J.S.A. 2C:58-2(a)(4)-(5); N.J.S.A. 2C:58-3.3(b).

Gun dealers must also comply with federal point-of-sale requirements.  E.g., 18 U.S.C. § 922(t).

Sellers of handguns and handgun ammunition are subject to additional requirements related to

obtaining and recording purchaser identity information.  See N.J.S.A. 2C:58-2(b); N.J.A.C.

13:54-3.14(b).

**B.    State Laws Concerning "Persons Prohibited from Possessing a Firearm"**

19.    In enacting Section 58-35, the Legislature relied on pre-existing laws that define

who is a "person prohibited from possessing a firearm under State or federal law."

20.    Most relevantly, N.J.S.A. 2C:39-5 ("Section 39-5," titled "Unlawful possession of

weapons") prohibits a person from "knowingly [having] in his possession any

handgun . . . without first having obtained a permit to carry the same as provided in N.J.S.A.

2C:58-4."  See N.J.S.A. 2C:39-5(b).  Section 39-5 also prohibits a person from "knowingly

[having] in his possession any rifle or shotgun without having first obtained a firearms purchaser

identification card in accordance with the provisions of N.J.S.A 2C:58-3."  See N.J.S.A. 2C:39-

5(c).

21.    Under N.J.S.A. 2C:39-6 ("Section 39-6", titled "Exemptions"), Section 39-5's

possession prohibitions "do[] not apply" to certain categories of active public safety personnel.

See N.J.S.A. 2C:39-6(a) – (c), (n).  Likewise, qualified retired law enforcement officers within

the meaning of 18 U.S.C. § 926(c) who are carrying that statute's required identification are also exempt. See also N.J.S.A. 2C:39-6(*l*). Absent one of these exemptions, only a person with a valid New Jersey firearms purchaser identification card or handgun carry permit may lawfully "possess" a firearm in New Jersey.

22.    Additional state and federal statutes prohibit certain categories of persons from possessing a firearm independent of Section 39-5. These additional disqualifiers include N.J.S.A. 2C:39-7 (identifying "certain persons not to have weapons or ammunition") and 18 U.S.C. § 922(g) (identifying "person[s]" who may not "possess in or affecting commerce, any firearm or ammunition"). A person may also be subject to a court order prohibiting them from having a firearm. See, e.g., N.J.S.A. 2C:58-20 to -31 ("Extreme Risk Protective Order Act of 2018"); 2C:25-17 to -35 ("Prevention of Domestic Violence Act of 1991"); 2C:14-13 to -21 ("Victim's Assistance and Survivor Protection Act"); 2C:12-14 (providing for temporary protection order).

23.    New Jersey has separate laws governing the issuance of the relevant firearms permits. Those laws harmonize Section 39-5's requirement of a permit for lawful firearms possession with the additional, independent disqualifiers against firearms possession. N.J.S.A. 2C:58-3(c) states that the firearms purchaser identification card necessary to possess a rifle or shotgun "shall not be issued" to, among others, persons statutorily disqualified from having a firearm or adjudicated to be disqualified from having a firearm. N.J.S.A. 2C:58-4(c) likewise requires that an applicant for a handgun carry permit demonstrate that they are "not subject to any of the disabilities set forth in N.J.S.A. 2C:58-3." Those disabilities include, but are not limited to: (i) having been convicted of certain enumerated types of crime, including: "any crime in [New Jersey] or its felony counterpart in any other state or federal jurisdiction" and "a

7

disorderly persons offense in [New Jersey] involving an act of domestic violence… or its felony or misdemeanor counterpart… in any other state or federal jurisdiction,"; (ii) being under the age of 18 years for a firearms purchaser identification card or under 21 years for a permit to purchase a handgun; (iii) being subject to or ha[ving] violated a temporary or final domestic violence restraining order prohibiting the possession of firearms.  See N.J.S.A. 2C:58-3(c)(1), (4), and (6).

