```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                     NORTHERN DIVISION

 3

 4  NATIONAL SHOOTING SPORTS        )
    FOUNDATION, INC.,               )
 5                                  )
          Plaintiff,                )
 6                                  )Civil No.
          vs.                       )1:25-cv-01115-RSB
 7                                  )
    ANTHONY BROWN, et al.,          )Baltimore, Maryland
 8                                  )August 26, 2025
          Defendants.              )10:00 a.m.
 9  _____)

10

11

12      TRANSCRIPT OF PROCEEDINGS - PRELIMINARY INJUNCTION
          BEFORE THE HONORABLE ROBERT S. BALLOU
13

14  A P P E A R A N C E S

15  On Behalf of the Plaintiff:
          Matthew D. Rowen, Esquire
16        James W. Porter, III, Esquire
          John P. Sweeney, Esquire
17        Nicholas A. Aquart, Esquire

18  On Behalf of the Defendants:
          Joshua R. Chazen, Esquire
19

20

21  _____

22       (Computer-aided transcription of stenotype notes)

23

24       Reported by:  Ronda J. Thomas, RMR, CRR
                 Federal Official Reporter
          101 W. Lombard Street, 4th Floor
25               Baltimore, Maryland 21201
```

```
1   (10:00 a.m.)
2           THE COURT:  Please be seated.  Good morning,
3   everybody.  Let's call our case, if we can, please.
4           THE CLERK:  Yes.  Your Honor, calling the case of
5   National Shooting Sports Foundation Incorporated v. Brown, Case
6   Number RSB-25-cv-1115.  The case is called for a hearing on a
7   Motion for Preliminary Injunction.
8       If the plaintiff counsel could put their appearance on the
9   record, please.
10          MR. ROWEN:  Matthew Rowen for plaintiff.
11          THE COURT:  Mr. Rowen, nice to meet you.
12          MR. PORTER:  I'm James Porter, also for the plaintiff.
13          THE COURT:  Mr. Porter, nice to meet you.
14          MR. SWEENEY:  John Sweeney for the plaintiff as well,
15   Your Honor.
16          THE COURT:  Mr. Sweeney.
17          MR. AQUART:  Nicholas Aquart for the plaintiffs as
18   well, Your Honor.
19          THE COURT:  Nice to meet you.
20          MR. CHAZEN:  And Joshua Chazen on behalf of the
21   defendant.
22          THE COURT:  You're outnumbered.
23          MR. CHAZEN:  Outnumbered today.  So we'll see if that
24   intellectual brain trust can meet my learned colleagues on the
25   other side.
```

3

1          **THE COURT:**  All right.  Well, thank you all very much.

2   Let the record reflect that the parties today are present by

3   way of their counsel.

4          Let me just start, there may have been a little bit of

5   confusion yesterday.  We failed to put a notice of hearing on

6   the record.  And thank you all for listening to me during our

7   conference call for the date of the hearing but we're all here.

8   We're ready to go in connection with this.  I appreciate

9   y'all's briefs.  I read those.  I read the amicus as well.  So

10  I'm ready to hear argument.

11         I believe, I guess, Mr. Rowen, are you going to take the

12  lead for us today?

13         **MR. ROWEN:**  Yes, Your Honor.

14         **THE COURT:**  Go right ahead, please.

15         **MR. ROWEN:**  May I use the --

16         **THE COURT:**  Wherever you are most comfortable is fine

17  by me.  It's not often you have to walk back to the podium when

18  you go into the courtroom, right?

19         **MR. ROWEN:**  Exactly.

20         Before I begin, I conferred with Mr. Chazen, and both

21  parties wanted to thank Your Honor for coming up from Roanoke.

22  We know it's a schlep, and it's a little bit of unusual

23  circumstances.  So on behalf of both parties, we wanted to

24  thank you and your whole staff for coming in.

25         **THE COURT:**  Well, I enjoyed the drive up.  My law

1    clerk and I came up last night.  We stayed down on the

2    waterfront and it was a beautiful night and very pleasant

3    evening and good food.  So it was a good excuse to come up and

4    enjoy the Inner Harbor.  Thank you.

5              MR. ROWEN:  Glad to hear it.

6        With that out of the way, again, Matthew Rowen on behalf

7    of the plaintiff.

8              THE COURT:  Yes, sir.

9              MR. ROWEN:  Congress enacted the Protection of Lawful

10   Commerce in Arms Act to stamp out efforts by state and local

11   governments to use negligence and nuisance theories to impose

12   sweeping liability on members of the firearms industry and make

13   them pay to redress harms caused by third-party criminals who

14   misuse their lawful products.

15       For almost 20 years, the immunity that Congress conferred

16   held.  But in the wake of the Supreme Court's 2022 decision in

17   *Bruen*, in which the court made clear once and for all that the

18   Second Amendment is not second class, a small handful of

19   states, the same handful of states that had defied *Heller* for a

20   decade, decided to try defying Congress's judgment, too.

21       Maryland House Bill 947 is the latest in this recent spate

22   of laws.  So it should come as no surprise that Maryland House

23   Bill 947 conflicts with federal law and is preempted to the

24   extent it authorizes liability --

25             THE COURT:  So as you raise the other states -- and

5

1  I'm going to stumble over the names, I'm going to use the

2  acronym -- NSSF has brought a number of suits, on my count I

3  think it was about seven or eight, and only one of them has

4  gotten to the merits to the extent that it is the merits on

5  summary judgment.  Those have been dismissed on, I believe, on

6  standing grounds, and there's one abstention.  And then the

7  Second Circuit recently affirmed -- was it Northern District of

8  New York, if I remember correctly.

9       So, thus far, you haven't convinced a court that any of

10  these laws are -- conflict with the congressional statute,

11  right?

12          MR. ROWEN:  So we've convinced two district court

13  judges that there's a conflict.  So let me take a step back.

14      So you're right, there are, I think, seven other states

15  have these laws.  And the first handful of litigations that

16  were brought were all brought in a preenforcement posture.

17          THE COURT:  Right.  Create a standing problem.

18          MR. ROWEN:  Right.  All but the New York case were --

19  all of those were dismissed on standing grounds.

20          THE COURT:  Right.

21          MR. ROWEN:  So the exceptions were California and New

22  Jersey.  In the first go around in New Jersey, Judge Quereshi

23  there ruled that the statute is preempted by the PLCAA.  That

24  eventually was reversed on standing grounds given that it was

25  in a preenforcement posture.  And there, the Attorney General's

1  counsel for New Jersey represented it had no intention of suing

2  NSSF members for conduct that was not otherwise unlawful.  That

3  intention proved not to be entirely accurate, but we're

4  litigating that now in New Jersey.  And we'll be appealing the

5  New Jersey District Court's recent decision on abstention

6  grounds.

7         And in California, the district court judge there in *NSSF*

8  *v. Bonta* held that a related provision, that we did have

9  standing with respect to that, and that that violates the

10  Dormant Commerce Clause by directly regulating out-of-state

11  conduct, the same way that we alleged the HB947 does here.

12         And I think there are two things to take a way from that:

13  One is we're not in a preenforcement context here.  We know the

14  Attorney General -- at least what the Attorney General thinks

15  the statute covers because it brought an action.  It brought an

16  action against an NSSF member.  The Attorney General uses that

17  to say, well, that some trigger *Younger* abstention in the same

18  way that Judge Quereshi recently held in the District of New

19  Jersey.

20         And, on that point, while we respectfully disagree with

21  Judge Quereshi's opinion and are appealing it, I actually don't

22  think it maps here at all.

23         So the fundamental prerequisite for the *Younger*

24  abstention, and the Fourth Circuit has made this clear, is a

25  request to enjoin state court proceedings.

```
 1        And I want to be as explicit as I possibly can.  We're not
 2   asking Your Honor to enjoin anything.
 3             THE COURT:  But the relief that you seek, you are
 4   asking to enjoin.  I mean, and that is a declaration that says
 5   this statute can't be applied to any NSSF member, including
 6   Glock, right?
 7             MR. ROWEN:  To the extent that's how Your Honor reads
 8   our request for relief --
 9             THE COURT:  Is that what you're asking for?
10             MR. ROWEN:  So I don't think so.  Precisely because
11   what we're seeking is forward-looking relief.  And to the
12   extent that Your Honor reads our request for relief that way,
13   I'm happy to say we are -- we accept that the Glock suit is
14   going to rise and fall on its own terms.  To the extent Your
15   Honor thinks it prevail --
16             THE COURT:  But it can't be -- it can't be that -- I
17   can declare a statute unconstitutional or preempted from today
18   forward and say that before then it was not, right?  As a
19   practical matter --
20             MR. ROWEN:  Well, with respect you can, Your Honor.
21   And the Fourth Circuit made this clear in the Jonathan R. case,
22   which is 41 F.4th 316, where the court made clear that -- so
23   they said -- I'll get you the exact quote.
24        They said, "It's true that a district court might find
25   violation where a state court might not but that's not enough
```

```
1    to trigger Younger."  That's Pages 333 and 334.  That ordinary
2    res judicata principles are not enough to trigger Younger.
3         The court made clear that what is the fundamental
4    prerequisite to trigger Younger abstention is the request to
5    enjoin or interfere with state court proceedings.
6         And we are not asking you to enjoin the Glock suit.
7         We accept that there is no relief here that we can get
8    today that will preclude that suit from going forward.
9         Now, sure, that court may, you know, if Your Honor agrees
10   with us across the board, that court may find Your Honor's
11   opinion very persuasive in the same way that the Third Circuit
12   might find the Fourth Circuit opinions very persuasive.  But
13   there would be neither preclusive effect -- and, again, we are
14   not asking for any interference with the Glock suit.
15        The Fourth Circuit has made crystal clear that the only
16   type of relief that triggers Younger is a request to interfere
17   with state court proceedings.
18        THE COURT:  But your request for relief, number two,
19   is a preliminary injunction asking the attorney -- to enjoin
20   the Attorney General from enforcing, from enforcing.  And to go
21   forward with that lawsuit would be enforcing that statute,
22   would it not?
23        MR. ROWEN:  So we intended that to be forward-looking.
24   To the extent Your Honor isn't reading it that way, I'm happy
25   to cut against ourselves here and say we are only asking for
```

9

```
 1  future enforcements, not with respect to the Glock suit.  That
 2  suit's gonna rise and fall on its own terms in state court.
 3          THE COURT:  So how does that court deal with -- and
 4  this is where -- I don't want to say it doesn't make a lot of
 5  sense, but I'm having a hard time putting the pieces together
 6  to where let's say I agree with you, and I find that there's
 7  either preemption or it violates the commerce clause, whatever
 8  it may be, and that court disagrees, right?  Then you've got
 9  one of your members who doesn't get the benefit of the ruling
10  from this court and is being held liable from the enforcement
11  of a statute that this court says can't be enforced against it,
12  right?
13      In other words, Maryland wouldn't be able to bring another
14  lawsuit against Glock for something similar or different or
15  whatever it may be.  How does that work?
16          MR. ROWEN:  So I think that outcome respects
17  federalism because and the way it would work it would be sort
18  of in a normal course where if two different parties in two
19  different courts challenged the same statute --
20          THE COURT:  But there's also federalism that's
21  respected by allowing the Maryland court to make a decision on
22  these exact same issues about its own statute.  And then if --
23  whoever disagrees, whatever the outcome is, let that work its
24  way up to the Maryland Supreme Court and beyond, if necessary.
25          MR. ROWEN:  So in the Fourth Circuit, in *Jonathan R.*,
```

1  it explicitly rejected that argument.  It said that if you take

2  that to its logical conclusion, then *Younger* becomes the rule

3  not the exception.

4      The rule is federal courts have a virtually unflagging

5  obligation to exercise their federal question jurisdiction.

6  *Jonathan R.*, again, it's a 2023 opinion, I believe, made very

7  clear that sort of step zero for *Younger* is what is the

8  specific relief that the parties are seeking.

9      And if that specific relief does not seek to directly

10 interfere or enjoin, in their words, stall or forestall the

11 lawsuit, then *Younger* doesn't apply.

12     If you've gotten past that, even though we're not asking

13 you to enjoin the Glock suit, the next step that you would

14 apply under the Fourth Circuit's precedent is are you then one

15 of the three exceptional circumstances:  One is a criminal

16 prosecution, the Glock suit is obviously not that.  The third

17 one is interference with state court's ability to protect

18 itself.

19         THE COURT:  It's a quasi-criminal matter.

20         MR. ROWEN:  Right.  And we think it's not for the

21 reasons that we explained in our brief, but even if you

22 assumed, sort of *arguendo*, that it was, then under the Fourth

23 Circuit precedent you go to the *Middlesex* factors.  And the

24 third *Middlesex* factor is an adequate opportunity for the

25 federal plaintiff to raise their arguments in state court.  And

 1   that is not something that my clients have.

 2        And I think, just take a step back, the idea that a

 3   nonparty to a criminal prosecution would be able to raise

 4   arguments in somebody else's criminal prosecution doesn't make

 5   a lot of sense.  So if you think this is a quasi-criminal

 6   enforcement action, then --

 7             THE COURT:  Well, do you have the ability to

 8   intervene?

 9             MR. ROWEN:  Almost certainly not.  So Maryland

10   doesn't --

11             THE COURT:  And I don't know -- I don't know Maryland

12   Civil Procedure, so I'm going to let you all help me a little

13   bit.

14             MR. ROWEN:  So Maryland doesn't recognize

15   associational standing.  So NSSF itself could not intervene as

16   of right.  Then the question would be can it intervene under

17   Maryland's version of 24(a)(2), right, permissive intervention.

18   And they look to federal laws, as I understand it, Mr. Chazen

19   can correct me if I've misrepresented how Maryland law works.

20        But my understanding is they look to basically federal law

21   principles for permissive intervention.  And one of the things

22   you look to in courts denying permissive intervention is by

23   definition what NSSF is asking for will broaden the issues.

24        So one of our members who submitted a declaration is Smith

25   & Wesson.  They talked about how they're concerned about how

1   the liability that HB947 imposes could be used to hold them

2   liable for the lawful manufacture and sale of AR-15s in other

3   states.  They also manufacture striker-fired pistols that are

4   similar in design to the Glock pistols at issue there.  But if

5   you look at the Baltimore and Maryland suit against Glock, they

6   specifically allege that Smith & Wesson's striker-fired pistols

7   are different from Glocks.  So to say that they should

8   intervene to raise their arguments there, I think, sort of gets

9   things exactly backwards.

10       And I think Your Honor, a few years ago, had a case in --

11  arising out of a certificate of -- it was an affidavit of

12  support for a Yemeni woman who had married a United States

13  citizen, and then there was a divorce --

14          **THE COURT:**  I remember that.

15          **MR. ROWEN:**  -- and Your Honor held in that case that

16  the third *Middlesex* factor, the inadequate ability to raise the

17  same arguments in the state court meant that *Younger* didn't

18  apply.  And I think that's a fortiori --

19          **THE COURT:**  I think it was because they were not able

20  to get into a J and D court, if I remember correctly.

21          **MR. ROWEN:**  So the specific reason there was that

22  the -- you held that she had a breach of contract claim that

23  was live and the specific reason there was that she wanted

24  damages for six months that was before the divorce proceedings

25  were instituted --

 1              **THE COURT:**  To maintain her during that time period.

 2              **MR. ROWEN:**  Correct.  And what Your Honor recognized

 3    there is if the relief that -- and that was the same party,

 4    right, federal plaintiff, state court defendant.  If the relief

 5    that the federal plaintiff is seeking is broader than the court

 6    is likely or able to grant, then the third *Middlesex* factor

 7    isn't applicable.

 8         And we have that here, I mean, in spades because it's -- I

 9    mean, it is certain, as I understand Maryland law, that NSSF

10    could not intervene as of writing, then you're left to

11    permissive intervention.

12         And the way I understand the third *Middlesex* factor,

13    precisely because *Younger* is an exception and not the rule, you

14    have to be really certain that the federal plaintiff is going

15    to have an adequate opportunity to raise their arguments in

16    state court.  And here, you know, maybe there's a chance.  But

17    maybe there's a chance is not good enough for a federal court

18    to decline to exercise a federal question jurisdiction.

19         And I think that's why -- I've taken a look at all of the

20    Fourth Circuit cases I can find, I can't find a single Fourth

21    Circuit case that has applied *Younger* abstention when the

22    federal plaintiff was not a party in the state court

23    proceedings.

24         I also can't find a single Fourth Circuit case in which

25    the federal plaintiff is not asking to enjoin ongoing state

```
 1   court proceedings.  Even though in a case like Jonathan R.,
 2   which was federal class action against the child welfare system
 3   in West Virginia, even though there some of the parties were
 4   actually the same and some of the relief that they were seeking
 5   would have the effect of sort of changing how the West Virginia
 6   court procedures worked, but because they specifically were not
 7   seeking to enjoin any ongoing state proceeding, and the relief
 8   that they requested was broader than they would be able to
 9   reasonably get in the state court, the Younger was
10   inapplicable.
11        So I'm happy to answer any sort of more threshold
12   questions that Your Honor may have.
13          THE COURT:  I understand.  I'm going to have to go
14   back and reread the Jonathan R. case.
15          MR. ROWEN:  So with that out of the way -- oh, well,
16   one last point of this.  So my friend on the other side filed a
17   Notice of Supplemental Authority pointing to --
18          THE COURT:  Citing the Second Circuit case.
19          MR. ROWEN:  -- well, Judge Quereshi's case in the
20   District of New Jersey.  We just think Judge Quereshi was
21   confused because, you know, we're going to lay this all out on
22   appeal there when the time comes; but there, we were slightly
23   less explicit but we weren't asking to enjoin the pending state
24   court proceedings against Glock there.  Here, I don't know if I
25   can be more explicit, but we're not asking you to enjoin --
```

1      **THE COURT:**  You're explicit here, but your pleadings

2   certainly are not.  I mean, because when I look at your -- the

3   first prayer for relief is that to determine that the statute

4   is void and unenforceable, right.  And I just have to wrap my

5   head around how this court can determine that something is void

6   and unenforceable can enter an injunction that says the statute

7   can't be enforced against any of the members but yet still

8   allow a pending state court proceeding to go forward, how that

9   works.

10      **MR. ROWEN:**  Well, I think in the best interest of

11  comity the injunction, if Your Honor were to enter one, would

12  say, "All NSSF members, except Glock, with respect to that

13  state court suit," because that's pending suit and comity, you

14  know, comity we're supposed to try to allow both proceedings to

15  go forward.

16      And, you know, I take the point that it seems odd to have

17  a federal court say that a state statute is invalid, but to

18  have a state court adjudicating it at the same time.  But that

19  doesn't happen --

20      **THE COURT:**  So what happens if the state court says:

21  This statute's fine.  It doesn't violate the Constitution in

22  any respects.

23      **MR. ROWEN:**  Sure.

24      **THE COURT:**  So where is the Attorney General at that

25  the point?

1          **MR. ROWEN:**  So the Attorney General at that point
2    would be unable to enforce it with respect to anyone, to any
3    NSSF member in light of the federal court injunction.  I assume
4    that the Attorney General would appeal to the Fourth Circuit.
5    I'd be glad if he didn't, but I assume he would.  I'd also
6    assume that Glock would appeal to the appellate court in the
7    Maryland state court system.

8          And if, at the end of the day, the high court of Maryland
9    and the Fourth Circuit disagreed, well, that's what the Supreme
10   Court is for.  And they resolve those sort of circuit splits
11   between a state court of last resort and the circuit of the
12   same state all the time.

13          **THE COURT:**  If they take the case.

14          **MR. ROWEN:**  If they take the case.

15          **THE COURT:**  If they take the case, right, right.

16          **MR. ROWEN:**  With that, I think that's actually a good
17   segue into the merits because the Supreme Court hasn't been shy
18   about interpreting the PLCAA.  They took the Smith & Wesson
19   case where there wasn't really a circuit split to speak of.  I
20   do think what the Supreme Court had to say there about the
21   PLCAA really shows sort of the fundamental problem with
22   Maryland's theory that HB947 can be used as a predicate statute
23   for the purposes of the predicate exception.

24          So the majority opinion or the unanimous opinion from the
25   Court there made clear that PLCAA's core purpose is to prevent

1  the imposition of state law liability on licensed manufacturers

2  and sellers of firearms who comply with all of the myriad

3  concrete rules and regulations that federal, state, and local

4  law impose upon them.

5              THE COURT:  Right.

6              MR. ROWEN:  But, nonetheless, are alleged to have

7  acted unreasonably and contributed to downstream harms.  And

8  that is, on the face of this statute, exactly the type of

9  liability that HB947 seeks to revive.

10     I mean, I sort of don't know what it means to say you have

11  to have reasonable controls so that you comply with law, which

12  is what 2502(b) says.  I also don't know how you can sort of

13  know in real time that your conduct is not unlawful and yet is

14  unreasonable, which is what § 2502(a) requires.

15     And, yes, there are other contexts in which sort of

16  unreasonableness is not sort of so nebulous that, you know,

17  parties don't know what to do.

18     But in this specific context where parties that -- the

19  only parties that are regulated by the statute are heavily

20  regulated at every level of government in the United States

21  and --

22              THE COURT:  So, to me, it looks like maybe a multistep

23  process and you haven't seen any court kind of lay it out this

24  way so I'm not trying to create a standard.  But, you know, the

25  first thing is, is it a predicate statute?  And when you look

1  at the qualified civil liability action, the definition there:

2  The statute is a federal or state statute applicable to the

3  sale or marketing of the product, right, the firearm.

4      Why does this statute -- because I think then the next

5  step you then look at the action, right.  So let's say that

6  Smith & Wesson or Glock, or one of your other members, markets

7  a Glock switch, clearly an unlawful action, right, because

8  they're outlawed.  They couldn't do that.

9      This statute would otherwise apply to that, right?

10      MR. ROWEN:  So I sort of want to answer that in two

11  different ways:  The first is I'd urge Your Honor to look at

12  the predicate exception in its full text and not just that one

13  clause --

14      THE COURT:  No, I am.  But I think you have to work

15  your way through it.

16      MR. ROWEN:  So I agree you have to work your way

17  through it.  But I do think that the fact that the predicate

18  exception itself requires a knowing violation suggests, just

19  textually, that the type of statute that can be a predicate

20  statute has to be something you can reasonably knowingly

21  violate.  Whereas, one of the provisions of this law just says

22  don't market unreasonably.

23      Pretty tough, to me, to understand --

24      THE COURT:  Well, one of the questions I'm going to

25  have for the defendant is, you know, when do you apply that

1   knowing violation?  Is it at the time the action is brought or

2   is it at this point in time, because the predicate exception

3   relates to an action, right?

4        And when you read this statute, the "knowingly" part

5   applies to knowingly creating a nuisance, creating or

6   maintaining a nuisance.  And the rest of it goes on.  In fact,

7   the statute then goes further into the next section and says

8   you don't have to intentionally violate the statute, right?

9        And so I'm going to want to understand from them exactly

10  how the statute works.

11       But why wouldn't this statute otherwise apply to someone

12  who markets a -- who engages in unlawful actions in marketing?

13  Whether they're marketing an illegal device or they're

14  marketing, you know, get your spouse to come buy your gun when

15  you can't have one, right?

16       I'm trying to create something that clearly can't be done.

17            MR. ROWEN:  I understand the hypothetical, and I think

18  that it's actually sort of a helpful way to illustrate what our

19  preemption claim is and is not seeking.

20       So the state spends a lot of time saying, well, this is a

21  facial challenge, and there are sets and circumstances where

22  this could apply.  Our preemption claim is not a facial claim.

23  So we made this very clear in our reply brief, you know, after

24  they had raised this argument.  And all we are saying for our

25  preemption claim is to the extent this statute authorizes

1  liability, that the PLCAA would forbid that the state should be

2  enjoined from doing that.  And that might sound like something

3  like obey-the-law injunction.  But here it's not because we

4  very much disagree with the state on what the PLCAA requires.

5      So all we are seeking on our preemption claim, putting

6  aside our other constitutional claims, is -- the shorthand I

7  could give you is they can't use this statute as the predicate

8  statute.

9      And so in the hypothetical Your Honor gave where it would

10  be unlawful, is this statute wouldn't be the predicate statute.

11  A lawsuit under § 2502(a)(1), the unlawful prong of the

12  nuisance provision, it's got to be unlawful under something

13  else.

14          **THE COURT:**  Right.

15          **MR. ROWEN:**  We have no problem from the PLCAA

16  standpoint with, look, if the state wants to just use HB947 as

17  a cause of action to get heightened damages or something, then,

18  you know, and they can otherwise come within the terms of the

19  PLCAA, we have no beef with that.

20      The problem is that the statutes are so clearly -- and the

21  state doesn't seem to dispute that the statute authorizes

22  exactly the kind of liability that Congress set out to

23  foreclose.

24      So, I mean, I think that --

25          **THE COURT:**  I think the argument I'm going to hear is

1  this, and that is that the way in which a manufacturer,

2  distributor or whatever, markets their product they know is

3  they're marketing it such that it's going to get into the hands

4  of those that are going to commit criminal acts.  It's going to

5  promote the use of the weapon for purposes of criminal action,

6  whatever it may be, and they know that.  And, thus, that's a

7  knowing violation of this statute.

8      Even though each little piece of the marketing you might

9  be able to argue is perfectly fine and perfectly legal,

10  whatever it may be.  It may be that some of the marketing is

11  misleading.  There may be another statute out there that deals

12  with misleading but that's not a gun statute.  That would just

13  be your regular statutes under IP law.

14      So what I think I'm going to hear them say is that you

15  know what you're doing, you're just turning a blind eye to it.

16      And I think that's kind of what the Glock action really

17  is.  You know what your gun is being used for and you're

18  turning a blind eye to it and you're letting it be marketed

19  like this by others.

20          MR. ROWEN:  I think that is sort of how they think

21  their statute works.  Those were the exact allegations in the

22  *Ileto against Glock* that the Ninth Circuit said couldn't be

23  brought under California's public nuance and negligence

24  statutes.  The only difference between California's negligence

25  and nuisance statutes --

1          **THE COURT:**  That was a general nuisance statute,

2   right.

3          **MR. ROWEN:**  So that's the only difference.  But the

4   California courts in *Ileto* one before the Ninth Circuit's

5   opinion had held that the statutes applied to the sale and

6   marketing of firearms.  So there was no dispute that those

7   statutes were, you know, in the wooden reading of the PLCAA,

8   applicable to the sale and marketing of firearms.  But what the

9   Ninth Circuit said is that's sort of a crazy reading of the

10  PLCAA to say that states can just revive the very same theories

11  that Congress specifically set out to prevent states from

12  imposing just by codifying statutes.

13         And the fact that there was no dispute by the time the

14  Ninth Circuit ruled, and, again, they couldn't because there

15  was a state court judgment on what the statute meant, they said

16  that's not enough.

17         And they looked through the legislative history and the

18  purposes that Congress enacted in the text of the statute, and

19  they said, what Congress is worried about is this sort of

20  regulation by adjudication where you're telling firearm

21  industry members who have enormous books of regulations they

22  have to comply with, saying:  Yeah, even though you complied

23  with all of those and nothing you did was unlawful, we still

24  think you acted unreasonably and we're going to judge that

25  after the fact.

1    The reason that doesn't work in this context and the

2  reason the Congress passed the PLCAA in the first place is that

3  firearms are inherently dangerous.  Their purpose is to ward

4  off danger and to be used dangerously, if necessary.

5         **THE COURT:**  So I think the question is, what's going

6  to be posed by Mr. Chazen is, is that inquiry now or is that

7  inquiry at the action stage?

8         **MR. ROWEN:**  So I think it's both because so if you

9  look at -- the predicate exception itself uses the phrase

10  "knowing violation of a state statute applicable."  And so the

11  way that we read and the way that Judge Quereshi read it in his

12  first opinion in New Jersey is that that phrase, "knowing

13  violation," presupposes, sort of a tell that the state or

14  federal statute applicable to the sale and marketing of

15  firearms has to be the type of statute that you can knowingly

16  violate.  And further evidence of that is the congressionally

17  enshrined purposes that I just talked about in § 7901.  I also

18  think the structure of the statute, if you look at the examples

19  that Congress gave in the predicate exception, those are sort

20  of, like, real, concrete obligations.  Don't aid and abet --

21         **THE COURT:**  -- a straw purchaser.

22         **MR. ROWEN:**  -- right, don't lie in records that are

23  required.  Those are things that you know at the point of sale

24  that you are violating the law.

25    But, you know, with the exception of 2502(a)(1), the

1    unlawful prong, you don't know whether you're violating the

2    law.

3        One of our members, Tyler Firearms, he's an FFL here in

4    Maryland, submitted a declaration saying, I'm concerned that

5    the Attorney General is going to use this law in the same way

6    that the New Jersey Attorney General has used their identical

7    law to say that it's a violation, it's a failure to have

8    reasonable controls if I don't run a background check for

9    somebody who comes in to purchase ammunition or magazines.  He

10   said, the problem with that is I don't know if I'm supposed to

11   do it and also I can't.  Because as they explained in their

12   declaration -- I think this is Exhibit 16 -- or it's Exhibit 12

13   actually to our preliminary injunction motion --

14           THE COURT:  Federal law doesn't let him.

15           MR. PORTER:  He's explaining federal law doesn't allow

16   it.

17           THE COURT:  Right.

18           MR. ROWEN:  So are they supposed to do that?  They

19   don't know.

20       And that's exactly the type of sort of after-the-fact

21   liability.

22       Not to mention all of the sort of striker-fired pistols

23   that are similar but distinct from Glock pistols.  Are our

24   members allowing to continue marketing those?  Will the

25   Attorney General in a year decide, actually, its unreasonable

1   that you were marketing those?  Even though your marketing is
2   truthful and nonmisleading.  So it didn't trigger the unlawful
3   prong of § 2502(a), we're going to say it was unreasonable and,
4   gosh, lots of people have been switching these handguns in the
5   black market, and so it's contributed to the -- to harm to the
6   public and you should have known that.  That's exactly what
7   Congress was trying to prevent.

8        If the state wants to regulate new practices, my client's
9   members will -- they will comply with what they're told to do,
10  you know, consistent with the Second Amendment.  But putting
11  sort of that aside, what they want and what Congress wanted
12  states to have to do is to regulate on the front end, rather
13  than kick it to state court judges to decide sort of after the
14  fact.

15       And, you know, the state makes this argument that no, no,
16  no, if you look at what the PLCAA said, one of the purposes
17  recognized that we want state legislatures to be allowed to do
18  this and this is a state statute.  So it's a state statute but
19  it just punts everything to the Attorney General and the
20  courts.

21       I mean, again, I think the fact that 2502(a) specifically
22  disjoins unlawful conduct and conduct that is lawful but
23  unreasonable, and that even -- and 2502(b) doesn't have a mens
24  rea requirement.  It doesn't provide any idea what the controls
25  are.  It just tells you what the purposes are supposed to serve

1   are.  That that's sort of the exact sort of liability that

2   Congress was setting out to foreclose.

3       I also think, just to segue from there, that sort of

4   there's a real vagueness problem with this statute.  And,

5   again, putting to the side the unlawful prong because sort of,

6   as I understand that prong, it bakes in --

7           THE COURT:  It really does morph the constitutional

8   issues into the preemption question in many respects, right?

9           MR. ROWEN:  So, I mean, I think they're related.  I

10  suppose sort of conceptually you could think that the statute

11  is just below the line of what would trigger

12  void-for-vagueness, but still nonetheless is not a predicate

13  statute.  We happen to think it's far above the line of what is

14  void-for-vagueness.

15      I printed out a quote from Justice Scalia's opinion in

16  *Johnson*.  The state's argument is essentially, as I understand

17  it, it's reasonable if it's a tort law concept and, you know,

18  that's not vague.  If you're saying that this is

19  void-for-vagueness, then you're saying all tort law is

20  void-for-vagueness.

21      What Justice Scalia explained in the *Johnson* case was --

22          THE COURT:  Is this him describing knowingly?

23          MR. ROWEN:  So he's describing reasonable.

24          THE COURT:  Reasonableness.

25          MR. ROWEN:  So he said, "The statements in some of our

opinions could be read to suggest otherwise.  Our holdings

squarely contradict a theory that a vague provision is

constitutional merely because there is some conduct that

clearly falls within the provision's grasp.  For instance, we

have deemed a law prohibiting grocers from charging an unjust

or unreasonable rate, void-for-vagueness, even though charging

someone a thousand dollars for a pound of sugar would surely be

unjust and unreasonable.  We have similarly deemed

void-for-vagueness a law prohibiting people on sidewalks from

conducting themselves in a manner unknowing to persons passing

by.  Even the spitting in someone's face would surely be a

knowing."

    Those two cases are *L. Cohen Grocery* and *Coates v.*

*Cincinnati*.  These decisions, he says, "refute any suggestion

that the existence of some obviously easy cases established the

statute's constitutionality."

    And we think --

        **THE COURT:**  So is there a difference between -- and,

you know, *Johnson* was under the ACCA, right?

        **MR. ROWEN:**  Yes.

        **THE COURT:**  And this is a civil statute.  Is there a

difference between how we look at that from a criminal

standpoint where the statutes are very, very strictly

construed, and they need to be clear -- and maybe this has an

impact on the abstention question, whether it's a

 1  quasi-criminal matter or not.  But in a civil case -- I was a

 2  civil lawyer for over 20 years, we swim in reasonableness,

 3  right.  I mean, that's the way we make our living is arguing

 4  whether a person's actions were or were not reasonable,

 5  whatever it may be.

 6      Is there a difference between what Justice Scalia is

 7  describing and what we need to address here?

 8          **MR. PORTER:**  So, not here.  So there is sort of in the

 9  general context, right?  A general commercial statute and a

10  criminal statute are going to have a different vagueness

11  standard.

12          **THE COURT:**  Sure. Right.

13          **MR. ROWEN:**  But the Supreme Court, dating back to the

14  *Village of Hoffman Estates* in the '70s, has made clear that

15  when a statute at least arguably implicates fundamental

16  constitutional rights, the strictest vagueness standard that

17  applies in the criminal context applies in a civil context too.

18  And the sort of reason for that is criminal statutes aren't

19  special, it's just that they sort of automatically implicate

20  your fundamental liberty, and often property interest, but your

21  fundamental liberty interest.

22      And there is no debating that this statute at least

23  implicates, and we think violates, but at least implicates

24  First and Second Amendment rights.

25      So given that, it's the same sort of heightened standard.

1        And, again, just sort of textually on the face of this
2   statute, if the one thing that I think is crystal clear is that
3   lawful conduct violates this statute, and the state says, no,
4   no, no, it's the industry members' own misconduct.  But what
5   they mean by that is conduct that is otherwise not unlawful
6   that we are after-the-fact going to say was so unreasonable
7   under all of the circumstances that you should have known
8   better.

9        I think the lesson of the quote that I just read to you is
10  when you're dealing with a statute that implicates fundamental
11  constitutional rights, there, the liberty interest not to be
12  incarcerated; here, the First and Second Amendment rights, that
13  that's not good enough.  You actually have to give regulated
14  parties sort of an idea of what you want them to do.  And just
15  telling them "act reasonably" isn't enough.  And yet that's all
16  (a)(2) and (b) boil down to.

17       And, you know, I think that also sort of lends itself to
18  why there's such a pernicious First Amendment problem here
19  because both the reasonable controls provision and the public
20  nuisance provision, marketing can violate them.  And the state
21  says, well, you know, most of the violations are just going to
22  be misleading speech or false speech.  Well, that's true under
23  (a)(1) because false and misleading speech is already unlawful
24  in Maryland.

