IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY G. BROWN, ATTORNEY GENERAL OF MARYLAND, <br><br> Defendant. | Civil Action No.: 1:25-cv-1115 |

**MEMORANDUM OPINION**

National Shooting Sports Foundation, Inc. ("NSSF") is a national firearms industry group who brings this action to enjoin the enforcement of a Maryland civil gun control statute as unconstitutional. The *Younger* abstention doctrine mandates that this court abstain from exercising jurisdiction over this proceeding because there is an ongoing Maryland state court action against a NSSF member that implicates important state interests and provides an adequate opportunity for NSSF to raise its constitutional challenges.

Maryland enacted a civil nuisance statute aimed at curbing gun violence by penalizing the firearms industry for unreasonable or unlawful conduct relating to the sale, manufacture, distribution, importation or marketing of firearms-related products. The state of Maryland and the City of Baltimore brought a civil enforcement action in state court against NSSF member, Glock Inc., and its parent company Glock Ges.m.b.H. (collectively, "Glock"), alleging that the modification of Glock pistols with after-market machinegun conversion devices creates a nuisance under the statute. Glock moved to dismiss the Maryland case, asserting, in part, that the federal Protection of Lawful Commerce in Arms Act ("PLCAA") preempts the Maryland civil

nuisance statute, that the statute violates the First and Second Amendments and the Dormant Commerce Clause, and that it is unconstitutionally vague under the Fourteenth Amendment. Two months after Maryland and Baltimore sued Glock in state court, NSSF brought this action against the Maryland Attorney General to declare the Maryland Act unconstitutional and to enjoin its enforcement against its members, including Glock. Specifically, NSSF alleges the same preemption and constitutional claims as those asserted by Glock in state court.

The *Younger* abstention doctrine requires federal courts to abstain from exercising jurisdiction in matters related to ongoing state quasi-criminal proceedings which implicate important state interests and provide an adequate opportunity to raise constitutional challenges. *Younger v. Harris*, 401 U.S. 37 (1971). Because NSSF's federal challenge to the Act fits squarely within the narrow *Younger* abstention exception to federal jurisdiction, the established traditions of federalism and comity require dismissal of this case to avoid interference with the Maryland state case.

I.  **Background and Procedural History**

The Maryland General Assembly passed the Gun Industry Accountability Act in May 2024, and it went into effect on June 1, 2024. *See* 2024 Maryland House Bill No. 947, Maryland 446th Session of the General Assembly, 2024; Md. Code Ann., Acts. & Jud. Proc. § 3-2502(a). The Act declares as a public nuisance certain actions of the firearm industry and has the stated purpose of prohibiting members of the firearm industry from "knowingly creating, maintaining, or contributing to harm to the public through the sale, manufacture, importation, or marketing of a firearm-related product under certain circumstances." *Id.* Section 3-2502 states:

> (a) A firearm industry member may not knowingly create, maintain, or contribute to harm to the public through the sale, manufacture, distribution, importation, or marketing of a firearm-related product by engaging in conduct that is:

>> (1) Unlawful; or
>>
>> (2) Unreasonable under the totality of the circumstances.
>
> (b) A firearm industry member shall establish and implement reasonable controls regarding the sale, manufacture, distribution, importation, marketing, possession, and use of the firearm industry member's firearm-related products.
>
> (c) A violation of this section is a public nuisance.

Md. Code Ann., Cts. & Jud. Proc. § 3-2502.

On February 12, 2025, Maryland and the City of Baltimore brought a civil enforcement action in the Circuit Court for Baltimore County against Glock for violation of the Maryland Act. Maryland and Baltimore charge that Glock is aware of and has failed to take reasonable action to prevent the prevalent practice of illegal modification of Glock pistols with "Glock switches," a conversion device allowing Glock pistols to operate like a machine gun. Dkt. 17-2. They allege that Glock has purposefully refused to change the features of its pistols to prevent their easy modification into an illegal machinegun, thus harming the health and safety of the residents of Maryland and Baltimore by increasing and exacerbating gun violence. *Id.* Glock filed a motion to dismiss the state case on multiple grounds under both Maryland and federal law. Glock specifically argued that the Maryland Act is preempted by the PLCAA and is unconstitutional because it violates the First and Second Amendments, and the Dormant Commerce Clause, and is vague in violation of due process. Dkt. 40-1. Glock also moved to stay the state case, in part because "there is a pending lawsuit in federal court which seeks a declaration that [the Maryland Act] is federally preempted and presents a facial challenge to its constitutionality, and further seeks an injunction to prevent enforcing [the Maryland Act] against the NSSF and its members,

3

which include Glock." Dkt. 40-2, p. 2. The motion to stay in Maryland state court remains pending.