**C.      Point Blank Guns and Ammo Sells Ammunition and Magazines, For Cash, to Unverified Purchasers.**

24.      On March 20, 2024, an individual known to the Attorney General's Office entered the Point Blank Guns and Ammo store and retrieved a Glock Model 22 .40 caliber 10-round pistol magazine from a display shelf and approached a salesperson in order to purchase it.  At the sales counter, the store's computer system suddenly failed.  The salesperson told the individual that the magazine would normally cost "twenty-three [dollars]" but to just pay "twenty cash" instead because the system failure prevented the salesperson from making change.  The individual paid in cash.  No receipt was generated.  See Pictures A and B below.

Pictures A and B:  Magazine sold by Point Blank Guns and Ammo on March 20, 2024[2]

---

[2] Due to the computer system failure, the store was unable to generate a sales receipt.





25.     The salesperson never asked to see a firearms purchaser identification card, a handgun carry permit, or a document demonstrating that the individual did not need a permit.  The salesperson never asked if the purchaser could lawfully possess a firearm in New Jersey.  The salesperson did not take any measures to ensure that the purchaser was not "a person prohibited from possessing a firearm."  N.J.S.A. 2C:58-34.

26.     On May 30, 2024, a second individual known to the Attorney General's Office entered the Point Blank Guns and Ammo store and asked about buying .223 caliber rifle ammunition.  The customer asked for a cash price on a 1,000-round case of ammunition.  The salesperson retrieved a case containing 50 boxes of 20 rounds each and quoted a cash price of $848.16.  The individual bought the case, paying cash.  See Pictures C and D below.

<u>Picture C:  Case of .223 caliber rifle ammunition, purchased from Point Blank Guns and Ammo on May 30, 2024</u>



Picture D:  Point Blank Guns and Ammo sales receipt, May 30, 2024

**POINT BLANK GUNS & AMMO**
393 RT 10 EAST STE B
EAST HANOVER, NJ 07936
9737537733

**Default**

Cashier: John
30-May-2024 12:43:39P

| | | |
|---|---|---|
| 1   PMC 223 Case 55gr | | $799.00 |
| **Subtotal** | | **$799.00** |
| **Cash Discount** | | **-$31.96** |
| Sales Tax | 6.625% | $50.82 |
| Credit Card | 3.95% | $30.30 |
| Convenience Fee | | |
| **Total Taxes** | | **$81.12** |
| **Total** | | **$848.16** |
| CASH SALE | | $848.16 |
| Cash tendered | | $850.00 |
| Change | | $1.84 |

Online: https://clover.com/p
/M6ZR8MVEH96X2

Clover ID: A2K0KF8ST9ZDG
Payment M6ZR8MVEH96X2

Clover Privacy Policy
https://clover.com/privacy

**Default**

Server: John
30-May-2024 12:43:39P

Printed: 12:44:28P
Sent: 12:44:25P

----------------------------
PMC 223 Case 55gr
----------------------------

Clover ID: A2K0KF8ST9ZDG

13

27.     The salesperson never asked to see a firearms purchaser identification card, a handgun carry permit, or a document demonstrating that the individual did not need a permit. The salesperson never asked if the purchaser could lawfully possess a firearm in New Jersey. The salesperson did not take any measures to ensure that the purchaser was not "a person prohibited from possessing a firearm."  N.J.S.A. 2C:58-34.

**D.     Point Blank Guns and Ammo Fails to Establish, Implement, and/or Enforce Reasonable Controls to Prevent Sales to Persons Prohibited from Possessing Firearms.**

28.     Point Blank Guns and Ammo's verification-less cash sales of .223 caliber rifle ammunition and a pistol magazine—across two different dates, involving two different purchasers, and processed by the same store employee—lacked procedures, safeguards, and/or business practices to ensure that the purchaser was not "a person prohibited from possessing a firearm under State or federal law."  N.J.S.A. 2C:58-34.

29.     Point Blank Guns and Ammo has not established, implemented, and enforced reasonable procedures, safeguards, and business practices that are designed to prevent the sale of a gun-related product to a person prohibited from possessing a firearm.