25       But the only application of the other two provisions is

 1  going to be to speech that is not unlawful.  Speech that does

 2  not promote unlawful use of a product, which is itself

 3  unlawful.

 4      And so if the state had just passed a statute that said,

 5  "Don't market unreasonably," I think everybody would agree that

 6  that's a First Amendment violation because even if you're

 7  applying intermediate scrutiny, which we've reserved the

 8  argument that --

 9          THE COURT:  Right.

10          MR. ROWEN:  -- strict scrutiny should apply.  But as

11  the Fourth Circuit just made clear two weeks ago in the *Chamber*

12  *of Commerce* case, that even under intermediate scrutiny the

13  state actually has to come forward with evidence showing the

14  harms that it's worried about wouldn't be served by a

15  less-burdensome law.

16      I can't think of a law that imposes more burdens on

17  commercial speech than one that says, "don't market

18  unreasonably," especially when it's disjoined from "don't

19  market unlawfully."

20      So given that, I mean, I just think the First Amendment

21  problem is pervasive with this statute.  It applies to both

22  (a)(2) and (b).  And for the same reasons, you know, the

23  vagueness problem applies to all of the different types of

24  conduct that can violate the statute, not just marketing but

25  also distributing, manufacturing, selling and importing.

```
 1        And, you know, while, if you ruled for us on vagueness
 2   alone, that would sort of, I think, end the case essentially
 3   from our perspective.
 4        But I do want to go on, you know, if I have time to talk
 5   about --
 6           THE COURT:  Go right ahead.
 7           MR. ROWEN:  -- talk about our other claims.
 8           THE COURT:  I've got all day.  All I have to do is
 9   drive home.
10        (Laughter.)
11           MR. ROWEN:  I appreciate that.  I'll try not to be
12   here all day.
13        So on the Dormant Commerce Clause, the State's arguments
14   are the exact same arguments the Fourth Circuit rejected in the
15   Association for Accessible Medicines v. Frosh case, that
16   statute directly regulated out-of-state wholesale transactions
17   of prescription drugs.
18        And the Maryland Attorney General made the argument in
19   this courtroom and at the Fourth Circuit that, you know, it
20   didn't apply extraterritorially because there was a nexus to
21   Maryland because the statute only kicked in if the drugs made
22   it into Maryland and then harmed Marylanders by being at too
23   high of a price.
24        And the Fourth Circuit said, yeah, that's not how this
25   works.  The fact that there are effects in the state is not
```

 1   enough for you to reach out and directly regulate out-of-state

 2   transactions.

 3        While the state sort of quibbles about whether they have

 4   an intent to do that, they notably never come out and say that

 5   that's not what they're planning to do under this statute.

 6        I think it's clear by the way they're trying to argue that

 7   there is no problem with, you know, for instance, saying that a

 8   store in Texas had insufficiently reasonable controls and now

 9   we're going to enjoin that store in Texas to have the controls

10   that Maryland wants, even if, for instance, it complied with

11   all of the Texas law.

12        **THE COURT:**  But how do they get jurisdiction over that

13   store in Texas that doesn't market in Maryland?  How do they

14   get jurisdiction over the store in Texas that sells to a Texas

15   resident who then moves to Maryland and, you know, and comes up

16   here, and then puts a Glock switch or a switch in their Smith &

17   Wesson and commits some criminal act?  Whatever it may be.

18        **MR. ROWEN:**  So I would hope that a court wouldn't find

19   personal jurisdiction there.  But the theory that I have seen

20   in cases is, well, you knew that it would wind up there.  And

21   because your volume of sales is so big, and the risk of harm

22   from firearms is just so great that the logic of, like, the

23   *Ford* case just applies *a fortiori* in this context.  I would

24   love for that not to be the rule.  My client's members would

25   love for that not to be the rule, but I think Judge Schopler in

1  the Southern District of California case, and this is *NSSF v.*

2  *Bonta* --

3         THE COURT:  He was in my baby judge class.

4     (Laughter.)

5         MR. ROWEN:  But I think he got this exactly right when

6  he said a similar statute could reach out and be applied

7  against out-of-state Congress, and maybe there will be

8  instances in which personal jurisdiction is tough to get.  But

9  it's not going to be hard if it's a Virginia store.

10         THE COURT:  But in the products context, for example,

11  that distributer isn't clearly not preempted, so if that gun

12  was defective in some way, that distributor is not liable up in

13  Maryland if that gun is up in Maryland and it misfires and

14  blows up in their hand.  Smith & Wesson would be as the

15  manufacturer because they're in Maryland but --

16         MR. ROWEN:  But I think that actually gets to a

17  crucial distinction between this statute and a products

18  liability statute.  This statute does not regulate products.

19         THE COURT:  Right.

20         MR. ROWEN:  This statute regulates --

21         THE COURT:  Advertising.

22         MR. ROWEN:  -- conduct, right?  Advertising, selling,

23  distributing, manufacturing, that's what violates this statute.

24  And, essentially, no firearms manufacturing happens in

25  Maryland.

 1      So, like, the idea that this statute isn't going to be

 2   applied to out-of-state conduct I think sort of beggar's

 3   belief.  I mean, I would be thrilled if the Attorney General or

 4   his counsel were willing to stand up here and say, we will

 5   not -- even if the product comes into the state, we will not

 6   enforce the statute against conduct that takes place entirely

 7   out of state.  But I have a feeling they're not going to say

 8   that.

 9      Again, if they are, great, we can enter into a consent

10   decree under our Dormant Commerce Clause claim.

11      But under the *AAM v. Frosh* case from the Fourth Circuit, I

12   just think the arguments that they made here are squarely

13   foreclosed by that decision.

14      Last, but not least, is the Second Amendment and the

15   State's entire argument above the line is that this doesn't

16   implicate the Second Amendment at all.  And there's now a

17   consensus among federal courts of appeals that when you're

18   dealing with a law that directly regulates sort of firearms

19   activity, even if sort of the object of the regulation is

20   selling, that of course that implicates the Second Amendment.

21   We cited to the Sixth Circuit case in *Knipp*.  There's a Ninth

22   Circuit case --

23          THE COURT:  So help me -- and I'm going to have to try

24   to put the arguments back together -- if it implicates the

25   Second Amendment, then it's a statute that regulates the sale

```
 1   of firearms, right?
 2          MR. ROWEN:  Of course.  And, again, this goes back
 3   to --
 4          THE COURT:  Which then puts us back in the preemption
 5   as a predicate statute.
 6          MR. ROWEN:  To the extent this court agrees with the
 7   Second Circuit's recent decision, I think that was essentially
 8   their logic.
 9          THE COURT:  Right.
10          MR. ROWEN:  We think that logic, consistent with what
11   the Ninth Circuit said and what the Supreme Court just said, is
12   the whole point of the PLCAA.  Just reads the PLCAA to sort of
13   collapse upon itself because then any old statute that does
14   exactly what the PLCAA was enacted to prevent, if you add this
15   applies to sale and marketing of firearms in the statute, then
16   you're good to go and you can impose the nuisance and
17   negligence laws to your heart's content.
18          THE COURT:  But this statute -- and I recognize where
19   you're going, you brought it out -- I mean, this statute has a
20   pinpoint target, right, and that is only one product or series
21   of products.  But it doesn't relate to the sale of kitchen
22   sinks.  It's just firearms and firearms-related products.
23          MR. ROWEN:  And so, I mean, that's certainly true, but
24   I don't see how that makes it better from the perspective of
25   when you're talking about preemption.  I mean, at the end of
```

1  the day, preemption, the touchstone is Congress's purpose.  We

2  know what Congress's purpose was.

3          THE COURT:  You may get there through other parts of

4  it.  I'm just trying to be consistent that if this statute

5  regulates the sale of firearms --

6          MR. ROWEN:  Right.

7          THE COURT:  -- your argument is that implicates the

8  Second Amendment.  But if it's one of many purposes that it

9  affects sale of firearms, maybe it doesn't implicate the Second

10  Amendment.  I don't know.

11          MR. ROWEN:  I'll be very clear on what our PLCAA

12  argument is and then I'll close.  Obviously, this law literally

13  applies to the sale of firearms.

14          THE COURT:  Clearly.  Right.  Right.

15          MR. ROWEN:  To dispute that would be folie.  Our

16  argument is to read the PLCAA, as the Second Circuit just did,

17  as Judge Jacobs explained in his concurrence where he said, I'm

18  bound by our precedent to hold this but this seems nuts, is

19  just to allow the predicate to swallow the entire statute.

20          I think if you thought that, you know, if it were a

21  different plaintiff from Mexico, but if it were a state that

22  brought the same lawsuit that the Supreme Court said couldn't

23  be brought in the *Smith & Wesson* case, and they just did it

24  pursuant to a statute that specifically called out the firearm

25  industry, I think the Supreme Court would have come out exactly

1    the same way because the problem is not whether it's a statute

2    or common law action, the problem is the kind of liability

3    that's been imposed.

4        And the kind of liability that this statute authorizes is

5    just squarely in the teeth of what Congress was trying to

6    foreclose.

7        So to quickly wrap up.  So on the Second Amendment, the

8    State's only argument with respect to historical tradition is

9    in a footnote and that footnote just says there have been

10    restrictions on sales and marketing of firearms in history.

11    That's true.  But that sort of cartoonishly high level of

12    generality is not how the historical tradition in court works.

13    You have to look at whether those laws had the same how and why

14    as this.

15        And the Third Circuit in the *Camden County* case 20 years

16    ago made very clear that there's no tradition in this country

17    of using public nuisance law that it's lawful to hold that

18    lawful firearms are nonetheless, you know, that you can be

19    liable for manufacturing and selling lawful firearms under

20    nuisance and negligence theories.

21        So for all those reasons, we think we're likely to succeed

22    on our claims.  We also think that Your Honor should find that

23    there's irreparable harm and that the balance of inequities

24    favor NSSF.

25        And just one quick point on irreparable injury.  Maybe my

1  friend will correct me, but as I read their brief the State has
2  said the damages will be on the table to the extent that we
3  win.  And so we welcome that waiver of the State's Eleventh
4  Amendment immunity.
5          THE COURT:  They certainly ask for disgorgement of
6  profits and restitution and all that stuff.
7          MR. ROWEN:  So, you know, we welcome --
8          THE COURT:  I assume the profits would be pretty
9  substantial.
10         MR. ROWEN:  I think so.  I think that also sort of
11 gets to why the harm here is really irreparable.  So, you know,
12 they make the point that, well, some of our big members in NSSF
13 won't be put out of business if this law is imposed against
14 them.
15     But I think it's important to look at the Tyler Firearms
16 declaration that I mentioned earlier, where he said, if I'm
17 required to -- in his words -- impose extra legal obligations
18 on my customers -- he did a pole on the Internet and within,
19 like, minutes a hundred of his customers said we'd stop
20 patronizing you.
21     The economic and reputational harm that this -- that
22 complying with what this law may or may not require is exactly
23 the type of, you know, irreparable injury and perhaps the
24 economic harm is not irreparable because the State is willing
25 to waive their Eleventh Amendment immunity.  But even so,

1  there's still irreparable injury here, in spades, because of
2  the constitutional violations and because as the Ninth Circuit
3  again held in the *Ileto* case and as the *In re: Academy* case
4  from the Texas Supreme Court held, the PLCAA doesn't just
5  create affirmative defense, it's an immunity.  In § 7902, it
6  directs that then-pending suits should be dismissed.

7           THE COURT:  Should be dismissed, right.

8           MR. ROWEN:  The Fourth Circuit in the *Nemet Chevrolet*
9  case that we cite in our reply brief interpreted the
10 Communications Decency Act in exactly the same way, which was
11 even sort of less explicit.  They said, that's an immunity,
12 it's not just an affirmative defense.  And the one thing that's
13 true about immunity above all is the loss of an immunity is
14 irreparable per se.

15      So we'd ask Your Honor to grant our Motion for Preliminary
16 Injunction.

17           THE COURT:  All right.  Thank you, Mr. Rowen.

18      I hope you have kept track of all of the arguments because
19 I didn't write them down.

20           MR. CHAZEN:  I did my best so we'll work together on
21 that, Your Honor, if that's okay.

22           THE COURT:  I'll let you take them in whatever order
23 you would like.

24           MR. CHAZEN:  Sure.  Once again, Your Honor, Joshua
25 Chazen, on behalf of the Defendant, Attorney General Anthony G.

1  Brown.

2      I want to set the table, obviously plaintiff went first

3  today but I think I'm --

4          **THE COURT:**  You want to reorder the table.

5          **MR. CHAZEN:**  Maybe shift the silverware around a

6  little bit so to speak for the analogy to make sense.

7      I'm also not great with the acronyms so if I refer to

8  NSSF, I'm going to refer to that as the Foundation.  If I'm

9  referring to Maryland's law, that's the Act.  The one exception

10 I'm make is the PLCAA because that's easier to roll off my

11 tongue.

12     So the Act, Maryland's Act, was passed in 2024.  It was

13 done to address the harms caused by the gun industry's own

14 conduct.  And much like the similar New York law discussed in

15 detail by the Second Circuit last month, the Act is exactly the

16 type of law that Congress allowed to go into effect.

17     As Your Honor highlighted, there's been a campaign of

18 lawsuits brought by the Foundation across the industry, but

19 that doesn't change the simple truth here:  The Act does not

20 violate PLCAA.  It does not violate the Dormant Commerce

21 Clause.  It does not violate the First Amendment.  It does not

22 implicate or violate the Second Amendment.  And it does not

23 violate the Equal Protection Clause or the Due Process Cause,

24 excuse me, of the Fourteenth Amendment.

25     And I don't want to over-detail the highlights of the

1  State case, and by that I mean the case brought against the two

2  Glock entities in the Circuit Court for Baltimore City here in

3  the state, but that case deals with Glock's own conduct and

4  specifically Glock's own conduct:  Its decision to continue

5  selling and marketing its easily modified pistols to Maryland

6  civilians; refusing to implement simple changes to its pistol

7  design; its decision to knowingly create, maintain and

8  contribute harm to the public through unreasonable conduct; and

9  by failing to establish and implement reasonable controls.

10      THE COURT:  So the Foundation -- and I appreciate you

11  using that term because that makes it much easier for me --

12  they say let that case go, just let it go forward, and then

13  we'll deal with everything else here.

14      MR. CHAZEN:  So I'm glad to hear some concessions

15  being made today.  The relief specifically requested in the

16  complaint and the Motion for Preliminary Injunction, ECF's 1

17  and 3, respectively, do not contemplate that.

18      We get concessions as things go along.  We get some

19  concessions in the Reply.  We get some concessions in the

20  Response to the Notice of Supplemental Authorities.  And then

21  we get concessions here today by my colleague on the other

22  side.

23      But enjoining a law as to everybody except one member who

24  belongs to this organization bringing this claim today that

25  it's unconstitutional is going to reek havoc for a lot of

 1  reasons.

 2      First, it allows --

 3      THE COURT:  Actually, it would apply still -- a ruling

 4  would apply to that member to the extent that there was other

 5  activity that you wanted to bring a separate lawsuit.

 6      MR. CHAZEN:  And I was going to mention that.  That is

 7  the specific contention that was detailed.  It's not bring any

 8  lawsuits against Glock under the Act; it's, you can have this

 9  one but don't let anything else go forward and you can't let

10  anything go forward.

11      THE COURT:  But where they may have some traction, and

12  I haven't decided on it yet, is the argument that Mr. Rowen

13  specifically made about Smith & Wesson more broadly that an

14  association can't intervene, and that there's no identity or

15  similarity of the parties, that this case has a broader --

16  broader moat, if you will, than the case in state court.

17      MR. CHAZEN:  Sure, Your Honor.  So a couple of things

18  regarding standing.  My colleague on the other side left it to

19  me to brief the court on Maryland law and associational

20  standing.  While I do take some issue with that, I'm happy to

21  provide some citations to the court.

22      We would respectfully request that the court review *Voters*

23  *Organized for the Integrity of City Elections v. Baltimore City*

24  *Elections Board*, that is 451 Md. 377.  It's a 2017 case.  It's

25  decided by our highest court, which recently underwent a name

1    change.  So if you see citations to the Court of Appeals of

2    Maryland predating this decade, that is the Supreme Court of

3    Maryland, which is Maryland's highest court.  It used to also

4    be called the Court of Special Appeals here in the state.  It's

5    now the appellate court of Maryland, just for your benefit.

6         So at 451 Md. 377 at 396 to 397, there's a specific

7    citation and it's quoting another case, which I'm loathed to

8    do, but that case, just as I'm quoting it, is *Evans v. State*

9    396 Md. 256 at 328 to 329.

10        That quote is:  "We have long held the view that under

11   Maryland common law principles for an organization to have

12   standing to bring a judicial action it must ordinarily have a

13   property interest of its own, separate and distinct from that

14   of its individual members, and that . . . an organization has

15   no standing in court unless it has also suffered some kind of

16   special damage from such wrong differing in character and kind

17   from that suffered by the general public.  If it were

18   otherwise, if any person or group disenchanted with some public

19   policy, but not adversely affected by it in some special way,

20   were free to seek a judicial declaration that the policy is

21   invalid, the courts, rather than the legislative branch, would

22   end up setting public policy, and that is not the proper role

23   of the judiciary."

24        And so I don't think that's so far fresh from the lessons

25   taken.  But there is a Maryland Rule 2-241(b) that allows for

1  parties to intervene.  We do have an associational standing

2  issue.  What we haven't established yet is what are the

3  interests specifically implicated by the association or the

4  Foundation, excuse me, as opposed to its individual members.

5      To be clear, Glock has filed a motion to dismiss in the

6  state case and it makes the exact same arguments brought here

7  by the Foundation.

8      There's going to be no difference if this court were to

9  say under *Younger* abstention I need --

10         THE COURT:  Is that answer or a motion part of the

11  record here?

12         MR. CHAZEN:  It would be the ability to take judicial

13  notice.  The specific filing is not but that is part of the

14  Maryland judiciary's docket, Your Honor.  And part of that

15  would go back to sort of the timeline to help you.  I know that

16  was a question that came up in the status conference.

17         THE COURT:  Can you file that?  If you don't mind.

18         MR. CHAZEN:  We'd be happy to file that in this

19  record, Your Honor, following the hearing.

20         THE COURT:  Thank you.

21         MR. CHAZEN:  Just to give you the timeline because I

22  know that's a question that came up before, and I think it's

23  relevant here.

24      The complaint in the state case was filed on

25  February 12th; summonses were issued February 20th; the

1  American subsidiary of Glock, also known as Glock, Inc., was

2  served on April 2nd; this lawsuit was filed April 3rd; the

3  Austrian parent was served on April 24th; and Glock, both the

4  American subsidiary and the parent, filed a Motion to Dismiss

5  on July 23rd.  They also filed a Motion to Stay Proceedings on

6  that same day.

7          THE COURT:  To wait and see what happens here?

8          MR. CHAZEN:  That was part of it.  There is a second

9  part that relates to cases to be taken up by the Supreme Court

10  of Maryland in September and October that relate to nuisance

11  law.

12          THE COURT:  This law or?

13          MR. CHAZEN:  Not this law, Your Honor, separate cases.

14          THE COURT:  General nuisance law.

15          MR. CHAZEN:  One is on a certified question from this

16  court, and one is litigation that stemmed in the city as well.

17  They do address somewhat different issues, but overall

18  thematically address nuisance, but it's not specific to this

19  law in terms of its constitutionality or not.

20      They also, as Your Honor pointed out, the Motion to Stay

21  Proceedings relates to this matter here and --

22          THE COURT:  And has the state court dealt with that

23  motion to stay yet?

24          MR. CHAZEN:  It has not.  Both -- the plaintiff's

25  responses to both motions are due September 10th, and there

currently is a hearing scheduled on September 12th.

      **THE COURT:**  And has the plaintiff responded to the Motion to Dismiss?

      **MR. CHAZEN:**  No, Your Honor, that is also due September 10th.

      **THE COURT:**  When that's filed, just so that I've got both the motion and the response, when that's filed if you can file that in this court so I'll take judicial notice of those.

      **MR. CHAZEN:**  Be happy to do that, Your Honor.

      **THE COURT:**  No objection to me taking judicial notice of those pleadings, Mr. Rowen?

      **MR. ROWEN:**  No objection, Your Honor.

      **THE COURT:**  Thank you.

      **MR. CHAZEN:**  So I want to highlight a little bit about *Younger* abstention.  I know that's where my friend on the other side started and there's a lot to go into the merits.  But I do want to highlight the *Younger* abstention for a few reasons.

    The first is what I heard today, but *Younger* applies to bar federal relief in certain civil actions.  That comes from a Supreme Court case *Sprint Communications, Inc. v. Jacobs.* There's also --

      **THE COURT:**  And I think -- Mr. Rowen will correct me, he's not shy -- but I think where he is is really on the *Middlesex* factors.  I don't think there's a real disagreement that this is a quasi-criminal matter.  It's brought by the

1    state.  It's seeking to impose -- certainly it's not liberty

2    issues, but -- what is essentially a financial penalty for

3    actions that the state believes to be wrong.

4        And the real issue is whether full and complete relief can

5    be granted to the association, if you will, regardless of

6    whether it intervenes.  And I don't think that's an absolute

7    necessity, whether full and complete relief can be granted or

8    at least the same arguments raised below.

9        MR. CHAZEN:  Sure.  In jumping to Middlesex, and just

10   to be clear, in its opening memoranda -- and I appreciate Your

11   Honor's point -- the Foundation expressly addressed that a more

12   stringent vagueness test applies for statutes that impose

13   quasi-criminal penalties.  So why make that argument if they

14   didn't believe that it was a quasi-criminal statute?

15       THE COURT:  Right.

16       MR. CHAZEN:  I think they tried to walk that back in

17   their reply.

18       THE COURT:  I'm not asking him to concede it, but I

19   think that's where his argument focused at least in my --

20       MR. CHAZEN:  And so in looking at the three factors

21   from our Notice of Supplemental Authority, there's the recent

22   case out of the District of New Jersey.  It's true that the

23   Foundation is not a defendant in the state case.  But that's

24   not relevant under the standard here in the Fourth Circuit and

25   that was reiterated in *Nivens v. Gilchrist*.  There's the three

1  factors:  An ongoing state judicial proceeding instituted prior

2  to any substantial progress in the federal proceeding.  That

3  box seems to be checked to me.  That implicates importance of

4  substantial or vital state interest.

5      I don't think protecting the health and the welfare of

6  citizens is anything but an important substantial or vital

7  state interest and that, in fact, has been elicited from the

8  Fourth Circuit and the Supreme Court.

9      And then third prong, of course, which is Your Honor's

10  point, provides an adequate opportunity.

11      All three are present here.  I'll just stick with the

12  third one.  If Your Honor needs further clarity on the first

13  two, you'll let me know.

14      Glock is an NSSF member, and they have an adequate

15  opportunity to raise the federal constitutional claim advanced

16  in the federal lawsuit.  That's evidenced by their Motion to

17  Dismiss.

18      And while the Foundation and Glock, Inc. are legally

19  distinct, they are so closely related that they should all be

20  subject to the consideration from *Younger* and its progeny.  We

21  have two cases that supports that proposition:  *Duran v. Salem*

22  *Inn, Inc.*, 422 U.S. 922; and *Hicks v. Miranda*, 422 U.S. 332.

23  Both of those are from 1975.

24      Glock, Inc. is a member of the Foundation.  And the

25  Foundation's vice president and general counsel serves on the

1  Foundation's Board of Governors.  In response to Defendant's

2  Notice of Supplemental Authorities, the Foundation just sort of

3  ignores the standards and requests the court enjoin and

4  interfere directly with any ongoing state proceeding against

5  Glock just by stating the Foundation is not a party.

6      But that's not the State's or in this case the Attorney

7  General's understanding of the law in this circuit.  And it

8  ignores opportunities that the Foundation and/or its members

9  can intervene, whether that's associational standing or an

10  individual member's moving pursuant to 2-2242(b).  And I've

11  cited the Maryland case that we would rely on here that

12  discusses in detail about associational standing.

13      THE COURT:  So Smith & Wesson wants to intervene in

14  the Glock suit, you think that that's permissible under

15  Maryland law?

16      MR. CHAZEN:  Smith & Wesson would have the opportunity

17  to brief the court as to how their interests are implicated by

18  the court, in part, allowing this case to go forward but really

19  now at this threshold whether the law is constitutional or

20  unconstitutional.  That is the Attorney General's position,

21  Your Honor.

22      Whether the circuit court accepts a motion to intervene, I

23  think that would go beyond the pale Here for me to --

24      THE COURT:  Would the Attorney General object?

25      MR. CHAZEN:  If -- as long as the issues are within

1    the line of the rule, I don't know that there would be an

2    objection.  But if there's a deviation from the rule, of course

3    I think the Attorney General would assert its objection as

4    violating the rule.

5                THE COURT:  I'm not trying to box you in, I'm trying

6    to figure out --

7                MR. CHAZEN:  Those are questions we get all the time

8    regarding laws here in Maryland so that's no problem.

9           But certainly what makes clear is we have -- and I think

10   there are two different pieces together.  You have the

11   Foundation and its individual members.  I think what I heard

12   from the other side is the Foundation might not have the

13   ability to move.  I didn't hear that the individual members did

14   not have the ability to movement.  And I would say that the

15   rule pretty clearly outlines the elements that need to be met

16   for the individual members to move.  I think this case

17   highlights the associational standing piece or the case that I

18   cited earlier which is the *Voters Organized* case.

19               THE COURT:  I'm sure the circuit court would love to

20   have 10,000 motions to intervene on its way.

21               MR. CHAZEN:  I would say in the Circuit Court for

22   Baltimore City's fairness, they deal with very complex dockets

23   all of the time.  This would not be an unusual situation,

24   whether they welcome it or not, I can't speak to that of

25   course.

1          (Laughter.)

2              **THE COURT:**  Right.

3              **MR. CHAZEN:**  All that's done by abstaining, if Your

4    Honor is to do that.  You will give Maryland state courts the

5    opportunity to construe state law in a way that avoids

6    unwarranted determinations of federal constitutional questions.

7          And I think the District of New Jersey and the same judge

8    has ruled in different two ways.  I don't think *Younger*

9    abstention came up the first time, which was the preenforcement

10   challenge.  So I don't know that it's inconsistent any way to

11   the extent that my friend on the other side said that.

12         But I think that certainly lays a baseline foundation that

13   *Younger* abstention can and from the state's position should

14   apply.

15         But if the court does not deny the motion on *Younger*

16   abstention, the Foundation is still not entitled to the relief

17   requested and specifically, I guess, the relief requested today

18   at this hearing.

19         So let's start with the PLCAA.  There was one area that I

20   do want to start with because Your Honor did highlight that you

21   would be asking me the questions, so maybe in an effort to

22   avoid you asking I will just start with --

23             **THE COURT:**  Right.

24             **MR. CHAZEN:**  -- the knowledge --

25             **THE COURT:**  Yeah, tell me how the statute works

 1   because when you look at the structure of -- I just had the

 2   statute in front of me -- when you look at the structure of the

 3   statute, under the first part of it --

 4          **MR. CHAZEN:**  Yes, so --

 5          **THE COURT:**  Here we go.  Under 3-502, it says:  "You

 6   shall not knowingly create, maintain, or contribute to harm,"

 7   right?  That's the nuisance.

 8          **MR. CHAZEN:**  That is correct, Your Honor.  So I think

 9   it's important to answer that question specifically looking at

10   the Act, which I'm going to get to, but we have to relate it to

11   the PLCAA.  And I think the PLCAA helps to outline why this is

12   appropriate.

13       Your Honor said we swim in reasonableness when we deal

14   with nuisance law and that's the case here.  The Foundation's

15   contention is that the Act is preempted because it's impossible

16   for a firearm industry member to know whether their conduct

17   meets the standard in the Act and that's contradicted by the

18   law.  But it, more importantly, conflates to aspects of the

19   predicate exception.  And I think it's important to outline

20   that before going into the Act.

21       So for a lawsuit to be viable under the predicate

22   exception, a plaintiff, such as the state of Maryland, must

23   satisfy the predicate exceptions knowledge and causation

24   elements.  But the predicate statute itself need not define the

25   required state of mind of a defendant such as Glock, Inc.

1      So it's valid and not preempted by the PLCAA for the Act

2  to require knowledge as to a firearm industry member's own

3  conduct, which it does, but not as to whether that conduct is

4  unlawful or unreasonable.

5      And it's valid and not preempted by the PLCAA for the Act

6  to require knowledge as to the firearm industry member's own

7  conduct but not as to whether the firearm industry member

8  creates, maintains, or contributes to a public nuisance.

9      And the same thing for establishing and implementing

10  reasonable controls.  They don't have to have the knowledge of

11  whether a given control is reasonable, despite it being a

12  defined term under the Act.

13      So it makes perfect sense --

14          THE COURT:  But the statute goes forward and says that

15  the Attorney General, or whoever is seeking to enforce the

16  statute, it could be the city of Baltimore, the Attorney

17  General does not have to prove an intent to violate the

18  statute, right?

19          MR. CHAZEN:  In bringing the claim that's correct,

20  yes.

21          THE COURT:  And in establishing liability under the

22  claim.

23          MR. CHAZEN:  That is correct, yes.

24          THE COURT:  Correct.  So setting aside the unlawful

25  piece, Mr. Rowen's point with respect to that is if it's

1  unlawful it's not unlawful under this statute; it's unlawful

2  under another statute, and there's probably a mens rea

3  requirement associated with that.

4      So dealing with subsection (a)(2), if you don't have to

5  prove a knowing violation of the statute, how does (a)(2), part

6  of a predicate statute -- I think that's what Mr. Rowen's point

7  is if I'm understanding correct.

8          MR. CHAZEN:  So the Act's core provisions, which

9  includes this Your Honor, they function just like the examples

10  in the PLCAA.  So in looking at 15 U.S.C. § 7903(5)(A)(iii),

11  neither of those examples require that an applicable predicate

12  statute include any reference to mental state, knowing or

13  otherwise.  To qualify for the predicate exception and survive

14  the PLCAA, a lawsuit must allege a violation of a predicate

15  statute that is both knowing and a proximate cause of harm to

16  the plaintiff.  The predicate statute itself need not reference

17  any mental state.

18      So we have examples where the fact that the PLCAA might

19  lock some cases, it doesn't mean that the Act is invalid in its

20  entirety, nor is it invalid in how it brought this action

21  against Glock.

22          THE COURT:  But what I think the Foundation's argument

23  really is, they don't really say it this way, but Mr. Rowen

24  will correct me if I'm wrong, is really the challenge in this

25  case is under (a)(2); the challenge really is not as to (a)(1).

```
 1        And, in fact, Maryland can bring (a)(1) claims all day
 2   long and I don't think you would have any challenge in that
 3   regard.  It's -- in fact, Mr. Rowen say that.  It's under
 4   (a)(2), and that is that reasonable, reasonableness, you know,
 5   you may not intentionally run the red light but you ran the red
 6   light.  You acted unreasonably, right.  And so that's not a
 7   knowing violation of a statute but it is unreasonable conduct.
 8        So I think the argument is if you don't have to prove an
 9   intent to be unreasonable in your advertising then this
10   becomes -- this is the exact statute that the PLCAA is designed
11   to preempt.
12        MR. CHAZEN:  And I respect that that's their argument,
13   and I appreciate Your Honor summarizing it.
14        THE COURT:  But how do I get around that from the
15   standpoint of, you know, how is it any different that a
16   manufacturer shall not put on the market any product that can
17   be used unreasonably by a third-party, right.
18        MR. CHAZEN:  So in sort of trying to highlight where I
19   think that might be coming in, there's this piece about
20   sufficiently concrete within the Foundation's briefing.  But
21   not only is that not anywhere, but when you look at -- I really
22   do think going back to the text of PLCAA is the most important.
23   The Act can't be construed in any way that's outside of the
24   PLCAA.
25        Congress is the one that chose to permit states to hold
```

 1  firearm companies liable for a company's failure to act

 2  reasonably.  It's the PLCAA that requires for a lawsuit to

 3  survive dismissal a knowing violation of the Act that must be a

 4  proximate cause of the harm for which relief is sought.

 5       And the Act makes no reference to proximate cause, to be

 6  clear.  But nothing in the Act seeks to authorize actions that

 7  the proximate cause requirement under the PLCAA forecloses.

 8       And so --

 9            THE COURT:  Here's where I think Mr. Rowen is.  So the

10  Act says you can't bring an action for a knowing violation of a

11  state statute that regulates regarding the sale of the product,

12  right?  Your statute doesn't require a knowing violation under

13  (b) or (2) rather, excuse me.  Right?

14            MR. CHAZEN:  Yes, Your Honor.

15            THE COURT:  So how does it become a predicate statute?

16            MR. CHAZEN:  So the lawsuit, to qualify for the

17  predicate exception and survive the PLCAA, it has to allege a

18  violation of the predicate statute that is both knowing and a

19  proximate cause of harm to the plaintiff.

20       Now, the predicate statute itself, we're not aware of any

21  authority that says the predicate statute itself has to

22  reference a mental state.  I'm not aware of that authority

23  existing in any of the cases that have taken up the

24  Foundation's challenges, and I don't think that is the plain

25  reading of the PLCAA based on the two examples that Congress

1  provided in implementing that.

2      So it's really looking at the knowledge element.

3  Certainly the violation of the predicate statute has to be

4  knowing, but the proximate cause of harm and the proximate

5  cause of harm to the plaintiff.  But it's not -- it does not

6  need to reference a mental state in its entirely to squarely

7  fit into the confines and satisfy the predicate exception under

8  the PLCAA.

9      The Attorney General doesn't see a reading of that.  We're

10  not aware of any authority that subjects the Foundation to that

11  position.  They've of course made that same argument in

12  multiple states in multiple district courts, and they have not

13  found one to support that proposition.

14      THE COURT:  Well, to be fair, the Second Circuit is

15  the only one that has gotten to it on the merits, other than

16  the California, which didn't -- which went -- I've got to go

17  back and read Judge Schopler's opinion, but he went off on the

18  Dormant Commerce Clause, right.

19      MR. CHAZEN:  That is fair, Your Honor.  And I do think

20  the Second Circuit is, to your point, the court that has most

21  recently and probably in its greatest form of prose looked at

22  this.  There's the Response to the Notice of Supplemental

23  Authority that says it's a misconstrue of -- the Second Circuit

24  gets it wrong.  You shouldn't rely on it because it's a facial

25  challenge case.

58

1      The Second Circuit spent a great deal of time going

2  through certain of these claims, not just on a facial challenge

3  basis, but looking at the as-applied basis.  Those principles

4  don't change.  I think the Second Circuit's reasoning is

5  instructive on the PLCAA, even if there is some language that

6  the Foundation can rely on the statement.  That's a facial

7  challenge here as an as-applied challenge, although I do think

8  that's starting to blend together quite a bit.

9      But to be fair, the Second Circuit went at length to

10  describe that this isn't just being done on the basis of a

11  facial challenge and even if it did, those principles still

12  apply here.

13      From where we land --

14      **THE COURT:**  In other words, playing it out and maybe

15  it takes it a little bit outside of the record, but how does

16  the Attorney General prove knowing unreasonableness, right?  I

17  mean, it's almost a -- it's a willfulness is what you would

18  have to prove.  I think what Glock's argument will be is that

19  that then is going to put you probably more squarely in they're

20  violating a federal statute that regulates the sale of

21  firearms.