Two months after Maryland began its enforcement action against Glock, on April 3, 2025, NSSF filed this federal constitutional challenge alleging that the Maryland Act is preempted by the PLCAA, that it violates the Dormant Commerce Clause, and the First and Second Amendments, and that it is void for vagueness under the Due Process clause of the Fourteenth Amendment. Dkt. 1. NSSF is a Connecticut-based trade association for the firearm, ammunition, and hunting and sports industry with members numbering "10,000 manufacturers, distributors, and retailers of firearms, ammunition, and related products, as well as other industry members throughout the United States," including Glock. Dkt. 1 ¶ 11. NSSF seeks a declaration that the Maryland Act is facially unconstitutional, or alternatively unconstitutional as applied to NSSF and its members, and it has moved for a preliminary injunction against Attorney General Brown from "bringing suit or taking any other action against NSSF or its members under any provision of [the Maryland Act], including those provisions codified at Md. Code Ann., Cts. & Jud. Proc. §§ 3-2501 through 2504." Dkt. 3, p. 1. Brown opposes the motion for preliminary injunction, and argues that this court must abstain from exercising jurisdiction in this action under the doctrine set forth in *Younger v. Harris*. Dkt. 17.

## II. Analysis

### A. Article III Standing

"It is well established that standing is a threshold jurisdictional issue that must be determined first because 'without jurisdiction the court cannot proceed at all in any cause.'" *Covenant Media of N. Carolina, L.L.C. v. Monroe, N.C.*, 285 F. App'x 30, 34 (4th Cir. 2008) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). "As the party invoking

federal jurisdiction, [NSSF] has the burden of demonstrating standing for each of its claims." *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 997 F.3d 149, 154 (4th Cir. 2021).

"An organization like [NSSF] can assert standing either [1] in its own right or [2] as a representative of its members." *S. Walk at Broadlands Homeowner's Ass'n. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). NSSF does not argue that it has organizational standing "in its own right," and instead apparently relies on associational standing as a representative for its members.[1]

To invoke associational standing, NSSF must establish that "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "An organization must make specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)) (emphasis in *S. Walk at Broadlands*).

---

[1] Neither party addressed standing in briefing or oral argument. NSSF does not assert organizational standing, and the pleadings do not contain factual allegations to support organizational standing. An organization may sue on its own behalf for injuries it has sustained, but must satisfy the standards for injury in fact, causation and redressability that apply to individual members. *Food and Drug Admin. v. Alliance of Hippocratic Med.*, 602 U.S. 367, 393–4 (2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, n. 19 (1982)). NSSF makes no allegations that the Maryland statute causes it injury as an organization; thus, I only address associational standing in this opinion.

### i. NSSF Member Glock Would Have Standing to Sue

Glock is a member of NSSF and has standing to bring NSSF's claims; thus, NSSF can invoke representational or associational standing. The traditional test for individual standing requires that (1) the member suffered an actual or threatened injury; (2) the injury was caused by the defendant's conduct; and (3) a favorable decision is likely to redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

To establish injury in fact, NSSF must show that its members suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations omitted). Here, none of NSSF's members, including Glock, have suffered an actual injury—their conduct has not changed and they have not yet been held liable under the Maryland Act —so they must rely on an allegation of a threatened injury to establish standing. *See Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1251 (S.D. Cal. 2024) ("As [NSSF] has not identified any actual injury—such as ceasing business, discarding inventory, or altering operations—it must instead prove that such harm is fast approaching.").

NSSF submitted affidavits from its members declaring their "fear" of facing liability under the Maryland Act, and the risk of potential harm to their businesses. *See* Dkt. 3, Exs. 2–17. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). The *Glock* suit establishes a credible threat of prosecution under the Maryland Act as to Glock and creates an

imminent threat of injury to Glock sufficient to support standing.[2] *See Dixon v. Edwards*, 290 F.3d 699, 712 (4th Cir. 2002) (noting that a civil suit threatening liability constitutes a threat of an injury sufficient for standing).