## CAUSES OF ACTION

### Count One

**(Failure to Establish, Implement, and Enforce Reasonable Controls)
(Public Law 2022, c. 56, N.J.S.A. 2C:58-35(a)(2))**

30.     Under N.J.S.A. 2C:58-35(a)(2), "a gun industry member shall establish, implement, and enforce reasonable controls regarding its manufacture, sale, distribution, importing, and marketing of gun-related products."  Those "reasonable controls" include "reasonable procedures, safeguards, and business practices that are designed to . . . prevent the

sale or distribution of a gun-related product to . . . a person prohibited from possessing a firearm under State or federal law." See N.J.S.A. 2C:58-34.

31.    Defendant Point Blank Guns and Ammo is a "gun industry member" within the meaning of Section 58-35.

32.    Point Blank Guns and Ammo's sales of ammunition and ammunition magazines in New Jersey are sales of "gun-related products" within the meaning of Section 58-35.

33.    Point Blank Guns and Ammo's sales of ammunition and ammunition magazines lack "reasonable procedures, safeguards, and business practices that are designed to . . . prevent the sale or distribution of a gun-related product to . . . a person prohibited from possessing a firearm under State or federal law."  N.J.S.A. 2C:58-34.

34.    Point Blank Guns and Ammo has failed, and continues to fail, to establish, implement and enforce reasonable controls regarding its sale of ammunition and ammunition magazines.

35.    Point Blank Guns and Ammo's conduct violates Section 58-35(a)(2).

36.    It is a public nuisance to engage in conduct that violates Section 58-35(a)(2).  See N.J.S.A. 2C:58-35(a)(3).

37.    Because Point Blank Guns and Ammo has violated Section 58-35(a), the Attorney General commenced this action seeking "an injunction prohibiting [defendant] from continuing that conduct or engaging therein or doing any acts in furtherance thereof."  See N.J.S.A. 2C:58-35(b).  Such injunctive relief is necessary here to prevent further, continuing, irreparable injury.

38.    The Attorney General also seeks its reasonable attorneys' fees, filing fees, and reasonable costs of suit, as well as any other appropriate relief.  Ibid.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** the Attorney General requests judgment in his favor and against

defendant Point Blank Guns and Ammo as follows:

A.  Ordering injunctive relief as necessary to prevent continuing harm, such as
    ordering Point Blank Guns and Ammo to, at minimum, establish, implement,
    and enforce a requirement that purchasers of gun-related products exhibit for
    inspection a valid firearms purchaser identification card, a valid permit to
    carry a handgun, or a valid credential or identification demonstrating
    exemption from N.J.S.A. 2C:39-5;

B.  Pursuant to N.J.S.A. 2C:58-35(b), awarding the Attorney General the costs
    and expenses incurred in connection with this action, including attorneys'
    fees, filing fees, and reasonable costs of suit; and

C.  Awarding the Attorney General such other and further relief as the court
    deems just and proper.


Dated: November 13, 2024
Newark, New Jersey


<div style="margin-left: 50%;">

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff

By:  */s/ David Leit*
     David Leit [024351995]
     *Assistant Attorney General*
     New Jersey Office of the Attorney General
     Division of Law
     P.O. Box 45029
     Newark, NJ 07101

</div>

**CERTIFICATION OF COMPLIANCE**

I certify that confidential personal identifiers will be redacted from all documents

submitted in the future in accordance with <u>Rule</u> 1:38-7(b).

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff


By:   <u>  /s/ David Leit        </u>
       David Leit
      *Assistant Attorney General*

Dated: November 13, 2024
Newark, New Jersey

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to <u>Rule</u> 4:25-4, Assistant Attorney General David Leit is hereby designated as

trial counsel on behalf of the Plaintiff.

<div style="margin-left: 40%;">

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff


By:  <u>*/s/ David Leit*</u>
David Leit
Assistant Attorney General

</div>

Dated: November 13, 2024
Newark, New Jersey