22      **MR. CHAZEN:**  So if a firearm industry member, like

23  Glock, Inc., is served with a complaint alleging a violation or

24  violations of the Act, it is possible for that member, in this

25  case Glock, Inc., to prevail on the grounds that it was unaware

1    that it was failing to maintain reasonable controls in the

2    marketing, distribution, sale or storage of its products.

3        So we have this initial fray at the pass where we're

4    dealing with motions to dismiss of course, but the facts have

5    to come into play at some point.  Glock is going to have to

6    respond and defend itself against the allegations.  And if it

7    says that it's unaware of its failure to maintain reasonable

8    controls, that would be a consideration for the finder of fact

9    to make at the appropriate juncture.

10       So there are opportunities.  It's not a strict liability

11   statute that doesn't look into specific conduct at all of, in

12   this case, Glock, Inc., but those opportunities come later.

13   They don't come in deciding whether this Act meets the

14   constitutionality or is rather not preempted by the PLCAA.

15       So I do agree with Your Honor that those questions -- I

16   think the position that my colleague, Mr. Rowen, said on the

17   other side was that they come into play now and later.

18       The Attorney General does not agree with that assessment.

19   The complaint needs to state a claim under the Act.  Of course

20   we have the separate issues of the constitutionality of it.

21           THE COURT:  Right.

22           MR. CHAZEN:  But the Act, in order to survive a

23   jurisdictional challenge, in order to survive a failure to

24   state a claim, the State will have to show that it's laid out,

25   the factual allegations of the complaint, and that on its face

1  they satisfied those standards.  And then later the facts do

2  come into play.  Of course at the motion to dismiss stage the

3  defendant hasn't had an opportunity to respond to the complaint

4  or address any of those inconsistencies from what the

5  allegations are.  So there are opportunities later to look at

6  the specific conduct.

7      And I agree in that sense the allegations in order to be

8  brought, to survive these types of claims, they do have to be

9  looked into, whether that's by the Attorney General, the county

10  attorneys, or the City Solicitor.

11      In looking at the claims brought against Glock, Inc. in

12  the state case, those are specifically maintained all

13  throughout the complaint.  And we're not talking about

14  third-party conduct.  We are addressing in this state complaint

15  actions by Glock.  And if Glock wants to assert that wasn't us,

16  that was somebody else and point the finger in another

17  direction, perhaps they'll have an opportunity to do that after

18  responding to the complaint, should it survive a motion to

19  dismiss.

20      I want to move onto the Dormant Commerce Clause argument

21  if that's all right with Your Honor.

22      **THE COURT:**  Okay.

23      **MR. CHAZEN:**  We heard a little bit about that today

24  but the claim, I believe, coming from the other side is that

25  the Act does not regulate products, it regulates conduct.  I do

1    not believe that is within the square confines of the Act's

2    actual language.

3        And it is a little lengthy, but the Act's definition of

4    firearm-related product specifically:  A firearm, ammunition, a

5    component or part of a firearm, or a firearm accessory that is

6    sold, manufactured, distributed or marketed in the state, or

7    intended to be sold, manufactured, distributed or marketed in

8    the state.

9        And so it makes clear rather lengthy -- and I think this

10   is in our briefing so I apologize for repeating myself -- but a

11   firearm industry member may not knowingly create, maintain, or

12   contribute to harm to the public through the sale, manufacture,

13   distribution, importation or marketing, a component or part of

14   a firearm, or a firearm accessory that is sold, manufactured,

15   or distributed or marketed in Maryland or intended to be so in

16   Maryland.

17       And so the relevant conduct penalized by the Act, it deals

18   with Maryland.  And I don't know how more simple to say that

19   because that's actually the definitions within the statute

20   itself.  But there's no support for the Foundation's argument

21   that the Act seeks to compel the Foundation to act in

22   accordance with Maryland law for transactions without a

23   relationship or nexus to the state.

24           THE COURT:  So a firearm sold in Virginia -- and I'll

25   use Virginia because, one, it's where I'm from and a lot of

 1   Virginia firearms found their way into other states,

 2   unfortunately.

 3        So a firearm sold legally in Virginia, let's say -- let's

 4   say it's a Glock pistol sold legally in Virginia.  It then is

 5   brought into Maryland in some form or fashion.  A Glock switch

 6   is put on it in Maryland.

 7        Is that a transaction that Glock would be responsible for?

 8   Is that part of the nuisance?

 9             MR. CHAZEN:  So if those facts are drawn out, there's

10   certainly a factual piece of that inquiry and that's where we

11   get into a knowledge piece of it of course.

12        But when we're looking at what the Virginia manufacturer

13   does or does not do, there is a chain reaction.  I think the

14   Foundation's point is to say this law goes down the chain away

15   from the Foundation and they're coming at that piece, and then

16   jumping to the Foundation.

17        The Act says, you go for the Foundation and it's the

18   Foundation's conduct that controls.

19        So, for your example, Your Honor --

20             THE COURT:  You mean Glock's conduct?  The

21   manufacturer's?

22             MR. CHAZEN:  That's correct.  So if an out-of-state

23   manufacturer sold to an out-of-state distributor, who then sold

24   the product into Maryland, or even in Your Honor's example they

25   skip that second step and they sell it to a distributor in

63

1   Maryland, it requires a fact-driven inquiry into whether the

2   out-of-state manufacturer sold with the intent to sell the

3   firearm-related product in Maryland despite selling to that

4   distributor.

5            **THE COURT:**  What about the firearm that the

6   distributor who sells in Virginia and that's the end

7   transaction.  The end user buys it in Virginia.

8            **MR. CHAZEN:**  I do think it would be challenging based

9   on, without any further factual inquiry of course, to say that

10  a manufacturer who sells to a distributor in Virginia, on its

11  face, has the intent for that gun to get into Maryland.  Of

12  course that could be possible.  That's the whole point of the

13  Act, it's what's also the intent.  It's not just the

14  unlawfulness; it's the unreasonable conduct.

15           So, of course, if that's being done as sort of a way,

16  well, we want to get these highly dangerous weapons into the

17  hands of lawful or unlawful firearm owners, there's ways in

18  which the manufacturer could go about doing that.  That's not

19  what the state case is about, to be clear.

20           When we're looking at as-applied challenge, the Attorney

21  General has the responsibility to follow the laws of the state

22  as well.  This is not a far-reaching statute in looking at that

23  it goes specifically to the manufacturer or another firearm

24  industry member's conduct.  In focusing on what the state case

25  is because that is the only case to date brought under the Act

1    by the Attorney General, the county attorneys, or the City
2    Solicitor -- now, the county attorneys are not involved in the
3    underlying state case -- but the conduct that's alleged is
4    Glock's conduct, their role and responsibility for creating the
5    public nuisance in Maryland.

6         So I agree that we can talk about specific scenarios.  I
7    do think there are facts that need to be drawn out.  And I
8    would submit that it might fail to state a claim if there isn't
9    enough shown in a complaint that ties the specific conduct of
10   the manufacturer in the scenario or the hypothetical that Your
11   Honor just mentioned, in drawing that out.  That would have to
12   be drawn out of the complaint if we're trying to trace a
13   specific firearm, whether that's one step removed or multiple
14   steps removed from the state of Maryland.  It would be our
15   obligation to allege a proper violation under the Act, which is
16   that the violation occurred in the state or it's intended to be
17   in the state.

18         THE COURT:  I guess a better example may be one that's
19   a little bit closer, and that is that a distributer that's
20   across the border who comes over to Winchester, let's say,
21   because it -- the laws in Virginia are easier to be able to
22   purchase firearms, whatever it may be.  And that distributer
23   sees on a regular basis Maryland citizens that -- which they
24   can do, they can come into Virginia and they can buy a firearm.
25   And they do their background check.  So they get all of their

```
 1   information, and they realize that this person is from Chevy
 2   Chase or Baltimore or Frederick or wherever it may be.  So that
 3   distributer knows they're selling to a Maryland resident.
 4        Is that distributer then responsible under this statute
 5   with respect to the potential liability, knowing that their
 6   guns are coming into the hands of Maryland residents?
 7             MR. CHAZEN:  So that -- that, in part, is this
 8   as-applied challenge piece.  But, specifically, so the
 9   Winchester distributer of the weapon sells it to somebody who
10   presents a Maryland ID.  And they have reason to believe, their
11   knowledge becomes at that point, from the state's position
12   anyway, that the knowledge becomes that they know that they're
13   selling this to a Maryland resident.  I think there are
14   discussions that could be had at the store level, the
15   distribution stage, to suggest, you know, somebody who has a
16   Maryland ID could have -- of course have another property in
17   the Winchester or the surrounding area.
18        I think there's certain additional facts.  I don't want to
19   change your hypothetical --
20             THE COURT:  In other words, is that distributer going
21   to have to make that inquiry and say, "Are you taking this gun
22   into Maryland?  If so, I'm not going to sell it to you," for
23   example.  "I'm not going to sell it to you because I could
24   potentially be liable if that gun is misused."
25             MR. CHAZEN:  It wouldn't -- it wouldn't go to that
```

1  point until there is the satisfaction of the criteria that the

2  distributer actually sold that weapon in Maryland or intended

3  it to be sold into Maryland.  So at that point, if that's the

4  factual basis then, yes, the Act would allow for an action to

5  be brought under that.

6      Now, to be clear because I want to make sure here in the

7  Dormant Commerce Clause piece that we're not -- it's not an

8  extraterritorial law, not because of reaching the conduct of

9  not selling it in Virginia outright, it's that the harm was

10  intended to be sold into Maryland and it, in fact, then created

11  harm here in the state, the public nuisance piece.  There's

12  that added layer as well.

13      But, to be clear, it's not a burden on interstate activity

14  even if it was, it's certainly not excessive.

15      But the objective here, under the Act, is to ensure

16  firearm industry members take accountability over their

17  products and limit exposure to dangerous and illegal

18  firearm-related products here in the state of Maryland.  That

19  is permissible under *National Products v. Ross* and the recent

20  Supreme Court decisions.  It certainly does not show that the

21  Foundation is likely to succeed on the merits of its claim.

22      What is clear from the Act on its face, you have to have a

23  nexus to the state of Maryland.  Without it, a claim could not

24  proceed under the Act.  That is to be clear.

25          THE COURT:  And, I guess, the single transaction is

1  not what this case is about, right?

2          **MR. CHAZEN:**  No.

3          **THE COURT:**  It's a series of transactions and so, you

4  know, how do you hook a distributer in another state -- how

5  does a distributer in another state know whether, you know, if

6  I sold one firearm to a Maryland resident, not a big deal.  If

7  I sold a thousand and one, well, maybe I've got a problem.

8  What about 25?

9          **MR. CHAZEN:**  There's a lot of nuance into it which is

10 another reason about likelihood of success and certainly the

11 Foundation not meeting the standard here.

12      But to be clear, there's a lot of time in the briefing

13 spent on what New Jersey is doing.  It's a similar law, not

14 identical, but it's similar.  But the actions by the New Jersey

15 Attorney General are not the actions by the Maryland Attorney

16 General, the City Solicitor, or the county attorneys.

17      We have one action that's been brought.  That action

18 specifically looks at Glock, Inc., and it's Austrian parent's

19 role, in causing a nuisance in Maryland through the allegations

20 that it sells and markets its easily modified pistols to

21 Maryland civilians.  It refuses to implement simple changes to

22 its design.  Its decision to knowingly, create, maintain and

23 contribute harm through an unreasonable product.

24      So I get that we can talk about how will it apply in a

25 different scenario.  We don't have that scenario.

1        And as it applies to the Foundation here, with the one

2   cause of action that's been brought by any official in this

3   case.  There's no reading of the act that allows that to say:

4   Glock, for your own conduct, no liability and you're totally

5   immune.  That's not what the PLCAA stands for.  And that's not

6   what the Act stands for either.

7        And all of these theories about chain-causal reaction,

8   that's not what we have in this case in the Circuit Court for

9   Baltimore City.

10       And there's been no indication, let alone evidence -- we

11  talked about or I believe my friend on the other side mentioned

12  concerns from people in the declaration.

13       **THE COURT:**  That's about all the declarations get to

14  is fears.

15       **MR. CHAZEN:**  Yes, and that's not enough here, Your

16  Honor.  I'm happy to move to the First Amendment.

17       **THE COURT:**  Okay.

18       **MR. CHAZEN:**  I understand the Foundation's provision

19  to be the Act's marketing provisions target speech based on

20  content and viewpoint.  The Attorney General disagrees with

21  that assertion, of course.  At the onset, the Act addresses

22  only commercial speech and that standard is pretty well

23  outlined in the Supreme Court in this circuit.

24       So we have three factors.  It's the Attorney General's

25  position that the marketing regulated by the Act implicates all

1    three of those factors, but it's not necessary that each be
2    present for speech to be commercial.  That's a recent opinion
3    from the Fourth Circuit in *Maryland Shall Issue v. Anne Arundel*
4    *County*, 91 F.4th 238.  The Act applies to any firearm industry
5    member seeking to market a firearm-related product, and it
6    regulates only firearm industry members and pertains only to
7    specific firearm-related products.  It regulates those members
8    who derive revenue from selling or intending to sell as the
9    statute allows firearm-related products.  And I think the
10   Foundation recognizes that because the declarations all talk
11   about this very nonspecific economic and reputational impact.
12       We heard a little bit today about one storefront
13   conducting a poll, I believe, on social media but certainly
14   nothing more specific than that.
15       I think my colleague on the other side and I agree that
16   the Act does not prevent a firearm industry member from
17   marketing a firearm-related product in a lawful and truthful
18   manner.
19       What it does do of course is -- I'm sorry, the Act does
20   not restrict the Foundation's ability of course to express its
21   views and advocate its positions, whether that's to promote or
22   criticize the Second Amendment and firearm-related laws in
23   Maryland.  I don't presume that they're going to criticize the
24   Second Amendment but it's really that second piece.
25       There's a recent Fourth Circuit opinion *Bianchi v. Brown*,

1  and a petition for cert was denied by the Supreme Court of the

2  United States.  That's 111 F.4th 438, that talks about

3  Maryland's substantial interest in protecting the health and

4  safety of its residents from dangerous use of firearms.

5      I think the legislative history is clear.  There's one

6  part of its reply, which we didn't get a chance to respond to

7  it of course, the Foundation tries to rebut.  They cite a Ninth

8  Circuit case, *Junior Sports Magazine, Inc. v. Bonta*.  They go

9  so far as to state that the Act and the law issue in that case

10 are similar.  But that case is in opposite to the state case,

11 the only one that's been brought under this Act.

12     The law at issue in *Junior Sports* prohibited promotion of

13 a firearm-related product in a manner that, quote, "reasonably

14 appears to be attractive to minors," end quote.

15     In the state case, it's Glock's conduct that's at issue

16 specifically and Glock's statement that support their actions

17 and the pursuit of this action in the state case.

18     The relief requested by the State and the City in the

19 state case does not include a remedy that involves regulation

20 of Glock's subjective statements.  There's no claim based on

21 Glock's speech in the only case brought under the Act to date

22 by any official here in this state.

23     We talked about the issue in the declarations and that

24 they have -- that these declarations seem to be not just vague

25 but unclear about any actual incurrence of damages or harm

1  suffered to any of these firearm industry members.

2      And also Glock is not one of the affiants in this case

3  which I think is a little -- might be a little too clever by

4  half.

5      The second amendment, it doesn't implicate the Second

6  Amendment.  My colleague on the other side didn't submit in any

7  of its papers a Estados Unidos, but I think somewhat invoked it

8  today.  But Estados Unidos has no relevance to this case.  It

9  is a very specific inquiry into whether Mexico could bring its

10 cause of action.  But the Supreme Court's unanimous holding

11 doesn't go into the issues that are even discussed here or that

12 the Act is unconstitutional.  I'm not aware that any of the

13 concurrences go so far as to say that.  I believe there is one

14 concurrence from Justice Thomas that says this issue is likely

15 to come before the court again and we should take opportunity

16 to discuss it, but it doesn't go into detail.

17     But what we have here is a totally different case.

18     There was also mentioned about the historical tradition,

19 even if we can get around that first part of the *Bruen* test.  I

20 have several cases that contradict plaintiff's argument in its

21 reply:  *Rocky Mountain Gun Owner v. Polis*, a Tenth Circuit

22 opinion; *Teixeira v. County of Almeda*, a Ninth Circuit opinion

23 from 2011 that said:  "Although the Second Amendment protects

24 an individual's right to bear arms, it does not necessarily

25 give rise to a corresponding right to sell a firearm."

There's also a line of cases that talk about you don't have the right to buy a specific Glock firearm.  You know, there are restrictions if somebody is acting unlawful or unreasonably under the circumstances.  Your Second Amendment right if you're a law-abiding citizen is of course to procure a firearm, not a specific firearm.  I believe there was some mention to differences in firearms, which is why I bring that up.

But, at best, the Second Amendment question implicated by the state case is whether Maryland can prohibit the sale of certain particularly dangerous firearms.  The answer to that question is yes, from *Bianchi v. Brown*, regulating excessive dangerous weapons fits comfortably within our nation's tradition of firearms regulations.

We also have the Due Process Clause claim.  I think there's a lot that's been discussed.  But this is where I think this court can really gain instruction should it choose to do so from *NSSF v. James*, the Second Circuit's recent opinion.

So the Second Circuit answered the Due Process Clause question by stating that reasonableness is a well-established legal standard.  We've talked about that.  I don't want to go too far.  That's at 144 F.4th at 118.  The Act here in Maryland does the same thing.  It presents no doubt to the normal reader.  The speculative danger of the so-called arbitrary enforcement does not render the Act void-for-vagueness.  The

 1  Second Circuit purportedly ruled on a facial challenge as
 2  opposed to an as-applied challenge, I don't know how that's
 3  relevant in this context under the Due Process Clause.  The
 4  concepts are identical, whether it's facial or as-applied.

 5          THE COURT:  There was a lot of talk, I think, at least
 6  in the reply about whether this was a facial or as-applied.
 7  The complaint makes clear that it's both.  Mr. Rowen, I think,
 8  has talked about some things that are just as-applied only.

 9      And, frankly, I think the Supreme Court kind of touched on
10  it, is there's a lot of fighting that can be done as to which
11  box you fit into or not.  Really, you look at the relief that
12  is sought to determine whether it's facial or as-applied.  But
13  if it's an as-applied -- and I meant to ask Mr. Rowen this, and
14  so I'm going to ask him when he gets back up -- if it's
15  as-applied, can I consider other ways in which this statute may
16  be -- in which Maryland may use this statute, other than the
17  Glock case?

18          MR. CHAZEN:  I --

19          THE COURT:  Or am I limited just to the Glock case
20  because that's the only application.  Certainly, from a facial
21  standpoint if I can find a way for it to be constitutional then
22  that kills the facial challenge.

23          MR. CHAZEN:  I think these are all the lessons that
24  we're learning, especially over the last couple of terms from
25  the high court.

1    In terms of the facial challenge piece, it is very

2  confusing.  And I use the word "tactical" but not in a

3  malicious way.  Their lawyers and their client are learning

4  from all of these cases.  It would be from their benefit to

5  learn and proceed with other rulings.  When I use "tactical," I

6  don't mean that in a malicious way.

7         THE COURT:  No, it matters how you plead your case,

8  so --

9         MR. CHAZEN:  Right.  And there's no amendment to the

10  complaint as of this time, and it is under the complaint a

11  facial and as-applied challenge.  But to Your Honor's specific

12  question, all we have is the one case as it applies, and Glock

13  is a member of this Foundation.

14    I think it's taking a step too far and it's the concern

15  that the high court is constantly dealing with and has concerns

16  with dealing with.

17    They want district courts to rule on these things.  They

18  know that every case is different by its nature.  That there

19  are facts in one case and not another.  And you have to learn

20  as you go along.  This isn't to say that the Act is

21  constitutional.  Any order that Your Honor says denying the

22  motion for preliminary injunction does not say that the Act is

23  constitutional in all of its forms moving forward in

24  perpetuity.

25    We're looking at it what it is today and the as-applied

1  piece as applied to the Foundation and its members, I suppose.

2  We're looking at the one case that's been brought by Glock,

3  Inc.  And perhaps the Maryland Attorney General and the city

4  solicitor are learning from the other state's officials that

5  are attempting to enforce their acts that are similar but not

6  identical.  There are lessons to be learned by everybody, but

7  all we have is the Glock case and that's what this court should

8  be reviewing.

9      And it's another example that *Younger* abstention might be

10  appropriate because that is the as-applied piece.  If we had a

11  litany of filings, for example the day the General Assembly

12  passed this law and it went into effect, not 10 months later,

13  but on the day and we filed a flurry of cases, I think that

14  might be appropriate on an as-applied basis to say this law is

15  going too far.  Let them try to narrowly curtail it because

16  it's very unclear what's going on here.

17      But the Act is specific in its contours.  And so I do

18  think part of this case was being briefed a few months ago.

19  These decisions came out in July.  There are changes being

20  made.  And I appreciate those concessions by the way, but even

21  when you look at it on an as-applied basis, the as-applied

22  basis is can Maryland bring a cause of action for a

23  manufacture's own conduct, its own decision-making?  The Act,

24  from the position of the Attorney General, the Act is

25  constitutional as to that.  All of these other things appear to

1  be theoretical.

2     I want to address the Eleventh Amendment immunity.  The
3  Foundation's reply asserts a purported waiver.  The mechanism
4  outlined in the Attorney General's oppositions is not a waiver.
5  It's a simple fact that if a party does accrue damages, they
6  might not be able to bring or seek relief in this court, but it
7  doesn't mean Maryland has not availed itself of the ability to
8  be sued in other jurisdictions or other courts.  We have that
9  line in a lot of our briefing, if it's going to be challenged
10  here it would be the first time.

11     But certainly the Foundation and its members would be
12  within the rights if they suffered damages to consider actions
13  against the state, not here in this case but in a different
14  venue and proceeding.  There's not a waiver of Eleventh
15  Amendment immunity.

16     **THE COURT:**  The Eleventh Amendment doesn't prevent
17  them, however, from seeking prospective relief, right?

18     **MR. CHAZEN:**  That would be correct.

19     The final two factors of course, if we get to that point
20  and I'll be very brief on these pieces, the balance of the
21  equities in public interest weigh against granting the
22  preliminary injunction.

23     Maryland, to be clear, is not the judge of lawful business
24  practices in other states.  The Attorney General attempts to
25  reduce the unlawful and unreasonable conduct by gun industry

1  members, such as Glock, impacting Marylanders.  And that's

2  what's at issue in the state case.  The Act doesn't trample on

3  individual rights and, in fact, the state is suffering in a lot

4  of ways.

5      Every day that the firearm industry members violate the

6  Act, results in more danger.  Every day that they violate the

7  Act, more lives are lost.  Approximately 800 lives in Maryland

8  are lost to the gun-violence epidemic.  And gun violence costs

9  the state over $10 billion each year.  Guns are the leading

10  cause of death among children and teens here in Maryland.  And

11  the state case is about Glock's impact not just broadly but

12  very specific in how it's harming the youth here in Maryland.

13  And that can't go unnoticed, especially when compared to

14  theoretical and unspecified harm.  And that would not be

15  theoretical or unspecified harm that would result in

16  Marylanders continuing to suffer significant life-altering

17  damage through the threat and use of firearm-related products.

18      So for all of the reasons presented in the Opposition to

19  the Motion for Preliminary Injunction, the Attorney General

20  would respectfully request that Your Honor deny the motion

21  before the court.

22      **THE COURT:**  One more question for you.

23      **MR. CHAZEN:**  Yes, Your Honor.

24      **THE COURT:**  Because I'm going to ask Mr. Rowen to deal

25  with this as well.  I meant to write down the name of the case.

1    Last week, time goes faster, might be two weeks ago,

2    Judge Richardson authored an opinion regarding preliminary

3    injunctions.  The first half of it he talks about how difficult

4    they are to get.  You're shaking your head like you read it and

5    you probably liked exactly what he said.  It was an

6    associational case and he sent it back to the district court to

7    address whether the Supreme Court's recent decision dealing

8    with nationwide injunctions, or universal injunctions, how it

9    would apply so that you're narrowly tailoring any relief that

10   is sought through the injunction.

11       If you could address that, if I agree with Mr. Rowen that

12   the Foundation is entitled to some type of preliminary

13   injunction, how do I narrowly tailor it to be consistent with

14   the Supreme Court precedent?  Otherwise, you leave it to him to

15   craft the injunction for you.

16           MR. CHAZEN:  Sure.  So I'm constrained to allow for --

17   because I believe that they haven't met their burden, and I do

18   understand that that's the --

19           THE COURT:  I'm not asking you to concede any of that.

20           MR. CHAZEN:  Right, right.  I think the overarching

21   issue, nationwide and statewide injunctions on the state court

22   level are an interesting topic, and it's not just limited to

23   *Trump v. Casa*, which conveniently happens to be in this

24   courthouse as well.

25           THE COURT:  Right.

1          **MR. CHAZEN:**  I think there's a lot of challenges when
2     you look at injunctive relief --
3          **THE COURT:**  Because what they ask for is, is
4     essentially a universal injunction that relates to every single
5     gun manufacturer that -- I think if I remember the complaint
6     there are 10,000 members, they're all members of the industry.
7     And they, essentially, have cornered the market for the
8     association, if you will, of manufacturers and distributors and
9     so forth.
10          **MR. CHAZEN:**  Yeah, so if each member of the Foundation
11    is entitled to say, Maryland, you can't sue under the Act
12    against us moving forward until, I guess, this lawsuit plays
13    out of course --
14          **THE COURT:**  Right.
15          **MR. CHAZEN:**  -- because that's the point of a
16    preliminary injunction.
17          **THE COURT:**  Right.
18          **MR. CHAZEN:**  It certainly would hamstring -- I am very
19    confused, and I don't know how it comports that a lawsuit
20    against Glock can proceed if the Foundation has met all of the
21    elements in this case.  The narrow curtailing here when it's
22    brought by an association seems to be very challenging; but,
23    more importantly, it would effectively be a statewide
24    injunction.  We don't have a nationwide context specifically
25    because, as I've outlined, the conduct has to deal with the

1 state of Maryland.

2     But, even if it applies only to the members, you have a

3 large swath of firearm industry members who this Act --

4 Maryland cannot seek justice for the harm caused by these

5 members while this lawsuit plays out.  I'm having a hard time

6 envisioning how it can be narrowly tailored.

7     But we have a range of spectrums from the highest court

8 all the way to this court about how injunctions are dealt with.

9 You have members on the Supreme Court of the United States who

10 would seemingly say that a preliminary injunction is not, on a

11 facial challenge at a minimum, is not a case or controversy and

12 district courts should not be wasting their time on facial

13 challenges.  They don't go so far on the as-applied piece from

14 many rulings I've seen.  But now we have a Fourth Circuit

15 ruling.

16     I agree that's a problem and it's a tough one.  I wish I

17 had a better answer because I don't want to leave it to my

18 friend on the other side to figure out how to tailor this.

19       **THE COURT:**  He's happy to step in.

20     (Laughter.)

21       **MR. CHAZEN:**  I'm sure he will.  And I appreciate that

22 from Mr. Rowen.

23     In this case, when we look at the only case that's been

24 brought, when we're looking at specific harms caused by the

25 firearm industry member and its Austrian parent, who by the way

 1    is not part of the PLCAA, nobody argues that of course.  But,

 2    you have this case that's proceeding, obviously timing will be

 3    important.

 4         I don't think the fact that Your Honor is here from the

 5    Western District of Virginia plays into any analysis because

 6    we're going to proceed in the ordinary due course.  But of

 7    course every federal judge has a docket of his or her own, and

 8    I think that's -- becomes challenging.  Are we going to get to

 9    the stage where this case is being decided before the state

10    court case gets decided?  How all these things are going to be

11    tied up.

12         What I didn't really -- it's not that I didn't understand

13    it, I think it presents a lot of challenges for this court to

14    say, okay, I'm going to allow the state case to proceed but the

15    Foundation's members cannot; and we're going to let the

16    Maryland state appellate courts play out this issue, which

17    might be different than how this court plays out this issue.

18    And the Supreme Court, hopefully, if they continue to differ

19    will say, we grant cert.  A Supreme Court that grants less and

20    less cases every year, that would be painful to say that the

21    law applies to some but not all when they are the member of the

22    same industry.

23         THE COURT:  But I think in some respects that is --

24    that's the point of the nationwide injunction ruling and that

25    is that one member brings its action, another member out in

1  Illinois brings an action, someone in New Mexico, wherever they
2  may be; and there's -- the whole idea is let there be a
3  distillation of the legal thought process as it percolates its
4  way up through, to use all of the terrible analogies, but as it
5  works its way up to the Supreme Court.  Then the Supreme Court,
6  as Mr. Rowen said, then steps in and resolves that conflict.
7  That's a multiyear process that can be frustrating to those in
8  the midst of it because you may have different rulings in
9  different circuits, in different states or in different courts
10 in the same state.
11        MR. CHAZEN:  Yes.  And, Your Honor, to that point, and
12 obviously it's a different issue altogether, but obviously
13 there's the existence of multi-district litigation that sort of
14 alleviate the same problem that Your Honor has outlined here
15 where, yes, every state and district courthouse is different.
16 And the thing that's sort of piecemeal here in Maryland is two
17 divisions but one district.
18     So the question ultimately would be if we were in Roanoke,
19 would Your Honor really put out an order that says, this law is
20 unconstitutional in the Western District of Virginia; but
21 Eastern District of Virginia, I can't really speak to that and
22 please bring a different cause of action there, right.
23        THE COURT:  Right.
24        MR. CHAZEN:  Maybe, whose to say what type of case
25 comes across your docket that says that's the time to invoke

1  that.  It does appear to be inconsistent.

2      What does seem to be consistent, though, is of course you

3  have New Jersey's law moving through the Third Circuit, you

4  would have this law moving through the Fourth Circuit.

5      What is not contemplated, at least as far as I understand,

6  is, okay, but now we have this one Maryland case that I'm going

7  to let go forward.  If Glock does anything else, you can't sue

8  them either.

9      So it just seems too piecemeal and regimented.  But I

10 think that's how I would respond if this court was inclined to

11 say the elements are met here, obviously we don't agree with

12 that.

13         THE COURT:  Right.

14         MR. CHAZEN:  But I just am having a lot of trouble

15 even understanding how we could narrowly curtail it when it

16 seems to be what we would be narrowly curtailing loosely here

17 is the conduct by the entire firearm industry or certainly the

18 most significant part of it.

19     Thank you, Your Honor.

20         THE COURT:  Thank you.  All right.

21     Mr. Rowen, and I'll leave it in whatever order you want to

22 proceed in.

23         MR. ROWEN:  Thank you, Your Honor.  Just a few quick

24 points.  So I want to start with the *Younger* issue because it's

25 where my friend on the other side started.  And they relied on

1  *Nivens* specifically, which is from 2003.  In the *Jonathan R.*

2  case, which was 2022, they said, quote, "Sprint" -- which was

3  2013 -- "recast the earlier cases."

4      So now the law in the Fourth Circuit is very clear that

5  the first question, this is at Page 333 to 334 of that opinion:

6  What is the specific relief that the federal plaintiff is

7  seeking, and would that specific relief interfere with comity?

8      They said, it doesn't interfere with comity if, quote,

9  "You are not seeking to pause much less to end any state

10 proceeding."

11     So they said the mere fact that a state and federal court

12 might reach different conclusions on the constitutionality of a

13 state law or their state regime is not enough to trigger

14 *Younger*.

15     The state's entire argument, well, there would be

16 confusion and you might have dueling results, and the Fourth

17 Circuit has squarely held that after *Sprint*, that's not the

18 law.  And you look to what is the request that the federal

19 plaintiff is making, and just to say it one more time, we're

20 not asking you to enjoin the Glock suit.  So that's the *Younger*

21 issue.

22     I do think it's important just to linger on this for one

23 second.  My friend on the other side ended by saying, well, the

24 way a percolation is supposed to work is you're going to have

25 the New Jersey case going through the Third Circuit system and

1  this case going to the Fourth Circuit.

2         THE COURT:  And the Second Circuit is already where it

3  is.

4         MR. ROWEN:  Right.  But if you buy their *Younger*

5  argument, the Fourth Circuit will never rule.  Because if it's

6  really the case that a lawsuit against one member of an

7  association bars all of the members of the association from

8  bringing a federal case under § 1983, then there will be no

9  percolation.

10        THE COURT:  But, I disagree with that because the

11 Glock case goes wherever it goes.  It comes to its natural end

12 at some point.  There's been enforcement.  The association

13 could bring the lawsuit later on at that point in time.  No

14 doubt.

15        MR. ROWEN:  So, respectfully, gosh, that's really

16 awful to tell the members.

17        THE COURT:  Absolutely, it makes you wait.  But never

18 is not -- I mean --

19        MR. ROWEN:  But it's a one-sided waiting regime.

20        THE COURT:  It is a wait.

21        MR. ROWEN:  Because the Attorney General would be free

22 to sue any NSSF member it wants, and as soon as it does, well,

23 then that's going to be stuck in state court, too.  Their

24 theory of how this works -- and that said, oh, you know, our

25 declarations are insufficiently detailed and it's just fears.

1    Their theory of how this works is we don't have standing until

2    they enforce it.  And once we enforce it we're stuck in state

3    court.  That's not how federal question jurisdiction in § 1983

4    work.  I think that's why there are no Fourth Circuit cases

5    applying *Younger* abstention in the context of whether an

6    association or someone else who is not a state court defendant.

7        And the fact that you're going to have parallel litigation

8    is sort of a good thing from the perspective of comity.  So

9    that's the *Younger* issue.

10       You know, my friend on the other side said we should defer

11   to the state court litigation because the state might construe

12   the statute --

13          THE COURT:  So what if the state went out and before I

14   get my opinion out filed 16 more of these claims, what do I do

15   with that?

16          MR. ROWEN:  So under their theory, I think you do

17   nothing, you kick it under *Younger*.

18          THE COURT:  What do I do under your theory?

19          MR. ROWEN:  Under our theory you adjudicate this case.

20          THE COURT:  Do I carve out all of the 16 other claims.

21          MR. ROWEN:  So we would say no for those.  One of the

22   exceptional circumstances under the *Middlesex* factors is

23   litigation abuse.  And there are some cases, none from the

24   Fourth Circuit, but there are some cases that say if it's later

25   in time than the state court suit, you might think of it as

1    just an attempt to evade previously filed federal litigation.

2        So I don't want to cast aspersions that they would be bad

3    faith.  There is that line of argument that I'm sure we would

4    make in that circumstance.  I think if there were really 16

5    suits the day after Your Honor kicked this case under *Younger*,

6    gosh, that would show the problems.

7        THE COURT:  I'm talking about before *Younger*, while

8    I'm working on my opinion, they decide to bring in Smith &

9    Wesson, for example.

10       MR. ROWEN:  Right.

11       THE COURT:  And file the exact same type of complaint.

12   And let's acknowledge it would be done in part for tactical

13   reasons because they can carve out more potential manufacturers

14   from this lawsuit perhaps.  In addition to you have to have a

15   good faith basis to bring your claim and assuming that they do.

16       MR. ROWEN:  Right.  And I think that just shows why

17   *Younger* is so inappropriate here.  Because, again, we're not

18   asking for any state court proceeding to be enjoined.  And if

19   the state, you know, if they're allowed to sort of bring state

20   court actions and have that add essentially a force-field

21   effect, and whenever it does, you know, the federal court is

22   powerless to grant that party relief or any party relief, it

23   really does seem to sort of invert the federal question system.