NSSF must also establish that Glock has standing for "each claim" and "each form of relief." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008). Glock satisfies the threatened injury requirement as to each claim NSSF asserts. The *Glock* suit poses an imminent, credible threat to Glock's speech, as it seeks to enjoin Glock from marketing certain products, implicating the First Amendment. The *Glock* suit makes a credible threat to Glock's ability to promote, market and sell its products in Maryland; thus, Glock has standing to bring a preemption challenge against the Maryland Act. *See GenBioPro, Inc. v. Raynes,* No. 23-2194, 2025 WL 1932936, at *3 (4th Cir. July 15, 2025) (Plaintiff has standing to bring a preemption challenge against a state law limiting its ability to promote and market its product). Likewise, Glock has standing to bring a dormant Commerce Clause claim because the *Glock* suit poses a credible threat to Glock's ability to manufacture, market, and sell some of its guns, implicating Glock's conduct that occurs outside of Maryland. *See* Dkt. 17-2 ¶ 27 (Glock's handguns are manufactured in Austria and the United States). Glock has standing to challenge to the Maryland Act on due process and/or vagueness grounds because the *Glock* action poses an imminent,

---

[2] The NSSF members other than Glock have not established that prosecution under the Maryland Act is certainly impending. To allege injury because of a threat of prosecution, they must establish "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). A "credible threat of prosecution" requires "fears of state prosecution that are not imaginary or speculative and are actual and well-founded [enough to establish] that the statute will be enforced against them." *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 217 (4th Cir. 2020), as amended (Aug. 31, 2020) (internal quotations and citations omitted). Facts supporting such a threat of enforcement were neither alleged in the Complaint, nor presented in support of the motion for a preliminary injunction.

credible threat to Glock's speech, as it seeks to enjoin Glock from marketing certain products. Dkt. 3-1 at 32–34; Dkt. 17-2 at 51. The *Glock* action threatens Glock's right to sell firearms, arguably implicating the Second Amendment. *See Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 211–12 (4th Cir. 2020), *as amended* (Aug. 31, 2020) (Firearms dealer had standing to bring independent Second Amendment claim and third-party standing as to its customers' right to purchase firearms); *Nat'l Shooting Sports Found. v. Platkin*, No. 22-6646, 2025 WL 1904415, at *5 (D.N.J. July 10, 2025) ("Insofar as the Glock Suit threatens Glock's right to sell it implicates both the Commerce Clause and Second Amendment.").

The second two elements of standing (causation and redressability) are the same for all five claims and can be addressed summarily—the Attorney General of Maryland caused the impending threat of harm, as Maryland is prosecuting the *Glock* action, and the requested relief in this case (an injunction prohibiting enforcement of the Maryland Act) would alleviate the threatened harm.

### ii. The Interests NSSF seeks to Protect are Germane to the Organization's Purpose.

This lawsuit seeks to protect the interests of NSSF members who engage in activities related to the sale and use of their products in Maryland. These interests relate to NSSF's stated purpose, "to promote, protect, and preserve hunting and shooting sports by providing leadership in addressing industry challenges, advancing participation in and understanding of hunting and shooting sports, reaffirming and strengthening its members' commitment to the safe and responsible sale and use of their products, and promoting a political environment supportive of America's traditional hunting and shooting heritage." Dkt. 1 ¶ 12.

### iii. The Lawsuit Does not Require Participation of NSSF's Individual Members.

The third requirement of representational standing–that the lawsuit does not require participation of the association's individual members–generally hinges on the nature of the relief sought. *Ass'n of Am. Railroads v. Hudson*, No. 24-1399, 2025 WL 2011675, at *4 (4th Cir. July 18, 2025). "An action for money damages may well 'require examination of each member's unique injury.' But an action seeking prospective declaratory and injunctive relief . . . is indeed the very 'type of relief for which associational standing was originally recognized.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). Here, NSSF asks this court to enjoin enforcement of the Maryland Act. This does not require the participation of the individual members. Thus, because NSSF member Glock faces an imminent threatened injury, NSSF's interests are germane to the claims, and participation by NSSF's members is not required, NSSF satisfies the requirements for associational standing.

### B. Younger Abstention

Attorney General Brown argues that *Younger* abstention requires this court to abstain from exercising jurisdiction in this matter to avoid interfering with the *Glock* case. 401 U.S. 37 (1971). Generally "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland,* 217 U.S. 268, 282 (1910)).  A federal court's obligation to hear and decide a case over which it has jurisdiction is "virtually unflagging." *Id.*

*Younger* abstention "is an exception to the general rule that federal courts must decide cases over which they have jurisdiction." *Air Evac EMS, Inc. v. McVey*, 37 F. 4th 89, 96 (4th Cir. 2022). "*Younger* exemplifies one class of cases in which federal court abstention is required:

When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).