24   And it really does sort of read out what the Fourth Circuit has

25   said post spring, is the fundamental prerequisite for *Younger*,

 1    which is not just that you might have dueling litigation but

 2    actually a specific request to interfere with and enjoin

 3    pending state court litigation.

 4         So that's the *Younger* issue.  My friend mentioned that

 5    there might be a reason to wait so the state court could

 6    construe that statute.  But I think Your Honor sort of hit the

 7    nail exactly on the head.  There's nothing to construe

 8    especially given that it -- the first provision is disjunctive

 9    between unlawful and unreasonable.  So the one thing that we

10    know textually on that provision is that lawful conduct can

11    violate the statute.

12         And given sort of that's the problem and the colloquy that

13    you were having with Mr. Chazen about sort of where knowing

14    comes in, I think it's important to understand.

15         So, first, under the PLCAA we're going to apply federal

16    statutory interpretation principles.  And the Supreme Court in

17    *Ruan*, we cited this case, makes very clear, when you have a

18    mens rea requirement it applies to the whole statute.  Their

19    argument is it's good enough that you knew that you did your

20    conduct.  That's not a knowing violation to say I knew I sold

21    the gun, I didn't know that it violated any law.  That's not a

22    knowing violation which is what the predicate exception

23    requires.

24         That's why the only types of statutes, and here we

25    respectfully part company with the Second Circuit, the only

1    type of statutes that can be predicate statutes are those that

2    actually tell you what you're supposed to do and what you're

3    not supposed to do so that you can be sensibly be understood to

4    knowingly violate.

5        Your Honor made the point that it's sort of oxymoronic to

6    say you were knowingly unreasonable even though you complied

7    with all known laws.  And we think that's exactly the point.

8        With respect to the vagueness claim, Mr. Chazen said,

9    well, it's not impossible.  And, you know, I take the point

10   that's essentially what the Second Circuit said.  The colloquy,

11   the reasons we were having before with Justice Scalia's opinion

12   in *Johnson*, that's just not the law when you're dealing with a

13   law that implicated fundamental constitutional rights.  That,

14   you know, reasonableness is not per se constitutional, and

15   especially when it's sort of disjoined from conduct that is

16   lawful, then a requirement to just act reasonably is not good

17   enough.  It's particularly not good enough in speech context.

18       THE COURT:  Does it matter at this stage how I

19   characterize it?  Whether we -- by way of either being a facial

20   or an as-applied challenge?  And at what point do I need to do

21   that, from your perspective?

22       MR. ROWEN:  So I have two different answers to that.

23   So one is the Supreme Court has said different things.  And so,

24   I mean, just in full candor, the Supreme Court in *Citizens*

25   *United* said it's only about the scope of relief; the Supreme

1  Court in the *Moody* case seemed to say it's about we need to

2  plead.

3          THE COURT:  I think it makes, frankly, to me it makes

4  better sense to be scope of relief rather than trying to deal

5  with what the semantics say, right?  It's what you're seeking

6  to do in reality, seems to me.

7          MR. ROWEN:  So I certainly thought that was the law

8  and I think that makes more sense, you know, in sort of, like,

9  full candor the duty that I owe to the court.  I'm not sure

10 that that's what *Moody* means.  But, you know, for purposes of

11 answering your question, I think we are bringing different

12 claims that seek different relief and they are sort of

13 different in what they are.

14     So the First Amendment claim, it's as-applied in the sense

15 that it's only as to marketing; but it's facial in that it's

16 all applications of (a)(2) and (b) of the marketing provision.

17     And while that might seem sort of a little funky that it's

18 only part of the statute but it's facial, the Fourth Circuit in

19 the *Chamber of Commerce* case two weeks ago made it very clear

20 that facial challenges to parts of statute are totally fair

21 game.

22          THE COURT:  And I agree with that.  But it's a facial

23 challenge to just a part of the statute, right?

24          MR. PORTER:  So that's true of our First Amendment

25 claim.  Facial challenge to the statute as-applied to

 1   marketing.

 2       Our Dormant Commerce Clause claim also has flavors of

 3   both, the *Frosh* opinion, *AAM v. Frosh* makes this very clear.

 4   So it's a facial challenge to the extent that the statute

 5   applies out of state.

 6       So if you ruled for us on our extraterritoriality theory,

 7   which I think is just -- their arguments are squarely

 8   foreclosed by the *AAM* decision --

 9           THE COURT:  How much comfort did you get from

10   Mr. Chazen's back and forth about the firearms sold in

11   Virginia?

12           MR. ROWEN:  Even less comfort than I had before I was

13   here because, again, that's the same argument they made in *AAM*.

14   The argument that they made in *AAM* and in that -- I remember

15   the briefs fondly --

16           THE COURT:  That is, if you know your guns are making

17   it there --

18           MR. ROWEN:  Correct.

19           THE COURT:  Right.

20           MR. ROWEN:  And it was even more than that.

21       So the law there only kicked in if the drug came to

22   Maryland and was charged at an excessive price.  And the

23   argument that the Attorney General made there was that's a

24   sufficient nexus to Maryland to allow Maryland to regulate

25   out-of-state transactions.  And they said, that's not wholly

1  extraterritorial because there's a nexus to the state, which is

2  the same phrase that my friend used today.

3      And the Fourth Circuit said, that's not how the doctrine

4  works.  Sure there's a nexus to the state that you're not going

5  to do anything about it until there's harm in your state.  But

6  the critical question is whether you are directly regulating

7  conduct wholly outside the state.

8      And my friend briefly adverted to the *Pork Producers* case.

9  Footnote 1 of *Pork Producers* makes very clear that the direct

10 regulation prohibition, prohibition on direct regulation of

11 out-of-state conduct remains alive and well.  Every court that

12 has addressed the argument that *Pork Producers* overrules, cases

13 like *AAM v. Frosh* has rejected it.  In two other cases that are

14 helpful also, *Association for Accessible Medicines* cases, *AAM*

15 *v. Ellison*, and one in the Ninth Circuit, *AAM v. Bonta* where

16 they squarely rejected the argument that *AAM v. Frosh* is no

17 longer good law and of course the Fourth Circuit hasn't said

18 that.  And that case is squarely on point with respect to

19 Dormant Commerce Clause.

20     If I could quickly on the First Amendment.  So we,

21 obviously, think that there should be a more heightened

22 scrutiny than the ordinary commercial speech standard; but I

23 don't need to fight on that because under commercial speech,

24 you know, the question that you ask at the end of the day --

25 and the *Chamber of Commerce* case makes this very clear -- is

does this burden more speech than necessary.

Narrow tailoring is part of intermediate scrutiny under *AFP v. Bonta*.  And the idea that a command that says, don't market unreasonably, don't market lawful products, constitutionally protected products, unreasonably, that that's not broader than necessary.  I just think beggar's belief would turn the First Amendment on its heads to say it's not just lawful products, it's the one category of product the Constitution specifically gives the people the right to keep.

And it says that the licensed members of the industry that allow the exercise of that right, don't speak unreasonably about your products, don't market your product unreasonably. If that law is okay, then any marketing restriction that says don't market unreasonably is going to be fine under the First Amendment.  And I haven't seen a single law that's been upheld that's been anywhere near that broad.

And I think to the extent that the *L. Cohen Grocery* case don't sell at unreasonable rates that Justice Scalia was talking about in *Johnson*, to the extent that that's unconstitutional, gosh, this has to be unconstitutional a fortiori.

Just the last point on scope of relief.  You know, I take the point about the relief that we're seeking seems broad because NSSF has so many members, but a grand total of one justice has recently said that associational standing is

1  problematic.  And Justice Thomas had no one else come along

2  with him in his concurrence two terms ago about that; and the

3  state, notably, hasn't challenged our associational standing

4  here, but I don't think they reasonably can.

5      So, given that, the line in *Casa* is under the Judiciary

6  Act of 1789, the courts can only grant complete relief to the

7  parties before them.  They can't grant more.  It's not a

8  temporal or geographic limitation.  It's a limitation on

9  parties.

10     And so all NSSF are here, we are explicitly again saying

11 that the Glock suit can continue to go forward because it was

12 first in time --

13         THE COURT:  Wherever they may be found, they're

14 entitled to the benefit of whatever the ruling of the court is,

15 right.

16         MR. ROWEN:  Correct.  And that's not sort of, you

17 know, that's not an odd circumstance.  My friend on the other

18 side said, well, that would cause Maryland and the Attorney

19 General real harm for being unable to enforce their statute.

20 Well, if we're found to be likely to succeed on the merits,

21 then that's not harm that matters because if the statue is

22 unconstitutional, and it's blackletter, Fourth Circuit law and

23 Supreme Court law, then a state has no valid interest in

24 enforcing it, no matter if it were passed for the purest of

25 intentions.

1      And of course this law, you know, the intentions that

2  Maryland had for this law, of course, are good.  My clients'

3  members are not, you know, out there willy-nilly trying to, you

4  know, promote unlawful use of their products.  They're trying

5  to comply with the laws.  There are lots of laws that apply to

6  them.  They want to know what those laws are.

7      What they don't want is to be told, just wait, and maybe,

8  as my friend said, we'll learn from the New Jersey Attorney

9  General's lawsuits; but we're not going to tell you that you

10  have to and maybe we'll sue you and we'll say that your conduct

11  was unreasonable, even though no law prohibited it.  And we're

12  just going to decide that after the fact.  And, oh, once we do,

13  you're not going to be able to get into federal court.

14      That's not how our system works, it's exactly what

15  Congress enacted the PLCAA to prevent.  And for those reasons,

16  we would ask Your Honor to grant a preliminary injunction.

17      Thank you very much.

18         **THE COURT:**  All right.  So I'll work on an opinion and

19  I'll get it out as soon as I can.  Let's kind of talk about

20  where we are, what y'all want to do in the case at this point

21  or not?

22      So I need to go back and look at the docket.  I remember

23  when we had our call I think you all had indicated Judge

24  Bennett may have entered an order that allowed the defendant to

25  hold off on filing an answer, any type of dispositive motion.

```
 1   How do you all want to proceed at this point?  I don't know
 2   when I'm going to get an opinion out.  I'm going to work on it
 3   as quickly as I can, I know it's an important issue.
 4        How do you all want to proceed at this point?  Mr. Rowen,
 5   you're the plaintiff.  Typically, they want cases to move right
 6   along, so.
 7            MR. ROWEN:  So I think in this instance, given sort of
 8   the way that our motion for preliminary injunction leveled so
 9   many different challenges to the statute, I don't think it
10   would make a ton of sense to make the defendant file an answer
11   or go through discovery.  So from our perspective, you know,
12   while we would like Your Honor to rule as quickly as
13   possible --
14            THE COURT:  Right.
15            MR. ROWEN:  -- I don't think it makes a ton of sense
16   to -- or to say it a different way, I think it makes the most
17   sense to essentially pause the rest of the case pending
18   resolution of this motion.
19            THE COURT:  Okay.  No objection to not having to write
20   a brief, right?
21            MR. CHAZEN:  No objection.  And I do agree with
22   counsel from the other side playing that out makes a lot of
23   sense.  Obviously, there's no way to know at this time how the
24   court will rule, what rights either side might want to take
25   based on that ruling, of course; and then that has to factor
```

 1  into any type of stay that's being issue.  I think that would
 2  be the appropriate juncture.  I think we would be all in a
 3  better position to say which part of the case, if at all, is
 4  moving forward, above, how do we want to proceed here, if there
 5  are any claims left.

 6          THE COURT:  Well, all of the claims are going to be
 7  left.

 8          MR. CHAZEN:  Right, it's a preliminary injunction.  If
 9  that, of course, changed how they want to proceed, that would
10  give more flavor to that.  So we appreciate the invitation then
11  not to have that stay removed at this time.  And I think it
12  would be better to revisit that after Your Honor has ruled on
13  the motion for preliminary injunction.

14          THE COURT:  All right.  I'll work on an opinion and
15  get it out as quickly as I can.  And then I'll send an email to
16  you all, maybe we'll have -- get on a call or on a zoom call a
17  week or 10 days or so after I get my opinion out.  That'll give
18  either side the ability to give some thought to what they want
19  to do if it didn't come out the way you wanted it.  Or, and
20  what we do down here for whatever the next steps are, so.

21          MR. CHAZEN:  And the only other piece I would add,
22  based on today's argument, is that we would plan to file
23  correspondence with the court and docket the motions that were
24  filed by Glock in the state case.  And then once any
25  oppositions or any subsequent pleadings related to those

1  papers, we'll of course send them to the other side because
2  they're not in that case.  So they have the right to sort of
3  review what we're sending you, of course.
4          THE COURT:  Exactly.  All right.  Thank you all very
5  much.
6      Anything else we need to address from the plaintiff's
7  standpoint?
8          MR. ROWEN:  Nothing from the plaintiffs, Your Honor.
9          THE COURT:  How about from the defendant's
10 perspective?
11         MR. CHAZEN:  Nothing, Your Honor.  Thank you again for
12 traveling up here.  We really do appreciate it.
13         THE COURT:  Thank you all very much.  We'll stand in
14 recess.  I'll come down and meet counsel.
15     (Hearing concluded at 12:17 p.m.)
16
17
18
19
20
21
22
23
24
25

CERTIFICATE OF OFFICIAL REPORTER

    I, Ronda J. Thomas, Registered Merit Reporter, Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                         Dated this 7th day of September 2025.


                         _____
                              Ronda J. Thomas, RMR, CRR
                              Federal Official Reporter

1/6

**MR. AQUA** [38] 2/15
**MR. CHAZEN:** [68] 2/20
2/23 39/20 39/24 40/5
41/14 42/6 42/17 44/12
44/18 44/21 45/8 45/13
45/15 45/24 46/4 46/9
46/14 47/9 47/16 47/20
49/16 49/25 50/7 50/21
51/3 51/24 52/4 52/8 53/19
53/23 54/8 55/12 55/18
56/14 56/16 57/19 58/22
59/22 60/23 62/9 62/22
63/8 65/7 65/25 67/2 67/9
68/15 68/18 73/18 73/23
74/9 76/18 77/23 78/16
78/20 79/1 79/10 79/15
79/18 80/21 82/11 82/24
83/14 96/21 97/8 97/21
98/11
**MR. PORTER:** [4] 2/12
24/15 28/8 90/24
**MR. ROWEN:** [81] 2/10
3/13 3/15 3/19 4/5 4/9 5/12
5/18 5/21 7/7 7/10 7/20
8/23 9/16 9/25 10/20 11/9
11/14 12/15 12/21 13/2
14/15 14/19 15/10 15/23
16/1 16/14 16/16 17/6
18/10 18/16 19/17 20/15
21/20 22/3 23/8 23/22
24/18 26/9 26/23 26/25
27/20 28/13 30/10 31/7
31/11 32/18 33/5 33/16
33/20 33/22 35/2 35/6
35/10 35/23 36/6 36/11
36/15 38/7 38/10 39/8
46/12 83/23 85/4 85/15
85/19 85/21 86/16 86/19
86/21 87/10 87/16 89/22
90/7 91/12 91/18 91/20
94/16 96/7 96/15 98/8
**MR. SWEENEY:** [1] 2/14
**THE CLERK:** [1] 2/4
**THE COURT:** [156]

**$**

**$10** [1] 77/9
**$10 billion** [1] 77/9

**'**

**'70s** [1] 28/14

**1**

**10** [2] 75/12 97/17
**10,000** [2] 50/20 79/6
**101** [1] 1/24
**10:00** [2] 1/8 2/1
**10th** [2] 45/25 46/5
**111** [1] 70/2
**1115** [1] 2/6
**118** [1] 72/22
**12** [1] 24/12
**12:17** [1] 98/15
**12th** [2] 44/25 46/1
**144** [1] 72/22
**15** [1] 54/10
**15s** [1] 12/2
**16** [4] 24/12 86/14 86/20 87/4
**1789** [1] 94/6
**1975** [1] 48/23
**1983** [2] 85/8 86/3
**1:25-cv-01115-RSB** [1]

**2**

**2-2242** [1] 49/10
**2-241** [1] 43/25
**20** [3] 4/15 28/2 37/15
**2003** [1] 84/1
**2011** [1] 71/23
**2013** [1] 84/3
**2017** [1] 42/24
**2022** [2] 4/16 84/2
**2023** [1] 10/6
**2024** [1] 40/12
**2025** [2] 1/8 99/12
**20th** [1] 44/25
**21201** [1] 1/25
**2242** [1] 49/10
**238** [1] 69/4
**23rd** [1] 45/5
**24** [1] 11/17
**241** [1] 43/25
**24th** [1] 45/3
**25** [1] 67/8
**2502** [7] 17/12 17/14 20/11 23/25 25/3 25/21 25/23
**256** [1] 43/9
**26** [1] 1/8
**28** [1] 99/6
**2nd** [1] 45/2

**3**

**3-502** [1] 52/5
**316** [1] 7/22
**328** [1] 43/9
**329** [1] 43/9
**332** [1] 48/22
**333** [2] 8/1 84/5
**334** [2] 8/1 84/5
**377** [2] 42/24 43/6
**396** [2] 43/6 43/9
**397** [1] 43/6
**3rd** [1] 45/2

**4**

**41** [1] 7/22
**422** [2] 48/22 48/22
**438** [1] 70/2
**451** [2] 42/24 43/6
**4th** [1] 1/24

**5**

**502** [1] 52/5

**7**

**753** [1] 99/7
**7901** [1] 23/17
**7902** [1] 39/5
**7903** [1] 54/10
**7th** [1] 99/12

**8**

**800** [1] 77/7

**9**

**91** [1] 69/4
**922** [1] 48/22
**947** [2] 4/21 4/23

**A**

**a.m** [2] 1/8 2/1
**AAM** [9] 34/11 91/3 91/8
91/13 91/14 92/13 92/14
92/15 92/16
**abet** [1] 23/20
**abiding** [1] 72/5

**ability** [9] 10/17 11/7
12/16 44/12 50/13 50/14
69/20 76/7 97/18
**able** [9] 9/13 11/3 12/19
13/6 14/8 21/9 64/21 76/6
95/13
**about** [56] 5/3 9/22 11/25
11/25 16/18 16/20 22/19
23/17 30/14 31/5 31/7 32/3
35/25 39/13 42/13 46/14
49/12 55/19 60/13 60/23
63/5 63/18 63/19 64/6 67/1
67/8 67/10 67/24 68/7
68/11 68/13 69/11 69/12
70/2 70/23 70/25 71/18
72/1 72/21 73/6 73/8 77/11
78/3 80/8 87/7 88/13 89/25
90/1 91/10 92/5 93/12
93/19 93/23 94/2 95/19
98/9
**above** [5] 26/13 34/15
39/13 97/4 99/9
**above-entitled** [1] 99/9
**absolute** [1] 47/6
**Absolutely** [1] 85/17
**abstaining** [1] 51/3
**abstention** [15] 5/6 6/5
6/17 6/24 8/4 13/21 27/25
44/9 46/15 46/17 51/9
51/13 51/16 75/9 86/5
**abuse** [1] 86/23
**Academy** [1] 39/3
**ACCA** [1] 27/19
**accept** [2] 7/13 8/7
**accepts** [1] 49/22
**Accessible** [2] 31/15
92/14
**accessory** [2] 61/5 61/14
**accordance** [1] 61/22
**accountability** [1] 66/16
**accrue** [1] 76/5
**accurate** [1] 6/3
**acknowledge** [1] 87/12
**acronym** [1] 5/7
**acronyms** [1] 40/7
**across** [4] 8/10 40/18
64/20 82/25
**act** [65] 4/10 29/15 32/17
39/10 40/9 40/12 40/12
40/15 40/19 42/8 52/10
52/15 52/17 52/20 53/1
53/5 53/12 54/19 55/23
56/1 56/3 56/5 56/6 56/10
58/24 59/13 59/19 59/22
60/25 61/17 61/21 61/21
62/17 63/13 63/25 64/15
66/4 66/15 66/22 66/24
68/3 68/6 68/21 68/25 69/4
69/16 69/19 70/9 70/11
70/21 71/12 72/22 72/25
74/20 74/22 75/17 75/23
75/24 77/2 77/6 77/7 79/11
80/3 89/16 94/6
**Act's** [4] 54/8 61/1 61/3
68/19
**acted** [3] 17/7 22/24 55/6
**acting** [1] 72/3
**action** [27] 6/15 6/16 11/6
14/2 18/1 18/5 18/7 19/1
19/3 20/17 21/5 21/16 23/7
37/2 43/12 54/20 56/10
66/4 67/17 67/17 68/2
70/17 71/10 75/22 81/25
82/1 82/22
**actions** [11] 19/12 28/4

46/19 47/3 56/6 60/15
68/4 68/7 75/19 76/10
87/20
**activity** [3] 34/19 42/5
66/13
**acts** [2] 21/4 75/5
**actual** [2] 61/2 70/25
**actually** [14] 6/21 14/4
16/16 19/18 24/13 24/25
29/13 30/13 33/16 42/3
61/19 66/2 88/2 89/2
**add** [3] 35/14 87/20 97/1
**added** [1] 66/12
**addition** [1] 87/14
**additional** [1] 84/14
**address** [9] 28/7 40/13
45/17 45/18 60/4 76/2 78/7
78/11 98/6
**addressed** [2] 47/11 92/12
**addresses** [1] 68/21
**addressing** [1] 60/14
**adequate** [4] 10/24 13/15
48/10 48/14
**adjudicate** [1] 86/19
**adjudicating** [1] 15/18
**adjudication** [1] 22/20
**advanced** [1] 48/15
**adversely** [1] 43/19
**adverted** [1] 92/8
**advertising** [3] 33/21
33/22 55/9
**advocate** [1] 69/21
**affected** [1] 43/19
**affects** [1] 36/9
**affiants** [1] 71/2
**affidavit** [1] 12/11
**affirmative** [2] 39/5 39/12
**affirmed** [1] 5/7
**AFP** [1] 93/3
**after** [11] 19/23 22/25
24/20 25/13 29/6 60/17
84/17 87/5 95/12 97/12
97/17
**again** [16] 4/6 8/13 10/6
22/14 25/21 26/5 29/1 34/9
35/2 39/3 39/24 71/15
87/17 91/13 94/10 98/11
**against** [23] 6/16 8/25
9/11 9/14 12/5 14/2 14/24
15/7 21/22 33/7 34/6 38/13
41/1 42/8 49/4 54/21 59/6
60/11 76/13 76/21 79/12
79/20 85/6
**ago** [7] 12/10 30/11 37/16
75/18 78/1 90/19 94/2
**agree** [13] 9/6 18/16 30/5
59/15 59/18 60/7 64/6
69/15 78/11 80/16 83/11
90/22 96/21
**agrees** [2] 8/9 35/6
**ahead** [2] 3/14 31/6
**aid** [1] 23/20
**aided** [1] 1/22
**al** [1] 1/7
**alive** [1] 92/11
**all** [78] 3/1 3/1 3/6 3/7 4/17
5/16 5/18 5/19 6/22 11/12
13/19 14/21 15/12 16/12
17/2 19/24 20/5 22/23
24/22 26/19 29/7 29/15
30/23 31/8 31/8 31/12
32/11 34/16 37/21 38/6
39/13 39/17 39/18 48/1
48/19 50/7 50/23 51/3 55/1
55/11 60/12 60/21 64/25

68/7 68/13 68/25 69/10
73/23 74/4 74/12 74/23
75/17 75/25 77/18 79/6
79/20 80/8 81/10 81/21
82/4 83/20 85/7 86/20 89/7
90/16 94/10 95/18 95/23
96/1 96/4 97/2 97/3 97/6
97/14 97/16 98/4 98/4
98/13
**allegations** [6] 21/21 59/6
59/25 60/5 60/7 67/19
**allege** [4] 12/6 54/14 56/17
64/15
**alleged** [3] 6/11 17/6 64/3
**alleging** [1] 58/23
**alleviate** [1] 82/14
**allow** [9] 15/8 15/14 24/15
36/19 66/4 78/16 81/14
91/24 93/11
**allowed** [4] 25/17 40/16
87/19 95/24
**allowing** [3] 9/21 24/24
49/18
**allows** [4] 42/2 43/25 68/3
69/9
**Almeda** [1] 71/22
**almost** [4] 4/15 11/9 58/17
**alone** [2] 31/2 68/10
**along** [4] 41/18 74/20 94/1
96/6
**already** [2] 29/23 85/2
**also** [28] 2/12 9/20 12/3
13/24 16/5 17/12 23/17
24/11 26/3 29/17 30/25
37/22 38/10 40/7 43/3
43/15 45/1 45/5 45/20 46/4
46/21 63/13 71/2 71/18
72/1 72/15 91/2 92/14
**altering** [1] 77/16
**although** [2] 58/7 71/23
**altogether** [2] 82/12
**am** [18] 14/18 73/19 79/18
83/14
**amendment** [36] 4/18
25/10 28/24 29/12 29/18
30/6 30/20 34/14 34/16
34/20 34/25 36/8 36/10
37/7 38/4 38/25 40/21
40/22 40/24 68/16 69/22
69/24 71/5 71/6 71/23 72/4
72/9 74/9 76/2 76/15 76/16
90/14 90/24 92/20 93/7
93/15
**American** [2] 45/1 45/4
**amicus** [1] 3/9
**ammunition** [2] 24/9 61/4
**among** [2] 34/17 77/10
**analogies** [1] 82/4
**analogy** [1] 40/6
**analysis** [1] 81/5
**Anne** [1] 69/3
**another** [13] 9/13 21/11
43/7 54/2 60/16 63/23
65/16 67/4 67/5 67/10
74/19 75/9 81/25
**answer** [8] 14/11 18/10
44/10 52/9 72/11 80/17
95/25 96/10
**answered** [1] 72/19
**answering** [1] 90/11
**answers** [1] 89/22
**ANTHONY** [2] 1/7 39/25
**any** [50] 5/9 7/5 8/14 14/7
14/11 15/7 15/22 16/2
17/23 25/24 27/14 35/13

(

100)

Copyright 09/29/21 Document 31    Filed 09/29/21    101 101 101

# A

any... [38] 42/9 42/13 48/5
49/4 51/10 54/12 54/17
55/2 55/15 55/16 55/23
56/20 56/23 57/10 60/4
63/9 68/2 69/4 70/22 70/25
71/1 71/6 71/12 74/21 78/9
78/19 81/5 84/9 85/22
87/18 87/22 88/21 93/13
95/25 97/1 97/5 97/24
97/25
**anyone [1]** 16/2
**anything [7]** 7/2 42/9
42/10 48/6 83/7 92/5 98/6
**anyway [1]** 65/12
**anywhere [2]** 55/21 93/16
**apologize [1]** 61/10
**appeal [3]** 14/22 16/4 16/6
**appealing [2]** 6/4 6/21
**appeals [3]** 34/17 43/1
43/4
**appear [2]** 75/25 83/1
**appearance [1]** 2/8
**appears [1]** 70/14
**appellate [3]** 16/6 43/5
81/16
**applicable [1]** 13/7 18/2
22/8 23/10 23/14 54/11
**application [2]** 29/25
73/20
**applications [1]** 90/16
**applied [27]** 7/5 13/21
22/5 33/6 34/2 58/3 58/7
63/20 65/8 73/2 73/4 73/6
73/8 73/12 73/13 73/15
74/11 74/25 75/1 75/10
75/14 75/21 75/21 80/13
89/20 90/14 90/25
**applies [17]** 19/5 28/17
28/17 30/21 30/23 32/23
35/15 36/13 46/18 47/12
68/1 69/4 74/12 80/2 81/21
88/18 91/5
**apply [17]** 10/11 10/14
12/18 18/9 18/25 19/11
19/22 30/10 31/20 42/3
42/4 51/14 58/12 67/24
78/9 88/15 95/5
**apply still [1]** 42/3
**applying [9]** 30/7 86/5
**appreciate [9]** 3/8 31/11
41/10 47/10 55/13 75/20
80/21 97/10 98/12
**appropriate [5]** 52/12 59/9
75/10 75/14 97/2
**Approximately [1]** 77/7
**April [3]** 45/2 45/2 45/3
**April 24th [1]** 45/3
**April 2nd [1]** 45/2
**April 3rd [1]** 45/2
**Aquart [2]** 1/17 2/17
**AR [1]** 12/2
**AR-15s [1]** 12/2
**arbitrary [1]** 72/24
**are [119]**
**area [2]** 51/19 65/17
**aren't [1]** 28/18
**arguably [1]** 28/15
**argue [2]** 21/9 32/6
**arguendo [1]** 10/22
**argues [1]** 81/1
**arguing [1]** 28/3
**argument [34]** 3/10 10/1
19/24 20/25 25/15 26/16

30/8 31/18 34/15 36/7
36/12 36/16 36/19 42/12
47/13 47/15 54/22 55/8
55/12 57/11 58/18 60/20
61/20 71/20 84/15 85/5
87/3 88/19 91/13 91/14
91/23 92/12 92/16 97/22
**arguments [13]** 10/25
11/4 12/8 12/17 13/15
31/13 31/14 34/12 34/24
39/18 44/6 47/8 91/7
**arising [1]** 12/11
**arms [2]** 4/10 71/24
**around [5]** 5/22 15/5 40/5
55/14 71/19
**Arundel [1]** 69/3
**as [105]**
**as-applied [21]** 58/3 58/7
63/20 65/8 73/2 73/4 73/6
73/8 73/12 73/13 73/15
74/11 74/25 75/10 75/14
75/21 75/21 80/13 89/20
90/14 90/25
**aside [3]** 20/6 25/11 53/24
**ask [8]** 38/5 39/15 73/13
73/14 77/24 79/3 92/24
95/16
**asking [18]** 7/2 7/4 7/9 8/6
8/14 8/19 8/25 10/12 11/23
13/25 14/23 14/25 47/18
51/21 51/22 78/19 84/20
87/18
**aspects [1]** 52/18
**aspersions [1]** 87/2
**Assembly [1]** 75/11
**assert [2]** 50/3 60/15
**assertion [1]** 68/21
**asserts [1]** 76/3
**assessment [1]** 59/18
**associated [1]** 54/3
**association [11]** 31/15
42/14 44/3 47/5 79/8 79/22
85/7 85/7 85/12 86/6 92/14
**associational [9]** 11/15
42/19 44/1 49/9 49/12
50/17 78/6 93/25 94/3
**assume [4]** 16/3 16/5 16/6
38/8
**assumed [1]** 10/22
**assuming [1]** 87/15
**attempt [1]** 87/1
**attempting [1]** 75/5
**attempts [1]** 76/24
**attorney [41]** 5/25 6/14
6/14 6/16 8/19 8/20 15/24
16/1 16/4 24/5 24/6 24/25
25/19 31/18 34/3 39/25
49/6 49/20 49/24 50/3
53/15 53/16 57/9 58/16
59/18 60/9 63/20 64/1
67/15 67/15 68/20 68/24
75/3 75/24 76/4 76/24
77/19 85/21 91/23 94/18
95/8
**attorneys [4]** 60/10 64/1
64/2 67/16
**attractive [1]** 70/14
**August [1]** 1/8
**Austrian [3]** 45/3 67/18
80/25
**authored [1]** 78/2
**Authorities [2]** 41/20 49/2
**authority [6]** 14/17 47/21
56/21 56/22 57/10 67/22
**authorize [1]** 56/6

**authorizes [4]** 4/24 19/25
20/21 27/1
**automatically [1]** 28/19
**availed [1]** 76/7
**avoid [1]** 51/22
**avoids [1]** 51/5
**aware [4]** 56/20 56/22
57/10 71/12
**away [1]** 62/14
**awful [1]** 85/16

# B

**baby [1]** 33/3
**back [16]** 3/17 5/13 11/2
14/14 28/13 34/24 35/2
35/4 44/15 47/16 55/22
57/17 73/14 78/6 91/10
95/22
**background [2]** 24/8
64/25
**backwards [1]** 12/9
**bad [1]** 87/2
**bakes [1]** 26/6
**balance [2]** 37/23 76/20
**BALLOU [1]** 1/12
**Baltimore [9]** 1/7 1/25
12/5 41/2 42/23 50/22
53/16 65/2 68/9
**bar [1]** 46/19
**bars [1]** 85/7
**based [6]** 56/25 63/8
68/19 70/20 96/25 97/22
**baseline [1]** 51/12
**basically [1]** 11/20
**basis [6]** 58/3 58/3 58/10
64/23 66/4 75/14 75/21
75/22 87/15
**be [194]**
**bear [1]** 71/24
**beautiful [1]** 4/2
**because [73]** 6/15 7/10
9/17 12/19 13/8 13/13 14/6
14/21 15/2 15/13 16/17
18/4 18/7 19/2 20/3 22/14
23/8 24/11 26/5 27/3 29/19
29/23 30/6 31/20 31/21
32/21 33/15 35/13 37/1
38/24 39/1 39/2 39/18
40/10 41/11 44/21 51/20
52/1 52/15 57/24 61/19
61/25 63/25 64/21 65/23
66/6 66/8 69/10 73/20
75/10 75/15 77/24 78/17
79/3 79/15 79/25 80/17
81/5 82/8 83/24 85/5 85/10
85/21 86/11 87/13 87/17
91/13 92/1 92/23 93/24
94/11 94/21 98/1
**become [1]** 56/15
**becomes [5]** 10/2 55/10
65/11 65/12 81/8
**beef [1]** 20/19
**been [18]** 3/4 5/5 16/17
25/4 37/3 37/9 40/17 48/7
67/17 68/2 68/10 70/11
72/16 75/2 80/23 85/12
93/15 93/16
**before [15]** 1/12 3/20 7/18
12/24 22/4 44/22 52/20
71/15 77/21 81/9 86/13
87/7 89/11 91/12 94/7
**beggar's [1]** 34/2 93/6
**begin [1]** 3/20
**behalf [6]** 1/15 1/18 2/20
3/23 4/6 39/25

**being [13]** 9/10 21/17
21/22 41/15 53/11 58/10
63/15 75/18 75/18 81/9
89/19 94/19 97/1
**belief [2]** 34/3 93/6
**believe [12]** 3/11 5/5 10/6
47/14 60/24 61/1 65/10
68/11 69/13 71/13 72/6
78/17
**believes [1]** 47/3
**belongs [1]** 41/24
**below [2]** 26/11 47/8
**benefit [4]** 9/9 43/5 74/4
94/14
**Bennett [1]** 95/24
**best [3]** 15/10 39/20 72/9
**better [7]** 29/8 35/24 64/18
80/17 90/4 97/3 97/12
**between [7]** 16/11 21/24
27/18 27/22 28/6 33/17
88/9
**beyond [2]** 9/24 49/23
**Bianchi [2]** 69/25 72/12
**big [3]** 32/21 38/12 67/6
**Bill [2]** 4/21 4/23
**billion [1]** 77/9
**bit [10]** 3/4 3/22 11/13
40/6 46/14 58/8 58/15
60/23 64/19 69/12
**black [1]** 25/5
**blackletter [1]** 94/22
**blend [1]** 58/8
**blind [2]** 21/15 21/18
**blows [1]** 33/14
**board [3]** 8/10 42/24 49/1
**boil [2]** 29/16
**Bonta [5]** 6/8 33/2 70/8
92/15 93/3
**books [1]** 22/21
**border [1]** 64/20
**both [15]** 3/20 3/23 15/14
23/8 29/19 30/21 45/3
45/24 45/25 46/7 48/23
54/15 56/18 73/7 91/3
**bound [1]** 36/18
**box [3]** 48/3 50/5 73/11
**brain [1]** 2/24
**branch [1]** 43/21
**breach [1]** 12/22
**brief [8]** 10/21 19/23 38/1
39/9 42/19 49/17 76/20
96/20
**briefed [1]** 75/18
**briefing [4]** 55/20 61/10
67/12 76/9
**briefly [1]** 92/8
**briefs [2]** 3/9 91/15
**bring [15]** 9/13 42/5 42/7
43/12 55/1 56/10 71/9 72/7
75/22 76/6 82/22 85/13
87/8 87/15 87/19
**bringing [4]** 41/24 53/19
85/8 90/11
**brings [2]** 81/25 82/1
**broad [2]** 93/16 93/23
**broaden [1]** 11/23
**broader [6]** 13/5 14/8
42/15 42/16 93/6
**broadly [2]** 42/13 77/11
**brought [27]** 5/2 5/16 5/16
6/15 6/15 19/1 23/25 35/19
36/22 36/23 40/18 41/1
44/6 46/25 54/20 60/8
60/11 62/5 63/25 66/5
67/17 68/2 70/11 70/21