*Younger* abstention is based on two deep-rooted concepts. "The first comes from traditional equity practice—the idea that 'courts of equity should not act' to restrain another proceeding 'when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'" *Erie Ins. Exch. v. Maryland Ins. Admin.*, 105 F.4th 145, 149 (4th Cir. 2024) (quoting *Younger*, 401 U.S. at 43–44.) The second "even more vital consideration" is "the notion of 'comity,'" including the "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44.

Circumstances fitting within the *Younger* doctrine are "exceptional," and exist in three categories of cases: state criminal prosecutions, civil enforcement proceedings that are akin to criminal prosecutions or "quasi-criminal," and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint*, 571 U.S. at 78 (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989) (*NOPSI*)). Brown argues that the state *Glock* case is a civil enforcement proceeding akin to a criminal prosecution.

### i. Quasi-Criminal Civil Enforcement Proceeding

The Supreme Court held in *Sprint Communications, Inc. v. Jacobs* that civil enforcement proceedings that qualify for *Younger* abstention are those "'akin to a criminal prosecution' in 'important respects.'" 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). The Court noted that such civil enforcement actions are 1) characteristically initiated to sanction the federal plaintiff for some wrongful act; 2) a state actor is regularly a party to the

10

state proceeding and often initiates the action; and 3) investigations are commonly involved, often culminating in the filing of a formal complaint or charges. 571 U.S. at 79–80.

Here, the state *Glock* case is exactly the type of quasi-criminal civil enforcement proceeding that fits within the *Younger* doctrine. Maryland and the City of Baltimore are the parties which the Maryland Act anticipates bringing a civil enforcement action under the statute. Maryland and the City of Baltimore sued Glock, following an investigation into its marketing procedures and to sanction it for violation of the Maryland Act. Dkt. 17-2, pp. 1, 50. The *Glock* case is a "quasi-criminal" proceeding that fits within the narrow category of cases identified in *Sprint* as subject to *Younger* abstention. *See Air Evac EMS, Inc.*, 37 F.4th at 97.

### ii. *Middlesex* Factors

Once satisfied that the *Glock* case is one of the exceptional civil proceedings to which *Younger* applies, the court must then consider three additional factors, commonly known as the *Middlesex* factors to determine whether, in fact, to abstain from exercising federal jurisdiction. The *Middlesex* factors require the court to assess: 1) whether the federal court action will interfere with an ongoing state judicial proceeding; 2) whether that state proceeding implicates important state interests; and 3) whether that state proceeding provides an adequate opportunity to raise constitutional challenges. *Air Evac EMS*, 37 F.4th at 96; *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The three *Middlesex* factors counsel in favor of abstention here. The constitutional challenge NSSF brings to enjoin enforcement of the Maryland Act on its members, including Glock, will interfere with the *Glock* case[3] which implicates vital state interests—the health and

---

[3] NSSF's attempt to avoid interference with the *Glock* case by tailoring the relief it seeks in this case is discussed separately below.

safety of Maryland citizens. *See* state court Complaint, Dkt. 17-2, ¶6 ("Glock harms the health and safety of the residents of Baltimore and Maryland and increases and exacerbates the injuries, death, and fear form gun violence and the proliferation of illegal machine guns.) "Matters relating to public health . . . may justify abstaining under *Younger*." *Harper v. Pub. Serv. Comm'n of W.VA.*, 396 F.3d 348, 353 (4th Cir. 2005). NSSF has an adequate opportunity to raise the same constitutional challenges in the *Glock* suit. NSSF bears the burden of showing that it lacks an adequate opportunity to raise constitutional challenges in the *Glock* case. *Id. at* 150 (citing *Air Evac*, 37 F.4th at 93). "*Younger* is grounded on the 'assumption' that 'absent unambiguous authority to the contrary,' 'state procedures *will* afford an adequate remedy.'" *Erie Ins. Exch.*, 105 F.4th at 151 (quoting *Pennzoil Co.*, 481 U.S. at 15) (emphasis in original). In fact, Glock has asserted as defenses in state court the same constitutional claims that NSSF raises in this case. *See* Dkt. 40, pp. 25–53.