75/2 79/22 80/24
**BROWN [5]** 1/7 2/5 40/1
69/25 72/12
**Bruen [2]** 4/17 71/19
**burden [6]** 66/13 78/17
93/1
**burdens [1]** 30/16
**burdensome [1]** 30/15
**business [2]** 38/13 76/23
**buy [4]** 19/14 64/24 72/2
85/4
**buys [1]** 63/7

# C

**California [5]** 5/21 6/7
22/4 33/1 57/16
**California's [2]** 21/23
21/24
**call [5]** 2/3 3/7 95/23 97/16
97/16
**called [2]** 2/6 36/24 43/4
72/24
**calling [1]** 2/4
**Camden [1]** 37/15
**came [6]** 4/1 44/16 44/22
51/9 75/19 91/21
**campaign [1]** 40/17
**can [59]** 2/3 2/24 7/1 7/17
7/20 8/7 11/16 11/19 13/20
14/25 15/5 15/6 16/22
17/12 18/19 18/20 20/18
22/10 23/15 29/20 30/24
34/9 35/16 37/18 42/8
44/17 46/7 47/4 47/7 49/9
51/13 55/1 55/16 58/6 64/6
64/24 64/24 64/24 67/24
71/19 72/10 72/17 73/10
73/15 73/21 75/22 79/20
80/6 82/7 87/13 88/10 89/1
89/3 94/4 94/6 94/11 95/19
96/3 97/15
**can't [22]** 7/5 7/16 7/16
9/11 13/20 13/24 15/7
19/15 19/16 20/7 24/11
30/16 42/9 42/14 50/24
55/23 56/10 77/13 79/11
82/21 83/7 94/7
**candor [2]** 89/24 90/9
**cannot [2]** 80/4 81/15
**cartoonishly [1]** 37/11
**carve [2]** 86/20 87/13
**Casa [2]** 78/23 94/5
**case [122]**
**cases [22]** 13/20 27/13
27/15 32/20 45/9 45/13
48/21 54/19 56/23 71/20
72/1 74/4 75/13 81/20 84/3
86/4 86/23 86/24 92/12
92/13 92/14 96/5
**cast [1]** 87/2
**category [1]** 93/8
**causal [1]** 68/7
**causation [1]** 52/23
**cause [15]** 20/17 40/23
54/15 56/4 56/5 56/7 56/19
57/4 57/5 68/2 71/10 75/22
77/10 82/22 94/18
**caused [4]** 4/13 40/1
80/4 80/24
**causing [1]** 67/19
**cert [2]** 70/1 81/19
**certain [1]** 13/9 13/14
46/19 58/2 65/18 72/11
**certainly [18]** 11/9 15/2
35/23 38/5 47/1 50/9 51/12

## C

**certainly...** [1] 57/16
66/14 66/20 67/10 69/13
73/20 76/11 79/18 83/17
90/7
**certificate** [2] 12/11 98/17
**certified** [2] 45/15 99/4
**certify** [1] 99/6
**chain** [3] 62/13 62/14 68/7
**chain-causal** [1] 68/7
**challenge** [23] 19/21
51/10 54/24 54/25 55/2
57/25 58/2 58/7 58/7 58/11
59/23 63/20 65/8 73/1 73/2
73/22 74/1 74/11 80/11
89/20 90/23 90/25 91/4
**challenged** [3] 9/19 76/9
94/3
**challenges** [6] 56/24 79/1
80/13 81/13 90/20 96/9
**challenging** [3] 63/8 79/22
81/8
**Chamber** [3] 30/11 90/19
92/25
**chance** [3] 13/16 13/17
70/6
**change** [4] 40/19 43/1
58/4 65/19
**changed** [1] 97/9
**changes** [3] 41/6 67/21
75/19
**changing** [1] 14/5
**character** [1] 43/16
**characterize** [1] 89/19
**charged** [1] 91/22
**charging** [2] 27/5 27/6
**Chase** [1] 65/2
**Chazen** [8] 1/18 2/20 3/20
11/18 23/6 39/25 88/13
89/8
**Chazen's** [1] 91/10
**check** [2] 24/8 64/25
**checked** [1] 48/3
**Chevrolet** [1] 39/8
**Chevy** [1] 65/1
**child** [1] 14/2
**children** [1] 77/10
**choose** [1] 72/17
**chose** [1] 55/25
**Cincinnati** [1] 27/14
**circuit** [73] 5/7 6/24 7/21
8/11 8/12 8/15 9/25 10/23
13/20 13/21 13/24 14/18
16/4 16/9 16/10 16/11
16/19 21/22 22/9 22/14
30/11 31/14 31/19 31/24
34/11 34/21 34/22 35/11
36/16 37/15 39/2 39/8
40/15 41/2 47/24 48/8 49/7
49/22 50/19 50/21 57/14
57/20 57/23 58/1 58/9 68/8
68/23 69/3 69/25 70/8
71/21 71/22 72/19 73/1
80/14 83/3 83/4 84/4 84/17
84/25 85/1 85/2 85/5 86/4
86/24 87/24 88/25 92/17
90/18 92/13 92/15 92/17
94/22
**Circuit's** [5] 10/14 22/4
35/7 58/4 72/18
**circuits** [1] 82/9
**circumstance** [2] 87/4
94/17
**circumstances** [6] 3/23

10/15 19/21 29/7 72/4
86/22
**citation** [1] 43/7
**citations** [2] 42/21 43/1
**cite** [2] 39/9 70/7
**cited** [4] 34/21 49/11
50/18 88/17
**Citing** [1] 14/18
**citizen** [2] 12/13 72/5
**citizens** [3] 48/6 64/23
89/24
**city** [11] 41/2 42/23 42/23
45/16 53/16 60/10 64/1
67/16 68/9 70/18 75/3
**City's** [1] 50/22
**civil** [8] 1/6 11/12 18/1
27/21 28/1 28/2 28/17
46/19
**civilians** [1] 41/6 67/21
**claim** [24] 12/22 19/19
19/22 19/22 19/25 20/5
34/10 41/24 48/15 53/19
53/22 59/19 59/24 60/24
64/8 66/21 66/23 70/20
72/15 87/15 89/8 90/14
90/25 91/2
**claims** [12] 20/6 31/7
37/22 55/1 58/2 60/8 60/11
86/14 86/20 90/12 97/5
97/6
**clarity** [1] 48/12
**class** [3] 4/18 14/2 33/3
**clause** [15] 6/10 9/7 18/13
31/13 34/10 40/21 40/23
57/18 60/20 66/7 72/15
72/19 73/3 91/2 92/19
**clear** [36] 4/17 6/24 7/21
7/22 8/3 8/15 10/7 16/25
19/23 27/24 28/14 29/2
30/11 32/6 36/11 37/16
44/5 47/10 50/9 56/6 61/9
63/19 66/6 66/13 66/22
66/24 67/12 70/5 73/7
76/23 84/4 88/17 90/19
91/3 92/9 92/25
**clearly** [7] 18/7 19/16
20/20 27/4 33/11 36/14
50/15
**clerk** [1] 4/1
**clever** [1] 71/3
**client** [1] 74/3
**client's** [2] 25/8 32/24
**clients** [1] 11/1
**clients'** [1] 95/2
**close** [1] 36/12
**closely** [1] 48/19
**closer** [1] 64/19
**Coates** [1] 27/13
**codifying** [1] 22/12
**Cohen** [2] 27/13 93/17
**collapse** [1] 35/13
**colleague** [5] 41/21 42/18
59/16 69/15 71/6
**colleagues** [1] 2/24
**colloquy** [2] 88/12 89/10
**come** [17] 4/3 4/22 19/14
20/18 30/13 32/4 36/25
59/5 59/12 59/13 59/17
60/2 64/24 71/15 94/1
97/19 98/14
**comes** [9] 14/22 24/9
32/15 34/5 46/19 64/20
82/25 85/11 88/14
**comfort** [1] 91/9 91/12
**comfortable** [1] 3/16

**comfortably** [1] 72/13
**coming** [6] 3/21 3/24
55/19 60/24 62/15 65/25
**comity** [5] 15/11 15/13
15/14 84/7 84/8 86/8
**command** [1] 93/3
**commerce** [14] 4/10 6/10
9/7 30/12 31/13 34/10
40/20 57/18 60/20 66/7
90/19 91/2 92/19 92/25
**commercial** [6] 28/9 30/17
68/22 69/2 92/22 92/23
**commit** [1] 21/4
**commits** [1] 32/17
**common** [1] 37/2 43/11
**Communications** [2]
39/10 46/20
**companies** [1] 56/1
**company** [1] 88/25
**company's** [1] 56/1
**compared** [1] 77/13
**compel** [1] 61/21
**complaint** [16] 41/16
44/24 58/23 59/19 59/25
60/3 60/13 60/14 60/18
64/9 64/12 73/7 74/10
74/10 79/5 87/11
**complete** [3] 47/4 47/7
94/6
**complex** [1] 50/22
**complied** [2] 22/22 32/10
89/6
**comply** [5] 17/2 17/11
22/22 25/9 95/5
**complying** [1] 38/22
**component** [2] 61/5 61/13
**comports** [1] 79/19
**Computer** [1] 1/22
**Computer-aided** [1] 1/22
**concede** [2] 47/18 78/19
**concept** [1] 26/17
**concepts** [1] 73/4
**conceptually** [1] 26/10
**concern** [1] 74/14
**concerned** [2] 11/25 24/4
**concerns** [2] 68/12 74/15
**concessions** [6] 41/14
41/18 41/19 41/19 41/21
75/20
**concluded** [1] 98/15
**conclusion** [1] 10/2
**conclusions** [1] 84/12
**concrete** [1] 17/3 23/20
55/20
**concurrence** [1] 36/17
71/14 94/2
**concurrences** [1] 71/13
**conduct** [46] 6/2 6/11
17/13 25/22 25/22 27/3
29/3 29/5 30/24 33/22 34/2
34/6 40/14 41/3 41/4 41/8
52/16 53/3 53/3 53/7 55/7
59/11 60/6 60/14 60/25
61/17 62/18 62/20 63/14
63/24 64/3 64/4 64/9 66/8
68/4 70/15 75/23 76/25
79/25 83/17 88/10 88/20
89/15 92/7 92/11 95/10
**conducting** [2] 27/10
69/13
**conference** [3] 3/7 44/16
99/10
**conferred** [2] 57/7 61/1
**confines** [2] 57/7 61/1
**conflates** [1] 52/18

**conflict** [5] 5/10 5/13 82/6
**conflicts** [1] 5/23
**conformance** [1] 99/10
**confused** [2] 14/21 79/19
**confusing** [1] 74/2
**confusion** [2] 3/5 84/16
**Congress** [17] 4/9 4/15
20/22 22/11 22/18 22/19
23/2 23/19 25/7 25/11 26/2
33/7 37/5 40/16 55/25
55/25 95/15
**Congress's** [3] 4/20 36/1
36/2
**congressional** [1] 5/10
**congressionally** [1] 23/16
**connection** [1] 3/8
**consensus** [1] 34/17
**consent** [1] 34/9
**consider** [2] 73/15 76/12
**consideration** [2] 48/20
59/8
**consistent** [5] 25/10 35/10
36/4 78/13 83/2
**constantly** [1] 74/15
**Constitution** [2] 15/21
93/9
**constitutional** [15] 20/6
26/7 27/3 28/16 29/11 39/2
48/15 49/19 51/6 73/23
74/21 74/23 75/25 89/13
89/14
**constitutionality** [1] 27/16
45/19 59/14 59/20 94/12
**constitutionally** [1] 93/5
**constrained** [1] 78/16
**construe** [4] 51/5 86/11
88/6 88/7
**construed** [2] 27/24 55/23
**contemplate** [1] 41/17
**contemplated** [1] 83/5
**content** [2] 35/17 68/20
**contention** [2] 42/7 52/15
**context** [12] 6/13 17/18
23/1 28/9 28/17 28/17
32/23 33/10 73/3 79/24
86/5 89/17
**contexts** [1] 17/15
**continue** [4] 24/24 41/4
81/18 94/11
**continuing** [1] 77/16
**contours** [1] 75/17
**contract** [1] 12/22
**contradict** [2] 27/2 71/20
**contradicted** [1] 52/17
**contribute** [4] 41/8 52/6
61/12 67/23
**contributed** [2] 17/7 25/5
**contributes** [1] 53/8
**control** [1] 53/11
**controls** [11] 17/11 24/8
25/24 29/19 32/8 32/9 41/9
53/10 59/1 59/8 62/18
**controversy** [1] 80/11
**conveniently** [1] 84/23
**convinced** [2] 5/9 5/12
**core** [2] 16/25 54/8
**cornered** [1] 79/7
**correct** [15] 11/19 13/2
38/1 46/22 52/8 53/19
53/23 53/24 54/7 54/24
62/22 76/18 91/18 94/16
99/7
**correctly** [2] 5/8 12/20
**correspondence** [1] 97/23
**corresponding** [1] 71/25

**costs** [1] 77/8
**could** [22] 2/8 11/15 12/1
13/10 19/22 20/7 26/10
27/11 33/6 53/16 63/12
63/18 65/14 65/16 65/23
66/23 71/9 78/11 83/15
85/13 88/5 92/20
**couldn't** [4] 18/8 21/22
72/4 36/22
**counsel** [2] 2/8 3/3 6/1
34/4 48/25 96/22 98/14
**count** [1] 5/2
**country** [1] 37/16
**county** [7] 37/15 60/9 64/1
64/2 67/16 69/4 71/22
**couple** [2] 42/17 73/24
**course** [33] 9/18 34/20
35/2 48/9 50/2 50/25 57/11
59/4 59/19 60/2 62/11 63/9
63/12 63/15 65/16 68/21
69/19 69/20 70/7 72/5
76/19 79/13 81/1 81/6 81/7
83/2 92/17 95/1 95/2 96/25
97/9 98/1 98/3
**court** [135]
**court's** [5] 4/16 6/5 10/17
71/10 78/7
**courthouse** [2] 78/24
82/15
**courtroom** [3] 3/18 31/19
82/5
**courts** [15] 9/19 10/4
11/22 22/4 25/20 34/17
43/21 51/4 57/12 74/7
76/8 80/12 81/16 82/9 94/6
**covers** [1] 6/15
**craft** [1] 78/15
**crazy** [1] 22/9
**create** [8] 5/17 17/24
19/16 39/5 41/7 52/6 61/11
67/22
**created** [1] 66/10
**creates** [1] 53/8
**creating** [3] 19/5 19/5 64/4
**criminal** [16] 10/15 10/19
11/3 11/4 11/5 21/4 21/5
27/22 28/1 28/20 28/17
28/18 32/17 46/25 47/13
47/14
**criminals** [1] 4/13
**criteria** [1] 66/1
**critical** [1] 92/6
**criticize** [2] 69/22 69/23
**CRR** [2] 1/23 99/16
**crucial** [1] 33/17
**crystal** [2] 8/15 29/2
**currently** [1] 46/1
**curtail** [2] 75/15 83/15
**curtailing** [2] 79/21 83/16
**customers** [2] 38/18 38/19
**cut** [1] 8/25
**cv** [2] 1/6 2/6

## D

**damage** [2] 43/16 77/17
**damages** [6] 12/24 20/17
38/2 70/25 76/5 76/12
**danger** [2] 23/4 72/24 77/6
**dangerous** [6] 23/3 63/16
66/17 70/4 72/11 72/13
**dangerously** [1] 23/4
**date** [3] 3/7 63/25 70/21
**Dated** [1] 99/12
**dating** [1] 28/13
**day** [13] 16/8 31/8 31/12
36/1 45/6 55/1 75/11 75/13

**D**

day... [5] 77/25 87/25 92/24 99/12
days [1] 97/17
deal [9] 9/3 41/13 50/22 52/13 58/1 67/6 77/24 79/25 90/4
dealing [4] 29/10 34/18 54/4 59/4 74/15 74/16 78/7 89/12
deals [3] 21/11 41/3 61/17
dealt [2] 45/22 80/8
death [1] 77/10
debating [1] 28/22
decade [2] 4/20 43/2
Decency [1] 39/10
decide [4] 24/25 25/13 87/8 95/12
decided [4] 4/20 42/12 42/25 81/9 81/10
deciding [1] 59/13
decision [11] 4/16 6/5 9/21 34/13 35/7 41/4 41/7 67/22 75/23 78/7 91/8
decision-making [1] 75/23
decisions [2] 27/14 66/20 75/19
declaration [7] 7/4 11/24 24/4 24/12 38/16 43/20 68/12
declarations [5] 68/13 69/10 70/23 70/24 85/25
declare [1] 7/17
decline [1] 13/18
decree [1] 34/10
deemed [2] 27/5 27/8
defective [1] 33/12
defend [1] 59/6
defendant [10] 2/21 13/4 18/25 39/25 47/23 52/25 60/3 86/6 95/24 96/10
defendant's [2] 49/1 98/9
Defendants [2] 1/8 1/18
defense [2] 39/5 39/12
defer [1] 86/10
defied [1] 4/19
define [1] 52/24
defined [3] 53/12
definition [3] 11/23 18/1 61/3
definitions [1] 61/19
defying [1] 4/20
denied [1] 70/1
deny [2] 51/15 77/20
denying [1] 11/22 74/21
derive [1] 69/8
describe [1] 58/10
describing [3] 26/22 26/23 28/7
design [3] 12/4 41/7 67/22
designed [1] 55/10
despite [2] 53/11 63/3
detail [4] 40/15 40/25 49/12 71/16
detailed [2] 42/7 85/25
determinations [1] 51/6
determine [3] 15/3 15/5 73/12
deviation [1] 50/2
device [1] 19/13
did [11] 6/8 22/23 36/16 36/23 38/18 39/20 50/13 51/20 58/11 88/19 91/9
didn't [14] 12/17 16/5 25/2

31/20 39/19 47/14 50/13 57/16 70/6 71/6 81/12 81/12 88/21 97/19
differ [1] 81/18
difference [6] 21/24 22/3 27/18 27/22 28/6 44/8
differences [1] 72/7
different [32] 9/14 9/18 9/19 12/7 18/11 28/10 30/23 36/21 45/17 50/10 51/8 55/15 67/25 71/17 74/18 76/13 81/7 82/8 82/9 82/9 82/9 82/12 82/15 82/22 84/12 89/22 89/23 90/11 90/12 90/13 96/9 96/16
differing [1] 43/16
difficult [1] 78/3
direct [2] 92/9 92/10
direction [1] 60/17
directly [7] 6/10 10/9 31/16 32/1 34/18 49/4 92/6
directs [1] 39/6
disagree [1] 6/20 20/4 85/10
disagreed [1] 16/9
disagreement [1] 46/24
disagrees [3] 9/8 9/23 68/20
discovery [1] 96/11
discuss [1] 71/16
discussed [3] 40/14 71/11 72/16
discusses [1] 49/12
discussions [1] 65/14
disenchanted [1] 43/18
disgorgement [1] 38/5
disjoined [2] 30/18 89/15
disjoins [1] 25/22
disjunctive [1] 88/8
dismiss [7] 44/5 45/4 46/3 48/17 59/4 60/2 60/19
dismissal [1] 56/3
dismissed [4] 5/5 5/19 39/6 39/7
dispositive [1] 95/25
dispute [4] 20/21 22/6 22/13 36/15
distillation [1] 82/3
distinct [3] 24/23 43/13 48/19
distinction [1] 33/17
distributed [3] 61/6 61/7 61/15
distributer [10] 33/11 64/19 64/22 65/3 65/4 65/9 65/20 66/2 67/4 67/5
distributing [2] 30/25 33/23
distribution [5] 59/2 61/13 65/15
distributor [7] 21/2 33/12 62/23 62/25 63/4 63/6 63/10
distributors [1] 79/8
district [24] 1/1 1/1 5/7 5/12 6/5 6/7 6/18 7/24 14/20 33/1 47/22 51/7 57/12 74/17 78/6 80/12 81/5 82/13 82/15 82/17 82/20 82/21 99/5 99/6
DIVISION [1] 1/2
divisions [1] 82/17
divorce [2] 12/13 12/24
do [71] 11/7 16/20 17/17

18/8 18/17 18/25 24/11 24/18 25/9 25/12 25/17 29/14 31/4 31/8 32/4 32/5 32/12 32/13 41/17 42/20 43/8 44/1 45/17 46/9 46/16 51/4 51/20 55/14 55/22 57/19 58/7 59/15 60/1 60/8 60/17 60/25 62/13 63/8 64/7 64/24 64/25 67/4 69/19 72/17 75/17 78/13 78/17 84/22 86/14 86/14 86/16 86/18 86/20 87/15 89/2 89/3 89/20 89/20 90/6 92/5 95/12 95/20 96/1 96/4 96/21 97/4 97/19 97/20 98/12 99/6
docket [5] 44/14 81/7 82/25 95/22 97/23
dockets [1] 50/22
doctrine [1] 92/3
does [45] 6/11 9/3 9/15 10/9 18/4 26/7 30/1 33/18 35/13 40/19 40/20 40/21 40/21 40/22 51/15 53/3 53/17 54/5 56/15 57/5 58/15 59/18 60/25 62/13 62/13 66/20 67/5 69/16 69/19 69/19 70/19 71/24 72/23 72/25 74/22 76/5 83/1 83/2 83/7 85/22 87/21 87/23 87/24 89/18 93/1
doesn't [31] 9/4 9/9 10/11 11/4 11/10 11/14 15/19 15/21 20/21 23/1 24/14 24/15 25/23 25/24 32/13 34/15 35/21 36/9 39/4 40/19 54/19 56/12 57/9 59/11 71/5 71/11 71/16 76/7 76/16 77/2 84/8
doing [4] 20/2 21/15 63/18 67/13
dollars [1] 27/7
don't [68] 6/21 7/10 9/4 11/11 11/11 14/24 17/10 17/12 17/17 18/22 19/8 23/20 23/22 24/1 24/8 24/10 24/19 30/5 30/17 42/9 43/24 44/17 46/24 47/6 48/5 50/1 51/8 51/10 53/10 54/4 54/23 55/2 55/8 56/24 58/4 59/13 61/18 65/18 67/25 69/23 72/1 72/21 73/2 74/6 79/19 79/24 80/13 80/17 81/4 83/11 86/1 87/22 92/23 93/3 93/4 93/11 93/12 93/14 93/18 94/4 95/7 96/1 96/9 96/15
done [7] 19/16 40/13 51/3 58/10 63/15 73/10 87/12
Dormant [9] 6/10 31/13 34/10 40/20 57/18 60/20 66/7 91/2 92/19
doubt [2] 72/23 85/14
down [7] 4/1 29/16 39/19 62/14 77/25 97/20 98/14
downstream [1] 17/7
drawing [1] 64/11
drawn [3] 62/9 64/7 64/12
drive [2] 32/5 31/9
driven [1] 63/1
drug [1] 91/21
drugs [2] 31/17 31/21
due [7] 40/23 45/25 46/4

72/15 72/19 73/3 81/6
dueling [2] 84/16 88/1
Duran [1] 48/21
during [2] 3/6 13/1
duty [1] 90/9

**E**

each [4] 21/8 69/1 77/9 79/10
earlier [3] 38/16 50/18 84/3
easier [1] 40/10 41/11 64/21
easily [2] 41/5 67/20
Eastern [1] 82/21
easy [2] 27/15
ECF's [1] 41/16
economic [2] 38/21 38/24 69/11
effect [5] 8/13 14/5 40/16 75/12 87/21
effectively [1] 79/23
effects [1] 31/25
effort [1] 51/21
efforts [1] 4/10
eight [1] 5/3
either [6] 9/7 68/6 83/8 89/19 96/24 97/18
Elections [2] 42/23 42/24
element [1] 57/2
elements [4] 50/15 52/24 79/21 83/11
Eleventh [5] 38/3 38/25 76/2 76/14 76/16
elicited [1] 48/7
Ellison [1] 92/15
else [8] 20/13 41/13 42/9 60/16 83/7 86/6 94/1 98/6
else's [1] 11/4
email [1] 97/15
enacted [4] 4/9 22/18 35/14 95/15
end [11] 16/8 25/12 31/2 35/25 43/22 63/6 63/7 70/14 84/9 85/11 92/24
ended [1] 84/23
enforce [7] 16/2 34/6 53/15 75/5 86/2 86/2 94/19
enforced [2] 9/11 15/7
enforcement [4] 9/10 11/6 72/25 85/12
enforcements [1] 9/1
enforcing [4] 8/20 8/20 8/21 94/24
engages [1] 19/12
enjoin [16] 6/25 7/2 7/4 8/5 8/6 8/19 10/10 10/13 13/25 14/7 14/23 14/25 32/9 49/3 84/20 88/2
enjoined [2] 20/2 87/18
enjoining [1] 41/23
enjoy [1] 4/4
enjoyed [1] 3/25
enormous [1] 22/21
enough [13] 7/25 8/2 13/17 22/16 29/13 29/15 32/1 64/9 68/15 84/13 88/19 89/17 89/17
enshrined [1] 23/17
ensure [1] 66/15
enter [3] 15/6 15/11 34/9
entered [1] 95/24
entire [4] 34/15 36/19 83/17 84/15
entirely [3] 6/3 34/6 57/6

entirety [1] 54/20
entities [1] 41/2
entitled [5] 51/16 78/12 79/11 94/14 99/9
envisioning [1] 80/6
epidemic [1] 77/8
Equal [1] 40/23
equities [1] 76/21
especially [5] 30/18 73/24 77/13 88/8 89/15
Esquire [5] 1/15 1/16 1/16 1/17 1/18
essentially [10] 26/16 31/2 33/24 35/7 47/2 79/4 79/7 87/20 89/10 96/17
establish [1] 41/9
established [3] 27/15 44/2 72/20
establishing [2] 53/9 53/21
Estados [2] 71/7 71/8
Estates [1] 28/14
et [1] 1/7
evade [1] 87/1
Evans [1] 43/8
even [30] 10/12 10/21 14/1 14/3 21/8 22/22 25/1 25/23 27/6 27/11 30/6 30/12 32/10 34/5 34/19 38/25 39/11 58/5 58/11 62/24 66/14 71/11 71/19 75/20 80/2 83/15 89/6 91/12 91/20 95/11
evening [1] 4/3
eventually [1] 5/24
every [9] 17/20 74/18 77/5 77/6 79/4 81/7 81/20 82/15 92/11
everybody [4] 2/3 30/5 41/23 75/6
everything [2] 25/19 41/13
evidence [3] 23/16 30/13 68/10
evidenced [1] 48/16
exact [8] 7/23 9/22 21/21 26/1 31/14 44/6 55/10 87/11
exactly [18] 3/19 12/9 17/8 19/9 20/22 24/20 25/6 33/5 35/14 36/25 38/22 39/10 40/15 78/5 88/7 89/7 95/14 98/4
example [8] 33/10 62/19 62/24 64/18 65/23 75/9 75/11 87/9
examples [5] 23/18 54/9 54/11 54/18 56/25
except [2] 15/12 41/23
exception [16] 10/3 13/13 16/23 18/12 18/18 19/2 23/9 23/19 23/25 40/9 52/19 52/22 54/13 56/17 57/7 88/22
exceptional [2] 10/15 86/22
exceptions [1] 52/5 52/23
excessive [3] 66/14 72/12 91/22
excuse [4] 4/3 40/24 44/4 56/13
exercise [1] 10/5 13/18 93/11
Exhibit [2] 24/12 24/12
Exhibit 12 [1] 24/12
Exhibit 16 [1] 24/12

## E

**existence [4]** 2/25 51/23
**existing [1]** 56/23
**explained [4]** 10/21 24/11 26/21 36/17
**explaining [1]** 24/15
**explicit [5]** 7/1 14/23 14/25 15/1 39/11
**explicitly [2]** 10/1 94/10
**exposure [1]** 66/17
**express [1]** 69/20
**expressly [1]** 47/11
**extent [14]** 4/24 5/4 7/7 7/12 71/4 82/4 19/26 35/6 38/2 42/4 51/11 91/4 93/17 93/19
**extra** 38/17
**extraterritorial [2]** 66/8 92/1
**extraterritoriality [1]** 91/6
**extraterritorially [1]** 31/20
**eye [2]** 21/15 21/18

## F

**F.4th [4]** 7/22 69/4 70/2 72/22
**face [6]** 17/8 27/11 29/1 59/25 63/13 66/22
**facial [23]** 19/21 19/22 57/24 58/2 58/6 58/11 73/1 73/4 73/6 73/12 73/20 73/22 74/1 74/11 80/11 80/12 89/19 90/15 90/18 90/20 90/22 90/25 91/4
**fact [22]** 18/17 19/6 22/13 22/25 24/20 25/14 25/21 29/6 31/25 48/7 54/18 55/1 55/3 59/8 63/1 66/10 76/5 77/3 81/4 84/11 86/7 95/12
**fact-driven [1]** 63/1
**factor [5]** 10/24 12/16 13/6 13/12 96/25
**factors [8]** 10/23 46/24 47/20 48/1 68/24 69/1 76/19 86/22
**facts [6]** 59/4 60/1 62/9 64/7 65/18 74/19
**factual [4]** 59/25 62/10 63/9 66/4
**fail [1]** 64/8
**failed [1]** 3/15
**failing [1]** 41/9 59/1
**failure [4]** 24/7 56/1 59/7 59/23
**fair [4]** 57/14 57/19 58/9 90/20
**fairness [1]** 50/22
**faith [2]** 87/3 87/15
**fall [2]** 7/14 9/2
**falls [1]** 27/4
**false [2]** 29/22 29/23
**far [11]** 5/9 26/13 43/24 63/22 70/9 71/13 72/22 74/14 75/15 80/13 83/5
**far-reaching [1]** 63/22
**fashion [1]** 62/5
**faster [1]** 78/1
**favor [1]** 37/24
**fears [2]** 68/14 85/25
**February [2]** 44/25 44/25
**February 12th [1]** 44/25
**February 20th [1]** 44/25
**federal [41]** 1/24 4/23 10/4 10/5 10/25 11/18 11/20

13/4 13/5 13/14 13/17 13/18 13/22 13/25 14/2 15/17 16/3 17/3 18/2 23/14 24/14 24/15 34/17 46/19 48/2 48/15 48/16 51/6 58/20 81/7 84/6 84/11 84/18 85/8 86/3 87/1 87/21 87/23 88/15 95/13 99/16
**federalism [2]** 9/17 9/20
**feeling [1]** 34/7
**few [4]** 12/10 46/17 75/18 83/23
**FFL [1]** 24/3
**field [1]** 87/20
**fight [1]** 92/23
**fighting [1]** 73/10
**figure [2]** 50/6 80/18
**file [6]** 44/17 44/18 46/8 87/11 96/10 97/22
**filed [12]** 14/16 44/5 44/24 45/2 45/4 45/5 46/6 46/7 75/13 86/14 87/1 97/24
**filing [2]** 44/13 95/25
**filings [1]** 75/11
**final [1]** 76/19
**financial [1]** 47/2
**find [10]** 7/24 8/10 8/12 9/6 13/20 13/20 13/24 32/18 37/22 73/21
**finder [1]** 59/8
**fine [4]** 15/16 15/21 21/9 93/14
**finger [1]** 60/16
**firearm [46]** 18/3 22/20 36/24 52/16 53/2 53/6 53/7 56/1 58/22 61/4 61/4 61/5 61/5 61/11 61/14 61/14 61/24 62/3 63/3 63/5 63/17 63/23 64/13 64/24 66/16 66/18 67/6 69/4 69/5 69/6 69/7 69/9 69/16 69/17 69/22 70/13 71/1 71/25 72/2 72/6 72/6 77/5 77/17 80/3 80/25 83/17
**firearm-related [10]** 61/4 63/3 66/18 69/5 69/7 69/9 69/17 69/22 70/13 77/17
**firearms [29]** 4/12 17/2 22/6 22/8 23/3 23/15 24/3 32/22 33/24 34/18 35/1 35/15 35/22 35/22 36/5 36/9 36/13 37/10 37/18 37/19 38/15 58/21 62/1 64/22 70/4 72/7 72/11 72/14 91/10
**firearms-related [1]** 35/22
**fired [3]** 12/3 12/6 24/22
**first [32]** 5/15 5/22 15/3 17/25 18/11 23/2 23/12 28/24 29/12 29/18 30/6 30/20 40/2 40/21 42/2 46/18 48/12 51/9 52/3 68/16 71/19 76/10 78/3 84/5 88/8 88/15 90/14 90/24 92/20 93/7 93/14 94/12
**fit [2]** 57/7 73/11
**fits [1]** 72/13
**flavor [1]** 97/10
**flavors [1]** 91/2
**Floor [1]** 1/24
**flurry [1]** 75/13
**focused [1]** 47/19
**focusing [1]** 63/24
**folie [1]** 36/15

**follow [1]** 63/21
**following [1]** 44/19
**fondly [1]** 91/15
**food [1]** 4/3
**footnote [3]** 37/9 37/9 92/9
**forbid [1]** 20/1
**force [1]** 87/20
**force-field [1]** 87/20
**Ford [1]** 32/23
**foreclose [3]** 20/23 26/2 37/6
**foreclosed [2]** 34/13 91/8
**forecloses [1]** 56/7
**foregoing [1]** 99/7
**forestall [1]** 10/10
**form [2]** 57/21 62/5
**format [1]** 99/9
**forms [1]** 74/23
**forth [2]** 79/9 91/10
**fortiori [2]** 12/18 32/23 93/21
**forward [18]** 7/11 7/18 8/8 8/21 8/23 15/8 15/15 30/13 41/12 42/9 42/10 49/18 53/14 74/23 79/12 83/7 94/11 97/4
**forward-looking [2]** 7/11 8/23
**found [4]** 57/13 62/1 94/13 94/20
**foundation [35]** 1/4 2/5 40/8 40/18 41/10 44/4 44/7 47/11 47/23 48/18 48/24 49/2 49/5 49/8 50/11 50/12 51/12 51/16 57/10 58/6 61/21 62/15 62/16 62/17 66/21 67/11 68/1 69/10 70/7 74/13 75/1 76/11 78/12 79/10 79/20
**Foundation's [13]** 48/25 49/1 52/14 54/22 55/20 56/24 61/20 62/14 62/18 68/18 69/20 76/3 81/15
**Fourteenth [1]** 40/24
**Fourth [35]** 6/24 7/21 8/12 8/15 9/25 10/14 10/22 13/20 13/20 13/24 16/4 31/24 34/1 31/9 34/24 39/8 47/24 48/8 69/3 69/25 80/14 83/4 84/4 84/16 85/1 85/5 86/4 86/24 87/24 90/18 92/3 92/17 94/22
**frankly [2]** 73/9 90/3
**fray [1]** 59/3
**Frederick [1]** 65/2
**free [2]** 43/20 85/21
**fresh [1]** 43/24
**friend [14]** 14/16 38/1 46/15 51/11 68/11 80/18 83/25 84/23 86/10 88/4 92/2 92/8 94/17 95/8
**front [2]** 25/12 52/2
**Frosh [6]** 31/15 34/11 91/3 91/3 92/13 92/16
**frustrating [1]** 82/7
**full [5]** 18/12 47/4 47/7 89/24 90/9
**function [1]** 54/9
**fundamental [9]** 6/23 8/3 16/21 28/15 28/20 28/21 29/10 87/25 89/13
**funky [1]** 90/17
**further [4]** 19/7 23/16