      NSSF argues that it is not a party to the state *Glock* case and therefore does not have the opportunity to raise the constitutional claims alleged in the federal action. The fact that NSSF is not a party to the state *Glock* suit is not determinative. The Supreme Court has recognized circumstances where "legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them," even if the federal plaintiff is not a party to the state proceedings. *Doran v. Salem Inn, Inc*., 422 U.S. 922, 928 (1975). *Younger* abstention applies to federal parties who are not parties to the state action when they have a "substantial stake in the state proceedings," or their interests are sufficiently "intertwined" with the state parties. *Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975). In *Hicks*, two employees of an adult theater were criminally prosecuted in state court for showing an obscene movie and several of the obscene tapes were seized from the theater. The theater brought a federal action

challenging the constitutionality of the state obscenity statute. The Court held that *Younger* abstention applied to the theater's federal claim, even though it was not a party to the state action, because the federal suit would interfere with the state court prosecution, the theater had a substantial stake in the state court proceedings, and the interests of the theater and its employees were intertwined. 422 U.S. at 348.

Conversely, in *Doran v. Salem Inn, Inc.*, the Court found that *Younger* did not bar a federal action by two corporations which had interests similar to a third corporation that was the defendant in a state court criminal case. 422 U.S. at 928. The Court noted that although the corporations had common counsel and similar business activities and problems, they were unrelated in terms of ownership, control and management. *Id.* at 928–29. *Doran* makes clear that alignment of interests among similar but distinct parties is not per se enough to warrant *Younger* abstention.

Here, we do not have two distinct business entities, but rather a national association whose interests and standing derive directly from its member Glock, the defendant in the state court case. Certainly, NSSF represents thousands of other members, but Glock is the only NSSF member facing an imminent injury from enforcement of the Maryland Act. Indeed, NSSF's standing to bring this federal action is entirely dependent upon the fact that Maryland sued Glock in state court. *See Nat'l Shooting Sports Found. v. Attorney General of New Jersey*, 80 F.4th 215, (3rd Cir. 2023) (NSSF lacked standing to bring a pre-enforcement federal action because its members did not face an imminent or threatened injury from enforcement of a similar New Jersey statute). And, Glock raised the same challenges to the Maryland Act in its motion to dismiss the Maryland enforcement action as NSSF has asserted in this case. Thus, NSSF and Glock's interests are "so closely related" in this particular matter, that it justifies treating them as

13

the same for purposes of *Younger* abstention. *See Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1253 (8th Cir. 2012) (*Younger* abstention applies to a church who is not a party to the state action because it alleged standing entirely based on injuries that were directly or indirectly derivative of those of its individual members who were parties to the state case); *Stivers v. State of Minn.*, 575 F.2d 200, 203 (8th Cir. 1978) (*Younger* abstention applies even though federal plaintiffs are not parties to state action because the federal plaintiffs' standing to challenge the state statute in federal court arises from the alleged impact of the state court case and federal plaintiffs seek to interfere with the state proceeding by requesting a stay and injunction.)

NSSF asserts that *Younger* abstention is not warranted because this federal action will not interfere with the state *Glock* case. Certainly, the "basic premise behind *Younger* is to avoid federal interference with pending state proceedings . . . " *Colonial First Prop., LLC v. Henrico County Virginia*, 166 F.Supp.2d 1070, 1076 (E.D. Va. 2001). NSSF proposes that the court limit the injunctive relief in this case to enjoin only ***future*** enforcement of the Maryland Act, and exempt the currently pending state *Glock* case. Stated differently, NSSF asks this court to determine that the Maryland Act is likely unconstitutional and enjoin the Maryland Attorney General from enforcing the Act; but at the same time, allow the Attorney General of Maryland to enforce the Act against NSSF member Glock.

NSSF's attempt to circumvent *Younger* abstention by exempting Glock from an injunction contradicts the relief sought by its pleadings filed in this case, which ask the court to enjoin the enforcement of the Maryland Act against *all* of its members. As the court stated in *NSSF v. Platkin*, "[i]t is inconsistent, and arguably disingenuous, for NSSF to rely on Glock for purposes of satisfying its Article III standing, but distance itself from Glock for purposes of *Younger*." 2025 WL 1904415, at *11, n.10.