48/12 63/9
**future [1]** 9/1

## G

**gain [1]** 72/17
**game [1]** 90/21
**gave [2]** 20/9 23/19
**general [41]** 6/14 6/14 6/16 8/20 15/24 16/1 16/4 22/1 24/5 24/6 24/25 25/19 28/9 28/9 31/18 34/3 39/25 43/17 45/14 48/25 49/24 50/3 53/15 53/17 57/5 58/16 59/18 60/9 63/21 64/1 67/15 67/16 68/20 75/3 75/11 75/24 76/24 77/19 85/21 93/12 93/19 94/19 97/4
**General's [6]** 5/25 49/7 49/20 68/24 76/4 95/9
**generality [1]** 37/12
**geographic [1]** 94/8
**get [38]** 7/23 8/7 9/9 12/20 14/9 19/14 20/17 21/3 32/12 32/14 33/8 36/3 41/18 41/18 41/19 41/21 50/7 52/10 55/14 62/1 63/11 63/16 64/25 67/24 68/13 70/6 71/19 76/19 78/4 81/8 86/14 91/9 95/13 96/19 97/15 97/16 97/17
**gets [6]** 12/8 33/16 38/11 57/24 73/14 81/10
**give [8]** 20/7 29/13 44/21 51/4 71/25 97/10 97/17 97/18
**given [8]** 5/24 28/25 30/20 53/11 88/8 88/12 94/5 96/7
**gives [1]** 93/9
**glad [3]** 4/5 16/5 41/14
**Glock [58]** 7/6 7/13 8/6 8/14 9/1 9/14 10/13 10/16 12/4 12/5 14/24 15/12 16/6 18/6 18/7 21/16 21/22 24/23 32/16 41/2 42/8 44/5 45/1 45/1 45/3 48/14 48/18 48/24 49/5 49/14 52/25 54/21 58/23 58/25 59/5 59/12 60/11 60/15 60/15 62/4 62/5 62/7 67/18 68/4 71/2 72/2 73/17 73/19 74/12 75/2 75/7 77/1 79/20 83/7 84/20 85/11 94/11 97/24
**Glock's [10]** 41/3 41/4 58/18 62/20 64/4 70/15 70/16 70/20 70/21 77/11
**Glocks [1]** 12/7
**go [39]** 3/8 3/14 3/18 5/22 8/20 10/23 14/13 15/8 15/15 31/4 31/6 35/16 40/16 41/12 41/12 41/18 42/9 42/10 44/15 46/18 49/18 49/23 52/5 57/16 62/17 63/18 65/25 70/8 71/11 71/13 71/16 72/21 74/20 77/13 80/13 83/7 94/11 95/22 96/11
**goes [9]** 19/6 19/7 35/2 53/14 62/14 63/23 78/1 85/11 85/11
**going [69]** 3/11 5/1 5/1 7/14 8/8 11/12 13/14 14/13 14/21 18/24 19/9 20/25

21/3 21/4 21/4 21/14 22/24 23/15 24/5 25/3 28/10 29/6 29/21 30/1 32/9 33/9 34/1 34/7 34/23 35/19 40/8 41/25 42/6 44/8 52/10 52/20 55/22 58/1 58/19 59/5 65/20 65/22 65/23 69/23 73/14 75/15 75/16 76/9 77/24 81/6 81/8 81/10 81/14 81/15 83/6 84/24 88/15 92/4 93/14 95/9 95/12 95/13 96/2 96/2 97/6
**gonna [1]** 9/2
**good [14]** 2/2 4/3 4/3 13/17 16/16 29/13 35/16 86/8 87/15 88/19 89/16 89/17 92/17 95/2
**gosh [4]** 25/4 85/15 87/6 93/20
**got [7]** 9/8 20/12 31/8 33/5 46/6 57/16 67/7
**gotten [5]** 5/4 10/12 57/15 68/9 86/22 97/7
**government [1]** 17/20
**governments [1]** 4/11
**Governors [1]** 49/1
**grand [1]** 93/24
**grant [7]** 13/6 39/15 81/19 87/22 94/6 94/7 95/16
**granted [2]** 47/5 47/7
**granting [1]** 76/21
**grants [1]** 81/19
**grasp [1]** 27/4
**great [4]** 32/22 34/9 40/7 58/1
**greatest [1]** 57/21
**grocers [1]** 27/5
**Grocery [2]** 27/13 93/17
**grounds [5]** 5/6 5/19 5/24 6/6 58/25
**group [1]** 43/18
**guess [5]** 3/11 51/17 64/18 66/25 79/12
**gun [15]** 19/14 21/12 21/17 33/11 33/13 40/13 63/11 65/21 65/24 71/21 76/25 77/8 77/8 79/5 88/21
**gun-violence [1]** 77/8
**guns [3]** 65/6 77/9 91/16

## H

**had [21]** 4/19 6/1 12/10 12/12 12/22 16/20 19/24 22/5 30/4 32/8 37/13 52/1 60/3 65/14 75/10 80/17 91/12 94/1 95/2 95/23 95/23
**half [2]** 71/4 78/3
**hamstring [1]** 79/18
**hand [1]** 33/14
**handful [3]** 4/18 4/19 5/15
**handguns [1]** 25/4
**hands [3]** 21/3 63/17 65/6
**happen [2]** 15/19 26/13
**happens [1]** 15/20 33/24 45/7 78/23
**happy [6]** 7/13 8/24 14/11 42/20 44/18 46/9 68/16 80/19
**Harbor [1]** 4/4
**hard [3]** 9/5 33/9 80/5
**harm [24]** 25/5 32/21 37/23 38/11 38/21 38/24 41/8 52/6 54/15 56/4 56/19 57/4 57/5 61/12 66/9 66/11

**harm... [8]** 67/23 70/2 77/14 77/15 80/4 92/5 94/19 94/21
**harmed [1]** 31/22
**harming [1]** 77/12
**harms [5]** 4/13 17/7 30/14 40/13 80/24
**has [50]** 5/2 5/3 6/24 8/15 13/21 18/20 23/15 24/6 27/24 28/14 30/13 35/19 38/1 42/15 43/14 43/15 44/5 45/22 45/24 46/2 48/7 51/8 56/17 56/21 57/3 57/15 57/20 63/11 63/21 65/15 71/8 73/8 74/15 76/7 79/20 79/25 81/7 82/14 84/17 87/24 89/23 91/2 92/12 92/13 93/20 93/24 93/25 94/23 96/25 97/12
**hasn't [4]** 16/17 60/3 92/17 94/3
**have [128]**
**haven't [5]** 5/9 17/23 42/12 44/2 78/17 93/15
**having [6]** 9/5 80/5 83/14 88/13 89/11 96/19
**havoc [1]** 41/25
**HB947 [5]** 6/11 12/1 16/22 17/9 20/16
**he [18]** 16/5 16/5 24/9 26/25 27/14 33/3 33/5 33/6 36/17 38/16 38/18 46/23 57/17 73/14 78/3 78/5 78/6 80/21
**he's [5]** 24/3 24/15 26/23 46/23 80/19
**head [3]** 15/5 78/4 88/7
**heads [1]** 93/7
**health [2]** 48/5 70/3
**hear [6]** 3/10 4/5 20/25 21/14 41/14 50/13
**heard [4]** 46/18 50/11 60/23 69/12
**hearing [7]** 2/6 3/5 3/7 44/19 46/1 51/18 98/15
**heart's [1]** 35/17
**heavily [1]** 17/19
**heightened [3]** 20/17 28/25 92/21
**held [12]** 4/16 6/8 6/18 9/10 12/15 12/22 22/5 39/3 39/4 43/10 84/17 99/8
**Heller [1]** 4/19
**help [3]** 11/12 34/23 44/15
**helpful [2]** 19/18 92/14
**helps [1]** 52/11
**her [2]** 13/1 81/7
**here [13]** 3/7 6/11 6/13 6/22 8/7 8/25 13/8 13/16 14/24 15/1 20/3 24/3 28/7 28/8 29/12 29/18 31/12 32/16 34/4 34/12 38/11 39/1 40/19 41/2 41/13 41/21 43/4 44/6 44/11 44/23 45/7 45/21 47/24 48/11 49/11 49/23 50/8 52/5 52/14 58/7 58/12 66/6 66/11 66/15 66/18 67/11 68/1 68/15 70/22 71/11 71/17 72/22 75/16 76/10 76/13 77/10 77/12 79/21 81/4 82/14 82/16 83/11 83/16 87/17 88/24 91/13 94/4 94/10 97/4 97/20 98/19 97/14 97/15 98/14
**Here's [1]** 56/9
**hereby [1]** 99/6
**Hicks [1]** 48/22
**high [5]** 16/8 31/23 37/11 73/25 74/15
**highest [3]** 42/25 43/3 80/7
**highlight [4]** 46/14 46/17 51/20 55/18
**highlighted [1]** 40/17
**highlights [2]** 40/25 50/17
**highly [1]** 63/16
**him [6]** 24/14 26/22 47/18 73/14 78/14 94/2
**his [8]** 23/11 34/4 36/17 38/17 38/19 47/19 81/7 94/2
**historical [3]** 37/8 37/12 71/18
**history [3]** 22/17 37/10 70/5
**hit [1]** 88/6
**Hoffman [1]** 28/14
**hold [5]** 12/1 36/18 37/17 55/25 95/25
**holding [1]** 71/10
**holdings [1]** 27/1
**home [1]** 31/9
**Honor [64]** 2/4 2/15 2/18 3/13 3/21 7/2 7/7 7/12 7/15 7/20 8/9 8/24 12/10 12/15 13/2 14/12 15/11 18/11 20/9 37/22 39/15 39/21 39/24 40/17 42/17 44/14 44/19 45/13 45/20 46/4 46/9 46/12 48/12 49/21 51/4 51/20 52/8 52/13 54/9 55/13 56/14 57/19 59/15 60/21 62/19 64/11 68/16 74/21 77/20 77/23 81/4 82/11 82/14 82/19 83/19 83/23 87/5 88/6 89/5 95/16 96/12 97/12 98/8 98/11
**Honor's [5]** 8/10 47/11 48/9 62/24 74/11
**HONORABLE [1]** 1/12
**hook [1]** 67/4
**hope [2]** 32/18 39/18
**hopefully [1]** 81/18
**House [2]** 4/21 4/22
**how [58]** 7/7 9/3 9/15 11/19 11/25 11/25 14/5 15/5 15/8 17/12 19/10 21/20 27/22 31/24 32/12 32/13 35/24 37/12 37/13 49/17 51/25 54/5 54/20 55/14 55/15 56/15 58/15 61/18 67/4 67/4 67/24 73/2 74/7 77/12 78/3 78/8 78/13 79/19 80/6 80/8 80/18 81/10 81/17 83/10 83/15 85/24 86/1 86/3 89/18 91/9 92/3 95/14 96/1 96/4 96/23 97/4 97/9 98/9
**however [1]** 76/17
**hundred [1]** 38/19
**hypothetical [4]** 19/17 20/9 64/10 65/19

## I

**I'd [3]** 16/5 16/5 18/11
**I'll [15]** 7/23 31/11 36/11 36/12 39/22 46/8 48/11 61/24 76/20 83/21 95/18 95/19 97/1 97/15 98/14
**I'm [59]** 2/12 3/10 5/15 7/13 8/24 9/5 11/12 14/11 14/13 17/24 18/24 19/9 19/16 20/25 21/14 24/4 24/10 34/23 36/4 36/17 38/16 40/3 40/7 40/8 40/8 40/10 41/14 42/20 43/7 43/8 47/18 50/5 50/5 50/19 52/10 54/7 54/24 56/22 61/25 65/22 65/23 68/16 69/19 71/12 73/14 77/24 78/16 78/19 80/5 80/21 81/14 83/6 87/3 87/7 87/8 90/9 96/2 96/2
**I've [9]** 11/19 13/19 31/8 46/6 49/10 57/16 67/7 79/25 80/14
**ID [2]** 65/10 65/16
**idea [6]** 11/2 25/24 29/14 34/1 82/2 93/3
**identical [4]** 24/6 67/14 73/4 75/6
**identity [1]** 42/14
**ignores [2]** 49/3 49/8
**iii [2]** 1/16 54/10
**Ileto [3]** 21/22 22/4 39/3
**illegal [2]** 19/13 66/17
**Illinois [1]** 82/1
**illustrate [1]** 19/18
**immune [1]** 68/5
**immunity [9]** 4/15 38/4 38/25 39/5 39/11 39/13 39/13 76/2 76/15
**impact [7]** 27/25 69/11 77/11
**impacting [1]** 77/1
**implement [3]** 41/6 41/9 67/21
**implementing [2]** 53/9 57/11
**implicate [5]** 28/19 34/16 36/9 40/22 71/5
**implicated [4]** 44/3 49/17 72/9 89/13
**implicates [9]** 28/15 23/25 28/23 29/10 34/20 34/24 36/7 48/3 68/25
**importance [1]** 48/3
**important [9]** 38/15 48/6 52/9 52/19 55/22 81/3 84/22 88/14 96/3
**importantly [2]** 52/18 79/23
**importation [1]** 61/13
**importing [1]** 30/25
**impose [6]** 4/11 17/4 35/16 38/17 47/1 47/12
**imposed [2]** 37/3 38/13
**imposes [2]** 12/1 30/16
**imposing [1]** 22/12
**imposition [1]** 17/1
**impossible [2]** 52/15 89/9
**inadequate [1]** 12/16
**inapplicable [1]** 14/10
**inappropriate [1]** 87/17
**INC [14]** 1/4 45/1 46/20 48/18 48/22 48/24 52/25 58/23 58/25 59/12 60/11 67/18 70/8 75/3
**incarcerated [1]** 29/12
**inclined [1]** 83/10
**include [2]** 54/12 70/19
**includes [1]** 54/9
**including [1]** 7/5
**inconsistent [2]** 97/10 83/1
**Incorporated [1]** 2/5
**incurrence [1]** 70/25
**indicated [1]** 95/23
**indication [1]** 68/10
**individual [7]** 43/14 44/4 49/10 50/11 50/13 50/16 77/3
**individual's [1]** 71/24
**industry [25]** 4/12 22/21 29/4 36/25 40/18 52/16 53/2 53/6 53/7 58/22 61/11 63/24 66/16 69/4 69/6 69/16 71/1 76/25 77/5 79/6 80/3 80/25 81/22 83/17 93/10
**industry's [1]** 40/13
**inequities [1]** 37/23
**information [1]** 65/1
**inherently [1]** 23/3
**initial [1]** 59/3
**injunction [25]** 1/12 2/7 8/19 15/6 15/11 16/3 20/3 24/13 39/16 41/16 74/22 76/22 77/19 78/10 78/13 78/15 79/4 79/16 79/24 80/10 81/24 95/16 96/8 97/8 97/13
**injunctions [5]** 78/3 78/8 78/8 78/21 80/8
**injunctive [1]** 79/2
**injury [3]** 37/25 38/23 39/1
**Inn [1]** 48/22
**Inner [1]** 4/4
**inquiry [7]** 23/6 23/7 62/10 63/1 63/9 65/21 71/9
**instance [4]** 27/4 32/7 32/10 96/7
**instances [1]** 33/8
**instituted [2]** 12/25 48/1
**instruction [1]** 72/17
**instructive [1]** 58/5
**insufficiently [2]** 32/8 85/25
**Integrity [1]** 42/23
**intellectual [1]** 2/24
**intended [6]** 8/23 61/7 61/15 64/16 66/2 66/10
**intending [1]** 69/8
**intent [6]** 32/4 53/17 55/9 63/2 63/11 63/13
**intention [2]** 6/1 6/3
**intentionally [2]** 19/8 55/5
**intentions [2]** 94/25 95/1
**interest [10]** 15/10 28/20 28/21 29/11 43/13 48/4 48/7 70/3 76/21 94/23
**interesting [1]** 78/22
**interests [2]** 44/3 49/17
**interfere [7]** 8/5 8/16 10/10 49/4 84/7 84/8 88/2
**interference [2]** 8/14 10/17
**intermediate [3]** 30/7 30/12 93/2
**Internet [1]** 38/18
**interpretation [1]** 88/16
**interpreted [1]** 39/9
**interpreting [1]** 16/18
**interstate [1]** 66/13
**intervene [11]** 11/8 11/15 11/16 12/8 13/10 42/14 44/1 49/9 49/13 49/22 50/20
**intervenes [1]** 47/6
**intervention [4]** 11/17 11/21 11/22 13/11
**invalid [4]** 15/17 43/21 54/19 54/20
**invert [1]** 87/23
**invitation [1]** 97/10
**invoke [1]** 82/25
**invoked [1]** 71/7
**involved [1]** 64/2
**involves [1]** 70/19
**IP [1]** 21/13
**irreparable [7]** 37/23 37/25 38/11 38/23 38/24 39/1 39/14
**is [389]**
**isn't [8]** 8/24 13/7 29/15 33/11 34/1 58/10 64/8 74/20
**issue [21]** 12/4 42/20 44/2 47/4 69/3 70/9 70/12 70/15 70/23 71/14 77/2 78/21 81/16 81/17 82/12 83/24 82/1 86/9 88/4 96/3 97/1
**issued [4]** 44/25
**issues [8]** 9/22 11/23 26/8 45/17 47/2 49/25 59/20 71/11
**it [272]**
**it's [140]**
**its [52]** 7/14 9/2 9/22 9/23 10/2 18/12 24/25 41/4 41/5 41/6 41/7 43/13 43/14 44/4 45/19 47/10 48/20 49/8 50/3 50/11 50/20 54/19 57/6 57/21 59/2 59/7 59/25 63/10 66/21 66/22 67/20 67/22 67/22 69/20 69/21 70/4 70/6 71/7 71/9 71/20 74/18 74/23 75/1 75/17 75/23 76/11 80/25 81/25 82/3 82/5 85/11 93/7
**itself [14]** 10/18 11/15 18/18 23/9 29/17 30/2 35/13 52/24 54/16 56/20 56/21 59/6 61/20 76/7

## J

**Jacobs [2]** 36/17 46/20
**James [3]** 1/16 2/12 72/18
**Jersey [15]** 5/22 5/22 6/1 6/4 6/5 6/19 14/20 23/12 24/6 47/22 51/7 67/13 67/14 84/25 95/8
**Jersey's [1]** 83/3
**John [2]** 1/16 2/14
**Johnson [5]** 26/16 26/21 27/19 89/12 93/19
**Jonathan [6]** 7/21 9/25 10/6 14/1 14/14 84/1
**Joshua [1]** 1/18 2/20 39/24
**judge [17]** 5/22 6/7 6/18 6/21 14/19 14/20 22/24 23/11 32/25 33/3 36/17 51/7 57/17 76/23 78/2 81/7 95/23
**Judge Jacobs [1]** 36/17
**Judge Quereshi [4]** 5/22 6/18 14/20 23/11
**Judge Quereshi's [2]** 6/21 14/19
**Judge Richardson [1]**

**J**

**Judge Richardson [1]** 78/2

**Judge Schopler [1]** 32/25

**Judge Schopler's [1]** 57/17

**judges [2]** 5/13 25/13

**judgment [3]** 4/20 5/5 22/15

**judicata [1]** 8/2

**judicial [7]** 43/12 43/20 44/12 46/8 46/10 48/1 99/10

**judiciary [2]** 43/23 94/5

**judiciary's [1]** 44/14

**July [2]** 45/5 75/19

**July 23rd [1]** 45/5

**jumping [2]** 47/9 62/16

**juncture [2]** 59/9 97/2

**Junior [2]** 70/8 70/12

**jurisdiction [7]** 10/5 13/18 32/12 32/14 32/19 33/8 86/3

**jurisdictional [1]** 59/23

**jurisdictions [1]** 76/8

**just [81]** 3/4 11/2 14/20 15/4 18/12 18/18 18/21 20/16 21/12 21/15 22/10 22/12 23/17 25/19 25/25 26/3 26/11 28/19 29/1 29/9 29/14 29/21 30/4 30/11 30/20 30/24 32/22 32/23 34/12 35/11 35/12 35/22 36/4 36/16 36/19 36/23 37/5 37/9 37/25 39/4 39/12 41/12 43/5 43/8 44/21 46/6 47/9 48/11 49/2 49/5 51/22 52/1 54/9 58/2 58/10 63/13 64/11 70/24 73/8 73/19 77/11 78/22 83/9 83/14 83/23 84/19 84/22 85/25 87/1 87/16 88/1 89/12 89/16 89/24 90/23 91/7 93/6 93/7 93/22 95/7 95/12

**justice [9]** 26/15 26/21 28/6 71/14 80/4 89/11 93/18 93/25 94/1

**Justice Scalia [2]** 26/21 28/6

**K**

**keep [1]** 93/9

**kept [1]** 39/18

**kick [2]** 25/13 86/17

**kicked [3]** 31/21 87/5 91/21

**kills [1]** 73/22

**kind [9]** 17/23 20/22 21/16 37/2 37/4 43/15 43/16 73/9 95/19

**kitchen [1]** 35/21

**knew [3]** 32/20 88/19 88/20

**Knipp [1]** 34/21

**know [90]** 3/22 6/13 8/9 11/11 11/11 13/16 14/21 14/24 15/14 15/16 17/10 17/12 17/13 17/16 17/17 17/24 18/25 19/14 19/23 20/18 21/2 21/6 21/15 21/17 22/7 23/23 23/25 24/1 24/10 24/19 25/10 25/15 26/17 27/19 29/17 29/21 30/22 31/1 31/4

**knowing [20]** 18/18 19/1 21/7 23/10 23/12 27/12 54/5 54/12 54/15 55/7 56/3 56/10 56/12 56/18 57/4 58/16 65/5 88/13 88/20 88/22

**knowingly [11]** 18/20 19/4 19/5 23/15 26/22 41/7 52/6 61/11 67/22 89/4 89/6

**knowledge [9]** 51/24 52/23 53/2 53/6 53/10 57/2 62/11 65/11 65/12

**known [4]** 25/6 29/7 45/1 89/7

**knows [1]** 65/3

**L**

**laid [1]** 59/24

**land [1]** 58/13

**language [2]** 58/5 61/2

**large [1]** 80/3

**last [8]** 4/1 14/16 16/11 34/14 40/15 73/24 78/1 93/22

**later [7]** 59/12 59/17 60/1 60/5 75/12 85/13 86/24

**latest [1]** 4/21

**Laughter [4]** 31/10 33/4 51/1 80/20

**law [76]** 3/25 4/23 11/19 11/20 13/9 17/1 17/4 17/11 18/21 20/3 21/13 23/24 24/2 24/5 24/7 24/14 24/15 26/17 26/19 27/5 27/9 30/15 30/16 32/11 34/18 36/12 37/2 37/17 38/13 38/22 40/9 40/14 40/16 41/23 42/19 43/11 45/11 45/12 45/13 45/14 45/19 49/7 49/15 49/19 51/5 52/14 52/18 61/22 62/14 66/8 67/13 70/9 70/12 72/5 75/12 75/14 81/21 82/19 83/3 83/4 84/4 84/13 84/18 88/21 89/12 89/13 90/7 91/21 92/17 93/13 93/15 94/22 94/23 95/1 95/2 95/11

**law-abiding [1]** 72/5

**lawful [15]** 4/9 4/14 12/2 25/22 29/3 37/17 37/18 37/19 63/17 69/17 76/23 88/10 89/16 93/4 93/8

**laws [14]** 4/22 5/10 5/15 11/18 35/17 37/13 50/8 63/21 64/21 69/22 89/7 95/5 95/5 95/6

**lawsuit [18]** 8/21 9/14 10/11 20/11 36/22 42/5 45/2 48/16 52/21 54/14 56/2 56/16 79/12 79/19 80/5 85/6 85/13 87/14

**lawsuits [1]** 40/18 42/8

**95/9**

**lawyer [1]** 38/2

**lawyers [1]** 74/3

**lay [2]** 14/21 17/23

**layer [1]** 66/12

**lays [1]** 51/12

**lead [1]** 3/12

**leading [1]** 77/9

**learn [3]** 74/5 74/19 95/8

**learned [2]** 2/24 75/6

**learning [3]** 73/24 74/3 75/4

**least [9]** 6/14 28/15 28/22 28/23 34/14 47/8 47/19 73/5 83/5

**leave [2]** 78/14 80/17 83/21

**left [4]** 13/10 42/18 97/5 97/7

**legal [4]** 21/9 38/17 72/21 82/3

**legally [3]** 48/18 62/3 62/4

**legislative [3]** 22/17 43/21 70/5

**legislatures [1]** 25/17

**lends [1]** 29/17

**length [1]** 58/9

**lengthy [2]** 61/3 61/9

**less [7]** 14/23 30/15 39/11 81/19 81/20 84/9 91/12

**less-burdensome [1]** 30/15

**lesson [1]** 29/9

**lessons [1]** 43/24 73/23 75/6

**let [17]** 3/2 3/4 5/13 9/23 11/12 24/14 39/22 41/12 41/12 42/9 42/9 48/13 68/10 75/15 81/15 82/2 83/7

**let's [9]** 2/3 9/6 18/5 51/19 62/3 62/3 64/20 87/12 95/19

**letting [1]** 21/18

**level [4]** 17/20 37/11 65/14 78/22

**leveled [1]** 96/8

**liability [17]** 4/12 4/24 12/1 17/11 17/9 18/1 20/1 20/22 24/21 26/1 33/18 37/2 37/4 53/21 59/10 65/5 68/4

**liable [6]** 9/10 12/2 33/12 37/19 56/1 65/24

**liberty [4]** 28/20 28/21 29/11 47/1

**licensed [2]** 17/1 93/10

**lie [1]** 23/22

**life [1]** 77/16

**life-altering [1]** 77/16

**light [3]** 16/3 55/5 55/6

**like [71]** 14/1 17/22 20/2 20/3 21/19 23/20 32/22 34/1 38/19 39/23 40/14 54/9 58/22 78/4 90/8 92/13 96/12

**liked [1]** 78/5

**likelihood [1]** 67/10

**likely [5]** 13/6 37/21 66/21 71/14 94/20

**limit [1]** 66/17

**limitation [1]** 94/8 94/8

**limited [2]** 73/19 78/22

**line [8]** 26/11 26/13 34/15 50/1 72/1 76/9 87/3 94/5**

**linger [1]** 84/22

**listening [1]** 8/6

**litany [1]** 75/11

**literally [1]** 36/12

**litigating [1]** 6/4

**litigation [8]** 45/16 82/13 86/7 86/11 86/23 87/1 88/1 88/3

**litigations [1]** 5/15

**little [14]** 3/4 3/22 11/12 21/8 40/6 46/14 58/15 60/23 61/3 64/19 69/12 71/3 71/3 90/17

**live [1]** 12/23

**lives [2]** 77/7 77/7

**living [1]** 28/3

**loathed [1]** 43/7

**local [2]** 4/10 17/3

**lock [1]** 54/19

**logic [3]** 32/22 35/8 35/10

**logical [1]** 10/2

**Lombard [1]** 1/24

**long [3]** 43/10 49/25 55/2

**longer [1]** 92/17

**look [27]** 11/18 11/20 11/22 12/5 13/19 15/2 17/25 18/5 18/11 20/16 23/9 23/18 25/16 27/22 37/13 38/15 52/1 52/2 55/21 59/11 60/5 73/11 75/21 79/2 80/23 84/18 95/22

**looked [3]** 22/17 57/21 60/9

**looking [14]** 7/11 8/23 47/20 52/9 54/10 57/2 58/3 60/11 62/12 63/20 63/22 74/25 75/2 80/24

**looks [2]** 17/22 67/18

**loosely [1]** 83/16

**loss [1]** 39/13

**lost [2]** 77/7 77/8

**lot [17]** 9/4 11/5 19/20 41/25 46/16 61/25 67/5 67/12 72/16 73/5 73/10 76/9 77/3 79/1 81/13 83/14 96/22

**lots [2]** 25/4 95/5

**love [3]** 32/24 32/25 50/19

**M**

**made [24]** 4/17 6/24 7/21 7/22 8/3 8/15 10/6 16/25 19/23 28/14 30/11 31/18 31/21 34/12 37/16 41/15 42/13 57/11 75/20 89/5 90/19 91/13 91/14 91/23

**Magazine [1]** 70/8

**magazines [1]** 24/9

**maintain [7]** 13/1 41/7 52/6 59/1 59/7 61/11 62/13

**maintained [1]** 60/12

**maintaining [1]** 19/6

**maintains [1]** 53/8

**majority [1]** 16/24

**make [15]** 4/12 9/4 9/21 11/4 28/3 38/12 40/6 40/10 47/13 59/9 65/21 66/6 87/4 96/10 96/10

**makes [20]** 25/15 35/24 41/11 44/6 50/9 53/13 56/5 61/9 73/7 85/17 88/17 90/3 90/3 90/8 91/3 92/9 92/25 96/15 96/16 96/22

**making [3]** 75/23 84/19

**91/16**

**malicious [2]** 74/3 74/6

**manner [3]** 27/10 69/18 70/13

**manufacture [3]** 12/2 12/3 61/12

**manufacture's [1]** 75/23

**manufactured [3]** 61/6 61/7 61/14

**manufacturer [11]** 21/1 33/15 55/16 62/12 62/23 63/2 63/10 63/18 63/23 64/10 79/5

**manufacturer's [1]** 62/21

**manufacturers [3]** 17/1 79/8 87/13

**manufacturing [4]** 30/25 33/23 33/24 37/19

**many [5]** 26/8 36/8 80/14 93/24 96/9

**maps [1]** 6/22

**market [13]** 18/22 25/5 30/5 30/17 30/19 32/13 55/16 69/5 79/7 93/4 93/4 93/12 93/14

**marketed [4]** 21/18 61/6 61/7 61/15

**marketing [27]** 18/3 19/12 19/13 19/14 21/3 21/8 21/10 22/6 22/8 23/14 24/24 25/1 25/1 29/20 30/24 35/15 37/10 41/5 59/2 61/13 68/19 68/25 69/17 90/15 90/16 91/1 93/13

**markets [4]** 18/6 19/12 21/2 67/20

**married [1]** 12/12

**MARYLAND [95]** 1/1 1/7 1/25 4/21 4/22 9/13 9/21 9/24 11/9 11/11 11/14 11/19 12/5 13/9 16/7 16/8 24/4 29/24 31/18 31/21 31/22 32/10 32/13 32/15 33/13 33/13 33/15 33/25 41/5 42/19 43/2 43/3 43/5 43/11 43/25 44/14 45/10 49/11 49/15 50/8 51/4 52/22 55/1 61/5 61/16 61/18 61/22 62/5 62/6 62/24 63/1 63/3 63/11 64/5 64/14 64/23 65/3 65/6 65/10 65/13 65/16 65/22 66/2 66/3 66/10 66/18 66/23 67/6 67/15 67/19 67/21 69/3 69/23 72/10 72/22 73/16 75/3 75/22 76/7 76/23 77/7 77/10 77/12 79/11 80/1 80/4 81/16 82/16 83/6 91/22 91/24 91/24 94/18 95/2 99/6

**Maryland's [6]** 11/17 16/22 40/9 40/12 43/3 70/3

**Marylanders [3]** 31/22 77/1 77/16

**matter [8]** 7/19 10/19 28/1 45/21 46/25 89/18 94/24 99/9

**matters [2]** 74/7 94/21

**Matthew [1]** 1/15 2/10 4/6

**may [28]** 3/4 3/15 8/9 8/10 9/8 9/15 14/12 21/6 21/10 21/10 21/11 28/5 32/17 36/3 38/22 38/22 42/11

## M

**may... [11]** 63/22 11/25 64/18 64/22 65/2 73/15 73/16 82/2 82/8 94/13 95/24

**maybe [15]** 13/16 13/17 17/22 27/24 33/7 36/9 37/25 40/5 51/21 58/14 67/7 82/24 95/7 95/10 97/16

**Md [3]** 42/24 43/6 43/9

**me [26]** 3/4 3/6 3/17 5/13 11/12 11/19 17/22 18/23 34/23 38/1 40/24 41/11 42/19 44/4 46/10 46/22 48/3 48/13 49/23 51/21 51/25 52/2 54/24 56/13 90/3 90/6

**mean [23]** 7/4 13/8 13/9 15/2 17/10 20/24 25/21 26/9 28/3 29/5 30/20 34/3 35/19 35/23 35/25 41/1 54/19 58/17 62/20 74/6 76/7 85/18 89/24

**means [2]** 17/10 90/10

**meant [4]** 12/17 22/15 73/13 77/25

**mechanism [1]** 76/3

**media [1]** 69/13

**Medicines [2]** 31/15 92/14

**meet [5]** 2/11 2/13 2/19 2/24 98/14

**meeting [1]** 67/11

**meets [2]** 52/17 59/13

**member [22]** 6/16 7/5 16/3 41/23 42/4 48/14 48/24 52/16 53/7 58/22 58/24 61/11 69/5 69/16 74/13 79/10 80/25 81/21 81/25 81/25 85/6 85/22

**member's [4]** 49/10 53/2 53/6 63/24

**members [39]** 4/12 6/2 9/9 11/24 15/7 15/12 18/6 22/21 24/3 24/24 25/9 32/24 38/12 43/14 44/4 49/8 50/11 50/13 50/16 66/16 69/6 69/7 71/1 75/1 76/11 77/1 77/5 79/6 79/6 80/2 80/3 80/5 80/9 81/15 85/7 85/16 93/10 93/24 95/3

**members' [1]** 29/4

**memoranda [1]** 47/4

**mens [3]** 25/23 54/2 88/18

**mental [4]** 54/12 54/17 56/22 57/6

**mention [3]** 24/22 42/6 72/7

**mentioned [5]** 38/16 64/11 68/11 71/18 88/4

**mere [1]** 84/11

**merely [1]** 27/3

**Merit [1]** 99/4

**merits [5]** 5/4 5/4 16/17 46/16 57/15 66/21 94/20

**met [4]** 50/15 78/17 79/20 83/11

**Mexico [3]** 36/21 71/9 82/1

**Middlesex [8]** 10/23 10/24 12/16 13/6 13/12 46/24 47/9 86/22

**midst [1]** 82/8

**might [23]** 7/24 7/25 8/12

20/2 21/8 50/12 54/18 55/19 64/8 74/25 75/9 75/14 76/6 78/1 81/17 84/11 84/16 86/11 86/25 88/1 88/5 90/17 96/24

**mind [2]** 44/17 52/25

**minimum [1]** 80/11

**minors [1]** 70/14

**minutes [1]** 38/19

**Miranda [1]** 48/22

**misconduct [1]** 29/4

**misconstrue [1]** 57/23

**misfires [1]** 33/13

**misleading [4]** 21/11 21/12 29/22 29/23

**misrepresented [1]** 11/19

**misuse [1]** 4/14

**misused [1]** 65/24

**moat [1]** 42/16

**modified [2]** 41/5 67/20

**month [1]** 40/15

**months [3]** 12/24 75/12 75/18

**Moody [2]** 90/1 90/10

**more [22]** 14/11 14/25 30/16 42/13 47/11 52/18 58/19 61/18 69/14 77/6 77/7 77/22 79/23 84/19 86/14 87/13 90/8 91/20 92/21 93/1 94/7 97/10