NSSF's proposal also ignores the practical effects of this federal lawsuit. Even if NSSF does not expressly seek to enjoin or otherwise directly interfere with the *Glock* case, any prospective injunction would unavoidably interfere with the pending state proceedings. The only enforcement action brought under the Maryland Act so far is the state suit against NSSF member Glock, who raises as defenses the same constitutional claims at issue in this case. Thus, a decision in this federal action will necessarily and unavoidably interfere with the *Glock* proceeding in Maryland state court. *See Colonial First Props., LLC*, 236 F. Supp. 2d at 596 ("Given the substantial identity of interests of the parties and the similarity of the constitutional attacks on [the state statute], a decision in this action will interfere with the pending state proceeding.") As in *Colonial First*, "the gravamen of the attack on [the state statute] in this action is the same as the attack on [the state statute] in [the state case]." *Id.* at 596. NSSF's belated request to tailor the relief it seeks in this sweeping constitutional challenge, to exempt the one state case where the Maryland Act has been enforced–the one case that provides NSSF standing to bring this federal constitutional lawsuit on behalf of its 10,000 members–is simply a blatant and unpersuasive effort to avoid *Younger* abstention.

NSSF relied heavily on *Jonathan R. by Dixon v. Justice*, 41 F. 4th 316 (4th Cir. 2022) at oral argument to contend that *Younger* abstention is not appropriate where the federal action will not interfere with the state court case. *Jonathan R.* is easily distinguished from the facts of this case. *Jonathan R.* was a federal class action alleging myriad constitutional violations in the West Virginia state foster care system. The federal plaintiffs did not challenge any state statutes or any state court judgments, but rather objected to the practices of the West Virginia Department of Health and Human Services. *Id.* at 323. Defendants argued for *Younger* abstention on the theory that plaintiffs sought federal review of the West Virginia state courts quarterly foster-care

15

hearings, and any federal relief would interfere with those hearings. The Fourth Circuit disagreed, finding that West Virginia state foster care hearings did not fit any of the three categories of state cases appropriate for *Younger* abstention set forth in *Sprint*. The foster care hearings were not civil enforcement hearings to sanction the federal plaintiffs (the children in foster care) for some wrongful act. Rather, the hearings sought to protect the children and proceed in a "conciliatory" manner. *Id.* at 329–30. The court noted that the federal plaintiffs in *Jonathan R.* sought not to pause or end any state proceedings, but rather "to bring the inner workings of the state executive branch in compliance with federal law," which does not warrant *Younger* abstention. *Id.* at 333. The Fourth Circuit also noted that abstention was not warranted because any federal court order relating to the West Virginia Department of HHS would not interfere with the West Virginia courts' foster care hearings; and because the individual foster care hearings did not afford an adequate opportunity for the foster care children to bring their systemic constitutional claims. *Id.* at 332.

The court in *Jonathan R.* stated, "[m]ost plaintiffs run afoul of *Younger* by asking federal courts to void the basis for an unfavorable state decision–usually, a statute that allowed the suit against them in the state court." *Id.* at 332.  That is exactly the relief NSSF seeks in this case, to enjoin enforcement of the Maryland Act, which allows the suit against its member Glock in state court. As the court in *Jonathan R.* noted, "[i]t is easy to see how federal adjudication in such cases directly interferes with the pending state proceeding. In the best case, the State confronts 'a choice of engaging in duplicative litigation, thereby risking a temporary federal injunction, or of interrupting its enforcement proceedings pending decision of the federal court at some unknown time in the future.'" *Id.* at 333 (quoting *Trainor v. Hernandez*, 431 U.S. 434, 445 (1977). Presently, the Maryland state court faces this exact choice, as Glock asked the court to stay the

case against it in part because of this federal action involving the same claims and arguments. Dkt. 40-2. Thus, this case is exactly the type of situation described by the *Jonathan R.* court where *Younger* abstention applies.[4]

### III.   Conclusion

I recognize that "federal courts are obliged to decide cases within the scope of federal jurisdiction . . ." and "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint*, 571 U.S. at 72 (citing *NOPSI,* 491 U.S. at 373). However, NSSF's constitutional challenge of the Maryland Act mirrors the constitutional challenges brought in the *Glock* case, and is exactly the situation where "the prospect of undue interference with state proceedings counsels against federal relief." *Id.*

Accordingly, I **ABSTAIN** from further proceedings in this matter. This case is **DISMISSED** without prejudice. An appropriate Order will follow.

Entered:  October 21, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[4] Three exceptions to *Younger* abstention exist; a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate. *Middlesex*, 457 U.S. at 435. The parties do not argue that any of those exceptions exist here, and I find that none apply.