**morning [1]** 2/2

**morph [1]** 26/7

**most [5]** 3/16 29/21 55/22 57/20 83/18 96/16

**motion [24]** 2/7 24/13 39/15 41/16 44/5 44/10 45/4 45/5 45/20 45/23 46/3 46/7 48/16 49/22 51/15 60/2 60/18 74/22 77/19 77/20 95/25 96/8 96/18 97/13

**motions [4]** 45/25 50/20 59/4 97/23

**Mountain [1]** 71/21

**move [5]** 50/13 50/16 60/20 68/16 96/5

**movement [1]** 50/14

**moves [1]** 32/15

**moving [6]** 49/10 74/23 79/12 83/3 83/4 97/4

**Mr [1]** 3/20

**Mr. [27]** 2/11 2/13 2/16 3/11 11/18 23/6 39/17 42/12 46/11 46/22 53/25 54/6 54/23 55/3 56/9 59/16 73/7 73/13 77/24 78/11 80/22 82/6 83/21 88/13 89/8 91/10 96/4

**Mr. Chazen [4]** 11/18 23/6 88/13 89/8

**Mr. Chazen's [1]** 91/10

**Mr. Porter [1]** 2/13

**Mr. Rowen [18]** 2/11 3/11 39/17 42/12 46/11 46/22 54/23 55/3 56/9 59/16 73/7 73/13 77/24 78/11 80/22 82/6 83/21 96/4

**Mr. Rowen's [2]** 53/25 54/6

**Mr. Sweeney [1]** 2/16

**much [9]** 3/1 20/4 40/14 41/11 84/9 91/9 95/17 98/5 56/5 61/20 67/2 68/3 68/4 68/10 70/20 71/8 72/23 74/7 74/9 85/8 85/13 86/4 86/21 92/16 94/1 94/23

**multi [1]** 82/13

**multi-district [1]** 82/13

**multiple [3]** 57/12 57/12 64/18

**multistep [1]** 17/22

**multiyear [1]** 82/7

**must [4]** 43/12 52/22 54/14 56/3

**my [36]** 2/24 3/25 5/2 11/1 11/20 14/16 15/4 25/8 32/24 33/3 37/25 38/18 39/20 40/10 41/21 42/18 46/15 47/19 51/15 71/6 68/11 69/15 71/6 80/17 83/25 84/23 86/10 86/14 87/8 88/4 92/2 92/8 94/17 95/2 95/8 97/17

**myriad [1]** 17/2

**myself [1]** 61/10

## N

**nail [1]** 88/7

**name [2]** 42/25 77/25

**names [1]** 5/1

**narrow [2]** 79/21 93/2

**narrowly [6]** 75/15 78/9 78/13 80/6 83/15 83/16

**nation's [1]** 72/13

**NATIONAL [3]** 1/4 2/5 66/19

**nationwide [4]** 78/8 78/21 79/24 81/24

**natural [1]** 85/11

**nature [1]** 74/18

**near [1]** 93/16

**nebulous [1]** 17/16

**necessarily [1]** 71/24

**necessary [5]** 9/24 23/4 69/1 93/1 93/6

**necessity [1]** 47/7

**need [13]** 27/24 28/7 44/19 50/15 52/24 54/16 57/6 64/7 89/20 90/1 92/23 95/22 98/6

**needs [2]** 48/12 59/19

**negligence [5]** 4/11 21/23 21/24 35/17 37/20

**neither [2]** 8/13 54/11

**Nemet [1]** 39/8

**never [3]** 32/4 85/5 85/17

**new [21]** 5/8 5/18 5/21 5/22 6/1 6/4 6/5 6/18 14/20 23/12 24/6 25/8 40/14 47/22 51/7 67/13 67/14 82/1 83/3 84/25 95/8

**next [4]** 10/13 18/4 19/7 97/20

**nexus [6]** 31/20 61/23 66/23 91/24 92/1 92/4

**nice [3]** 2/11 2/13 2/19

**Nicholas [2]** 1/17 2/17

**night [2]** 4/1 4/2

**nilly [1]** 95/3

**Ninth [10]** 21/22 22/4 22/9 22/14 34/21 35/11 39/2 70/7 71/22 92/15

**Nivens [2]** 47/25 84/1

**no [49]** 1/6 4/22 6/1 8/7 18/14 20/15 20/19 22/6 22/13 25/15 25/15 25/16 28/22 29/3 29/4 29/4 32/7 33/24 37/16 42/14 43/15 44/8 46/4 46/10 46/12 50/8 56/5 61/20 67/2 68/3 68/4 68/10 70/20 71/8 72/23 74/7 74/9 85/8 85/13 86/4 86/21 92/16 94/1 94/23

94/24 95/11 96/19 96/21 96/21

**nobody [1]** 81/17

**none [1]** 86/23

**nonetheless [3]** 17/6 26/12 37/18

**nonmisleading [1]** 25/2

**nonparty [1]** 11/3

**nonspecific [1]** 69/11

**normal [2]** 9/18 72/23

**NORTHERN [1]** 1/2 5/7

**not [221]**

**notably [2]** 32/4 94/3

**notes [1]** 1/22

**nothing [7]** 22/23 56/6 69/14 86/17 88/7 98/8 98/11

**notice [9]** 3/5 14/17 41/20 44/13 46/8 46/10 47/21 49/2 57/22

**now [14]** 6/4 8/9 23/6 32/8 34/16 43/5 49/19 56/20 59/17 64/2 66/6 80/14 83/6 84/4

**NSSF [19]** 5/2 6/2 6/7 6/16 7/5 11/15 11/23 13/9 15/12 16/3 33/1 37/24 38/12 40/8 48/14 72/18 85/22 93/24 94/10

**nuance [2]** 21/23 67/9

**nuisance [20]** 4/11 19/5 19/6 20/12 21/25 22/1 29/20 35/16 37/17 37/20 45/10 45/14 45/18 52/7 52/14 53/8 62/8 64/5 66/11 67/19

**number [2]** 2/6 5/2 8/18

**nuts [1]** 36/18

## O

**obey [1]** 20/3

**object [2]** 34/19 49/24

**objection [6]** 46/10 46/12 50/2 50/3 96/19 96/21

**objective [1]** 66/15

**obligation [2]** 10/5 64/15

**obligations [2]** 23/20 38/17

**obviously [10]** 10/16 27/15 36/12 40/2 81/2 82/12 82/12 83/11 92/21 96/23

**occurred [1]** 64/16

**October [1]** 45/10

**odd [2]** 15/16 94/17

**off [4]** 23/4 40/10 57/17 95/25

**official [5]** 1/24 68/2 70/22 99/1 99/16

**officials [1]** 75/4

**often [2]** 3/17 28/20

**oh [3]** 14/15 85/24 95/12

**okay [7]** 39/21 60/22 68/17 81/14 83/6 93/13 96/19

**old [1]** 35/13

**once [5]** 4/17 39/24 86/2 95/12 97/24

**one [66]** 5/3 5/6 6/13 9/9 10/14 10/15 10/17 11/21 11/24 14/16 15/11 18/6 18/12 18/21 18/24 19/15 22/4 24/3 25/16 29/2 30/17 35/20 36/8 37/25 39/2 40/9 41/23 42/9 45/15 45/16 48/12 51/19 55/25

57/13 57/15 61/25 64/13 64/18 67/6 67/7 67/17 68/1 69/12 70/5 70/11 71/2 71/13 74/12 74/19 75/2 77/22 80/16 81/25 82/17 83/6 84/19 84/22 85/6 85/19 86/21 88/9 89/23 92/15 93/8 93/24 94/1

**one-sided [1]** 85/19

**ongoing [4]** 13/25 14/7 48/1 49/4

**only [30]** 5/3 8/15 8/25 17/19 21/24 22/3 29/25 31/21 35/20 37/8 55/21 57/15 63/25 68/22 69/6 69/6 70/11 70/21 73/8 73/20 80/2 80/23 88/24 88/25 89/25 90/15 90/18 91/21 94/6 97/21

**onset [1]** 68/21

**opening [1]** 47/10

**opinion [24]** 6/21 8/11 10/6 16/24 16/24 22/5 23/12 26/15 57/17 69/2 69/25 71/22 71/22 72/18 78/2 84/5 86/14 87/8 89/11 91/3 95/18 96/2 97/14 97/17

**opinions [2]** 8/12 27/1

**opportunities [4]** 49/8 59/10 59/12 60/5

**opportunity [9]** 10/24 13/15 48/10 48/15 49/16 51/5 60/3 60/17 71/15

**opposed [2]** 44/4 73/2

**opposite [1]** 70/10

**Opposition [1]** 77/18

**oppositions [2]** 76/4 97/25

**order [8]** 39/22 59/22 59/23 60/7 74/21 82/19 83/21 95/24

**ordinarily [1]** 43/12

**ordinary [3]** 8/1 81/6 92/22

**organization [3]** 41/24 43/11 43/14

**Organized [2]** 42/23 50/18

**other [45]** 2/25 4/25 5/14 9/13 12/22 14/16 17/15 18/6 20/6 29/25 31/7 36/3 41/21 42/4 42/18 46/15 50/12 51/11 57/15 58/14 59/17 60/24 62/1 65/20 68/11 69/15 71/6 73/15 73/16 74/5 75/4 75/25 76/8 76/8 76/24 80/18 83/25 84/23 86/10 86/20 92/13 94/17 96/22 97/21 98/1

**others [1]** 21/19

**otherwise [9]** 6/2 18/9 19/11 20/18 27/1 29/5 43/18 54/13 78/14

**our [44]** 2/3 3/6 7/8 7/12 10/21 11/24 19/18 19/22 19/23 19/24 20/5 20/6 24/3 24/13 24/23 26/25 27/1 28/3 31/3 31/7 34/10 36/11 36/15 36/18 37/22 38/12 39/9 39/15 42/25 47/21 61/10 64/14 72/13 76/9 85/24 86/19 90/24 91/2 91/6 94/3 95/14 95/23 96/8 96/11

**ourselves [1]** 8/25

**out [59]** 4/6 4/10 6/10

**O**

out... **[56]** 12/18 14/16
14/21 17/23 20/22 21/11
22/11 26/2 26/15 31/16
32/1 32/1 32/4 33/6 33/7
34/2 34/7 35/19 36/24
36/25 38/13 45/20 47/22
50/6 58/14 59/24 62/9
62/22 62/23 63/2 64/7
64/11 64/12 75/19 79/13
80/5 80/18 81/16 81/17
81/25 82/19 86/13 86/14
86/20 87/13 87/24 91/5
91/25 92/11 95/3 95/19
96/2 96/22 97/15 97/17
97/19
**outcome [1]** 9/16 9/23
**outlawed [1]** 18/8
**outline [2]** 52/11 52/19
**outlined [4]** 68/23 76/4
79/25 82/14
**outlines [1]** 50/15
**outnumbered [2]** 2/22
2/23
**outright [1]** 66/9
**outside [3]** 55/23 58/15
92/7
**over [9]** 5/1 28/2 32/12
32/14 40/25 64/20 66/16
73/24 77/9
**over-detail [1]** 40/25
**overall [1]** 45/17
**overarching [1]** 78/20
**overrules [1]** 92/12
**owe [1]** 90/9
**own [14]** 7/14 9/2 9/22
29/4 40/13 41/3 41/4 43/13
53/2 53/6 68/4 75/23 75/23
81/7
**Owner [1]** 71/21
**owners [1]** 63/17
**oxymoronic [1]** 89/5

**P**

**p.m [1]** 98/15
**page [2]** 84/5 99/9
**Page 333 [1]** 84/5
**Pages [1]** 8/1
**Pages 333 [1]** 8/1
**painful [1]** 81/20
**pale [1]** 49/23
**papers [2]** 71/7 98/1
**parallel [1]** 86/7
**parent [3]** 45/3 45/4 80/25
**parent's [1]** 67/18
**part [24]** 19/4 44/10 44/13
44/14 45/8 45/9 49/8 52/3
54/5 61/5 61/13 62/8 65/7
70/6 71/19 75/18 81/1
83/18 87/12 88/25 90/18
90/23 93/2 97/3
**particularly [2]** 72/11
89/17
**parties [14]** 3/2 3/21 3/23
9/18 10/18 14/3 17/17 17/18
17/19 29/14 42/15 44/1
94/7 94/9
**parts [2]** 36/3 90/20
**party [9]** 4/13 13/3 13/22
49/5 55/17 60/14 76/5
87/22 87/22
**pass [1]** 59/3
**passed [5]** 23/2 30/4
40/12 75/12 94/24

**passing [1]** 27/10
**past [11]** 18/18 18/25
**patronizing [1]** 18/20
**pause [2]** 84/9 96/17
**pay [1]** 4/13
**penalized [1]** 61/17
**penalties [1]** 47/13
**penalty [1]** 47/2
**pending [6]** 14/23 15/8
15/13 39/6 88/3 96/17
**people [4]** 25/4 27/9 68/12
93/9
**per [2]** 39/14 89/14
**percolates [1]** 82/3
**percolation [2]** 84/24 85/9
**perfect [1]** 53/13
**perfectly [1]** 21/9 21/9
**perhaps [4]** 38/23 60/17
75/3 87/14
**period [1]** 13/1
**permissible [2]** 49/14
66/19
**permissive [4]** 11/17
11/21 11/22 13/11
**permit [1]** 55/25
**pernicious [1]** 29/18
**perpetuity [1]** 74/24
**person [2]** 43/18 65/1
**person's [1]** 28/4
**personal [2]** 32/19 33/8
**persons [1]** 27/10
**perspective [6]** 31/3 35/24
86/8 89/21 96/11 98/10
**persuasive [2]** 8/11 8/12
**pertains [1]** 69/6
**pervasive [1]** 30/21
**petition [1]** 70/1
**phrase [3]** 23/9 23/12 92/2
**piece [16]** 21/8 50/17
53/25 55/19 62/10 62/11
62/15 65/8 66/7 66/11
69/24 74/1 75/1 75/10
80/13 97/21
**piecemeal [2]** 82/16 83/9
**pieces [3]** 9/5 50/10 76/20
**pinpoint [1]** 35/20
**pistol [1]** 41/6 62/4
**pistols [7]** 12/3 12/4 12/6
24/22 24/23 41/5 67/20
**place [2]** 23/2 34/6
**plain [1]** 56/24
**plaintiff [23]** 1/5 1/15 2/8
2/10 2/12 2/14 4/7 10/25
13/4 13/5 13/14 13/22
13/25 36/21 40/2 46/2
52/22 54/16 56/19 57/5
84/6 84/19 96/5
**plaintiff's [3]** 45/24 71/20
98/6
**plaintiffs [2]** 2/17 98/8
**plan [1]** 97/22
**planning [1]** 32/5
**play [4]** 59/5 59/17 60/2
81/16
**playing [1]** 58/14 96/22
**plays [4]** 79/12 80/5 81/5
81/17
**PLCAA [41]** 5/23 16/18
16/21 20/1 20/4 20/15
20/19 22/7 22/10 23/2
25/16 35/12 35/12 35/14
36/11 36/16 39/4 40/10
40/20 51/19 52/11 52/11
53/1 53/5 54/10 54/14
54/18 55/10 55/22 55/24

56/2 56/7 56/17 56/25 57/8
58/5 59/14 68/5 84/1 88/15
95/19
**PLCAA's [1]** 16/25
**plead [2]** 74/7 90/2
**pleadings [3]** 15/1 46/11
97/25
**pleasant [1]** 4/2
**please [5]** 2/2 2/3 2/9 3/14
82/22
**podium [1]** 3/17
**point [38]** 6/20 14/16
15/16 15/25 16/11 19/2
23/23 35/12 37/25 38/12
47/11 48/10 53/25 54/6
57/20 59/5 60/16 62/14
63/12 65/11 66/1 66/3
76/19 79/15 81/24 82/11
85/12 85/13 89/5 89/7 89/9
89/20 92/18 93/22 93/23
95/20 96/1 96/4
**pointed [1]** 45/20
**pointing [1]** 14/17
**points [1]** 83/24
**pole [1]** 38/18
**policy [1]** 43/19 43/20
43/22
**Polis [1]** 71/21
**poll [1]** 19/17
**Pork [3]** 92/8 92/9 92/12
**Porter [3]** 1/16 2/12 2/13
**posed [1]** 23/6
**position [8]** 49/20 51/13
57/11 59/16 65/11 68/25
75/24 97/3
**positions [1]** 69/21
**possible [3]** 58/24 63/12
96/13
**possibly [1]** 7/1
**post [1]** 87/25
**posture [2]** 5/16 5/25
**potential [2]** 65/5 87/13
**potentially [1]** 65/24
**pound [1]** 27/7
**powerless [1]** 87/22
**practical [1]** 7/19
**practices [2]** 25/8 76/24
**prayer [1]** 15/3
**precedent [4]** 10/14 10/23
36/18 78/14
**precisely [2]** 7/10 13/13
**preclude [1]** 8/8
**preclusive [1]** 8/13
**predating [1]** 43/2
**predicate [32]** 16/22 16/23
17/25 18/12 18/17 18/19
19/2 20/7 20/10 23/9 23/19
26/12 35/5 36/19 52/19
52/21 52/23 52/24 54/6
54/11 54/13 54/14 54/16
56/15 56/17 56/18 56/20
56/21 57/3 57/7 88/22 89/1
**preempt [1]** 55/11
**preempted [8]** 4/23 5/23
7/17 33/11 52/15 53/1 53/5
59/14
**preemption [9]** 9/7 19/19
19/22 19/25 20/5 26/8 35/4
35/25 36/1
**preenforcement [4]** 5/16
5/25 6/13 51/9
**preliminary [17]** 1/12 2/7
8/19 24/13 39/15 41/16
74/22 76/22 77/19 78/2
78/12 79/16 80/10 95/16

96/8 97/8 97/13
**prescription [1]** 31/17
**present [3]** 3/2 48/11 69/2
**presented [1]** 77/18
**presents [1]** 65/10 72/23
81/13
**president [1]** 48/25
**presume [1]** 69/23
**presupposes [1]** 23/13
**pretty [4]** 18/23 38/8 50/15
68/22
**prevail [1]** 7/15 58/25
**prevent [7]** 16/25 22/11
25/7 35/14 69/16 76/16
95/15
**previously [1]** 87/1
**price [2]** 31/23 91/22
**principles [6]** 8/2 11/21
43/11 58/3 58/11 88/16
**printed [1]** 26/15
**prior [1]** 48/1
**probably [4]** 54/2 57/21
58/19 78/5
**problem [17]** 5/17 16/21
20/15 20/20 24/10 26/4
29/18 30/21 30/23 32/7
37/1 37/2 50/8 67/7 80/16
82/14 88/12
**problematic [1]** 94/1
**problems [1]** 87/6
**Procedure [1]** 11/12
**procedures [1]** 14/6
**proceed [10]** 66/24 74/5
79/20 81/6 81/14 83/22
96/1 96/4 97/4 97/9
**proceeding [9]** 14/7 15/8
48/1 48/2 49/4 76/14 81/2
84/10 87/18
**proceedings [12]** 1/12
6/25 8/5 8/17 12/24 13/23
14/1 14/24 15/14 45/5
45/21 99/8
**process [7]** 17/23 40/23
72/15 72/19 73/3 82/3 82/7
**procure [1]** 72/5
**Producers [3]** 92/8 92/9
92/12
**product [16]** 18/3 21/2
30/2 34/5 35/20 55/16
56/11 61/4 62/24 63/3
67/23 69/5 69/17 70/13
93/8 93/12
**products [19]** 4/14 33/10
33/17 33/18 35/21 35/22
52/9 60/25 66/17 66/18
66/19 69/7 69/9 77/17 93/4
93/5 93/8 93/12 95/4
**profits [2]** 38/6 38/8
**progeny [1]** 48/20
**progress [1]** 49/8
**prohibit [1]** 72/10
**prohibited [2]** 70/12 95/11
**prohibiting [2]** 27/5 27/9
**prohibition [2]** 92/10
92/10
**promote [4]** 21/5 30/2
69/21 95/4
**promotion [1]** 70/12
**prong [6]** 20/11 24/1 25/3
26/5 26/6 48/9
**proper [2]** 43/22 64/15
**property [3]** 28/20 43/13
65/16

96/8 97/8 97/13
**proposition [2]** 48/21
57/13
**prose [1]** 57/21
**prosecution [3]** 10/16
11/3 11/4
**prospective [1]** 76/17
**protect [1]** 10/17
**protected [1]** 93/5
**protecting [2]** 48/5 70/3
**Protection [2]** 4/9 40/23
**protects [1]** 71/23
**prove [5]** 53/17 54/5 55/8
58/16 58/18
**proved [1]** 6/3
**provide [2]** 25/24 42/21
**provided [1]** 57/1
**provides [1]** 48/10
**provision [9]** 6/8 20/12
27/2 29/19 29/20 68/18
88/8 88/10 90/16
**provision's [1]** 27/4
**provisions [4]** 18/21 29/25
54/8 68/19
**proximate [7]** 54/15 56/4
56/5 56/7 56/19 57/4 57/4
**public [13]** 21/23 25/6
29/19 37/17 41/8 43/17
43/18 43/22 53/8 61/12
64/5 66/11 76/21
**punts [1]** 25/19
**purchase [2]** 24/9 64/22
**purchaser [1]** 23/21
**purest [1]** 94/24
**purported [1]** 76/3
**purportedly [1]** 73/1
**purpose [4]** 16/25 23/3
36/1 36/2
**purposes [8]** 16/23 21/5
22/18 23/17 25/16 25/25
36/8 90/10
**pursuant [3]** 36/24 49/10
97/13
**pursuit [1]** 70/17
**put [8]** 2/8 3/5 34/24 38/13
55/16 58/19 62/6 82/19
**puts [2]** 32/16 35/4
**putting [1]** 9/5 20/5 25/10
26/5

**Q**

**qualified [1]** 18/1
**qualify [2]** 54/13 56/16
**quasi [6]** 10/19 11/5 28/1
46/25 47/13 47/14
**quasi-criminal [6]** 10/19
11/5 28/1 46/25 47/13
47/14
**Quereshi [4]** 5/22 6/18
14/20 23/11
**Quereshi's [2]** 6/21 14/19
**question [6]** 10/5 11/16
13/18 23/5 26/8 27/25
44/16 44/22 45/15 52/9
72/9 72/12 72/20 74/12
77/22 82/18 84/5 86/3
87/23 90/11 92/6 92/24
**questions [6]** 14/12 18/24
50/7 51/6 51/21 59/15
**quibbles [1]** 32/3
**quick [2]** 37/25 83/23
**quickly [5]** 37/7 92/20
96/3 96/12 97/15
**quite [1]** 58/8
**quote [8]** 7/23 26/15 29/9
43/10 70/13 70/14 84/2

## Q

quote... [1] 64/5
quoting [2] 43/7 43/8

## R

raise [7] 4/25 10/25 11/3 12/8 12/16 13/15 48/15
raised [2] 19/24 47/8
ran [1] 55/5
range [1] 80/7
rate [1] 27/6
rates [1] 93/18
rather [6] 25/12 43/21 56/13 59/14 61/9 90/4
re [1] 39/3
rea [3] 25/24 54/2 88/18
reach [2] 32/1 33/6 84/12
reaching [2] 63/22 66/8
reaction [2] 62/13 68/7
read [2] 3/9 3/9 19/4 23/11 23/11 27/1 29/9 36/16 38/1 57/17 78/4 87/24
reader [1] 72/24
reading [6] 8/24 22/7 22/9 56/25 57/9 68/3
reads [3] 7/7 7/12 35/12
ready [2] 3/8 3/10
real [6] 17/13 23/20 26/4 46/24 47/4 94/19
reality [1] 90/6
realize [1] 65/1
really [26] 13/14 16/19 16/21 21/16 26/7 38/11 46/23 49/18 54/23 54/23 54/24 54/25 55/21 57/2 69/24 72/17 73/11 81/12 82/19 82/21 85/6 85/15 87/4 87/23 87/24 98/12
Realtime [1] 99/5
reason [8] 12/21 12/23 23/1 23/2 28/18 65/10 67/10 88/5
reasonable [13] 17/11 24/8 26/17 26/23 28/4 29/19 32/8 41/9 53/10 53/11 55/4 59/1 59/7
reasonableness [6] 26/24 28/2 52/13 55/4 72/20 89/14
reasonably [7] 14/9 18/20 29/15 56/2 70/13 89/16 94/4
reasoning [1] 58/4
reasons [9] 10/21 30/22 37/21 42/1 46/17 77/18 87/13 89/11 95/15
rebut [1] 70/7
recast [1] 84/3
recent [9] 4/21 6/5 35/7 47/21 66/19 69/2 69/25 72/18 78/7
recently [5] 5/7 6/18 42/25 57/21 93/25
recess [1] 98/14
recognize [1] 11/14 35/18
recognized [2] 13/2 25/17
recognizes [1] 69/10
record [6] 2/9 3/2 3/6 44/11 44/19 58/15
records [1] 23/22
red [2] 55/5 55/5
redress [1] 4/13
reduce [1] 76/25

reek [1] 41/25
refer [2] 40/7 49/8
reference [5] 54/12 54/16 56/5 56/22 57/6
referring [1] 40/9
reflect [1] 3/2
refuses [1] 67/21
refusing [1] 41/6
refute [1] 27/14
regard [1] 55/3
regarding [4] 42/18 50/8 56/11 78/2
regardless [1] 47/5
regime [1] 84/13 85/19
regimented [1] 83/9
Registered [1] 99/4
regular [2] 21/13 64/23
regulate [6] 25/8 25/12 32/1 33/18 60/25 91/24
regulated [5] 17/19 17/20 29/13 31/16 68/5
regulates [5] 33/20 34/18 34/25 36/5 56/11 58/20 60/25 69/6 69/7
regulating [5] 6/10 72/12 92/6
regulation [5] 22/20 34/19 70/19 92/10 92/10
regulations [4] 17/3 22/21 72/14 99/10
reiterated [1] 47/25
rejected [4] 10/1 31/14 92/13 92/16
relate [3] 35/21 45/10 52/10
related [15] 6/8 26/9 35/22 48/19 61/4 63/3 66/18 69/5 69/7 69/9 69/17 69/22 70/13 77/17 97/25
relates [4] 19/3 45/9 45/21 79/4
relationship [1] 61/23
relevance [1] 71/8
relevant [4] 44/23 47/24 61/17 73/3
relied [1] 83/25
relief [37] 7/3 7/8 7/11 7/12 8/7 8/16 8/18 10/8 10/9 13/3 13/4 14/4 14/7 15/3 41/15 46/19 47/4 47/7 51/16 51/17 56/4 70/18 73/11 76/6 76/17 78/9 79/2 84/6 84/7 87/22 87/22 89/25 90/4 90/12 93/22 93/23 94/6
rely [3] 49/11 57/24 58/6
remains [1] 92/11
remedy [1] 70/19
remember [6] 5/8 12/14 12/20 79/5 91/14 95/22
removed [3] 64/13 64/14 97/11
render [1] 72/25
reorder [1] 40/4
repeating [1] 61/10
reply [8] 19/23 39/9 41/19 47/17 70/6 71/21 73/6 76/3
reported [1] 1/23 99/8
Reporter [5] 1/24 99/1 99/4 99/5 99/16
represented [1] 6/1
reputational [2] 38/21 69/11
request [10] 6/25 7/8 7/12 8/4 8/16 8/18 42/22 77/20

84/18 88/2
requested [5] 14/8 41/15 51/17 57/17 70/18
requests [1] 49/3
require [5] 38/22 53/2 53/6 54/11 56/12
required [2] 23/23 38/17 52/25
requirement [5] 25/24 54/3 56/7 88/18 89/16
requires [6] 17/14 18/18 20/4 56/2 63/1 88/23
reread [1] 14/14
res [1] 8/2
reserved [1] 86/10
resident [4] 32/15 65/3 65/13 67/6
residents [6] 65/6 70/4
resolution [1] 96/18
resolve [1] 16/10
resolves [1] 82/6
resort [1] 16/11
respect [11] 6/9 7/20 9/1 15/12 16/2 37/8 53/25 55/12 65/5 89/8 92/18
respected [1] 9/21
respectfully [6] 6/20 42/22 77/20 85/15 88/25
respectively [1] 41/17
respects [4] 9/16 15/22 26/8 81/23
respond [2] 59/6 60/3 70/6 83/10
responded [1] 46/2
responding [1] 60/18
response [4] 41/20 46/7 49/1 57/22
responses [1] 45/25
responsibility [2] 63/21 64/4
responsible [2] 62/7 65/4
rest [2] 19/6 96/17
restitution [1] 38/6
restrict [1] 69/20
restriction [1] 93/13
restrictions [2] 37/10 72/3
result [1] 77/15
results [2] 77/6 84/16
revenue [1] 69/8
reversed [1] 5/24
review [2] 42/22 98/3
reviewing [1] 75/8
revisit [1] 97/12
revive [2] 17/9 22/10
Richardson [1] 78/2
right [95] 3/1 3/14 3/18 5/11 5/14 5/17 5/18 5/20 7/6 7/18 9/8 9/12 10/20 11/16 11/17 13/4 15/4 16/15 16/15 17/5 18/3 18/5 18/7 18/9 19/3 19/8 19/15 20/14 22/2 23/22 24/17 26/8 27/19 28/3 28/9 28/12 30/9 31/6 33/5 33/19 33/22 35/1 35/9 35/20 36/6 36/14 38/14 39/7 39/17 47/15 51/2 51/23 52/7 53/18 55/6 55/17 56/12 56/13 57/18 58/16 59/21 60/21 67/1 71/24 71/25 72/2 72/5 74/9 76/17 78/20 78/20 78/25 79/14 79/17 82/22 82/23 83/13 83/20 85/4 87/10 87/16 90/5 90/23 91/19 93/9 93/11 94/15 95/18

96/5 96/14 96/20 97/8
rights [8] 28/16 28/24 29/11 29/12 76/12 77/3 89/13 96/24
rise [3] 7/14 9/2 71/25
risk [1] 32/21
RMR [2] 1/23 99/16
Roanoke [2] 32/1 82/18
ROBERT [1] 1/12
Rocky [1] 71/21
role [3] 43/22 64/4 67/19
roll [1] 40/10
Ronda [3] 1/23 99/4 99/16
Ross [1] 66/19
Rowen [1] 1/15 2/10 2/11 3/11 4/6 39/17 42/12 46/11 46/22 54/23 55/3 56/9 59/16 73/7 73/13 77/24 78/11 80/22 82/6 83/21 96/4
Rowen's [2] 53/25 54/6
RSB [1] 1/6 2/6
RSB-25-cv-1115 [1] 2/6
Ruan [1] 88/17
rule [14] 10/2 10/4 13/13 32/24 32/25 43/25 50/1 50/2 50/4 50/15 74/17 85/5 96/12 96/24
ruled [5] 5/23 22/14 31/1 51/8 73/1 91/6 97/12
rules [1] 17/3
ruling [6] 9/9 42/3 80/15 81/24 94/14 96/25
rulings [3] 74/5 80/14 82/8
run [2] 24/8 55/5

## S

safety [1] 70/4
said [43] 7/23 7/24 10/1 21/22 22/9 22/15 22/19 24/10 25/16 26/23 30/4 31/24 33/6 35/11 35/11 36/17 36/22 38/2 38/16 38/19 39/11 51/11 52/13 54/16 71/23 78/5 82/8 84/2 84/4 85/24 86/10 87/25 89/8 89/10 89/23 89/25 91/25 92/3 92/17 93/25 94/18 95/8
sale [17] 12/2 18/3 22/5 22/8 23/14 23/23 34/25 35/15 35/21 36/5 36/9 36/13 56/11 58/20 59/2 61/12 72/10
Salem [1] 48/21
sales [2] 32/21 37/10
same [33] 4/19 6/11 6/17 8/11 9/19 9/22 12/17 13/3 14/4 15/18 16/12 22/10 24/5 28/25 30/22 31/14 36/22 37/1 37/13 39/10 44/6 45/6 47/8 51/7 53/9 57/11 72/23 81/22 82/7 82/14 87/11 91/13 92/2
satisfaction [1] 66/1
satisfied [1] 60/1
satisfy [1] 52/23 57/7
say [56] 6/17 7/13 7/18 8/25 9/4 9/6 12/7 15/12 15/17 16/20 17/10 18/5 21/14 22/10 24/7 25/3 29/6 32/4 34/4 34/7 41/12 44/9 50/14 50/21 54/23 55/3 61/18 62/3 62/4 62/14 63/9

64/20 65/21 68/3 71/13 74/20 74/22 75/14 79/11 80/10 81/14 81/19 81/20 82/24 83/11 84/19 86/21 86/24 88/20 89/6 90/1 90/5 93/7 95/10 96/16 97/3
say under [1] 44/9
saying [9] 19/20 19/24 22/22 24/4 26/18 26/19 32/7 84/23 94/10
says [26] 7/4 9/11 15/6 15/20 17/12 19/17 27/14 29/3 29/21 30/17 37/9 52/5 53/14 56/10 56/21 57/23 59/7 62/17 71/14 74/21 82/13 82/25 93/3 93/10 93/13
Scalia [3] 26/21 28/6 93/18
Scalia's [2] 26/15 89/11
scenario [3] 64/10 67/25 67/25
scenarios [1] 64/6
scheduled [1] 46/1
schlep [1] 3/22
Schopler [1] 32/25
Schopler's [1] 57/17
scope [3] 89/25 90/4 93/22
scrutiny [5] 30/7 30/10 30/12 92/22 93/2
se [2] 39/14 89/14
seated [1] 2/2
second [41] 4/18 4/18 5/7 14/18 25/10 28/24 29/12 34/14 34/16 34/20 34/25 35/7 36/8 36/9 36/16 37/7 40/15 40/22 45/8 57/14 57/20 57/23 58/1 58/4 58/9 62/25 69/22 69/24 69/24 71/5 71/5 71/23 72/4 72/9 72/18 72/19 73/1 84/23 85/2 88/25 89/10
section [1] 19/7
see [5] 2/23 35/24 43/1 45/7 57/9
seek [5] 7/3 10/9 43/20 76/6 80/4 90/12
seeking [15] 7/11 10/8 13/5 14/4 14/7 19/19 20/5 47/1 53/15 69/5 76/17 84/7 84/9 90/5 93/23
seeks [3] 17/9 56/6 61/21
seem [5] 20/21 70/24 83/2 87/23 90/17
seemed [1] 90/1
seemingly [1] 80/10
seems [8] 15/16 36/18 48/3 79/22 83/9 83/16 90/6 93/23
seen [4] 17/23 32/19 80/14 93/15
sees [1] 64/23
segue [2] 16/17 26/3
sell [7] 62/25 63/2 65/22 65/23 69/8 71/25 93/18
sellers [1] 17/2
selling [10] 30/25 33/22 34/20 37/19 41/5 63/3 65/3 65/13 66/9 69/8
sells [5] 32/14 63/6 63/10 65/9 67/20
semantics [1] 90/5
send [2] 97/15 98/1
sending [1] 98/3

Case 1:25-cv-... Document 41 Filed 09/... Page 110 of ...

**S**

sense [12] 24/25 41/25 53/13 60/7 90/4 90/8 90/14 96/10 96/15 96/17 96/23
sensibly [1] 89/3
sent [1] 78/6
separate [4] 42/5 43/13 45/13 59/20
September [5] 45/10 45/25 46/1 46/5 99/12
September 10th [2] 45/25 46/5
September 12th [1] 46/1
series [2] 35/20 67/3
serve [1] 25/25
served [4] 30/14 45/2 45/3 58/23
serves [1] 48/25
set [3] 20/22 22/11 40/2
sets [1] 19/21
setting [3] 26/2 43/22 53/24
seven [2] 5/3 5/14
several [1] 71/20
shaking [1] 78/4
shall [3] 52/6 55/16 69/3
she [2] 12/22 12/23
shift [1] 40/5
SHOOTING [2] 1/4 2/5
shorthand [1] 20/6
should [18] 4/22 12/7 20/1 25/6 29/7 30/10 37/22 39/4 39/7 48/19 51/13 60/18 71/15 72/17 75/7 80/12 86/10 92/21
shouldn't [1] 57/24
show [3] 59/24 66/20 87/6
showing [1] 30/13
shown [1] 64/9
shows [2] 16/21 87/16
shy [2] 16/17 46/23
side [22] 2/25 14/16 26/5 41/22 42/18 46/16 50/12 51/11 59/17 60/24 68/11 69/15 71/6 80/18 83/25 84/23 86/10 94/18 96/22 96/24 97/18 98/1
sided [1] 85/19
sidewalks [1] 27/9
significant [2] 77/16 83/18
silverware [1] 40/5
similar [9] 9/14 12/4 24/23 33/6 40/14 67/13 67/14 70/10 75/5
similarity [1] 42/15
similarly [1] 27/8
simple [5] 40/19 41/6 61/18 67/21 76/5
single [5] 13/20 13/24 66/25 79/4 93/15
sinks [1] 35/22
sir [1] 4/8
situation [1] 50/23
six [1] 12/24
Sixth [1] 34/21
skip [1] 62/25
slightly [1] 14/22
small [1] 4/18
Smith [11] 11/24 12/6 16/18 18/6 32/16 33/14 36/23 42/13 49/13 49/16 87/8
so [206]
so-called [1] 72/24

social [1] 69/13
sold [16] 6/16 6/17 61/4 61/24 62/3 62/4 62/23 63/2 66/2 66/3 66/10 67/6 67/7 88/20 91/10 91/16
solicitor [4] 60/10 64/2 67/16 75/4
some [32] 6/17 14/3 14/4 21/10 26/25 27/3 27/15 32/17 33/12 38/12 41/14 41/18 41/19 42/11 42/20 42/21 43/15 43/18 43/19 54/19 58/5 59/5 62/5 72/6 73/8 78/12 81/21 81/23 85/12 86/23 86/24 97/18
somebody [6] 11/4 24/9 60/16 65/9 65/15 72/3
someone [4] 19/11 27/7 82/1 86/6
someone's [1] 27/11
something [8] 9/14 11/1 15/5 18/20 19/16 20/2 20/12 20/17
somewhat [2] 45/17 71/7
soon [2] 85/22 95/19
sorry [1] 69/19
sort [65] 9/17 10/7 10/22 12/8 14/5 14/11 16/10 16/21 17/10 17/12 17/15 17/16 18/10 19/18 21/20 22/9 22/19 23/13 23/19 24/20 24/22 25/11 25/13 26/1 26/1 26/3 26/5 26/10 28/8 28/18 28/19 28/25 29/1 29/14 29/17 31/2 32/3 34/2 34/18 34/19 35/12 37/11 38/10 39/11 44/15 49/2 55/18 63/15 82/13 82/16 86/8 87/10 87/23 87/24 88/6 88/12 88/13 89/5 89/15 90/8 90/12 90/17 94/16 96/7 98/2
sought [3] 56/4 73/12 78/10
sound [1] 20/2
Southern [1] 33/1
spades [2] 13/8 39/1
spate [1] 4/21
speak [5] 16/19 40/6 50/24 82/21 93/11
special [3] 28/19 43/4 43/16 43/19
specific [26] 10/8 10/9 12/21 12/23 17/18 42/7 43/6 44/13 45/18 59/11 60/6 64/6 64/9 64/13 69/7 69/14 71/9 72/2 72/6 74/11 75/17 77/12 80/24 84/6 84/7 88/2
specifically [20] 12/6 14/6 22/11 25/21 36/24 41/4 41/15 42/13 44/3 51/17 52/9 60/12 61/4 63/23 65/8 67/18 70/16 79/24 84/1 93/9
spectrums [1] 80/7
speculative [1] 72/24
speech [14] 29/22 29/22 29/23 30/1 30/1 30/17 68/19 68/22 69/2 70/21 89/17 92/22 92/23 93/1
spends [1] 19/20
spent [2] 58/1 67/13
spitting [1] 27/11
split [1] 16/19

splits [1] 16/10
SPORTS [4] 1/4 2/5 70/8 70/12
spouse [1] 19/14
spring [1] 87/25
Sprint [3] 46/20 84/2 84/17
square [1] 61/1
squarely [2] 27/2 34/12 37/5 57/6 58/19 84/17 91/7 92/16 92/18
staff [1] 3/24
stage [5] 23/7 60/2 65/15 81/9 89/18
stall [1] 10/10
stamp [1] 4/10
stand [2] 34/4 98/13
standard [10] 17/24 28/11 28/16 28/25 47/24 52/17 67/11 68/22 72/21 92/22
standards [2] 49/3 60/1
standing [17] 5/6 5/17 5/19 5/24 6/9 11/15 42/18 42/20 43/12 43/15 44/1 49/9 49/12 50/17 86/1 93/25 94/3
standpoint [5] 20/16 27/23 55/15 73/21 98/7
stands [2] 68/13 94/11
start [5] 3/4 51/19 51/20 51/22 83/24
started [2] 46/16 83/25
starting [1] 58/8
state [151]
state's [10] 26/16 31/13 34/15 37/8 38/3 49/6 51/13 65/11 75/4 84/15
statement [2] 58/6 70/16
statements [2] 26/25 70/20
states [20] 1/1 4/19 4/19 4/25 5/14 12/3 12/12 17/20 22/10 22/11 25/12 55/25 57/12 62/1 70/2 76/24 80/9 82/9 99/5 99/11
statewide [2] 78/21 79/23
stating [2] 49/5 72/20
statue [1] 94/21
status [1] 44/16
statute [125]
statute's [2] 15/21 27/16
statutes [13] 20/20 21/13 21/24 21/25 22/5 22/7 22/12 27/23 28/18 47/12 88/24 89/1 89/1
statutory [1] 88/16
stay [5] 45/5 45/20 45/23 97/1 97/11
stayed [1] 4/1
stemmed [1] 45/16
stenographically [1] 99/8
stenographically-reported [1] 99/8
stenotype [1] 1/22
step [5] 5/13 10/7 10/13 11/2 18/5 62/25 64/13 74/14 80/19
steps [3] 64/14 82/6 97/20
stick [1] 48/11
still [7] 15/7 22/23 26/12 39/1 42/3 51/16 58/11
stop [1] 38/19
storage [1] 59/4
store [6] 32/8 32/9 32/13 32/14 33/9 65/14

storefront [1] 69/12
storer [1] 23/21
Street [1] 1/24
strict [2] 30/10 59/10
strictest [2] 28/16
strictly [1] 27/23
striker [2] 12/3 12/6 24/22
striker-fired [3] 12/3 12/6 24/22
stringent [1] 47/12
structure [3] 23/18 52/1 52/2
stuck [2] 85/23 86/2
stuff [1] 38/6
stumble [1] 5/1
subject [1] 48/20
subjective [1] 70/20
subjects [1] 57/10
submit [2] 64/8 71/6
submitted [2] 11/24 24/4
subsection [1] 54/4
subsequent [1] 97/25
subsidiary [2] 45/1 45/4
substantial [5] 38/9 48/2 48/4 48/6 70/3
succeed [3] 37/21 66/21 94/20
success [1] 67/10
such [6] 21/3 29/18 43/16 52/22 52/25 77/1
sue [4] 79/11 83/7 85/22 95/10
sued [1] 76/8
suffer [1] 77/16
suffered [4] 43/15 43/17 71/1 76/12
suffering [1] 77/3
sufficient [1] 91/24
sufficiently [1] 55/20
sugar [1] 27/7
suggest [2] 27/1 65/15
suggestion [1] 27/14
suggests [1] 18/18
suit [14] 7/13 8/6 8/8 8/14 9/1 10/13 10/16 12/5 15/13 15/13 49/14 84/20 86/25 94/11
suit can [1] 94/11
suit's [1] 9/2
suits [3] 5/2 39/6 87/5
summarizing [1] 55/13
summary [1] 5/5
summonses [1] 44/25
Supplemental [5] 14/17 41/20 47/21 49/2 57/22
support [4] 12/12 57/13 61/20 70/16
supports [1] 48/21
suppose [6] 20/10 75/1
supposed [7] 15/14 24/10 24/18 25/25 84/24 89/2 89/3
Supreme [31] 4/16 9/24 16/9 16/17 16/20 28/13 35/11 36/22 36/25 39/4 43/2 45/9 46/20 48/8 66/20 68/23 70/1 71/10 73/9 78/7 78/14 80/9 81/18 81/19 82/5 82/5 88/16 89/23 89/24 89/25 94/23
sure [13] 8/9 15/23 28/12 39/24 42/17 47/9 50/19 66/6 78/16 80/21 87/3 90/9 92/4

surely [2] 27/7 27/11
surprise [1] 4/22
surrounding [1] 65/17
survive [7] 54/13 56/3 56/17 59/22 59/23 60/8 60/18
swallow [1] 36/19
swath [1] 80/3
Sweeney [3] 1/16 2/14 2/16
sweeping [1] 4/12
swim [2] 28/2 52/13
switch [4] 18/7 32/16 32/16 62/5
switching [1] 2/5
system [5] 14/2 16/7 84/25 87/23 95/14

---

**T**

table [3] 38/2 40/2 40/4
tactical [3] 74/2 74/5 87/12
tailor [2] 78/13 80/18
tailored [1] 80/6
tailoring [2] 78/9 93/2
take [18] 3/11 5/13 6/12 10/1 11/2 15/16 16/13 16/14 16/15 39/22 42/20 44/12 46/8 66/16 71/15 89/9 93/22 96/24
taken [4] 13/19 43/25 45/9 56/23
takes [2] 34/6 58/15
taking [3] 46/10 65/21 74/14
talk [8] 31/4 31/7 64/6 67/24 69/10 72/1 73/5 95/19
talked [6] 11/25 23/17 68/11 70/23 72/21 73/8
talking [1] 35/25 60/13 87/7 93/19
talks [2] 70/2 78/3
target [2] 35/20 68/19
teens [1] 77/10
teeth [1] 37/5
Teixeira [1] 71/22
tell [5] 23/13 51/25 85/16 89/2 95/9
telling [2] 22/20 29/15
tells [1] 25/25
temporal [1] 94/8
Tenth [1] 71/21
term [2] 41/11 53/12
terms [7] 7/14 9/2 20/18 45/19 73/24 74/1 94/2
terrible [1] 82/4
test [2] 47/12 71/19
Texas [7] 32/8 32/9 32/11 32/13 32/14 32/14 39/4
text [3] 18/12 22/18 55/22
textually [3] 18/19 29/1 88/10
than [17] 13/5 14/8 25/13 30/17 42/16 43/21 57/15 69/14 73/16 81/17 86/25 90/4 91/12 91/20 92/22 93/1 93/6
thank [5] 3/1 3/6 3/21 3/24 4/4 39/17 44/20 46/13 83/19 83/20 83/23 95/17 98/4 98/11 98/13
that [724]
That'll [1] 97/17
that's [133]

**T**

**their [46]** 2/4 3/9 4/25
10/10 10/25 12/8 13/15
21/2 21/21 23/3 24/6 24/11
32/16 33/14 35/8 38/1
38/25 47/17 48/16 49/17
52/16 55/12 62/1 64/4
64/25 64/25 65/5 65/10
66/16 70/16 74/3 74/3 74/4
75/5 78/17 80/12 84/13
85/4 85/23 86/1 86/16
88/18 91/7 94/19 95/4
**them [18]** 4/13 5/3 12/1
17/4 19/9 21/14 29/14
29/15 29/20 38/14 39/19
39/22 75/15 76/17 83/8
94/7 95/6 98/1
**thematically [1]** 45/18
**themselves [1]** 27/10
**then [52]** 5/6 7/18 9/8 9/22
10/2 10/11 10/14 10/22
11/6 11/16 12/13 13/6
13/10 18/4 18/5 19/7 20/17
26/19 31/22 32/15 32/16
34/25 35/4 35/13 35/15
36/12 39/6 41/12 41/20
48/9 55/9 58/19 60/1 62/4
62/15 62/23 65/4 66/4
66/10 73/21 82/5 82/6 85/8
85/23 89/16 93/13 94/21
94/23 96/25 97/10 97/15
97/24
**then-pending [1]** 39/6
**theoretical [2]** 76/1 77/14
77/15
**theories [4]** 4/11 22/10
37/20 68/7
**theory [9]** 16/22 27/2
32/19 85/24 86/1 86/16
86/18 86/19 91/6
**there [86]** 3/4 5/14 5/23
5/25 6/7 6/12 8/7 8/13 12/4
12/8 12/13 12/21 12/23
13/3 14/3 14/22 14/22
14/24 16/19 16/20 16/25
17/15 18/1 19/21 21/11
21/11 22/6 22/13 22/14
26/3 27/3 27/18 27/21 28/6
28/8 28/22 29/11 31/20
31/25 32/7 33/2 33/9 37/20
33/7 36/3 37/9 42/4 43/25
45/8 45/25 50/1 50/10
51/19 58/5 59/10 60/5
62/13 64/7 64/8 65/13 66/1
71/13 71/18 72/3 72/6 73/5
74/18 75/6 75/19 79/6 82/2
82/22 84/5 85/8 86/4
86/23 86/24 87/3 87/4 88/5
91/17 91/21 91/23 92/21
95/3 95/5 97/4
**there's [52]** 5/6 5/13 9/6
9/20 13/16 13/17 26/4
29/18 34/16 34/21 37/16
37/23 39/1 40/17 42/14
43/6 44/8 46/16 46/21
46/24 47/21 47/25 50/2
54/2 55/19 57/22 61/20
62/9 63/17 65/18 66/11
67/9 67/12 68/3 68/10
69/25 70/5 70/20 72/1
72/16 73/10 74/9 76/14
79/1 82/2 82/13 85/12 88/7
92/1 92/4 92/5 96/23
**There's not [1]** 76/14

**these [20]** 5/10 5/15 9/22
25/17 15 58/3 60/8 63/16
68/7 70/24 71/1 73/23 74/4
74/17 75/19 75/25 76/20
80/4 81/10 86/14
**they [118]**
**they'll [1]** 60/17
**they're [21]** 11/25 18/8
19/13 19/13 21/3 25/9 26/9
32/5 32/6 33/15 34/7 58/19
62/15 65/3 65/12 69/23
79/6 87/19 94/13 95/4 98/2
**They've [1]** 57/11
**thing [8]** 17/25 29/2 39/12
53/9 72/23 82/16 86/8 88/9
**things [6]** 6/12 11/21
12/9 23/23 41/18 42/17
73/8 74/17 75/25 81/10
89/23
**think [150]**
**thinks [2]** 6/14 7/15
**third [14]** 4/13 8/11 10/16
10/24 12/16 13/6 13/12
37/15 48/9 48/12 55/17
60/14 83/3 84/25
**third-party [3]** 4/13 55/17
60/14
**this [191]**
**Thomas [5]** 1/23 71/14
94/1 99/4 99/16
**those [37]** 3/9 5/5 5/19
16/10 21/4 21/21 22/6
22/23 23/19 23/23 24/24
25/1 27/13 37/13 37/21
46/8 46/11 48/23 50/7
54/11 58/3 58/11 59/12
59/15 60/1 60/4 60/12 62/9
69/1 69/7 75/20 82/7 86/21
89/1 95/6 95/15 97/25
**though [10]** 10/12 14/1
14/3 21/8 22/22 25/1 27/6
83/2 89/6 95/11
**thought [4]** 36/20 82/3
90/7 97/18
**thousand [2]** 27/7 67/7
**threat [1]** 77/17
**three [6]** 10/15 47/20
47/25 48/11 68/24 69/1
**threshold [2]** 14/11 49/19
**thrilled [1]** 34/3
**through [16]** 18/15 18/17
22/17 36/3 41/8 58/2 61/12
67/19 67/23 77/17 78/10
82/4 83/3 83/4 84/25 96/11
**throughout [1]** 60/13
**thus [2]** 5/9 21/6
**tied [1]** 81/11
**ties [1]** 64/9
**time [28]** 9/5 13/1 14/22
15/18 16/12 17/13 19/1
19/2 19/20 22/13 31/4 50/7
50/23 51/9 58/1 67/12
74/10 76/10 78/1 80/5
80/12 82/25 84/19 85/13
86/25 94/12 96/23 97/11
**timeline [2]** 44/15 44/21
**timing [1]** 81/2
**today [16]** 2/23 3/2 3/12
7/17 8/8 40/3 41/15 41/21
41/24 46/18 51/17 60/23
69/12 71/8 74/25 92/2
**today's [1]** 97/22
**together [5]** 9/5 34/24
39/20 50/10 58/8
**told [2]** 25/9 95/7

**ton [2]** 96/10 96/15
**too [9]** 4/20 28/17 47/17
71/3 72/22 74/14 75/15
83/9 85/23
**took [1]** 16/18
**topic [1]** 78/22
**tort [2]** 26/17 26/19
**total [1]** 93/24
**totally [3]** 68/4 71/17
90/20
**touched [1]** 73/9
**touchstone [1]** 36/1
**tough [3]** 18/23 33/8 80/16
**trace [1]** 94/18
**track [1]** 39/18
**traction [1]** 42/11
**tradition [5]** 37/8 37/12
37/16 71/18 72/14
**trample [1]** 77/2
**transaction [2]** 62/7 63/7
66/25
**transactions [5]** 31/16
32/2 61/22 67/3 91/25
**transcript [1]** 1/12 99/8
99/9
**transcription [1]** 1/22
**traveling [1]** 98/12
**tried [1]** 47/16
**tries [1]** 70/7
**trigger [7]** 6/17 8/1 8/2 8/4
25/2 26/11 84/13
**triggers [1]** 8/16
**trouble [1]** 83/14
**true [8]** 7/24 29/22 35/23
37/11 39/13 47/22 90/24
99/7
**Trump [1]** 78/23
**trust [1]** 2/24
**truth [1]** 40/19
**truthful [2]** 25/2 69/17
**try [5]** 4/20 15/14 31/11
34/23 75/15
**trying [13]** 17/20 17/16
25/7 32/6 36/4 37/5 50/5
50/5 55/18 64/12 90/4 95/3
95/4
**turn [1]** 93/7
**turning [2]** 21/15 21/18
**two [22]** 5/12 6/12 8/18
9/18 9/18 18/10 27/13
29/25 30/11 41/1 48/13
48/21 50/10 51/8 56/25
76/19 78/1 82/16 89/22
90/19 92/13 94/2
**Tyler [2]** 24/3 38/15
**type [13]** 8/16 17/8 18/19
23/15 24/20 38/23 40/16
78/12 82/24 87/11 89/1
95/25 97/1
**types [3]** 30/23 60/8 88/24
**Typically [1]** 96/5

**U**

**U.S [2]** 48/22 48/22
**U.S.C [2]** 54/10 99/7
**ultimately [1]** 82/18
**unable [2]** 16/2 94/19
**unanimous [2]** 16/24
71/10
**unaware [2]** 58/25 59/7
**unclear [2]** 70/25 75/16
**unconstitutional [8]** 7/17
41/25 49/20 71/12 82/20
93/20 93/20 94/22

**under [58]** 10/14 10/22
11/8 20/11 29/12 21/13
21/23 27/19 29/19 30/2
30/12 32/5 34/10 34/11
37/19 42/8 43/10 44/9
47/24 49/14 52/3 52/13
52/21 53/12 53/21 54/1
57/7 59/19 63/25 64/15
65/4 66/5 66/15 66/19
66/24 70/11 70/21 72/4
73/3 74/10 79/11 85/8
86/16 86/17 86/18 86/8
86/22 87/5 88/15 92/23
93/2 93/14 94/5
**underlying [1]** 64/3
**understand [14]** 11/18
13/9 13/12 14/13 18/23
19/9 19/17 26/6 26/16
68/18 78/18 81/12 83/5
88/14
**understanding [4]** 11/20
49/7 54/7 83/15
**understood [1]** 89/3
**underwent [1]** 42/25
**unenforceable [2]** 15/4
15/6
**unflagging [1]** 10/4
**unfortunately [1]** 62/2
**Unidos [2]** 71/7 71/8
**UNITED [8]** 1/1 12/12
17/20 70/2 80/9 89/25 99/5
99/11
**universal [2]** 78/8 79/4
**unjust [2]** 27/5 27/8
**unknowing [1]** 27/10
**unlawful [27]** 6/2 17/13
18/7 19/12 20/10 20/11
20/12 22/23 24/1 25/2
25/22 26/5 29/5 29/23 30/1
30/2 30/3 53/4 53/24 54/1
54/1 54/1 63/17 72/3 76/25
88/9 95/4
**unlawfully [1]** 30/19
**unlawfulness [1]** 63/14
**unless [1]** 43/15
**unnoticed [1]** 77/13
**unreasonable [18]** 17/14
24/25 25/3 25/23 27/6 27/8
29/6 41/8 53/4 55/7 55/9
63/14 67/23 76/25 88/9
89/6 93/18 95/11
**unreasonableness [2]**
17/16 58/16
**unreasonably [13]** 17/7
18/22 22/24 30/5 30/18
55/6 55/17 72/4 93/4 93/5
93/11 93/12 93/14
**unspecified [2]** 77/14
77/15
**until [4]** 66/1 79/12 86/1
92/5
**unusual [2]** 3/22 50/23
**unwarranted [1]** 51/6
**up [24]** 3/21 3/25 4/1 4/3
9/24 32/15 32/20 33/12
33/13 33/14 34/4 37/7
43/22 44/16 44/22 45/9
51/9 56/23 72/8 73/14
81/11 82/4 82/5 98/12
**upheld [1]** 93/15
**upon [2]** 17/4 35/13
**urge [1]** 18/11
**us [7]** 3/12 8/10 31/1 35/6
60/15 79/12 91/6

**use [16]** 3/15 4/11 5/1 20/7
20/16 21/5 24/5 30/2 61/25
74/13 75/16 74/2 74/5 77/17
82/4 95/4
**used [8]** 12/1 16/22 21/17
23/4 24/6 43/3 55/17 92/2
**user [1]** 63/7
**uses [2]** 6/16 23/9
**using [2]** 37/17 41/11

**V**

**vague [3]** 26/18 27/2
70/24
**vagueness [14]** 26/4
26/12 26/14 26/19 26/20
27/6 27/9 28/10 28/16
30/23 31/1 47/12 72/25
89/8
**valid [3]** 53/1 53/5 94/23
**venue [1]** 76/14
**version [1]** 11/17
**very [30]** 3/1 4/2 8/11 8/12
10/6 19/23 20/4 22/10
27/23 27/23 36/11 37/16
50/22 69/11 71/9 74/1
75/16 76/20 77/12 79/18
79/22 84/4 88/17 90/19
91/3 92/9 92/25 95/17 98/4
98/13
**viable [1]** 52/21
**vice [1]** 48/25
**view [1]** 43/10
**viewpoint [1]** 68/20
**views [1]** 69/21
**Village [1]** 28/18
**violate [16]** 15/21 18/21
19/8 23/16 29/20 30/24
40/20 40/20 40/21 40/22
40/23 53/17 77/5 77/6
88/11 89/4
**violated [1]** 88/21
**violates [5]** 6/9 9/7 28/23
29/3 33/23
**violating [4]** 23/24 24/1
50/4 58/20
**violation [21]** 7/25 18/18
19/1 21/7 23/10 23/13 24/7
30/6 54/5 54/14 55/7 56/3
56/10 56/12 56/18 57/3
58/23 64/15 64/16 88/20
88/22
**violations [3]** 29/21 39/2
58/24
**violence [2]** 77/8 77/8
**Virginia [19]** 14/3 14/5
33/9 61/24 61/25 62/1 62/3
62/4 62/12 63/6 63/7 63/10
64/21 64/24 66/9 81/5
82/20 82/21 91/11
**virtually [1]** 10/4
**vital [2]** 48/4 48/6
**void [9]** 15/4 15/5 26/12
26/14 26/19 26/20 27/6
27/9 72/25
**volume [1]** 32/21
**Voters [2]** 42/22 50/18
**vs [1]** 1/6

**W**

**wait [5]** 45/7 85/17 85/20
88/5 95/7
**waiting [1]** 85/19
**waive [1]** 38/25
**waiver [4]** 38/3 76/3 76/4
76/14

**W**

**wake [1]** 4/4
**walk [2]** 3/17 47/16
**want [35]** 7/1 9/4 18/10
19/9 25/11 25/17 29/14
31/4 40/2 40/4 40/25 46/14
46/17 51/20 60/20 63/16
65/18 66/6 72/21 74/17
76/2 80/17 83/21 83/24
87/2 95/6 95/7 95/20 96/1
96/4 96/5 96/24 97/4 97/9
97/18
**wanted [6]** 3/21 3/23
12/23 25/11 42/5 97/19
**wants [6]** 20/16 25/8 32/10
49/13 60/15 85/22
**ward [1]** 23/3
**was [81]** 4/2 4/3 5/3 5/7
5/24 5/24 6/2 7/18 10/22
12/11 12/13 12/19 12/21
12/23 12/23 12/24 13/3
13/22 14/2 14/8 14/9 14/20
22/1 22/6 22/13 22/15
22/23 25/3 25/7 26/2 26/21
27/19 28/1 29/6 31/20 33/3
33/12 35/7 35/14 36/2 37/5
39/10 40/12 40/12 42/4
42/6 42/7 44/16 44/24 45/1
45/2 45/3 45/8 47/14 47/25
51/9 51/19 58/25 59/1
59/17 60/16 66/9 66/14
70/1 71/18 72/6 73/5 73/6
75/18 78/5 83/10 84/2 84/2
90/7 91/12 91/20 91/22
91/23 93/18 94/11 95/11
**wasn't [2]** 16/19 60/15
**wasting [1]** 80/12
**waterfront [1]** 4/2
**way [47]** 3/3 4/6 6/11 6/12
6/18 7/12 8/11 8/24 9/17
9/24 13/12 14/15 17/24
18/15 18/16 19/18 21/1
23/11 23/11 24/5 28/3 32/6
33/12 37/1 39/10 43/19
50/20 51/5 51/10 54/23
55/23 62/1 63/15 73/21
74/3 74/6 75/20 80/8 80/25
82/4 82/5 84/24 89/19 96/8
96/16 96/23 97/19
**ways [5]** 18/11 51/8 63/17
73/15 77/4
**we [136]**
**we'd [3]** 38/19 39/15 44/18
**we'll [10]** 2/23 6/4 39/20
41/13 95/8 95/10 95/10
97/16 98/1 98/13
**we're [37]** 3/7 3/8 6/3 6/13
7/1 7/11 10/12 14/21 14/25
15/14 22/24 25/3 32/9
37/21 56/20 57/9 59/3
60/13 62/12 63/20 64/12
66/7 73/24 74/25 75/2
80/24 81/6 81/15 84/19
86/2 87/17 88/15 93/23
94/20 95/9 95/11 98/3
**we've [3]** 5/12 30/7 72/21
**weapon [3]** 21/5 65/9 66/2
**weapons [2]** 63/16 72/13
**week [2]** 78/1 97/17
**weeks [3]** 30/11 78/1
90/19
**weigh [1]** 76/21
**welcome [3]** 38/3 38/7
50/24

**welfare [2]** 14/2 48/5
**well [36]** 2/15 2/18 3/1 3/9
3/25 6/17 7/20 11/7 14/15
14/19 15/10 16/9 18/24
19/20 29/21 29/22 32/20
38/12 45/16 57/14 63/16
63/22 66/12 67/7 68/22
72/20 77/25 78/24 84/15
84/23 85/22 89/9 92/11
94/18 94/20 97/6
**well-established [1]** 72/20
**went [6]** 40/2 57/16 57/17
58/9 75/12 86/13
**were [31]** 5/16 5/16 5/18
5/19 5/21 12/19 12/25 14/3
14/4 14/6 14/22 15/11
21/21 22/7 25/1 28/4 28/4
34/4 36/20 36/21 43/17
43/20 44/8 44/25 82/18
87/4 88/13 89/6 89/11
94/24 97/23
**weren't [1]** 14/23
**Wesson [10]** 11/25 16/18
18/6 32/17 33/14 36/23
42/13 49/13 49/16 87/9
**Wesson's [1]** 12/6
**West [2]** 14/3 14/5
**Western [2]** 81/5 82/20
**what [103]**
**what's [4]** 23/5 63/13
75/16 77/2
**whatever [13]** 9/7 9/15
9/23 21/2 21/6 21/10 28/5
32/17 39/22 64/22 83/21
94/14 97/20
**when [37]** 3/17 13/21
14/22 15/12 17/25 18/25
19/4 19/14 28/15 29/10
30/18 33/5 34/17 35/25
46/6 46/7 52/1 52/2 52/13
55/21 62/12 63/20 73/14
74/5 75/21 77/13 79/1
79/21 80/23 80/24 81/21
83/15 88/17 89/12 89/15
95/23 96/2
**whenever [1]** 87/21
**where [34]** 7/22 7/25 9/4
9/6 9/18 15/24 16/19 17/18
19/21 20/9 22/20 27/23
35/18 36/17 38/16 42/11
46/15 46/23 47/19 54/18
55/18 56/9 58/13 59/3
61/25 62/10 72/16 81/9
82/15 83/25 85/2 88/13
92/15 95/20
**Whereas [1]** 18/21
**wherever [5]** 3/16 65/2
82/1 85/11 94/13
**whether [33]** 19/13 24/1
27/25 28/4 32/3 37/1 37/13
47/4 47/6 47/7 49/9 49/19
49/22 50/24 52/16 53/3
53/7 53/11 59/13 60/9 63/1
64/13 67/5 69/21 71/9
72/10 73/4 73/6 73/12 78/7
86/5 89/19 92/6
**which [45]** 4/17 7/22 13/24
14/2 17/11 17/14 17/15
21/1 30/2 30/7 33/8 35/4
39/10 42/25 43/3 43/7 48/9
50/18 51/9 52/10 53/3 54/8
56/4 57/16 57/16 63/18
64/15 64/23 67/9 70/6 71/3
72/7 73/10 73/15 73/16

78/23 81/16 84/1 84/2 84/2
81/23 84/7 84/11 91/7 92/1 97/3
**while [9]** 6/20 31/1 32/3
42/20 48/18 80/5 87/7
90/17 96/12
**who [22]** 4/13 9/9 11/24
12/12 17/2 19/12 19/12
22/21 24/9 32/15 41/23
62/23 63/6 63/10 64/20
65/9 65/15 69/8 80/3 80/9
80/25 86/6
**whoever [2]** 9/23 53/15
**whole [5]** 3/24 35/12 63/12
82/2 88/18
**wholesale [1]** 31/16
**wholly [1]** 91/25 92/7
**whose [1]** 82/4
**why [12]** 13/19 18/4 19/11
29/18 37/13 38/11 47/13
52/11 72/7 86/14 87/16
88/24
**will [26]** 8/8 11/23 24/24
25/9 25/9 33/7 34/4 34/5
38/1 38/2 42/16 46/22 47/5
51/4 51/22 54/24 58/18
59/24 67/24 79/8 80/21
81/2 81/19 85/5 85/8 96/24
**willfulness [1]** 58/17
**willing [2]** 34/4 38/24
**willy [1]** 95/3
**willy-nilly [1]** 95/3
**win [1]** 38/3
**Winchester [3]** 64/20 65/9
65/17
**wind [1]** 32/20
**wish [1]** 80/16
**within [9]** 20/18 27/4
38/18 49/25 55/20 61/1
61/19 72/13 76/12
**without [1]** 61/22 63/9
66/23
**woman [2]** 12/12
**won't [1]** 38/13
**wooden [1]** 22/7
**word [1]** 74/2
**words [5]** 9/13 10/10
38/17 58/14 65/20
**work [12]** 9/15 9/17 9/23
14/16 18/16 23/1 39/20
84/24 86/4 95/18 96/2
97/14
**worked [1]** 14/6
**working [1]** 87/8
**works [12]** 11/19 15/9
19/10 21/21 31/25 37/12
51/25 82/5 85/24 86/1 92/4
95/14
**worried [2]** 22/19 30/14
**would [96]** 8/13 8/21 8/22
9/7 9/17 10/13 11/3 11/16
14/5 14/8 15/11 16/2 16/4
16/5 16/6 18/9 20/1 20/9
21/12 26/11 27/7 27/11
30/5 31/2 32/18 32/20
32/23 32/24 33/14 34/3
34/15 36/25 38/8 39/23
42/3 42/4 42/22 43/21
44/12 44/15 49/11 49/16
49/23 49/24 50/3 50/13
50/14 50/19 50/21 50/23
51/25 52/9 58/17 59/8 62/7
63/8 64/8 64/11 64/14 66/4
74/4 76/10 76/17 76/18
77/14 77/15 77/20 78/9
79/18 79/23 80/10 81/20

82/18 82/19 83/4 83/10
86/21 87/2 87/3 87/6 87/12
93/6 94/18 95/16 96/10
96/12 97/1 97/2 97/9 97/12
97/21 97/22
**wouldn't [7]** 9/13 19/11
20/10 30/14 32/18 65/25
65/25
**wrap [2]** 15/4 37/7
**write [3]** 39/19 77/25
96/19
**writing [1]** 13/10
**wrong [4]** 43/16 47/3
54/24 57/24

**Y**

**y'all [1]** 95/20
**y'all's [1]** 3/9
**yeah [4]** 22/22 31/24 51/25
79/10
**year [3]** 24/25 77/9 81/20
**years [4]** 4/15 12/10 28/2
37/15
**Yemeni [1]** 12/12
**yes [15]** 2/4 3/13 4/8 17/15
27/20 52/4 53/20 53/23
56/14 66/4 68/15 72/12
77/23 82/17 82/15
**yesterday [1]** 3/5
**yet [6]** 15/7 17/13 29/15
42/12 44/2 45/23
**York [5]** 5/8 5/18 40/14
**you [242]**
**you'll [1]** 48/13
**you're [32]** 2/22 5/14 7/9
13/10 15/1 21/15 21/15
21/17 21/18 22/20 24/1
26/18 26/19 29/10 30/6
34/17 35/16 35/19 35/25
68/4 72/5 78/4 78/9 84/24
86/7 89/2 89/2 89/12 90/5
92/4 95/13 96/5
**you've [2]** 9/8 10/12
**Younger [34]** 6/17 6/23
8/1 8/2 8/4 8/16 10/2 10/7
10/11 12/17 13/13 13/21
14/9 44/9 46/15 46/17
46/18 48/20 51/8 51/13
51/15 75/9 83/24 84/14
84/20 85/4 86/5 86/9 86/17
87/5 87/7 87/17 87/25 88/4
**your [109]**
**youth [1]** 77/12

**Z**

**zero [1]** 10/7
**zoom [1]** 97/16